UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Chapter 11

D.A.B. GROUP LLC,                                      Case No. 14-12057 (SCC)

                          Debtor.
------------------------------------------------------------x

**DEBTOR'S MOTION TO (I) APPROVE BIDDING PROCEDURES
FOR THE SALE OF REAL PROPERTY AT 139-141 ORCHARD STREET,
NEW YORK, NY, TO BE CONDUCTED IN FURTHERANCE OF A PLAN
FOR REORGANIZATION, FREE AND CLEAR OF ALL LIENS, CLAIMS,
TAXES, NOTICE OF PENDENCY AND NON-PERMITTED
ENCUMBRANCES; (II) AWARDING A BREAK-UP FEE OF $990,000
TO THE STALKNG HORSE PURCHASER; (III) SCHEDULING AN
AUCTION SALE AND SUBSEQUENT SALE HEARING; AND
(IV) APPROVING THE FORM AND MANNER OF NOTICE**

**TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:**

       The motion of D.A.B. Group LLC (the "Debtor"), by and through its counsel, Goldberg Weprin Finkel Goldstein LLP, hereby moves for the entry of an Order substantially in the form annexed hereto as <u>Exhibit</u> "A" (i) approving the proposed bidding procedures (the "Bidding Procedures") to be used in connection with the sale of the Debtor's property at 139-141 Orchard Street, New York, NY, to be conducted in furtherance of a confirmed plan of reorganization, free and clear of all liens, claims, taxes, notice of pendency, and all other non-permitted encumbrances; (ii) awarding a break-up fee of $990,000 to Arcade Capital LLC ("Arcade") as the proposed Stalking Horse Purchaser; (iii) scheduling an auction sale for the Debtor's property to be followed by a subsequent

hearing to approve the high bidder (the "Sale Hearing"); and (iv) approving the form and manner of notice, and respectfully represents:

## BACKGROUND

1. On July 14, 2014 (the "Petition Date"), D.A.B. Group LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continues to manage its affairs as debtor-in-possession pursuant to 11 U.S.C. §§11 U.S.C. 1107 and 1108.

2. The Debtor's principal asset consists of a partially constructed hotel project at 139-141 Orchard Street, New York, New York designated as Block 415, Lots 66 and 67 (the "Property").

3. Since the commencement of the Chapter 11 case, the Debtor has actively marketed the Property and retained the firm of Massey Knakel Realty Services as its designated real estate broker pursuant to Order dated October 15, 2014 (ECF #47).

4. In recent weeks, the Debtor has entered into extensive negotiations with Arcade as a potential Stalking Horse purchaser pursuant to term sheet dated November 17, 2014. Based upon the term sheet, Arcade has since completed its due diligence and recently entered into a proposed "Stalking Horse" Asset Purchase Agreement (the "APA") to purchase the Property for the sum of $33,000,000, subject to Bankruptcy Court approval and competitive bidding. A copy of the APA is annexed hereto as Exhibit "B".

5. In view of the Stalking Horse contract, the Debtor hereby moves for approval of formal bidding procedures as highlighted below and incorporated as part of Exhibit "A". Based upon the bidding procedures, the Debtor intends to pursue competitive

2

bidding on notice to creditors and other parties in interest. All future bidding on the Property will be consistent with the terms of the APA, and without any financing or post-auction due diligence.

6. The Debtor has already filed a plan of reorganization and disclosure statement which will be amended and supplemented in light of evolving events, however, it is the Debtor's intention to conduct an auction sale of the Property prior to confirmation and close thereunder in furtherance of a confirmed plan so that the Debtor qualifies for transfer tax exemptions under 11 U.S.C. §1146(a).

7. Indeed, the APA contains repeated references that although it is anticipated that a sale will be approved in advance of confirmation, the actual closing thereon shall occur following confirmation as required by Supreme Court case law discussing the applicability of 11 U.S.C. §1146(a).

