UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                          Chapter 11

D.A.B. GROUP LLC,                                               Case No. 14-12057 (SCC)

                           Debtor.
-----------------------------------------------------------x

### ORDER (A) APPROVING (i) BIDDING PROCEDURES (ii) THE TIME, DATE PLACE AND FORM OF NOTICE FOR THE AUCTION AND SALE HEARING, AND (iii) BREAK-UP FEE AND (B) ESTABLISHING THE DATE AND TIME FOR A SALE HEARING WITH RESPECT TO THE DEBTOR'S REAL PROPERTY AND RELATED ASSETS

Upon the motion of D.A.B. Group LLC, (the "Bidding Procedures Motion") dated December 8, 2014, as debtor and debtor in possession herein, for entry of an order pursuant to §§105 and 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the proposed bidding procedures as annexed hereto as <u>Exhibit "A"</u> (the "Bidding Procedures") to be used in connection with the proposed sale (the "Sale") of the Debtor's real property at 139-141 Orchard Street, New York, New York and related assets (collectively, the "Assets") to Arcade Capital LLC ("Arcade") or to any competing bidder or bidders (the "Successful Bidder(s)") that submits or collectively submit a higher or better offer or offers for the Assets, (ii) approving payment of a Break-Up Fee of $990,000 (iii) scheduling an auction (the "Auction") for the Assets and a hearing thereon (the "Sale Hearing") to consider approval of the Sale, and (iv) approving the form and manner of notice of the Auction and the Sale Hearing; and this Court having reviewed the Bidding Procedures Motion; and this Court

having held a hearing on the Bidding Procedures Motion on December 17, 2014 (the "Procedures Hearing"); and, based on the Bidding Procedures Motion and the record of the Procedures Hearing, it now appearing that the relief requested in the Bidding Procedures Motion is in the best interest of the Debtor, its estate, and all parties in interest; and after due deliberation thereon and good cause appearing therefor, it is hereby[1]:

## FOUND AND DETERMINED THAT:[2]

A.      This Court has jurisdiction over the Bidding Procedures Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Bidding Procedures Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Good and sufficient notice of the relief sought in the Bidding Procedures Motion has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Bidding Procedures Motion has been afforded to all interested persons and entities, including (i) all creditors of the Debtor and parties which have filed liens, mortgages and Notices of Pendency; (ii) all parties who are known to have liens on or other interests in the Assets; (iii) the Internal Revenue Service; (iv) New York City Department of Finance, and (v) New

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement (defined herein).

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See Fed. R. Bankr. P. 7052.

York State Department of Taxation; (vi) the Office of the U.S. Trustee; and (vii) all other parties that requested service by filing notices of appearance in this Chapter 11 case ((i)-(vii) shall be collectively referred to herein as the "Notice Parties").

C.  The proposed notice of the Sale (including, without limitation, the sale of any Designated Contracts, if any, as referenced in the Asset Purchase Agreement and the Bidding Procedures, as set forth in the Bidding Procedures Motion and the Asset Purchase Agreement, is good, appropriate, adequate, and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice of the Sale of the Assets, the assumption and assignment of any Designated Contract, or the Bidding Procedures, as set forth herein and in the Bidding Procedures Motion, is required.

D.  The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Bidding Procedures Motion, including this Court's (i) approval of the Bidding Procedures, attached hereto as Exhibit "A," (ii) approval of payment of the Break-Up Fee of $990,000 (as defined in the Asset Purchase Agreement and described below) and (iii) approval of the form and manner of service of the notice of the Auction, the Motion and Sale Hearing, attached hereto (the "Notice of Auction and Sale Hearing").

E.  The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling a subsequent hearing to consider whether to grant approval of the proposed Sale in accordance with either (i) the APA by and between the Debtor and Arcade, attached to the Bidding Procedures Motion

3

as Exhibit "B" (together with all exhibits, schedules and agreements attached thereto, the "Purchase Agreement"), or (ii) such other agreement or agreements by and between the Debtor and the Successful Bidder or Successful Bidders, if Arcade is not the successful Bidder (the "Purchase Agreement"), free and clear of, among other things, all liens, claims, taxes, judgments, notices of pendency and non-permitted encumbrances and interests, (collectively, "Liens") (with the same to attach to the proceeds therefrom), other than the Permitted Exceptions, pursuant to section 363 of the Bankruptcy Code.

