# EXHIBIT 1



1 of 1 DOCUMENT

[***1]  **Orchard Hotel, LLC, Plaintiff, against Ben Zhavian, Defendant.**

15013/11

**SUPREME COURT OF NEW YORK, KINGS COUNTY**

*34 Misc. 3d 1219(A)*; *950 N.Y.S.2d 492*; *2012 N.Y. Misc. LEXIS 402*; *2012 NY Slip Op 50180(U)*

**January 31, 2012, Decided**

**NOTICE:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

PUBLISHED IN TABLE FORMAT IN THE NEW YORK SUPPLEMENT.

**PRIOR HISTORY:** *Cava Constr. & Dev., Inc. v. DAB Group LLC, 2010 N.Y. Misc. LEXIS 5203 (2010)*

**HEADNOTES**

[*1219A]  Actions--Stay--Action on Guarantees Stayed Pending Resolution of Foreclosure Action. Real Property Actions and Proceedings Law--§ 1301 (3) (Action to foreclose mortgage; separate action for mortgage debt).

**COUNSEL:** [**1] For Plaintiff: Y. David Scharf, Morrison Cohen, LLP, New York, NY.

For Defendant: William Wallace, Favata & Wallace, LLP, Garden City, NY.

**JUDGES:** Carolyn E. Demarest, J.

**OPINION BY:** Carolyn E. Demarest

**OPINION**

Carolyn E. Demarest, J.

In this action to recover upon two guarantees executed by defendant Ben Zhavian (defendant), plaintiff Orchard Hotel, LLC (plaintiff) moves for an order: (1) pursuant to *CPLR 3213*, granting it summary judgment in lieu of complaint in the amount of [***2] $15,155,735.47, plus prejudgment interest, and (2) directing that an inquest be held to determine the amount of costs and expenses (including court costs and reasonable attorneys' fees) to be awarded to it.

**Facts and Procedural History**

*The Project Loan*

On or about November 8, 2007, Brooklyn Federal Savings Bank (BFSB) provided a $5.5 million loan (the Project Loan) to D.A.B. Group LLC (DAB), as the Borrower, to finance its construction and development of a 92-room hotel at 139-141 Orchard Street in Manhattan (the property). In consideration of the Project Loan, DAB, as the maker, executed a Consolidated Secured Promissory Note in the amount of $5.5 million (the Project Loan Note) in favor of BFSB, as the holder. As security for the Project Loan [**2] Note, DAB executed a Mortgage Consolidation, Extension, Modification and Security Agreement dated as of November 8, 2007 (the Project Loan Mortgage), which granted BFSB a first priority mortgage lien against the property. As further

14-12057-scc   Doc 100-1   Filed 02/10/15   Entered 02/10/15 14:36:33   Exhibit 1
Pg 3 of 12

Page 2

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **2; 2012 NY Slip Op 50180(U), ***2

consideration for the Project Loan to DAB, defendant (who, according to the Certificate of Borrower dated as of November 8, 2007, owned a 99% interest in DAB and was DAB's operating manager), as the Guarantor, executed a guarantee on November 2, 2007 in favor of BFSB (the Project Loan Guarantee).

*The Project Loan Note*

Pursuant to section 1 of the Project Loan Note, such Note had an initial maturity date of June 1, 2008, and, as set forth in section 13, it had an optional extension term to December 1, 2008. During the term of the Project Loan, DAB was required to pay interest only, with the outstanding principal due, in full, on the maturity date. Section 3.1 of the Project Loan Note, entitled "Events of Default," provided that "[t]he failure to make any payment as and when required under this Note (after a ten day grace period, except that there shall be no grace period for the payment due on the Maturity Date) . . . shall constitute an Event of Default' [**3] under this Note."

Section 3.4 (a) of the Project Loan Note further provided for the imposition of a Late Charge as follows:

"If any payment is not paid within ten (10) days of the date on which it is due, Maker shall pay to Holder upon demand an amount equal to the lesser of five percent (5%) of such unpaid payment or the maximum amount permitted by applicable law in order to defray a portion of the expenses incurred by Holder in handling and processing such delinquent payment and to compensate Holder for the loss of the use of such delinquent payment, and such amount shall be deemed to be secured by the Mortgage."

Section 3.4 (b) of the Project Loan Note set forth that "[f]rom and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Holder, interest shall accrue on the outstanding Principal Sum at a rate equal to twenty-four percent (24%) per annum (the Default Rate'). Under section 3.3 of [***3] the Project Loan Note, DAB also agreed to pay all costs and expenses, including reasonable attorneys' fees, incurred by the holder in collecting under the Project Loan Note or in protecting, or realizing on, the loan collateral.

Section 3.2 [**4] of the Project Loan Note, entitled "Remedies," provided, in pertinent part, that:

"Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate . . . (b) Holder may, at its option, declare and demand this Note and sums due under the Mortgage and Loan Documents immediately due and payable and (c) Holder may pursue all rights and remedies available hereunder or under the Mortgage or any of the Loan Documents. Holder's rights, remedies and powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property . . . or any guarantor of the indebtedness evidenced hereby or any other collateral security given at any to secure the payment hereof, all at the sole discretion of Holder . . ."

Section 8.8 of the Project Loan Note stated:

"Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a [**5] defense to this Note and the obligations of Maker hereunder of the obligations of any person or party relating to this Note or the obligations of Maker hereunder. This Note sets forth the entire agreement and understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or cross claim of any nature whatsoever with respect hereto or the obligations of Maker hereunder of the obligations of any other person or a party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Principal Sum, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof or to enforce, foreclose and realize upon the liens created by the Mortgage and any other security document."

Section 9 of the Project Loan Note gave BFSB the right to sell, transfer, assign and convey its interest in the Project Loan Note, the Project Loan Mortgage, the Loan Documents, and the Project Loan Guarantee given in connection with the loan obligations.