**THE PROPOSED BIDDING PROCEDURES**

8. The Debtor has developed a formal set of Bidding Procedures intended to cultivate additional interest in the Property, so that the highest and best value for the Property can be obtained. The essential aspects of the proposed bidding procedures are as follows:

   i. The APA signed by Arcade and annexed hereto as Exhibit "B" is deemed to be a "stalking horse" contract for the purchase the Property for the sum of $33,000,000, subject to higher and better offers that may be solicited at an auction sale to be conducted on _____, at the offices of Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, New York, New York 10036 (the "Auction);

   ii. Anyone wishing to make a competing offer and overbid ("Competing Offers") must become a "qualified purchaser";

3

    iii.    To be considered a "qualified purchaser" the Competing Offeror must submit to the Debtor's counsel at Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, New York, New York 10036, at least three (3) business days prior to the Auction (a) a written statement (the "Offering Statement") setting forth: (1) the identity of such potential Offeror; (2) evidence satisfactory to the Debtor, of the Offeror's financial ability to consummate the sale should the offer be accepted; and (3) a certified check in the amount of $1,500,000 made payable to Goldberg Weprin Finkel Goldstein LLP (the "Deposit");

    iv.    The Deposit will be applied toward the purchase price at the closing if the Competing Offeror is deemed the Successful Bidder, but the Deposit shall automatically be deemed non-refundable and shall be retained by the Debtor's estate as liquidated damages if the transaction with the Successful Bidder is approved by the Bankruptcy Court, but the Successful Bidder fails to close in a timely manner consistent with the APA;

    v.    Any Successful Bidder will be required to attend a subsequent hearing before the Bankruptcy Court to approve the sale, with such hearing to be scheduled at a date and time that coincides with confirmation of the Plan (the "Sale Hearing");

    vi.    The Order granting this bidding procedures motion shall provide that the APA is approved as to form, and that any Competing Offers must be substantially on the same terms and conditions of the APA;

    vii.    Competing Offers must be all cash, without any financing, environment, engineering or other due diligence contingencies, with the sale to be conducted on an "as is" basis except for the Debtor's representations contained in the APA;

    viii.    The Competing Offer must exceed the APA by at least $1,150,000 (i.e., the initial offer must be at least $34,150,000), and any further bids will be accepted in increments of not less than $25,000.00; and

    ix.    Subject to Bankruptcy Court approval, the Debtor reserves the right to determine in its discretion which offer is the highest and best.

### THE REQUESTED BREAK-UP FEE

9. The APA contemplates competitive bidding, based on a requested break-up fee of $990,000 to be paid to Arcade as the stalking horse purchaser. The proposed break-up fee represents 3% of the $33 million purchase price. The Debtor submits

4

that Arcade is entitled to a break-up fee because it has already incurred substantial legal fees and costs associated with due diligence and the negotiation of the APA, which reflects a highly competitive starting price that gives the Debtor's estate the benefit of a solid opening bid.

10. In view of the foregoing, the Debtor believes a break-up fee of $990,000 affords important benefits and provides the bankruptcy estate with the benefit of a sizable minimum bid of $33 million.

11. A good deal of case law has developed supporting payment of a break-up fee, which has become an established practice in bankruptcy. See, e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); In re Integrated Resources Inc., 135 B.R. 746 (Bankr. S.D.N.Y), aff'd, 147 B.R. 650 (S.D.N.Y. 1992), app. dismissed, 3 F.3d 49 (2d Cir. 1993) (dismissed on jurisdictional grounds but the Court focused on whether the proposed break-up fee will encourage or discourage bidders).

12. In this case, the Debtor attempted to balance the interests of all concerned in providing for a break-up fee that does not prevent additional bidding, or unduly interfere with the ability to seek-out competing offers, while recognizing the requirements of Arcade.

## THE SALE SHOULD BE APPROVED AS AN EXERCISE OF THE DEBTOR'S SOUND BUSINESS PURPOSE

13. Section 363(b)(l) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(l); *see also* Fed. R. Bankr. P. 6004(f)(1) (authorizing sales outside of the ordinary course of business to be conducted privately or by public auction). A debtor-in-possession is given these rights by section 1107(a) of the Bankruptcy Code.

14. Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, it is well settled that a sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business judgment exists for such a sale. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983), considering the following factors:

- Sound business reason for the sale;
- Accurate and reasonable notice;
- Proportionate value of the asset to the estate as a whole (fair and reasonable);
- The amount of elapsed time since the filing;
- The likelihood that a plan of reorganization will be proposed and confirmed in the near future;
- The effect of the proposed disposition on the future plan;
- The amount of proceeds to be obtained from the sale versus the appraised value of the property sold; and
- Whether the asset is decreasing or increasing in value.

Lionel, 722 F.2d at 1071.

15. Courts have made clear that a debtor's showing of a sound business justification does not have to be unduly exhaustive. Rather, a debtor is "simply required to justify the proposed disposition with sound business reason . . . ." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Moreover, the paramount goal in any proposed sale of property of the estate is to maximize the value received by the estate. *See* In re Food Barn Stores, Inc., 107 F.3d at 564-65 (8th Cir. 1997)(stating that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); In re Integrated Res., Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992)("It is a well-established principle of bankruptcy law that the. . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (*quoting* In re Atlanta Packaging Prods., Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

16. Here, the Debtor is, in fact, pursuing a sale in the context of the confirmation process, as the Auction will run concurrently with the hearings leading to confirmation, with a closing to be effectuated after confirmation. While a strict Lionel analysis does not apply, there is certainly an adequate business justification to sell the Property at this time, given the implications of potential expiring rights under extensions granted by the Board of Standards and Appeals ("BSA") to complete construction. Pursuant to the last extension, the current deadline for construction expires on August 20, 2015. If this deadline is not met or further extended, the project is then put in jeopardy because of an intervening change in zoning regulations.

17. When construction was first commenced, the Property was zoned C6-1 and a building permit was originally issued to build to a height of 191 feet. In late 2008, the zoning for the Property was changed to C4-4A, which carries reduced footage and height limitations. The extension of the construction permit protects against this intervening zoning change under various

7

grandfathering provisions. The Debtor is keenly aware of this circumstance, which is a key reason why a plan of reorganization was filed in advance of designating a stalking horse purchaser.

### THE DEBTOR SHOULD BE AUTHORIZED TO SELL THE PROPERTY FREE AND CLEAR OF ALL LIENS

18. In accordance with section 363(f) of the Bankruptcy Code, the Debtor may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

   i. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
   ii. such entity consents;
   iii. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
   iv. such interest is in *bona fide* dispute; or
   v. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of the Property. *See*, *e.g.*, In re Grubb & Ellis Co., 2012 WL 1036071, *10 (Bankr. S.D.N.Y.).

19. The Debtor submits that the proposed sale of the Property meets three of these requirements, namely (i) that the lead mortgagee, Orchard Hotel LLC is expected to consent to the sale; (ii) the purchase price is in excess of the potential mortgage debt in any event; and (iii) the mortgage is otherwise in dispute. Additionally, the other mechanic's lien holders are also expected to consent, while their claims are in dispute in whole or in part.

### NOTICE OF THE AUCTION SALE AND SALE HEARING

20. Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify all creditors of the proposed sale, including a disclosure of the time and place of the Auction, the terms and conditions of the sale and deadline for filing any objections. The Debtor intends to serve notice

8

to all creditors, together with a separate bidding procedures package containing a copy of the bidding procedures order and list of the bidding procedures, in an effort to comply with the notice requirements of the Bankruptcy Rules. Additionally, the Debtor also intends to publish notice of the Auction on two occasions in the Sunday, *New York Times* in the weeks leading-up to the Auction.

**WHEREFORE,** the Debtor respectfully requests that this Court grant this bidding procedures motion, together with such other and further relief as is just and proper.

Dated:  New York, NY
December 8, 2014

> Goldberg Weprin Finkel Goldstein LLP
> Attorneys for Debtor
> 1501 Broadway
> New York, New York 10036
> 212-221-5700
>
>
> By:   /s/ Kevin J. Nash, Esq.

x:\gwfg\new data\yen\word\dab group llc - zhabe.34146\motion to approve bidding procedures (12-08-14).doc