F.    The Break-Up Fee of $990,000 to be paid to Arcade under the circumstances as set forth in the Purchase Agreement is (i) an actual and necessary cost and expense of preserving the Debtor's estate, (ii) commensurate with the overall benefit conferred upon the Debtor's estate by Arcade, (iii) determined to be reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by Arcade, and (iv) necessary to induce Arcade to continue to pursue the Sale and to continue to be bound by the Purchase Agreement in light of competitive bidding.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Bidding Procedures Motion is GRANTED to the extent provided in this Order.

2. All objections to entry of this Order or to the relief provided herein and requested in the Bidding Procedures Motion that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

### The Bidding Procedures

3. The Bidding Procedures, as set forth in Exhibit "A" hereto and incorporated herein by reference as if fully set forth herein, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Assets. Notwithstanding the above, any party in interest may object at the Sale Hearing to the criteria used by the Debtor to select the highest or otherwise best offer for the Assets, and this Order shall not be construed as approving or disapproving of the criteria set forth in the Bidding Procedures.

4. The deadline for submitting bids for the Assets (the "Bid Deadline") shall be _____, 2015 at 5:00 p.m., unless otherwise extended by Court Order. In the event the Bid Deadline is extended, the Court shall establish new dates for: (i) the Auction; (ii) the Sale Hearing; and (iii) the deadline for objections to the Sale.

5. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

### The Auction

6. The Auction shall commence at 10:00 a.m. on _____, 20115 at Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New

York, New York 10036, or such later time or other place as decided by the Debtor, and the Debtor shall notify all Qualified Bidders of such later time or place; <u>provided, however</u>, in the event that no Qualified Bids (other than that submitted by Arcade) are received by the Bid Deadline of at least $34,150,000, the Debtor shall not be required to conduct an Auction, and in such event the Debtor shall proceed with the approval of the Purchase Agreement.

### Break-Up Fee

7.    Payment of the Break-Up Fee in the amount of $990,000 payable at such times and under the circumstances set forth in and in accordance with the terms of the Purchase Agreement, is hereby approved. The Break-Up Fee shall be paid out of the proceeds of any sale of the Assets.

8.    The terms of the Purchase Agreement shall govern (i) the terms and conditions under which Arcade is obligated to purchase the Property; and (ii) the Break-Up Fee.

9.    Arcade shall not be entitled to the Break-Up Fee if the Sale closes with Arcade as the purchaser.

### Sale/Confirmation Hearing

10.   The Sale Hearing shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, on _____ ___, 2015 at 10:00 a.m. at the United States Bankruptcy Court, Courtroom 623, One Bowling Green, New York, New York 10004, at which time this Court shall (i) consider approval of the Sale to

6

Arcade or other Successful Bidder(s); (ii) consider the entry of a proposed sale order, in form and substance reasonably acceptable to the Debtor and Arcade or such other Successful Bidder (the "Sale Order"); (iii) consider any issues or objections that are timely interposed by any parties; and (iv) grant such other or further relief as this Court may deem just or proper.

11. Except as may be limited by the Purchase Agreement, the Sale Hearing may be adjourned by the Debtor, after consultation with Arcade or other Successful Bidder(s), as applicable, from time to time without further order of this Court, by filing a notice with this Court and serving such notice on all Qualified Bidders provided, however, that pursuant to the Purchase Agreement, the closing on the sale shall occur pursuant to a confirmed plan of reorganization within the time prescribed thereby.

### Notice

12. The Notice of Auction and Sale Hearing substantially in the form attached hereto as Exhibit "B" is hereby approved.

13. Within seven (7) business days after the entry of this Order, the Debtor shall have caused a copy of the Bidding Procedures, the Notice of Auction and Sale Hearing, and this Order to be served upon the Notice Parties via first class mail.