*The Project Loan Mortgage*

Section 24 (a) of the Project Loan Mortgage provided that upon the occurrence of any Event [**6] of Default, the mortgagee could take certain listed actions,

14-12057-scc    Doc 100-1    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 1
Pg 4 of 12

Page 3

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **6; 2012 NY Slip Op 50180(U), ***3

"each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion." These actions included the remedy, listed in [***4] subdivision (vi), to "recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage."

*The Project Loan Guarantee*

Section 1 of the Project Loan Guarantee provided:

"The Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender . . . (a) the full and punctual payment and performance when due of the indebtedness evidenced by the Note, as the same shall become due and payable under the Note, and any and all sums of money, which, at any time, may become due and payable under the provisions of the Note, the Mortgage or the Agreements, and (b) the due and prompt performance of all of Borrower's obligations under the Loan Documents, whether at maturity or earlier by reason of acceleration or otherwise and whether denominated as damages, principal, interest, fees or otherwise, together with all pre- and post-maturity interest thereon . . ."

Section 1 of the Project Loan Guarantee [**7] further provided that defendant "agree[d] to pay any and all costs and expenses (including, without limitation, all reasonable fees and disbursements of counsel) incurred by Lender in connection with the enforcement of this Guarantee."

Pursuant to section 3 (b) of the Project Loan Guarantee, defendant specifically agreed that:

"Lender shall not be bound or obliged to exhaust recourse against the Borrower or any other Obligor or any security, guarantee, indemnity, Mortgage or collateral it may hold or to take any other action (other than to make demand pursuant to this Guarantee) before being entitled to payment from the Guarantor hereunder."

Section 6 of the Project Loan Guarantee explicitly stated that "the Guarantor shall make payment of the Guaranteed Obligations and other amounts payable by the Guarantor hereunder forthwith after demand therefor is made by Lender to the Guarantor in writing." Section 15 of the Project Loan Guarantee provided that defendant irrevocably submitted to the jurisdiction of any court in Kings County for any action arising out of it or the Project Loan Note, the Project Loan Mortgage or any other document delivered in connection . . . therewith . . ."

Section 16 [**8] of the Project Loan Guarantee stated:

"Guarantor hereby agrees and acknowledges that this Guarantee is an instrument for the payment of money, and hereby consents that Lender, at its sole option, in the event of a default by Guarantor in the payment of any of the moneys due hereunder, shall have the right to bring a motion and/or action under *New York CPLR Section 3213*."

*The Loan Modification Agreement*

On August 21, 2008, DAB, defendant, and BFSB executed a Loan Modification [***5] Agreement, which, among other changes, extended the maturity date of the Project Loan Note to September 1, 2009, with three optional six-month extension terms, the last of which terminated on March 1, 2011. Section 4 of the Loan Modification Agreement provided that the definition of Maturity Date contained in the Project Loan Note and the Project Loan Mortgage were rendered null and void, and that paragraph 12 of the Project Loan Note (which had provided for the original extension option) was rendered null and void and replaced as modified. Section 8 of the Loan Modification Agreement, entitled "Representations and Warranties," provided that DAB represented and warranted to BFSB that it "ha[d] no [**9] claims against [BFSB]," and that it "ha[d] no defenses to, or offsets against, any of its obligations under the Note, the Mortgage or under the Loan Documents." Above defendant's signature, the Loan Modification Agreement stated that defendant, as the Guarantor, authorized and approved of the modification and acknowledged the continuing effectiveness of the Project Loan Guarantee.

*The Building Loan Note*

Also on August 21, 2008, BFSB provided additional financing to DAB in an amount up to $19.05 million for the construction of the hotel (the Building Loan). As consideration for the Building Loan, DAB executed a Secured Building Loan Promissory Note (the Building Loan Note) in favor of BFSB. The Building Loan Note had an initial maturity date of September 1, 2009, and three optional six-month extension terms, the last of which expired on March 1, 2011. As with the Project

14-12057-scc Doc 100-1 Filed 02/10/15 Entered 02/10/15 14:36:33 Exhibit 1
Pg 5 of 12

Page 4

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **9; 2012 NY Slip Op 50180(U), ***5

Loan Note, DAB, pursuant to the Building Loan Note, was required to pay interest only during the term of the Building Loan with the outstanding principal due, in full, at maturity.

Section 4.1 of the Building Loan Note included the same terms as section 3.1 of the Project Loan Note, which provided that "the failure to [**10] make any payment as and when required" under it constituted an "Event of Default." Section 4.4 (a) of the Building Loan Note contained the same terms as section 3.4 (a) of the Project Loan Note, which provided for a 5% late charge, and section 4.4 (b) of the Building Loan Note contained the same terms as section 3.4 (b) of the Project Loan Note, which provided for a 24% Default Rate of interest from and after an Event of Default. Section 4.3 of the Building Loan Note (as also provided in section 3.3 of the Project Loan Note) set forth that DAB agreed to pay all costs and expenses of collection. Section 4.2 of the Building Loan Note contained the same language as section 3.2 of the Project Loan Note, which stated that upon an Event of Default, BFSB could pursue its remedies "singly successively or together against Maker, the Property . . . or any guarantor of the indebtedness . . . all at the sole discretion of Holder." In addition, section 9.8 of the Building Loan Note contained the same terms as section 8.8 of the Project Loan Note, and section 10 of the Building Loan Note contained the same terms as section 9 of the Project Loan Note (as set forth above).

*The Building Loan Mortgage*

As [**11] security for the Building Loan Note, DAB executed a Building Loan Mortgage [***6] and Security Agreement dated as of August 21, 2008 (the Building Loan Mortgage), which granted BFSB a second priority mortgage lien against the property. Section 2.06 of the Building Loan Mortgage stated that "[n]o remedy herein conferred upon or reserved to the Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative."