14. Within seven (7) business days after the entry of this Order, the Debtor shall have caused a copy of the Notice of Auction and Sale Hearing on all other known creditors and parties in interest.

15. The notice as set forth in the preceding paragraphs shall constitute good and sufficient notice of the Motion, the Auction and the Sale Hearing, and no other or further notice of the Motion, the Auction and the Sale Hearing shall be necessary or required.

### Objections to Sale of Property

16. Objections, if any, to the sale of the Property pursuant to the Order and the Purchase Agreement shall be filed with this Court and served so as to be **received** no later than 5:00 p.m. prevailing Eastern Time on _____ ___, 2015 (the "Objection Deadline"), by: (i) Goldberg Weprin Finkel Goldstein LLP, attorneys for the Debtor and Debtor in Possession, 1501 Broadway, 22nd Floor, New York, New York 10036, Attention: Kevin J. Nash, Esq.; (ii) Halperin Battaglia Raicht, LLC, 40 Wall Street, 37th Floor, New York, New York 10005, Counsel to Arcade Attention: Alan Halperin, Esq.; (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street – Suite 1006, New York, New York 10014 Attention: Serene K. Nakano, Esq.; and (iv) all other parties that requested notice by filing notices of appearance in this Chapter 11 case. Only timely filed and served responses, objections, and other pleadings will be considered by this Court at the Sale Hearing.

17. The failure of any person or entity to timely file its objection to the proposed sale shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to relief requested therein, or to the consummation of the Sale contemplated by

the Purchase Agreement or agreement with the Successful Bidder(s), if any (including the transfer of the Assets free and clear of Liens).

### Additional Provisions

18. The Debtor is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

19. Nothing contained in this Order precludes any party in interest from objecting to the Sale in accordance with the objections procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Bidding Procedures Motion.

20. This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including jurisdiction to allocate the consideration paid for some or all of the Assets to each individual asset, as necessary, to determine the proceeds to which a Lien attached.

DATED: New York, New York
        December _____, 2014

                                              _____
                                              HONORABLE SHELLEY C. CHAPMAN
                                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## BIDDING PROCEDURES
## AND TERMS AND CONDITIONS OF SALE

D.A.B. Group, LLC ("<u>Debtor</u>" or the "<u>Seller</u>"), as Chapter 11 debtor and debtor in possession, has entered into a certain Agreement of Purchase and Sale (the "<u>Agreement</u>"), dated as of December __, 2014 with Arcade Capital LLC ("<u>Purchaser</u>"), for the sale (the "<u>Sale</u>") of certain Property at 139-141 Orchard Street, New York, New York together with the building and improvements thereon (the "Property") as such term is more fully defined in the Agreement. The Debtor is currently soliciting other higher or better bids for the Sale of the Property and related assets.

### A.    **Bidding Procedures**

Set forth below are the bidding procedures (the "<u>Bidding Procedures</u>") with respect to the Sale by the Seller of the Property[1]. On _____, 2014, the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") entered an order (the "<u>**Procedures Order**</u>") granting the Debtor's motion (the "<u>**Bidding Procedures Motion**</u>") insofar as it sought the approval of the Bidding Procedures to be employed in connection with the solicitation of higher or better bids and an auction (the "<u>Auction</u>") for the sale of the Property to be approved at a subsequent date (the "Sale Hearing").

### B.    **Property to be Sold Free and Clear**

The Debtor is offering for sale the "<u>Property</u>," as defined in the Agreement, subject to a list of Excluded Assets. Except as otherwise provided in the Agreement with respect to the Sale, all of the Seller's right, title and interest in and to the Property shall be sold free and clear of all, liens, notices of pendency, permitted claims, encumbrances and security interests, (collectively, the "Liens") to the extent permitted by section 363 of the Bankruptcy Code and other applicable law. The actual closing shall occur following confirmation of a plan of reorganization anticipated to occur on ___, 2015.

Except as provided in the Agreement, the sale of the Property shall be on an "<u>as is, where is</u>" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or its estate except to the extent set forth in the Agreement or as approved by the Bankruptcy Court.