*The Building Loan Guarantee*

As consideration for the Building Loan, defendant executed a guarantee in favor of BFSB (the Building Loan Guarantee). The Building Loan Guarantee (as with the Project Loan Guarantee), in section 1, absolutely, unconditionally and irrevocably guaranteed "the full and punctual payment of the indebtedness evidenced by the [Building Loan] Note, as the same shall become due and payable under th[at] Note, and any and all sums of money, which, at any time may become due and payable under the provisions of the [Building Loan] Note, the [Building Loan] Mortgage or the Agreements." The Building Loan Guarantee also contained the same terms with respect to the Building Loan that the Project Loan Guarantee contained [**12] with respect to the Project Loan, including sections 3 (b), 6, and 16 (as set forth above).

*The Estoppel Certificate*

By a general contract entered into on or about March 30, 2010 with a commencement date in or about August 2010, DAB engaged Flintlock Construction Services, LLC (Flintlock), a general contractor. Pursuant to the loan documents, BFSB was entitled to review and approve the general contract between DAB and Flintlock (the Flintlock contract), and it, in fact, approved the Flintlock contract on or about August 26, 2010. In connection with the approval of the Flintlock contract and DAB's exercise of the third extension option under the Project Loan Note and the Building Loan Note and BFSB's consent thereto, DAB, defendant, and Flintlock executed an Affidavit and Estoppel Certificate dated August 26, 2010 (the Estoppel Certificate). The Estoppel Certificate set forth that it was given to BFSB with the understanding that BFSB would rely on this Certificate in connection with the Project Loan and the Building Loan. The Estoppel Certificate acknowledged that defendant guaranteed payment in full of both the Project Loan and the Building Loan, as well as DAB's performance of all of [**13] its obligations thereunder by way of the Project Loan Guarantee and the Building Loan Guarantee. Significantly, the Estoppel Certificate also provided that DAB, defendant, and Flintlock represented and warranted to BFSB that, among other things, DAB, defendant, and Flintlock had no claims against BFSB, and that DAB and defendant had no defenses to, or offsets against, any of their obligations under the Project Loan Note, the Building Loan Note, the Project Loan Mortgage, the Building Loan Mortgage, the Project Loan Guarantee, the Building Loan Guarantee, or under the Loan Documents.

*The Default*

DAB failed to pay the amounts due under the Project Loan Note and the Building Loan Note on the March 1, 2011 maturity date, which constituted an Event of Default [***7] under section 3.1 of the Project Loan Note and section 4.1 of the Building Loan Note. In its

14-12057-scc    Doc 100-1    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 1
Pg 6 of 12

Page 5
34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **13; 2012 NY Slip Op 50180(U), ***7

loan statement for March 1, 2011, BFSB advised DAB that the Project Loan and the Building Loan had matured, but DAB failed to repay any outstanding principal or other amounts due. By a letter dated March 23, 2011, BFSB, through its counsel, again advised DAB that the Project Loan Note and the Building Loan Note matured by their respective terms [**14] on March 1, 2011, and that BFSB did not consent to any further extension of the Notes and that they were payable in full at that time. DAB did not pay the outstanding principal or other amounts due.

By an Assignment and Conveyance dated June 17, 2011, BFSB, as the assignor, sold, assigned, and transferred to plaintiff, as the assignee, all of its right, title and interest in the Loan Documents in connection with the Building Loan and the Project Loan, which included, among other things, the Project Loan Note, the Project Loan Mortgage, the Project Loan Guarantee, the Loan Modification Agreement, the Estoppel Certificate, the Building Loan Note, the Building Loan Mortgage, and the Building Loan Guarantee. By a letter dated June 23, 2011, plaintiff advised DAB and defendant of additional Events of Default (i.e, violations issued by the Department of Buildings against the property, the filing of mechanic's liens, and the cancellation of DAB's insurance policy for the property) that had occurred since the March 1, 2011 maturity date, along with the failure to pay the principal and other sums due on the Project Loan Note and the Building Loan Note. By a letter dated June 27, 2011 to defendant, [**15] plaintiff (pursuant to section 6 of the Project Loan Guarantee and the Building Loan Guarantee) demanded immediate payment in full from defendant, as the Guarantor, of all of DAB's obligations under the Project Loan Note and the Building Loan Note, which he had guaranteed under the Project Loan Guarantee and the Building Loan Guarantee.

On June 30, 2011, plaintiff brought this action by filing its summons with this motion against defendant, based upon the Guarantees, seeking summary judgment in lieu of complaint pursuant to *CPLR 3213*. Plaintiff seeks to recover the principal owed, plus prejudgment interest, pursuant to *CPLR 3213*, and, in addition, seeks an inquest to be held to calculate costs, expenses, and attorneys' fees. Shortly following the commencement of this action, plaintiff brought an action to foreclose the Mortgages in the Supreme Court, New York County, under index number 850044/11 before Justice Bernard Fried (the foreclosure action), which is presently pending.[1]

---

1  According to defendant, the foreclosure action was commenced one day after this action, and is proceeding at a rapid pace. A search of the New York State Court's e-filing system for this case indicates that on [**16] January 24, 2012, Justice Fried granted plaintiff leave to file a forty-page memorandum in support of its motion for summary judgment for foreclosure. The foreclosure action, therefore, remains pending, although it was not commenced until subsequent to the filing of this action.