### C.    **Stalking Horse**

The Agreement provides that the Purchaser shall act as the "stalking horse bidder" in the Auction, and for a breakup fee in the amount of $990,000 (the "<u>**Break-Up Fee**</u>"), which shall be payable by the Seller to the Purchaser solely upon the consummation of the sale of the Property to an entity other than Purchaser making the "highest or otherwise best" offer for the purchase of the Property. The Break-Up fee shall be paid from the sale proceeds of such sale in accordance with the term of the Agreement.

---

[1]    Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Bidding Procedures Motion.

The Debtor reserves the right, to determine whether any bid is better, if not higher, than another bid submitted during the Auction subject to Bankruptcy Court approval on notice to all creditors. The Debtor may consider a variety of factors in making this decision, including without limitation, any proposed conditions to closing, and timing of the closing of the proposed transaction.

### D.  Mailing the Auction and Hearing Notice

The Debtor shall provide notice of sale of the Property (the "**Sale Notice**") together with a copy of these Bidding Procedures by first class mail, postage prepaid, to (a) all parties identified by the Debtor's broker as potentially having an interest in acquiring the Property; (b) the Office of the United States Trustee for the Southern District of New York; (c) counsel for Orchard Hotel LLC; (d) the parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) all counter-parties to any Designated Contracts; (f) all creditors of the Debtor who are listed on the schedules filed by the Debtor or who have filed proofs of claim against the Debtor's estate; and (g) all parties who are known to have a Lien on the Property.

Any other party in interest that wishes to receive a copy of the Bidding Procedures Order and/or the Sale Motion shall make such request in writing to Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036, Attn: Kevin J. Nash, Esq. or via email at knash@gwfglaw.com.

### E.  Confidentiality Agreement / Due Diligence

Any entity that wishes to conduct due diligence with respect to the Property, other than Purchaser, must (i) deliver to the Debtor an executed confidentiality Agreement in form and substance satisfactory to the Debtor, and (ii) deliver to the Debtor a written non-binding expression of interest to purchase the Property, reasonably acceptable to the Debtor.

Interested parties that comply with the foregoing (each such entity referred to as a "**Potential Bidder**"), shall be permitted to conduct diligence with respect to the Property prior to the Bid Deadline, provided however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

### F.  Qualification of Bids and Bidders

In order to participate in the bidding process and to have a bid considered by the Debtor, each Potential Bidder must deliver a written, irrevocable offer satisfying the below criteria. A "**Qualified Bidder**" is a Potential Bidder that delivers a binding bid that in the Debtor's discretion satisfies the following (a "**Qualified Bid**"):

(a) Bid Deadline. Each bid package must be delivered in written form to: (i) counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036, Attn: Kevin J. Nash, Esq. (ii) counsel to the Purchaser, Halperin Battaglia Raicht, LLP 40 Wall Street, 37th Floor, New York, New York, 10005, Attn: Alan Halperin, Esq. (iii) counsel to Orchard Hotel LLC, Morrison Cohen LLP, 909 Third Avenue, New York,

New York, 10022, Attn: Joseph T. Moldovan, Esq., so as to **actually be received no later than at 4:00 p.m. (prevailing Eastern Time) on [DATE] (the Bid Deadline)**.

(b) Bid Package. Each bid must include (collectively, the "**Bid Package**"): (i) a written and signed irrevocable offer stating that (x) the bidder offers to consummate a sale transaction on terms and conditions conforming to the Agreement and in an amount at least equal to the Minimum Bid (as defined below), and (y) confirming that the bid will remain irrevocable until one business day following the closing of a Sale to the Successful Bidder (as defined below), (ii) an executed copy of the Agreement as modified by the bidder in accordance with its bid (the "**Modified Agreement**"), marked to show any changes thereto.

(c) Minimum Bid. The amount of the purchase price in such bid must provide for net cash (or cash equivalent) that is at least in the amount of $34,150,000, representing an initial bid increment of $60,000 more than the purchase price contained in the Agreement, plus the amount of the Break-Up Fee (the "**Minimum Bid**").