**Discussion**

[***8] *CPLR 3213*

Under *CPLR 3213*, a plaintiff may move for summary judgment in lieu of complaint where "an action is based upon an instrument for the payment of money only." A guarantee qualifies as an instrument for the payment of money only and may be the subject of a *CPLR 3213* motion so long as the plaintiff establishes that an absolute and unconditional guarantee of a note exists (*see Bank of Am., N.A. v Solow, 59 AD3d 304, 304, 874 N.Y.S.2d 48 [2009]*; *Juste v Niewdach, 26 AD3d 416, 417, 809 N.Y.S.2d 563 [2006]*; *Federal Deposit Ins. Corp. v Jacobs, 185 AD2d 913, 913, 587 N.Y.S.2d 978 [1992]*; *Key Bank of Long Is. v Munkenbeck,162 AD2d 503, 504, 556 N.Y.S.2d 702 [1990]*; *Manufacturers Hanover Trust Co. v Green, 95 AD2d 737, 737, 464 N.Y.S.2d 474 [1983]*; *Council Commerce Corp. v Paschalides, 92 AD2d 579, 579, 459 N.Y.S.2d 463 [1983]*). A plaintiff establishes a prima facie case of its entitlement to summary judgment under *CPLR 3213* by submitting proof of the guarantee and the defendant's failure to make the payments [**17] required thereunder (*see Bank of Am., N.A., 59 AD3d at 304*; *Juste, 26 AD3d at 417*; *Council Commerce Corp., 92 AD2d at 579*).

In support of its motion, plaintiff has annexed the Project Loan Guarantee and the Building Loan Guarantee (collectively referred to as the Guarantees) (along with all of the other relevant documents discussed above), which are signed by defendant, and which are unambiguous and specifically state, in section 1, that they unconditionally guaranteed the indebtedness evidenced by the Project Loan Note and the Building Loan Note (collectively referred to as the Notes), respectively. Plaintiff also points out that in section 16 of the Guarantees (as set

14-12057-scc    Doc 100-1    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 1
Pg 7 of 12

Page 6

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **17; 2012 NY Slip Op 50180(U), ***8

forth above), defendant agreed and acknowledged that the Guarantees were instruments for the payment of money, and explicitly consented to the enforcement of the Guarantees through *CPLR 3213*. Plaintiff has also submitted the affidavit of David Aviram, its authorized signatory, who attests that as of June 30, 2011, $5,500,000 in principal, $443,667.67 in interest, and $275,000 in late charges, plus collection cost and expenses, including reasonable attorneys' fees, were due under the Project Loan Note, and $7,960,673.24 [**18] in principal, $642,160.97 in interest, and $398,033.66 in late charges, plus collection costs and expenses, including reasonable attorneys' fees, were due under the Building Loan Note.

In opposition to plaintiff's motion, defendant argues that the Guarantees, despite their explicit terms unconditionally guaranteeing payment, do not qualify as instruments for the payment of money. Defendant relies upon section 1 of the Guarantees, which (as set forth above) both provided that he guaranteed "the full and punctual payment and performance when due of the indebtedness evidenced by the Note . . . and any and all sums of money, which, at any time, may become due and payable under the provisions of the Note . . . and . . . the due and prompt performance of all of Borrower's obligations under the Loan Documents, whether at maturity or earlier by reason of acceleration or otherwise, and whether denominated as damages, principal, interest, fees or otherwise, together with all pre- and post-maturity interest thereon . . ." Defendant further points to the fact that the Building Loan Guarantee, in section 1, additionally provided that he [***9] guaranteed the "full and punctual payment and performance [**19] when due of all of Borrower's obligations under the Loan Documents," "the lien free construction and completion of the improvements to be constructed at the Property," and "the lien free completion of the Construction Work in accordance with the terms of the Building Loan Agreement." Defendant contends that since the Project Loan Guarantee and the Building Loan Guarantee purport to guarantee both "punctual payment and *performance*," they go beyond guaranteeing payment, in that an essential component of each of them is a guarantee of performance. Defendant argues that the Guarantees, therefore, cannot be said to be instruments for the payment of money only so as to qualify them for the accelerated judgment process set forth in *CPLR 3213*.

In support of this argument, defendant asserts that plaintiff is seeking to enforce these Guarantees against non-monetary defaults on the part of DAB since, in its June 23, 2011 letter, it stated that there were "additional events of default," including the lapse of insurance, building code violations on the property, and the filing of various mechanic's liens. Defendant contends that the reference in this June 23, 2011 letter to these non-monetary defaults [**20] removes the Guarantees from the ambit of *CPLR 3213*.

This argument, however, must be rejected since plaintiff is seeking to enforce the Guarantees based upon DAB's non-payment under the Notes, not due to any lack of performance of other obligations or the additional Events of Default, which would also support an acceleration of DAB's debt, but which are irrelevant here as plaintiff's demands are based, not on a failure of other "performance," but upon DAB's failure to pay at maturity. Thus, no evidence is needed regarding DAB's performance to enforce defendant's obligation under the Guarantees. Consequently, the fact that the Guarantees may have also extended to other obligations does not alter the fact that DAB's obligation under the Notes (and defendant's resulting obligation under the Guarantees) was fixed and ascertainable (*see Corvetti v Hudson, 252 AD2d 787, 788, 676 N.Y.S.2d 263 [1998]*). "The mere presence of additional provisions in the [G]uarant[ees] referring to [other obligations] d[o] not constitute a bar to *CPLR 3213* relief, because these provisions d[o] not require additional performance as a condition precedent to repayment, or otherwise alter . . . defendant's promise of payment" (*Juste, 26 AD3d at 417*; [**21] *see also Afco Credit Corp. v Boropark Twelfth Ave. Realty Corp., 187 AD2d 634, 634, 590 N.Y.S.2d 519 [1992]*; *Hess Corp. v Magnone, 27 Misc 3d 1220[A], 910 N.Y.S.2d 762, 2010 NY Slip Op 50811[U], *3-4 [Sup Ct, NY County 2010]*). Defendant's obligation, as the Guarantor, is an unconditional explicit promise to pay a sum of money, and, as such, is "the prototypical example of an instrument within the ambit of [*CPLR 3213*]" (*Weissman v Sinorm Deli, 88 NY2d 437, 444, 669 N.E.2d 242, 646 N.Y.S.2d 308 [1996]*). Moreover, the enforcement of the Guarantees is not contingent on anything other than the default in payment by DAB under the Notes, and such payment default by DAB is undisputed (*see Bank of Am., N.A.,* [***10] *59 AD3d at 304*; *Corvetti, 252 AD2d at 788*).[2]