(d) Financial Information. The Bid Package must contain such financial and other information that will allow the Debtor to make a determination as to the bidder's financial wherewithal and ability to consummate the transactions contemplated by the Modified Agreement, including any proposed conditions to closing.

(e) Additional Bid Protections. The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment, and shall be expressly made subject to the Debtor's obligations to pay the Break-Up Fee to Purchaser pursuant to the terms of the Agreement.

(f) Identity of Bidders. Each Potential Bidder must fully disclose the identity of each entity that will be bidding for the Property, as well as disclose the organization form and the business conducted by each entity. Potential Bidders shall be required to provide such additional information as the Debtor may require regarding a bidder's ability to satisfy the requirements of the transaction contemplated by the Modified Agreement.

(g) Due Diligence. The bid must not contain any due diligence or financing contingencies of any kind, and must affirmatively acknowledge that the bidder (i) had an opportunity to conduct due diligence regarding the Property prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any

documents and/or the Property in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection therewith except as expressly stated in these Bidding Procedures.

(h) <u>Consents</u>. Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its competing bid and to enter into and perform the Modified Agreement.

(i) <u>Deposit</u>. A Potential Bidder must deposit $1,500,000 of the initial purchase price set forth in the Modified Agreement with the Debtor's counsel in the form of a certified check or wire transfer at least three business days before the date of the Auction (the "**Deposit**"). The Potential Bidder shall forfeit the Deposit if (i) the Potential Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the Debtor's selection of the Successful Bidder, or (ii) the bidder is the Successful Bidder (defined below) and (x) modifies or withdraws the bid without the Debtor's consent before the consummation of the sale contemplated by the bid, or (y) breaches the Modified Agreement. The Deposit shall be returned to the bidder (i) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (ii) no later than five business days after entry of the Sale Order if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder (defined below). The Debtor will not be required to maintain any Deposit in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

The Debtor shall have the right to determine whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids prior to the Auction. In addition to the requirements above, the Debtor may request additional information from any bidder to assist it in making its determination as to whether a bid is a Qualified Bid. For the avoidance of doubt, Purchaser is a Qualified Bidder and the Agreement is a Qualified Bid.

G. **Sale to Arcade**

If no Qualified Bid other than Purchaser's is submitted, the Debtor shall not hold the Auction, but may proceed with the Sale Hearing and seek approval of the Agreement and the transactions contemplated thereby.

H.   **Auction**

In the event that the Debtor timely receives at least one Qualified Bid (excluding Purchaser's Agreement) by the Bid Deadline, the Debtor shall conduct the Auction with respect to the Property. The Auction will take place at the offices of Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036 on [DATE], starting at [TIME] (prevailing Eastern Time), or at such other later date and time or other place, as may be determined by the Debtor at or prior to the Auction. The Auction shall be governed by the following procedures:

(a)   Participation. Only the Qualified Bidders that have submitted a Qualified Bid and provided a Deposit will be eligible to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative. In the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith. The Debtor will evaluate all Qualified Bids received and, after consultation with the Creditors Committee will select the Qualified Bid that reflects the highest or best offer for the Property as the "Starting Auction Bid". The Debtor may consider a variety of factors to determine the Starting Auction Bid including changes to the Agreement and the Qualified Bidder's financial ability to consummate the Sale.

(b)   Bidding. Bidding at the Auction shall commence at the amount of the Starting Auction Bid of $34,150,000. Qualified Bidders may then submit successive bids in increments of $25,000 (the "**Bid Increment**"); provided, however, that the Debtor shall retain the right to modify the Bid Increment at the Auction. Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.