> 2   Defendant, citing *First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*

14-12057-scc Doc 100-1 Filed 02/10/15 Entered 02/10/15 14:36:33 Exhibit 1
Pg 8 of 12

Page 7

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **21; 2012 NY Slip Op 50180(U), ***10

*(29 NY2d 297, 299, 277 N.E.2d 638, 327 N.Y.S.2d 609 [1971])* (which held that an insurance policy in question was not a divisible contract), also argues that the guarantee to pay is not divisible from the guarantee to perform because the Guarantees, by their terms, nature, and purpose, are interdependent and common to one another. This case is inapposite since (as previously noted) the Guarantees do not require any showing with respect to performance by DAB [**22] or defendant, and simply require a showing of a lack of payment for their enforcement.

Defendant also argues that because the Building Loan Guarantee guaranteed prompt performance under extrinsic loan documents, including the Building Loan Mortgage, the Building Loan Agreement, and the Loan Modification Agreement, it cannot qualify as an instrument for the payment of money only. Such argument is rejected. "The fact that reference must be made to documents beyond the [Building Loan] Guarant[ee] does not take it out of the purview of *CPLR 3213*, because liability under a guaranty necessarily depends on the existence of a third party's obligation defined in other documents" (*GSO RE Onshore LLC v Sapir, 29 Misc 3d 1234[A], 920 N.Y.S.2d 241, 2010 NY Slip Op 52138[U], *5 [Sup Ct, NY County 2010]*; *see also Bank of Am., N.A. v Solow, 19 Misc 3d 1123[A], 862 N.Y.S.2d 812, 2008 NY Slip Op 50830[U], *4 [Sup Ct, NY County 2008])*. Furthermore, here, defendant's liability can be demonstrated without resorting to extrinsic evidence beyond the Guarantees[3] and an affidavit of nonpayment.[4]

> 3  While there is no dispute as to the unpaid principal due and owing, a reference would be needed in order to compute interest, late charges, costs, expenses, [**23] and attorneys' fees, However, this issue does not prevent a determination on the issue of liability under *CPLR 3213*.
> 
> 4  As previously noted, defendant does not dispute its nonpayment of the principal due on the March 1, 2011 maturity date.

Moreover, as quoted above and pointed out by plaintiff, the explicit language of section 16 of the Guarantees provided that defendant agreed and acknowledged that the Guarantees were instruments for the payment of money, and that plaintiff had the right to bring a motion under *CPLR 3213* in the event of a default in payment of any of the monies due. Defendant, in the face of this language, contends that while, in section 16 of the Guarantees, he acknowledged and agreed, that such Guarantees were "instruments for the payment of money," such Guarantees did not state that they were instruments "for the payment of money *only*," as required by *CPLR 3213*. This contention is devoid of merit. It is unnecessary for the word "only" to be included as this section of the Guarantees expressly makes reference to *CPLR 3213*.

The court finds that the Guarantees, based upon their language and unconditional terms, qualify as instruments for the payment of money only (*see Bank of Am., N.A., 59* [***11] *AD3d at 304-305*; [**24] *Juste, 26 AD3d at 417*).

*Defendant's Alleged Defenses*

Defendant (who, as noted above, is the principal owner and managing member of DAB), submits his own affidavit, in which he asserts that he and DAB have defenses to the merits of plaintiff's claim, which raise triable issues of fact and require discovery, thereby precluding the granting of summary judgment under *CPLR 3213*. Specifically, defendant contends that DAB and BFSB had agreed to extend the maturity date of the Notes from March 1, 2011 to mid-November 2011. Defendant notes that plaintiff, as the assignee of BFSB, the original lender, stands in its shoes and takes the Project Loan Guarantee and the Building Loan Guarantee subject to any defense that would have prevailed against BFSB and that it has no greater rights and is subject to the same liabilities as BFSB (*see Losner v Cashline, L.P., 303 AD2d 647, 648, 757 N.Y.S.2d 91 [2003]*; *State St. Bank & Trust Co. v Boayke, 249 AD2d 535, 535, 671 N.Y.S.2d 359 [1998])*.

In an effort to raise a defense regarding the maturity date, defendant states that, while pursuant to the original terms of the loan documents, the final maturity date of the loan was on March 1, 2011, there were delays experienced in the project from [**25] the beginning, and claims that these delays were directly attributable to BFSB's actions. Defendant asserts that despite the fact that BFSB was aware that the lower east side had undergone a down zoning which would have prohibited the full extent of the proposed construction and that DAB had applied to the Board of Standards and Appeals (the BSA) to be "grandfathered in" and the project was

14-12057-scc Doc 100-1 Filed 02/10/15 Entered 02/10/15 14:36:33 Exhibit 1
Pg 9 of 12

Page 8

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **25; 2012 NY Slip Op 50180(U), ***11

effectively shut down from November 2008 to June 2009 while the BSA application was pending, BFSB failed and refused to properly fund the project during the entire time that DAB's application was pending before the BSA.[5] Defendant further asserts that although shortly after the BSA approved DAB's application, work recommenced and proceeded, additional delays were encountered in or about November 2009, when the New York City Department of Buildings erroneously issued a stop work order as a result of an issue with an adjoining property owner. Defendant also states that in or about June 2009, BFSB and its participant lender, State Bank of Texas,[6] requested that an updated appraisal for the project be conducted before it would fund the loan. Defendant asserts that while none of the loan documents entitled [**26] the lender to withhold funding the loan based on a updated appraised value, BFSB withheld funding for approximately four months (until October 2009) until he, with the assistance of counsel, was able to get BFSB to withdraw the [***12] requirement of an updated appraisal report. Defendant claims that due to these delays, the project was behind schedule.

> 5 The BSA approved DAB's application for a "grandfathered" status which permitted the intended construction so long as it was completed on or before March 15, 2013.
>
> 6 Defendant asserts that the loans were made in the name of BFSB with the participation of State Bank of Texas pursuant to some type of participation agreement between them, to which neither DAB nor he was a party.

Defendant also relies upon the fact that the Flintlock contract provided for substantial completion no later than 430 calendar days from the date of the commencement of work, and the commencement of the work was subject to approval of BFSB. Defendant claims that it was agreed among BFSB, State Bank of Texas, Flintlock, and DAB that the loans would be extended, at least for the term of the Flintlock contract so that the project could be substantially completed by Flintlock [**27] in accordance with the schedule in the Flintlock contract and well within the BSA's approval date of up to March 15, 2013. Defendant states that this fact is evidenced by the Estoppel Certificate, which contained the budget going forward in connection with the Flintlock contract. Defendant maintains that it was the intention of the parties that the Flintlock contract would result in the substantial completion of the project in or about November 2011, 430 days after the August 26, 2010 Estoppel Certificate, and that the extension of the loan would conform and run parallel with the term of the Flintlock contract so as to extend it to November 2011.[7]

> 7 Notably, the Estoppel Certificate also provided that DAB, defendant, and Flintlock represented and warranted to BFSB that, among other things, DAB, defendant, and Flintlock had no claims against BFSB, and that DAB and defendant had no defenses to, or offsets against, any of their obligations under the Project Loan Note, the Building Loan Note, the Project Loan Mortgage, the Building Loan Mortgage, the Project Loan Guarantee, the Building Loan Guarantee, or under the Loan Documents.

Defendant also asserts that BFSB failed and refused to fund [**28] certain of the requisitions for work completed prior to March 2011 despite the fact that Flintlock had completed work and submitted requisitions for payment. Defendant contends that as a result of BFSB's failure to fund properly approved requisitions for work which predated even the March 1, 2011 maturity date, Flintlock pulled its permits and walked off the job, and filed a lien against the project, and that this resulted in all of DAB's subcontractors and the architect similarly filing liens against the job, bringing the project to a halt and triggering the June 23, 2011 letter citing these additional Events of Default. Defendant, however, does not cite to any specific requisitions which were not paid nor does he submit any documentary evidence in this regard.

Whether there is any merit to the alleged defenses interposed on behalf of borrower DAB by defendant need not, and will not, be determined in this action. The primary obligor on the underlying debts upon which plaintiff seeks to recover is the defendant in the foreclosure action pending in New York County, which will have a full opportunity to raise these defenses to its liability therein. Defendant Zhavian's obligation to plaintiff [**29] is contingent on DAB's debt to plaintiff. An assessment of that debt will necessarily be made in the foreclosure action. In light of the pendency of that action, it is [***13] inappropriate for this court to comment upon the merits of the defenses raised here, on behalf of DAB, by defendant.

Moreover, for the purposes of the instant motion, any factual disputes concerning DAB's liability are irrelevant

14-12057-scc    Doc 100-1    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 1
Pg 10 of 12

Page 9

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **29; 2012 NY Slip Op 50180(U), ***13

since Section 2 (d) of the Guarantees reads as follows:

"The liability of the Guarantor hereunder shall be absolute and unconditional irrespective of . . . any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Debt or of the Guarantor in respect of this Guarantee."

Thus, defendant's purported defenses are precluded as to him by the terms of the Guarantees, which waived such defenses (*see Fortress Credit Corp. v Hudson Yards, LLC, 78 AD3d 577, 577, 912 N.Y.S.2d 41 [2010]*; *Hotel 71 Mezz Lender LLC v Mitchell, 63 AD3d 447, 448, 880 N.Y.S.2d 67 [2009]*; *GSO RE Onshore LLC, 2010 NY Slip Op 52138[U], *5*).

Defendant also asserts that the amounts alleged to be due and owing on the Notes have been miscalculated by plaintiff and are grossly exaggerated because late [**30] charges in the sum of $275,000 on the Project Loan and $398,000 on the Building Loan are improperly demanded. Defendant contends that the late fee, as defined by the Loan Documents, is 5% of any unpaid payment, and he construes an "unpaid payment" as not including the total principal balance due. Defendant asserts that the late charge was to apply only to tardy periodic interest payments on the loan to "defray a portion of the expenses incurred by the holder in handling and processing such delinquent payment," and, therefore, was not meant to apply to the entire principal balance due. This issue must be deferred to the pending foreclosure action.

This court finds that the Guarantees signed by defendant, upon which the instant action is predicated, qualify as instruments for the payment of money only, and that the invocation by defendant here of defenses based on facts extrinsic to the Guarantees, which are unconditional in nature, do not preclude the granting of summary judgment in lieu of complaint pursuant to *CPLR 3213* (*see Bank of Am., N.A., 59 AD3d at 304*; *Alard, L.L.C. v Weiss,1 AD3d 131, 131, 767 N.Y.S.2d 11 [2003]*; *Stevens v Phlo Corp., 288 AD2d 56, 56, 733 N.Y.S.2d 11 [2001]*; *Newcourt Small Bus. Lending Corp. v Grillers Casual Dining Group, 284 AD2d 681, 683, 727 N.Y.S.2d 699 [2001])*. [**31] Based upon the documents submitted, defendant has failed to raise any genuine triable issues of fact as to any purported defenses available to defendant herein. Consequently, plaintiff is entitled to summary judgment in lieu of complaint limited to the issue of liability for the obligation of the borrower DAB to plaintiff pursuant to *CPLR 3213*.

*RPAPL 1301*

Defendant argues that since the foreclosure action is pending in the Supreme Court, New York County, and this action seeks to enforce the Guarantees for the same underlying debt, this action should be dismissed or stayed pending the resolution of that action based upon *RPAPL 1301 (3)*. Defendant is correct. [***14]

*RPAPL 1301* provides:

"1. Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff of the county where he resides, if he resides within the state, or if he resides without the state, to the sheriff of the county where the judgment-roll is filed; and has been returned wholly or partly unsatisfied.

2. The [**32] complaint shall state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part has been collected.

3. While the [foreclosure] action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former [foreclosure] action was brought."

"*RPAPL 1301 (3)* prohibits a mortgage lender seeking repayment of a loan from simultaneously prosecuting an action at law to recover upon a promissory note and an action in equity to foreclose the mortgage"[8] (*Wells Fargo Bank Minn. v Cohn, 4 AD3d 189, 189, 771 N.Y.S.2d 649 [2004]*; *see also Aurora Loan Servs., LLC v Lopa, 88 AD3d 929, 930, 932 N.Y.S.2d 496 [2011]*; *Aurora Loan Servs., LLC v Spearman, 68 AD3d 796, 796-797, 890 N.Y.S.2d 124 [2009]*; *First Nationwide Bank v Brookhaven Realty Assocs., 223 AD2d 618, 622, 637 N.Y.S.2d 418 [1996]*; *Federal Deposit Ins. Corp. v De Cresenzo, 207 AD2d 823, 824, 616 N.Y.S.2d 638 [1994]*; *Fielding v Drew, 94 AD2d 687, 687, 463 N.Y.S.2d 15 [1983])*. This "election of remedies" rule applies equally to actions on the guarantee of a note (*see*

14-12057-scc   Doc 100-1   Filed 02/10/15   Entered 02/10/15 14:36:33   Exhibit 1
Pg 11 of 12

Page 10

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **32; 2012 NY Slip Op 50180(U), ***14

*TBS Enterprises, Inc. v. Grobe, 114 AD2d 445, 446, 494 N.Y.S.2d 716 [1985]*; *Valley Natl. Bank v Spitzer, 31 Misc 3d 1232[A], 932 N.Y.S.2d 764, 2011 NY Slip Op 50926[U], *4 [Sup Ct, Kings County 2011]*; [**33] *Manufacturers Hanover Trust Co. v 400 Garden City Assoc.,150 Misc 2d 247, 249, 568 N.Y.S.2d 505 [1991]*). Although the Guarantees contain a venue provision placing any action to recover thereon in Kings County, and, by law, the foreclosure action was required to be venued in New York County as the county in which the property is located (*see CPLR 507*; *GAM Property Corp. v Sorrento Lactalis Inc., 41 AD3d 645, 646, 838 N.Y.S.2d 633 [2d Dept 2007]*), and the instant action preceded commencement of the foreclosure action, *RPAPL 1301 (3)*, by its express terms, precludes a mortgagee who has elected foreclosure from commencing or *maintaining* a separate action on the mortgage debt without leave of the court in which the foreclosure action is brought (*see First Nationwide Bank v. Brookhaven Realty Assocs., 223 A.D.2d 618, 622, 637 N.Y.S.2d 418 [1996]*; *Rainbow Venture Assocs., L.P. v. Parc Vendome Assocs., 221 A.D.2d 164, 164, 633 N.Y.S.2d 478 [1995]*; *Anron Air Sys. v Columbia Sussex Corp., 202 AD2d 460, 461-462* [***15] *, 609 N.Y.S.2d 49 [1994]*; *Marine Midland Bank v Lake Huntington Dev. Group,185 AD2d 395, 395-396, 585 N.Y.S.2d 836 [1992]*; *Brown v Bellamy, 170 AD2d 876, 878, 566 N.Y.S.2d 703 [1991]*; *Wells Fargo Bank, N.A. v Ghobrial, 33 Misc 3d 1207[A], 938 N.Y.S.2d 230, 2011 NY Slip Op 51808[U], *2 [Sup Ct, Richmond County 2011]*.

> 8  As to plaintiff's potential [**34] recovery, defendant notes that according to a March 2010 appraisal commissioned by BFSB, the market value of completion was between $32 million and $39 million, evidencing that there is equity in the project in excess of $20 million.

In seeking to avoid the preclusion of *RPAPL 1301 (3)*, plaintiff argues that *RPAPL 1301 (1)* is "[t]he relevant provision when a mortgagee has commenced an action on the mortgage debt and thereafter seeks to foreclose on the mortgage" (*Marine Midland Bank, 185 AD2d at 396*). Plaintiff notes that *RPAPL 1301 (1)* "precludes commencement of a foreclosure action after final judgment has been rendered in an action on the debt unless certain conditions are satisfied," and that, here, at the time that it commenced the foreclosure action, no final judgment had yet been rendered in its favor on any claim based on the mortgage debt and, therefore, "there was no statutory bar to the commencement of the foreclosure action" (*id*.). However, while there was thus no bar to the commencement of the foreclosure action, this does not avoid the preclusive effect of *RPAPL 1301 (3)* as to the maintenance of this action once the foreclosure action was commenced by plaintiff.

"The legislative [**35] intention underlying *RPAPL [1301]* is to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the mortgage debt to one court and one action'" (*Anron Air Sys., 202 AD2d at 462*, quoting *Dollar Dry Dock Bank v Piping Rock Bldrs., 181 AD2d 709, 710, 581 N.Y.S.2d 361 [1992]*; *see also Valley Sav. Bank v Rose, 228 AD2d 666, 667, 646 N.Y.S.2d 349 [1996]*). Its aim and legislative purpose is "to avoid inappropriate duplicative and vexatious litigation by the same party" (*Central Trust Co. v Dann, 85 NY2d 767, 772, 651 N.E.2d 1278, 628 N.Y.S.2d 259 [1995]*; *Aurora Loan Servs., LLC, 88 AD3d at 930*; *NC Venture I, L.P. v Complete Analysis, Inc., 49 AD3d 514, 515, 851 N.Y.S.2d 888 [2008]*).

Plaintiff argues that DAB and defendant waived the election of remedies rule as a defense by the language contained in the Notes, the Mortgages, and the Guarantees. Plaintiff points to section 3.2 of the Project Loan Note and section 4.2 of the Building Loan Note, which each stated that the "rights, remedies and powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property . . . or any guarantor of the indebtedness evidenced hereby or any other [**36] collateral security given at any time to secure the payment hereof, all at the sole discretion of Holder." Plaintiff also points to section 24 (a) (vi) of the Project Loan Mortgage, which stated that upon an Event of Default, the mortgagee can "recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage," and section 2.06 of the Building Loan Mortgage, which stated that "[n]o remedy herein conferred upon or reserved to the Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative." Plaintiff additionally points to section 3 (b) of the Guarantees, which stated that the holder of the Notes "shall not be bound or obliged to exhaust recourse against the Borrower or any other Obligor or any . . . Mortgage or [***16] collateral it may hold . . . before being entitled to payment from the Guarantor hereunder."

34 Misc. 3d 1219(A), *1219A; 950 N.Y.S.2d 492;
2012 N.Y. Misc. LEXIS 402, **36; 2012 NY Slip Op 50180(U), ***16

Plaintiff argues that the purpose of these provisions is to permit it to sue on the Notes and Guarantees and foreclose on the Mortgages concurrently. Plaintiff asserts that *RPAPL 1301* "is to be strictly construed since it is in derogation of a plaintiff's common-law right to [**37] pursue the alternate remedies of foreclosure and recovery of the mortgage debt at the same time'" (*Valley Sav. Bank, 228 AD2d at 667*, quoting *Dollar Dry Dock Bank, 181 AD2d at 710*), and urges that this court should enforce the contractual waiver of an election of remedies as contained in the above cited provisions.

While the above quoted sections of the Notes, Mortgages, and Guarantees would appear to be a purported contractual agreement to permit both this action and the foreclosure action to proceed simultaneously, plaintiff may not, by contractual agreement or under the guise of contract construction, avoid the strictures of *RPAPL 1301* since to allow the simultaneous prosecution of this action and the foreclosure action would result in having two courts address the same claims and issues. Such duplication of claims and multiple litigation simultaneously addressing the same issues would contravene the legislative purpose and the policy reflected in *RPAPL 1301* (*see Central Trust Co., 85 NY2d at 772*; *Aurora Loan Servs., LLC, 88 AD3d at 930*; *NC Venture I, L.P., 49 AD3d at 515*; *Valley Sav. Bank, 228 AD2d at 667*; *Anron Air Sys., 202 AD2d at 462*; *Dollar Dry Dock Bank, 181 AD2d at 710*). [**38] As noted in *TBS Enterprises (114 AD2d at 448*), "[p]laintiff may not, under the guise of contract construction, avoid the strictures of the RPAPL, in order to seek a greater recovery in a second action than that to which it would have been entitled in foreclosure." It is noted that, in this action, plaintiff seeks a judgment against the defendant guarantor for the full amount of all unpaid principal, interest and late fees, without regard to any possible defenses that might be available to the borrower which would reduce the actual debt for which defendant can be held responsible.

Therefore, under *RPAPL 1301 (3)*, this action may not be maintained to recover a judgment on plaintiff's claims under the Guarantees, without leave of the court in which the foreclosure action was brought. Once plaintiff commenced the action to foreclose the mortgage in New York County, *RPAPL 1301 (3)* operated to bar the prosecution of this previously commenced action against defendant to obtain a money judgment for the same underlying debt. Since plaintiff has not sought leave of the New York County court in which the foreclosure action is pending to maintain this action, a stay of the prosecution of this action [**39] must be granted, pending the granting of such leave (*see RPAPL 1301 [3]*; *Anron Air Sys., 202 AD2d at 460-461* [where the Appellate Division, Second Department, pursuant to *RPAPL 1301 [3]*, stayed the prosecution of a breach of contract action until entry of judgment in a lien foreclosure action or further order of the foreclosure court]; *Greystone Bank v 15 Hoover St., LLC, 29 Misc 3d 1209[A], 2010 NY Slip Op 51762[U], *1 [Sup Ct, Nassau County 2010]* [where to address the issue of the plaintiff's election of remedies, the court stayed the plaintiff's prosecution of a deficiency judgment based upon [***17] a note, pending the completion of the foreclosure action and further order of the court]). This is true despite the fact that this action was commenced prior to the foreclosure action (*see First Fid. Bank, N.A., New Jersey v Best Petroleum, Inc., 757 F Supp 293, 296 [SD NY 1991]*; *Anron Air Sys., 202 AD2d at 462*). *RPAPL 1301(3)* requires that this court defer to the foreclosure action.[9]

> [9]  It is noted that defendant did not cross-move to dismiss this action or to remove this action for consolidation with the New York County foreclosure action.

**Conclusion**

Accordingly, plaintiff's motion, pursuant [**40] to *CPLR 3213*, for summary judgment in lieu of complaint is granted on the issue of liability only, and the action is otherwise held in abeyance, pending the granting of leave by the New York County court in the foreclosure action, pursuant to *RPAPL 1301 (3)*, to proceed with this action or for such other relief as the New York County court deems appropriate. Plaintiff's application for an inquest is denied as any judgment entered in the New York County action will be dispositive as to the amount of any judgment to be entered against defendant guarantor.

This constitutes the decision and order of the court.