(c)   Bid Package. Each bid must include (collectively, the "**Bid Package**"): (i) a written and signed irrevocable offer stating the (x) the bidder offers to consummate a sale transaction on terms and conditions no less favorable than found in the Agreement and in an amount at least equal to the Minimum Bid (as defined below), (y) confirming that the bid will remain irrevocable until one business day following the closing of a Sale to the Successful Bidder (as defined below), and (z) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not reply on any written or oral representation except as expressly provided with Modified Agreement; (ii) an executed copy of the Agreement as modified by

the bidder in accordance with its bid (the "**Modified Agreement**"); and (iii) an electronic markup of the Agreement showing the revisions in the Modified Agreement (formatted as a Microsoft Word document or such other word processing format acceptable to the Debtors) and the electronic markup of the Agreement. The Debtors shall, in consultation with Secured Creditors, determine whether any Modified Agreement that modifies the Agreement in any respect beyond the identity of the purchaser and the purchase price under the Agreement is a Qualified Bid.

(d) Minimum Bid. The amount of the purchase price in all competing bids must provide for at least $34,150,000 (the "**Minimum Bid**").

(e) Financial Information. The Bid Package must contain such financial and other information that will allow the Debtor to make a determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Agreement.

(f) Successful Bid. The Auction shall continue until there is only one offer that the Debtor determines and subject to Court approval, is the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (the "**Successful Bid**"). The bidder submitting such Successful Bid shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the Modified Agreement, or the Agreement, as applicable. Within one business day after the conclusion of the Auction (but in any event prior to the commencement of the Sale Hearing), the Successful Bidder shall (i) complete and execute all Agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made, and (ii) supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such deposit equals 10% of the Successful Bid.

(g) Anti-Collusion. At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other bidder with respect to the bidding or the Sale.

(h) Conduct of Auction. The Auction will be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid.

(i) Backup Bid. At the conclusion of the Auction, the Debtor will also announce the second highest or otherwise best bid from among the

Qualified Bids submitted at the Auction (the "**Backup Bid**"). The bidder submitting such Backup Bid shall become the "**Backup Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the Modified Agreement or the Agreement, as applicable. The Backup Bid shall remain open and irrevocable until one business day following the closing of the Sale to the Successful Bidder. The Backup Bidder's Deposit will be returned by the Debtor upon consummation of the Sale of the Property to the Successful Bidder.

(j)   Extensions/Adjournment. The Debtor reserves its rights, in the exercise of its fiduciary obligations, to modify the Bidding Procedures at or prior to the Auction, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing.

I.   **Sale Hearing**

The Successful Bid and the Backup Bid will be subject to approval by entry of an order (the "**Sale Order**") by the Bankruptcy Court after a hearing (the "**Sale Hearing**") that will take place [DATE] at [TIME] (prevailing Eastern Time). The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court. Upon approval of the Backup Bid by the Bankruptcy Court, the Backup Bid shall remain open and irrevocable until the consummation of the Successful Bid.

Objections, if any, with respect to the Sale Hearing shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court through the Court's electronic filing system, with a courtesy copy delivered to the Hon. Shelley C. Chapman at the U.S. Bankruptcy Court, One Bowling Green, New York, New York, 10004, and simultaneously served on: (a) counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036, Attn: Kevin J. Nash, Esq.; (b) counsel to the Purchaser, Halperin Battaglia Raicht, LLP 40 Wall Street, 37th Floor, New York, New York 10005. Attn: Alan Halperin, Esq.; (c) counsel for Orchard Hotel LLC, Morrison Cohen LLP, 909 Third Avenue, New York, New York 10022, Attn: Joseph T. Moldovan, Esq.; (d) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1600, New York, New York 10014, Attn: Serene Nakano, Esq.; (e) the Successful Bidder; and (f) the Backup Bidder, so as to be **actually received by 4:00 p.m. (prevailing Eastern Time) on [DATE]** (the "**Objection Deadline**").

J. **Consummation of the Sale**

Following the Sale Hearing, if for any reason the Successful Bidder fails to consummate the purchase of the Property, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. The Debtor and the Backup Bidder are authorized to effect the sale of the Property to the Backup Bidder as soon as is commercially reasonable also pursuant to a confirmed plan of reorganization. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit shall be forfeited to the Debtor and the Debtor specifically reserves the right to seek all available damages from the defaulting bidder.

K. **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Property, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing.