# EXHIBIT 2

B 10 (Modified Form 10) (4/13)

| UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br><br>D.A.B. Group LLC | Case Number<br><br>14-12057 (SCC) |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense arising after the commencement of the case may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Orchard Hotel, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Orchard Hotel, LLC, c/o WCP Orchard Hotel, LLC          Morrison Cohen LLP<br>40 Danbury Rd. Attn: Jordan Socaransky          909 Third Ave., Attn: Joseph T. Moldovan<br>Wilton, CT 06897          New York, NY 10022-4784<br><br>Telephone No. (212) 753-8600          email: bankruptcy@morrisoncohen.com | Court Claim<br>Number:_____<br>          *(if known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>Orchard Hotel, LLC, c/o WCP Orchard Hotel, LLC<br>40 Danbury Rd.<br>Wilton, CT 06897<br><br>Telephone No. (646) 450-0065          email: jsocaransky@westportcp.com | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

| | |
|---|---|
| 1.    Amount of Claim as of Date Case Filed:          $ 28,754,942  See attached Rider.<br><br>If all or part of your claim is secured, complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑  Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges | 5.    Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount. |
| 2.    Basis for Claim: Money lent plus expenses and protective advances.  See attached Rider.<br>(See instruction #2) | ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). |
| 3.    Last four digits of any number by which creditor identifies debtor: _____<br><br>3a.  Debtor may have scheduled account as: _____  3b. Uniform Claim Identifier (Optional): _____<br>          (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commission (up to $12,475*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, which ever is earlier – 11 U.S.C. § 507(a)(4). |
| 4.    Secured Claim (See instruction #4.)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information..<br><br>Nature of property or right of setoff:  ☑ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe: Mortgages on Debtor's property<br>          Approximately<br>Value of Property: $ 33,000,000 with amount to be adduced at auction  Annual Interest Rate: 24 % ☑ Fixed or ☐ Variable<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br>if any: $28,754,942          Basis for Perfection: Filed mortgages, related documents.<br><br>Amount of Secured Claim: $28,754,942          Amount Unsecured: $          0 | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).<br><br>Amount entitled to priority: |
| 6.    Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>7.    Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)<br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENT MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | $<br><br>* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.<br><br>FOR COURT USE ONLY |
| Date:<br><br>Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Jordan Socaransky, Vice President  (Date)     Bruce Nizie, Vice President and Treasurer (Date)<br>12/10/14          12/10/14 | |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

B10 (Official Form 10) (04/13)

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B10 (Official Form 10) (04/13)

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system
(www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                    Case                                      No. 14-12057-(SCC)
                                                             Chapter 11
D.A.B. GROUP LLC


                                                              **RIDER TO**
                                                         **PROOF OF CLAIM**

                              Debtor.
------------------------------------------------------------X


1.    <u>Claimant</u>. Jordan Socaransky, whose busines s and mailing address is c/o W CP Orchard

Hotel, LLC, 40 Danbury Road, W ilton, CT 06897, is  a Vice President of WCP Or chard Hotel,

LLC ("WCP Orchard"), the sole managing m ember of Orchard Hotel, LLC ("Orch ard"). Bruce

Nuzie is a Vice Presid ent and Treasurer of  WCP Orchard. Messrs. Socaransky and Nuzie are

authorized to sign the proof of  claim. Orchard files this proof  of claim seeking am ounts owed

under (i) that certain Consolidated  Secured Prom issory Note (the "Project Loan Note") by and

between the Debtor and Brooklyn  Federal Savings Bank ("BFSB"), dated as of Nove  mber 8,

2007; and (ii) that certain Secured Building Loan  Promissory Note (the "Building L oan Note"

and together with the Project Loan Note, the   "Notes") by and between the Debtor and BFSB,

dated as of August 21, 2008. On or around June 17,   2011, BFSB assigned all it s right, title, and

interest in the Notes and any security interests related thereto to Orchard.

2.    <u>Indebtedness</u>.

**A.    THE PROJECT LOAN**

      On  or about Novem ber 8, 2007, D.A.B. Gro up, by its authorized  signatory, Isidore

Perlstein, executed the Project  Loan Note, pursuant to which   D.A.B. Group promised to pay

BFSB the principal sum of $5,500,000,   together with interest com puted from the date thereof

until the maturity date (the "Project Loan"). A true and accurate copy of the Project Loan Note is annexed hereto as Exhibit A.

The Project Loan Note had an initial maturity date of June 1, 2008, and an optional extension term to December 1, 2008. During the term of the loan, D.A.B. Group was required to pay interest only, with the outstanding principal due, in full, on the maturity date.

Under the Project Loan Note, interest was calculated at an "adjustable per annum interest rate equal to the greater of (i) 9.75% per annum or (ii) the floating Prime Rate as announced in the Wall Street Journal plus 150 basis points adjusted for each change in the Prime Rate."

Section 3.1 of the Project Loan Note provides that "the failure to make any payment as and when required under this Note (after a ten day grace period, except that there shall be no grace period for the payment due on the Maturity Date) . . . shall constitute an 'Event of Default' under this Note."

Section 3.4(b) of the Project Loan Note provides that "from and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Holder, interest shall accrue on the outstanding Principal Sum at a rate equal to twenty-four percent (24%) per annum (the 'Default Rate')."

D.A.B. Group agreed to pay all costs and expenses incurred by the holder in collecting under the Project Loan Note or in protecting or realizing on the loan collateral.

Section 3.2 of the Project Loan Note states that upon an Event of Default, the holder –

may pursue all rights and remedies available hereunder or under the Mortgage or any of the Loan Documents. Holder's rights, remedies and powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property or any guarantor of the indebtedness evidenced hereby or any other collateral

security given at any time to secure the payment hereof, all at the sole discretion of Holder.

As security for the payment of the Project Loan Note, D.A.B. Group, by its authorized signatory, Isidore Perlstein, executed the Mortgage Consolidation, Extension, Modification and Security Agreement dated as of November 8, 2007 (the "Project Loan Mortgage") in the sum of $5,500,000.00, whereby D.A.B. Group mortgaged to BFSB the Mortgaged Property, as defined in Schedule A to the Project Loan Mortgage.

A true and accurate copy of the Project Loan Mortgage is annexed hereto as Exhibit B, including the legal description of the mortgaged premises, which is attached thereto as Schedule A.

The Project Loan Mortgage was recorded in the Register's Office on December 3, 2007, in CRFN 2007000596685, and the applicable mortgage recording tax and recording fee were duly paid at the time of the recording.

Pursuant to Section 21(a) of the Project Loan Mortgage, D.A.B. Group's failure to pay any portion of the Debt when due, including "the failure to repay the Debt on or before the Maturity Date" is an Event of Default.

In addition, pursuant to Section 21(l) of the Project Loan Mortgage, a continuing default under the Project Loan Note constitutes an Event of Default under the Project Loan Mortgage.

Pursuant to Section 23 of the Project Loan Mortgage, the Mortgagee is entitled, but not obligated, to cure any Events of Default or take other action to protect its interest in the Property, and any costs and expenses incurred thereby shall be added to D.A.B. Group's indebtedness and accrue interest at the Default Rate.

#5454710 v7 \022022 \0004

On or about August 21, 2008, D.A.B. Group a nd BFSB executed a L oan Modification Agreement, which, among other changes, extended the maturity date of the Project Loan Note to September 1, 2009, with three optional six-m onth extension terms to March 1, 2011. A true and accurate copy of the Loan Modification Agreement is annexed hereto as Exhibit C.

Pursuant to Section 3 of the Loan Modif ication Agreement, the interest rate set f orth in the Project Loan Note was m odified to be "a per annum interest rate equa l to the greater of (i) 7.75% per annum or (ii) the Floating Prim e Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate."

Pursuant to Section 8 of the Loan Modifi cation Agreement, D.A.B. Group represented and warranted, among other things, that

it had no claims against BFSB, [Section 8(b)]

the Project Loan Mortgage was "a valid first lien on the Property," [Section 8(c)]

the "Borrower has no defenses to, or offs ets against, any of its obligations under the Note, the Mortgage or under the Loan Documents," [Section 8(d)] and

BFSB had satisfied all of its obligations     under the Pro ject Loan Documents. [Section 8(e)]

On or about August 26, 2010, D.A.B. Gro     up executed an Affidavit and Estoppel Certificate (the "Estoppel Certificate"). A true and correct copy of the Estoppel Certificate is annexed hereto as Exhibit D.

In the Estoppel Certificate, D.A.B. Group represented and warranted, among other things, that –

it had no claims against BFSB,

the Project Loan and Building Loan Mortga ges were "valid first and second liens, respectively, on the Property,"

#5454710 v7 \022022 \0004

4

the "Borrower and Ben Zhavian have no defenses to, or offse ts against, any of its obligations under the Note, the Mortga ge, the Guarantee or under the Loan Documents," and

BFSB had satisfied all of its obligations under the Loan Documents.

The Project Loan Note m atured on March 1, 2011. D.A.B. Group failed to repay any outstanding principal or other amounts due.

By letter dated March 23, 2011, through its c ounsel Kriss & Feuerstein LLP, BFSB advised D.A.B. Group that "the Notes . . . secu red by the Mortgages m atured by their respective terms on March 1, 2011." A true and correct copy of the March 23 letter is annexed hereto as Exhibit E.

## B.    THE BUILDING LOAN

On or about August 21, 2008, D.A.B. Group, by its authorized m ember, Ben Zhavi an, executed the Building Loan Note, pursuant to wh ich D.A.B. Group pr omised to pay BFSB the principal sum of up to $19,050,000, as disbursed pursuant to a Building Loan Agreem ent between D.A.B. Group and BFSB (the "Building Loan Agreement"), with intere st computed thereon from the date thereof until the m aturity date. A tru e and accurate copy of the Build ing Loan Note is annexed hereto as Exhibit F.

A true and accurate co py of the Building Lo an Agreement, duly filed under Index No. 268 at the Office of the New Yor k County Clerk on Septem ber 5, 2008, is annexed hereto as Exhibit G.

The Building Loan Note had an initial m aturity date of Se ptember 1, 2009, and three optional six-month extension terms to March 1, 2011. During the term of the loan, D.A.B. Group was required to p ay interest only, with the o utstanding disbursed principal due, in full, at maturity.

#5454710 v7 \022022 \0004

5

Under the Building Loan Note, interest was calculated during the initial term at "a per annum interest rate equal to the greater of (i) 7.75% per annum or (ii) the Floating Prime Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate." During each extension term , if any, interest was calculated at "a floating rate of interest equal to the greater of (i) 7.75% per annum  or (ii) the Floating Prime Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate."

Section 4.1 of the Building Loan N ote provides that "the failure to m ake any payment as and when required under this Note (after a ten   day grace p eriod, except that there shall be no grace period for the payment due on the Maturity Date) . . . shall constitute an 'Event of Default' under this Note."

Section 4.4(b) of the Building Loan Note provi des: "From and after an Event of Default, interest shall accrue on the outstand ing Principal Sum plus accrued and unpaid interest at a rate equal to twenty-four percent (24%) per annum (the 'Default Rate')."

D.A.B. Group agreed  to pay all co sts and e xpenses incurred by the  holder in collecting under the Building Loan Note or in protecting or realizing on the loan collateral.

Section 4.2(c) of the Building  Loan Note states that upon an  Event of Default, the note holder –

> may pursue all rights and rem edies available hereunder or under the Mortgage or any of the Loan Documents. Holder's rights, remedies and powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property . . . or any guarantor of th e indebtedness evidenced hereby or any other collateral security given at any tim e to secure the  payment hereof, all at the sole discretion of Holder.

As collateral security for th e payment of the Building Loan Note, D.A.B. Group, by its authorized member Ben Zhavian, executed the Building Mortgage and Security Agreement dated

#5454710 v7 \022022 \0004

6

August 21, 2008 from D.A.B. Group, as Mortgagor, to BFSB, as Mortgagee (the "Building Loan Mortgage" and together with th e Project Loan Mortgage, the "Mortg ages") whereby D.A.B. Group granted a second m ortgage on the Mortga ged Property, as defined in the Building Loan Mortgage.

A true and accurate copy of the Building Loan Mortgage is annexed hereto as Exhibit H.

The Building Loan Mortgage was recorded  in the Register's Office on Septem ber 12, 2008, in CRFN 2008000362276, and the applicable m ortgage recording tax and recording fee were duly paid at the tim e of the recording.  The Mortgaged Prem ises are m ore particularly described in Exhibit A of the Building Loan Mortgage.

Pursuant to Section 73 of the Lien Law,  a Notice of Lending was  recorded in the New York County Clerk's Office on Se ptember 12, 2008, in CRFN 2008000362278. A true and accurate copy of the Notice of Lending is annexed hereto as Exhibit I.

Pursuant to Section 2.01(a)(i) of the Building Loan Mortga ge, D.A.B. Group's failure to pay "the principal and interest due under the  Note at maturity, whether by acceleration or otherwise" constitutes an Event of Default.

The occurrence and continuation of a default under the Building Loan Note constitutes an Event of Default under Section 2.01 of the Building Loan Mortgage.

Pursuant to Section 2.01(III) of  the Building Loan Mortgage, the Mortgagee is entitled, but not obligated, to cure any Even ts of Default or take other actio n to protect its interest in the Property, and any costs and expenses incurred  thereby shall be added to D.A.B. Group's indebtedness.

#5454710 v7 \022022 \0004

7

On or about August 26, 2010, D.A.B. Group ex ecuted the Estoppel Ce rtificate (Exhibit D).

In the Estoppel Certificate, D.A.B. Group represented and warranted, among other things, that –

it had no claims against BFSB,

the Project Loan and Building Loan Mortga ges were "valid first and second liens, respectively, on the Property,"

the "Borrower and Ben Zhavian have no defenses to, or offse ts against, any of its obligations under the Note, the Mortga ge, the Guarantee or under the Loan Documents," and

BFSB had satisfied all of its obligations under the Loan Documents.

The Building Loan Not e matured on March 1, 2011. D.A.B. Group failed to repay any outstanding principal or other amounts due.

By letter dated March 23, 2011, through its c ounsel Kriss & Feuerstein LLP, BFSB advised D.A.B. Group that "the Notes . . . secu red by the Mortgages matured by their respective terms on March 1, 2011." (Exhibit E).

## C.    PROTECTIVE ADVANCES AND OTHER CHARGES

From and after the m aturity date on the No tes, Orchard was require d to make numerous protective advances an d incurred significan t legal fees in protecting a nd enforcing its rights under the Notes and Mortgages.

### D.    AMOUNTS OWED AS OF THE PETITION DATE

As of the Petition Date, Debtor owes to Orchard the following amounts on account of the

Notes:

| Item | Principal | Interest | Total |
|---|---|---|---|
| Project Loan | 5,500,000 | 4,513,667 | 10,013,667 |
| Building Loan | 7,960,973 | 6,533,305 | 14,494,278 |
| Protective advances | 800,406 | 363,061 | 1,163,467 |
| Receiver expenses | 111,405 | 56,274 | 167,679 |
| Legal expenses | 2,313,610 | 602,241 | 2,915,851 |
| Total due | 16,686,394 | 12,068,548 | 28,754,942 |

Orchard reserves the right to supplem    ent this proof of c    laim to include additional

amounts that m ay have been incurred prior to the    Petition Date or in the event that Orchard is

oversecured by virtue of the valu    e of its collateral,    interest and  other charges incurring post-

petition.

3.    Collateral. The indebtedness of the Debtor to Orchard is secured by the Mortgages.

4.    Supporting Documents. The writin gs on which this claim    is founded include, among

other things, the following documents:

- the Project Loan Note and the Project Loan Mortgage;

- the Building Loan Note and the Building Loan Mortgage;

- all other docum ents, including letters, invoices, and  statements, upon which the

Mortgagee's claim is based;

- Certain of the documents are annexed he reto, with the balance of correspondence
and invoices being too volum inous to be attached. Those documents are available
for inspection upon request.

#5454710 v7 \022022 \0004

5.     <u>Open Account</u>. The claim was not founded on an open account.

6.     <u>Judgments</u>. A judgment has not been rendered on the claim.

7.     <u>Credits and Set-Offs</u>. The amount of all payments on the claim have been credited and deducted for the purpose of making this proof of claim. The claim is not subject to any setoffs, valid defenses or counterclaims by the Debtor.

8.     <u>Security Interest and Priority Status</u>. The claim is filed as a secured claim. This is not a priority claim.

9.     <u>Execution and Waiver</u>. The execution and filing of this proof of claim is not and shall not be deemed: (a) a waiver or release of the Mortgagee's rights against any other entity or person liable for all or any part of the claim asserted herein; (b) consent by Mortgagee to the jurisdiction of this Court with respect to any proceeding commenced in this case against or otherwise involving Mortgagee; (c) a waiver of the right to withdraw the reference with respect to the subject matter of the claim, any objection or other proceedings commenced with respect thereto or any other proceedings commenced in this case against or otherwise involving Mortgagee; (d) a waiver of any right to the subordination, in favor of Mortgagee, of indebtedness or liens held by any other creditors of the Debtor; or (e) an election of remedies which waives or otherwise affects any other remedy. Mortgagee, respectfully, expressly reserves its right to file any separate or additional proof of claim with respect to the claim set forth herein or otherwise (which proof of claim, if so filed, shall not be deemed to supersede this proof of claim, unless otherwise expressly stated therein), to amend or supplement this proof of claim in any respect, including with respect to the filing of additional or amended claims for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of

#5454710 v7 \022022 \0004

claim in respect of additional claims or for any other reason. Orchard reserves the right to file additional proofs of claim or proofs of administrative expense on account of amounts advanced under and in connection with the So Ordered Stipulation Maintaining the Receiver On a Limited Basis entered on October 1, 2014, Dkt. No. 39.

10.    <u>Notices</u>. All notices with respect to this proof of claim should be sent to:

Notices. All notices with respect to this proof of claim should be sent to:
Orchard Hotel, LLC
c/o WCP Orchard, LLC
40 Danbury Road
Wilton, CT 06897
Attn: Jordan Socaransky and Bruce Nuzie

and

Maverick Real Estate Partners
14 East 38th Street, 12th Floor,
New York, NY 10016
Attn: David Aviram

and

Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
Attn:   Joseph T. Moldovan, Esq. and Robert Dakis, Esq.

# EXHIBIT A

Loan No.  18-010521-3

# CONSOLIDATED SECURED PROMISSORY NOTE

### in the principal amount of

### $5,500,000.00

### BY

### D.A.B. Group LLC, a
### New York limited liability company

### TO

### BROOKLYN FEDERAL SAVINGS BANK

### November 8, 2007

1

## CONSOLIDATED SECURED PROMISSORY NOTE

$5,500,000.00

November 8, 2007
New York, New York

FOR VALUE RECEIVED, **D.A.B. GROUP LLC**, a New York limited liability company having an address at 154 Acres Road, Monroe, New York 10950 ("**Maker**"), promises to pay to the order of **BROOKLYN FEDERAL SAVINGS BANK**, having an office at 81 Court Street, Brooklyn, NY 11201 (hereinafter referred to, together with each subsequent holder(s) hereof, as "**Holder**"), at the above address, or at such other place as Holder may designate in writing, the principal sum of **FIVE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($5,500,000.00)** (the "**Principal Sum**"), with interest thereon computed from the date hereof to the Maturity Date (as hereinafter defined) at the Interest Rate (as hereinafter defined).

This Consolidated Secured Promissory Note (this "**Note**") is secured by, among other things, that certain Mortgage Consolidation, Extension, Modification and Security Agreement of even date herewith (the "**Mortgage**"), granted by Maker pursuant to which Maker has mortgaged to Holder its property located in the City of New York, County of New York, State of New York known by the street address of 139 and 141 Orchard Street, New York, New York 10002 as further described in the Mortgage (the "**Property**") and by certain other documents executed by Maker and/or others as additional security for the repayment of the sums due under this Note and the Mortgage (the "**Loan Documents**"). Holder is the holder of the notes listed on <u>Schedule A</u> annexed hereto and made a part hereof (the "**Existing Notes**"). The total outstanding principal indebtedness on the date hereof evidenced by the Existing Notes is $5,500,000.00 and Maker and Holder desire to combine, consolidate and restate the terms and conditions of the Existing Notes in their entirety in the manner hereinafter set forth, and to replace the Existing Notes with this Note. Accordingly, by Maker's execution and delivery of this Note and Holder's acceptance of such delivery from Maker, this Note is deemed to consolidate and replace the Existing Notes, and the Existing Notes are restated in accordance with the terms of this Note.

1.    **Payments**. The Principal Sum and interest thereon is and shall be payable as follows:

Maker shall pay to Holder on the date hereof the sum of $34,260.42 representing interest only for the period from the date hereof until November 30, 2007. Thereafter, during the Initial Term (as hereinafter defined) Maker shall pay to Holder a payment of interest only on the unpaid Principal Sum, as calculated by Holder, on the first day of January, 2008, and on the first day of each calendar month thereafter up to and including the Initial Maturity Date (as hereinafter defined). During the Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of July, 2008, and on the first day of each calendar month thereafter up to and including

2

the first day of December, 2008.

On the Maturity Date, whether by acceleration, prepayment, or otherwise, the outstanding balance of the Principal Sum, together with accrued and unpaid interest and any other amounts due and payable to the Holder hereunder, under the Mortgage (as hereinafter defined) or the Loan Documents (as hereinafter defined), shall be due and payable. Interest shall for all purposes hereunder be calculated on the basis of a 360-day year. Interest will be calculated on the actual number of days the Principal Sum is outstanding between receipt of payments. The amount of the last payment, whether by prepayment or otherwise, may vary depending on the amount of interest actually accrued between each payment.

2.    **Prepayment**.

Provided no Event of Default (as hereinafter defined), or an event which, with or without the giving of notice and/or the passage of time, or both, would constitute an Event of Default, has occurred, the outstanding Principal Sum of this Note may be prepaid in whole, but not in part, upon not less than thirty (30) days prior written notice to the Holder specifying the date on which prepayment is to be made (the "**Prepayment Date**") and upon the payment of:

A.    all accrued interest to and including the Prepayment Date; and

B.    all other sums due under this Note, the Mortgage and all the Loan Documents.

3.    **Default**.

3.1    **Events of Default**. The failure to make any payment as and when required under this Note (after a ten day grace period, except that there shall be no grace period for the payment due on the Maturity Date) or the occurrence of any Event of Default (as such term is defined in the Mortgage or any of the Loan Documents) shall constitute an "**Event of Default**" under this Note.

3.2    **Remedies**. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as hereinafter defined), (b) Holder may, at its option, declare and demand this Note and sums due under the Mortgage and Loan Documents immediately due and payable and (c) Holder may pursue all rights and remedies available hereunder or under the Mortgage or any of the Loan Documents. Holder's rights, remedies and powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property (as hereinafter defined) or any guarantor of the indebtedness evidenced hereby or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to declare and demand this Note immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

3

3.3    **Costs of Collection.**  Maker agrees to pay all costs and expenses of collection incurred by Holder, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Holder of any of its rights or remedies hereunder or under the Mortgage or any of the Loan Documents or the protection of, or realization of, collateral, or in connection with any of Holder's collection efforts, whether or not any action or proceeding on this Note, the Mortgage or any of the Loan Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Loan Documents.

3.4    **Late Charges and Default Rate.**

(a)    If any payment is not paid within ten (10) days of the date on which it is due, Maker shall pay to Holder upon demand an amount equal to the lesser of five percent (5%) of such unpaid payment or the maximum amount permitted by applicable law in order to defray a portion of the expenses incurred by Holder in handling and processing such delinquent payment and to compensate Holder for the loss of the use of such delinquent payment, and such amount shall be deemed to be secured by the Mortgage.

(b)    From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Holder, interest shall accrue on the outstanding Principal Sum at a rate equal to twenty-four percent (24%) per annum (the "Default Rate"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidenced by this Note. The Default rate shall be in effect at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. In addition, Maker shall pay to Holder the sum of $100.00 for any payment which is returned for any reason by Maker's bank unpaid.

4.    **Governing Law; Severability.**  This Note shall be governed, construed and enforced in accordance with the internal laws of the State of New York (without giving effect to any principles of conflicts of law). The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

5.    **Waivers.**  Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Loan Documents, and in connection with any suit, action or proceeding brought by Holder on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be

4

asserted in a suit, action or proceeding brought by Holder on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

6.    **Application of Payments**. Each and every payment made by Maker to Holder in accordance with the terms of the Mortgage and the Loan Documents and all other proceeds received by Holder with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) first, if applicable in accordance with the terms of this Note, to interest at the Default Rate or other premiums and other sums payable hereunder or under the Mortgage or any of the Loan Documents (other than pursuant to subdivisions (b) or (c) of this Section 6), (b) second, to all interest at the applicable Interest Rate which shall be due and payable under this Note, and (c) third, in reduction of the outstanding balance of the Principal Sum, or in such other order and priority as determined by Holder in its sole discretion. To the extent that Maker makes a payment or Holder receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Holder.

7.    **Intentionally Deleted**.

8.    **Miscellaneous**.

8.1.    **Amendments**. This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by Holder.

8.2.    **Usury**. It is the intention of Maker and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Holder, or collected by Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in the Mortgage or in any other agreement given to secure the loan obligations or in any other document evidencing,

5

securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the "**Maximum Amount**"). If under any circumstances whatsoever fulfillment of any provision hereof or the Mortgage, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then *ipso facto*, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the principal amount owing under this Note and shall be so applied to principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to Maker or to any other person making such payment on Maker's behalf.

8.3    **Captions**. The captions of the Sections of this Note are for convenience of reference only and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

8.4.    **Notices**. Notices shall be given under this Note in conformity with the terms and conditions of the Mortgage.

8.5    **Joint and Several Obligations**. The obligations of Maker under this Note shall be joint and several obligations of Maker and of each Maker, if more than one, and of each Maker's heirs, personal representatives, successors and assigns. The filing of a petition (the "**Petition**") under Chapter 11 of the United States Code (the "**Bankruptcy Code**"), whether voluntary or involuntary, shall not stay or in any manner abridge or interfere with the right of Holder to proceed against any Maker not subject to such Petition.

8.6    **Time of Essence, Authority and Business, Commercial or Investment Purposes**. Time is of the essence of this Note and the performance of each of the covenants and agreements on Maker's part to be performed hereunder. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note, the Mortgage and the Loan Documents and that this Note, the Mortgage and the Loan Documents constitute valid and binding obligations of Maker. Maker represents that the Loan evidenced by this Note is being made solely for business, commercial or investment purposes.

8.7    **No Waiver by Holder**. Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder (including the acceptance of past due payments) shall be construed as a waiver by Holder of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note, the Mortgage or under any other security document nor shall the exercise of any single or partial

6

exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

In the event Holder shall advance or cause to be advanced any amounts to or for the benefit of Maker, on account of insurance premiums, real estate or other taxes, assessments or governmental charges or on account of any other matter which, in the sole discretion of Holder is necessary or desirable to sustain the lien of the Mortgage or protect any collateral security held by Holder or the Maker's assets, including, but not limited to, payments to avoid the filing of any lien on any of Maker's assets and/or payments to discharge any such lien, the same shall be deemed a part of the Principal Sum and shall bear interest at the applicable Interest Rate or the Default Rate, as the case may be, until paid in full.

8.8    **Obligations**.  Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker hereunder or the obligations of any other person or party relating to this Note or the obligations of Maker hereunder. This Note sets forth the entire agreement and understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crossclaim of any nature whatsoever with respect hereto or the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Principal Sum, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof, or to enforce, foreclose and realize upon the liens created by the Mortgage and any other security document.

9.    **Participations**.  Holder, at any time and without the consent of Maker, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the loan obligations, this Note, the Mortgage, the Loan Documents any guaranties given in connection with the loan obligations and any collateral given to secure the loan obligations.

10.    **Venue; Service of Process**.  Maker consents to the personal jurisdiction over Maker by any federal or state court situated in the State of New York and consents to the laying of venue in any jurisdiction over Maker by any federal or state court situated in the State of New York. Maker irrevocably appoints Ben Zhavian having an address at 154 Orchard Street, New York, New York 10002, as Maker's agent for receipt of service of process on Maker's behalf in connection with any suit, writ, attachment, execution or discovery of supplementary proceedings in connection with the enforcement of this Note (collectively, an "Action"). Service in any Action and any notice of sale or other notices required under Article 14 of the New York Real

7

Property Actions and Proceedings Law shall be effected by any means permitted by the court in which any Action is filed, with a copy sent by certified mail, return receipt requested, to Maker at its address as hereinbefore stated or at such other address as shall be designated from time to time by Maker. Maker or its agent for receipt of process may designate a change of address or may substitute another agent for the service of process who shall be acceptable to Holder in its sole but reasonable discretion, by written notice to Holder by certified mail, return receipt requested, at least ten (10) days before such change of address is to become effective. MAKER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH.

11.    **Jury Trial Waiver**. MAKER, AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED.    THIS    WAIVER    IS    KNOWINGLY,    INTENTIONALLY    AND VOLUNTARILY    MADE    BY    MAKER    AND    BY    HOLDER,    AND    MAKER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MAKER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. MAKER AND HOLDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

12.    **Extension Option**. Provided that the following conditions (i) through (viii) are satisfied, Maker may extend (the "**Extension**") the Initial Maturity Date to the Extended Maturity Date (as hereinafter defined): (i) there shall exist no Event of Default under this Note, the Mortgage or any other Loan Document or event which, with or without the giving of notice or the passage of time, or both, would constitute an Event of Default under this Note, the Mortgage or any other Loan Document when the Extension Notice (as hereinafter defined) is given or on the Initial Maturity Date, (ii) the loan to value ratio (as determined by Holder in its sole and absolute discretion) for the Property is no greater than 50%, (iii) the minimum debt service coverage ratio (as determined by Holder in its sole and absolute discretion) for the 6 calendar months immediately preceding the Initial Maturity Date is at least 1.20x, (iv) Maker shall have elected to extend the Initial Maturity Date by written notice (the "**Extension Notice**") to Holder delivered not less than thirty (30) days or greater than sixty (60) days prior to the Initial Maturity Date, (v) the existing title insurance policy in favor of Holder shall have been updated and/or modified, to insure Holder's continued security interest under the Mortgage as a first mortgage lien notwithstanding any modification to the terms of this Note or the Mortgage

8

and (vi) Maker shall pay all costs and expenses of Holder (including reasonable attorney's fees) in connection with the Extension, (vii) Maker shall pay to Holder an amount equal to Holder's reasonable estimate of the interest to accrue and be payable over the Extension Term to be held in the Interest Reserve (viii) Maker pays to Holder an extension fee in an amount equal to $27,500 on or prior to effectuating the Extension.

    13.   **Definitions**.  As used in this Note, the following terms shall have the meanings ascribed to them:

    "**Extended Maturity Date**" means December 1, 2008.

    "**Extension**" has the meaning given in <u>Section 12</u> hereof.

    "**Extension Term**" means that period, if any, between the Initial Maturity Date and the Extended Maturity Date.

    "**Extension Term Monthly Payment Amount**" means a monthly payment of interest only, as calculated by Holder.

    "**Initial Term**" means that period between the date hereof and the Initial Maturity Date.

    "**Initial Maturity Date**" means June 1, 2008.

    "**Interest Rate**" means (a) during the Initial Term, an adjustable per annum interest rate equal to the greater of (i) 9.75% per annum or (ii) the floating Prime Rate as announced in the Wall Street Journal plus 150 basis points adjusted for each change in the Prime Rate, (b) during the Extension Term, if any, a per annum interest rate equal to the greater of (i) 9.75% per annum or (ii) the floating Prime Rate as announced in the Wall Street Journal plus 150 basis points adjusted for each change in the Prime Rate.

    "**Loan Documents**" means collectively, this Note, the Mortgage and any other documents executed by Maker, any guarantor and/or others in favor of Holder which further evidences and/or secures the indebtedness evidenced by this Note.

    "**Maturity Date**" means the Initial Maturity Date or, if the Extension shall have been properly effected pursuant to and in strict accordance with the terms of <u>Section 12</u> hereof, the Extended Maturity Date.

    "**Mortgage**" means that certain Mortgage Consolidation, Extension, Modification and Security Agreement made by Maker, as mortgagor, to Holder, as mortgagee, dated even date herewith and recorded or to be recorded against the Property as a first priority mortgage lien.

    "**Note**" means this Consolidated Secured Promissory Note.

    "**Property**" collectively means the land and improvements located at 139 and 141 Orchard Street, New York, New York 10002.

9

IN WITNESS WHEREOF, Maker has caused this Note to be executed by its duly authorized representative as of the day and year first above written.

D.A.B. Group LLC, a
New York limited liability company

By: _____
Name: Isidore Perlstein
Title:   Authorized Signatory

STATE OF NEW YORK        )
                                          : ss.:
COUNTY OF NEW YORK  )

On the 8th day of November, in the year 2007, before me, the undersigned personally appeared Isidore Perlstein, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

ANDREW B. WINSTON
Notary Public, State of New York
No. 01WI4811387
Qualified in Nassau County
Commission Expires Feb. 28, 2011

10

**SCHEDULE A**

**EXISTING NOTES**

1.    Note dated March 29, 1999 made by D.A.B. GROUP LLC in favor of CFS BANK in the principal sum of $825,000.00.

2.    Note dated May 18, 2000 made by D.A.B. GROUP LLC in favor of CFS in the principal sum of $575,000.00.

3.    Consolidated Note dated May 18, 2000 made by D.A.B. GROUP LLC in favor of CFS BANK to form a single lien of $1,400,000.00.

4.    Note dated July 10, 2001 made by D.A.B GROUP LLC in favor of NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK in the principal sum of $366,288.22.

5.    Consolidated Note made by D.A.B. GROUP LLC in favor of NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK to form a single lien of $1,750,000.00.

6.    Note dated September 4, 2002 made by D.A.B GROUP LLC in favor of THE DIME SAVINGS BANK OF WILLIAMSBURGH in the principal sum of $972,019.84.

7.    Consolidated Note dated September 4, 2002 made by D.A.B. GROUP LLC in favor of THE DIME SAVINGS BANK OF WILLIAMSBURGH to form a single lien of $2,700,000.00.

8.    Note dated October 14, 2004 made by D.A.B GROUP LLC in favor of CITIBANK, N.A. in the principal sum of $764,345.43.

9.    Consolidated Note dated October 14, 2004 made by D.A.B. GROUP LLC in favor of CITIBANK, N.A. to form a single lien of $3,400,000.00.

10.    Gap Note dated as of November 8, 2007 made by D.A.B GROUP LLC in favor of BROOKLYN FEDERAL SAVINGS BANK in the principal sum of $2,226,695.86.

11.    Consolidated Note dated as of November 8, 2007 made by D.A.B. GROUP LLC in favor of BROOKLYN FEDERAL SAVINGS BANK to form a single lien in the amount of $5,500,000.00.

11

# EXHIBIT B

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007112800233003001EE764

### RECORDING AND ENDORSEMENT COVER PAGE
**PAGE 1 OF 50**

| | | |
|---|---|---|
| **Document ID:** 2007112800233003 | Document Date: 11-08-2007 | Preparation Date: 11-28-2007 |
| Document Type: AGREEMENT | | |
| Document Page Count: 48 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| METROPOLITAN ABSTRACT CORP.(PICK-UP)REALTY SKYLINE AGENT OF STEWART TITLE (NY344007) ONE OLD COUNTRY ROAD CARLE PLACE, NY 11514 516-741-5474 | KRISS & FEUERSTEIN LLP ATTN: DAVID S. KRISS, ESQ. 360 LEXINGTON AVE., SUITE 1200 NEW YORK, NY 10017 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 415 | 66 | Entire Lot | | 141 ORCHARD STREET |
| | **Property Type:** OTHER | | | | |
| **Borough** | **Block** | **Lot** | | **Unit** | **Address** |
| MANHATTAN | 415 | 67 | Entire Lot | | 139 ORCHARD STREET |
| | **Property Type:** OTHER | | | | |

### CROSS REFERENCE DATA

MANHATTAN Year: 1999  Reel: 2859  Page: 85
  x  Additional Cross References on Continuation Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| D.A.B. GROUP LLC 154 ACRES ROAD MONROE, NY 10950 | BROOKLYN FEDERAL SAVINGS BANK 81 COURT STREET BROOKLYN, NY 11201 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 5,500,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 280.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed     12-03-2007 21:06
City Register File No.(CRFN):
**2007000596685**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2007112800233003001CE5E4

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 50 |
|---|---|---|
| **Document ID:** 2007112800233003 | **Document Date:** 11-08-2007 | **Preparation Date:** 11-28-2007 |
| **Document Type:** AGREEMENT | | |

**CROSS REFERENCE DATA**

| | | | | | | |
|---|---|---|---|---|---|---|
| MANHATTAN | **Year:** 2000 | **Reel:** 3160 | **Page:** 604 |
| MANHATTAN | **Year:** 2000 | **Reel:** 3160 | **Page:** 1794 |
| MANHATTAN | **Year:** 2001 | **Reel:** 3346 | **Page:** 1193 |
| MANHATTAN | **Year:** 2001 | **Reel:** 3346 | **Page:** 1207 |
| MANHATTAN | **Year:** 2002 | **Reel:** 3655 | **Page:** 1944 |
| MANHATTAN | **Year:** 2002 | **Reel:** 3655 | **Page:** 1949 |
| MANHATTAN | **Year:** 2002 | **Reel:** 3655 | **Page:** 1962 |

**CRFN:** 2005000009666
**CRFN:** 2005000009667
**CRFN:** 2005000009668
**Document ID:** 2007112800233001
**Document ID:** 2007112800233002

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 32 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 4 of 55

Loan No. 18-010521-3

## MORTGAGE CONSOLIDATION, EXTENSION, MODIFICATION AND SECURITY AGREEMENT

**D.A.B. Group LLC, a
New York limited liability company
(Mortgagor)**

to

## BROOKLYN FEDERAL SAVINGS BANK
**(Mortgagee)**

Dated as of November 8, 2007

Property Address:
**139 and 141 Orchard Street
New York, New York 10002**

№434007
METROPOLITAN ABSTRACT
CORPORATION
One Old Country Road
Carle Place, New York 11514

| | |
|---|---|
| **Block:** | **415** |
| **Lots:** | **66 and 67** |
| **County:** | **New York** |
| **State:** | **New York** |

### DOCUMENT PREPARED BY AND
### WHEN RECORDED, RETURN TO:

Kriss & Feuerstein LLP
360 Lexington Ave, Suite 1200
New York, NY 10017
Attn: David S. Kriss, Esq.

**THIS MORTGAGE DOES NOT ENCUMBER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS HAVING THEIR OWN SEPARATE COOKING FACILITIES.**

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 33 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 5 of 55

**THIS MORTGAGE CONSOLIDATION, EXTENSION, MODIFICATION AND SECURITY AGREEMENT** (this "**Mortgage**"), made as of the 8th day of November, 2007 from **D.A.B. GROUP LLC**, a New York limited liability company having an address of 154 Acres Road, Monroe, New York 10950 (the "**Mortgagor**"), to **BROOKLYN FEDERAL SAVINGS BANK**, having an address at 81 Court Street, Brooklyn, New York 11201 (the "**Mortgagee**").

## WITNESSETH:

**WHEREAS**, the Mortgagor is now the owner in fee simple of the Mortgaged Property (as hereinafter defined); and

**WHEREAS**, the Mortgagee is the owner and holder of the mortgages (the "**Existing Mortgages**") as set forth on the attached Schedule B and the notes and bonds secured thereby (the "**Existing Notes**"); and

**WHEREAS**, the Mortgagor is now indebted to the Mortgagee in the principal sum of FIVE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($5,500,000.00), in lawful money of the United States of America (the "**Debt**"), as aforesaid, with interest from the date hereof secured by the Existing Mortgages, the terms of which are evidenced in that certain Consolidated Secured Promissory Note of even date herewith (as the same may hereafter from time to time be extended, amended, renewed, replaced, supplemented, consolidated and/or restated, and any note(s) issued in exchange therefor or in substitution thereof, collectively, the "**Note**"); and

**WHEREAS**, the Mortgagor and the Mortgagee desire to modify the terms of the mortgages hereinbefore described so as to consolidate the liens of each of the Existing Mortgages so that the same shall together constitute a valid single first mortgage lien covering the Mortgaged Property and securing (a) payment of the Debt with interest as set forth in the Note and (b) performance of Mortgagor's obligations under the Loan Documents (as hereinafter defined) (collectively, the "**Obligations**"); and

**WHEREAS**, the Mortgagor and the Mortgagee further desire to restate the terms and conditions of the Existing Mortgages in their entirety in the manner hereinafter set forth. On the Maturity Date (as defined in the Note), whether by acceleration, prepayment, or otherwise, the outstanding balance of the Principal Sum (as defined in the Note), together with accrued and unpaid interest and any other amounts due and payable to Mortgagee hereunder, under the Note or the Loan Documents (as hereinafter defined), shall be paid in full.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements of the parties and the sum of Ten and 00/100 ($10.00) Dollars to each party by the other in hand paid, the receipt and sufficiency of which are hereby acknowledged, and for the purposes of carrying out the intentions as expressed, the Mortgagor and the Mortgagee hereby covenant and agree as follows:

- 1 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 34 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 6 of 55

1.    The liens of the Existing Mortgages are hereby modified and consolidated so that the same shall and now do constitute a valid single first mortgage lien against the Mortgaged Property securing the principal sum of $5,500,000.00 with interest and all other sums due under the Note, hereunder and under the other Loan Documents (as hereinafter defined). All of the terms and conditions set forth in the Existing Mortgages as consolidated by this Mortgage are hereby modified and replaced by the terms and conditions set forth in this Mortgage and such Existing Mortgages and liens created thereby are consolidated and coordinated so that together they shall hereafter constitute in law but one mortgage and a single lien against the Mortgaged Property securing the Debt.

2.    Mortgagor hereby warrants and confirms to Mortgagee that Mortgagor has mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned, and hypothecated and by these presents does hereby mortgage, deed, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee the real property described in Schedule A attached hereto (the "**Premises**") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "**Improvements**");

**TOGETHER WITH**: all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the "**Mortgaged Property**"):

(a)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)    all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the

- 2 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 35 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 7 of 55

Premises and the Improvements (hereinafter collectively referred to as the **"Equipment"**), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the **"Uniform Commercial Code"**), superior in lien to the lien of this Mortgage;

(c)    all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements;

(d)    all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the **"Leases"**) and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "Rents"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)    all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f)    all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the **"Intangibles"**); and

- 3 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 36 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 8 of 55

(g)    all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

**TO HAVE AND TO HOLD** the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

AND Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

## GENERAL PROVISIONS

1.    **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.** Mortgagor shall pay all monthly installments of interest and principal as provided for in the Note and shall repay the Debt on or before the Maturity Date (as defined in the Note) at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents including, without limitation,  the Note and this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note and this Mortgage (the **"Loan Documents"**) are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. The Note is evidence of that certain loan made to the Mortgagor by the Mortgagee (the **"Loan"**).

2.    **Warranty of Title.** Mortgagor warrants that Mortgagor has good, marketable and insurable title to the Mortgaged Property and has the full power, authority and right to execute, deliver and perform its obligations under this Mortgage and to encumber, mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage and that this Mortgage is and will remain a valid and enforceable first lien on and security interest in the Mortgaged Property, subject only to said exceptions. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

3.    **Insurance.**

- 4 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 37 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 9 of 55

(a)    Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall obtain and maintain during the entire term of this Mortgage (the "**Term**") policies of insurance against loss or damage by fire, lightning, wind and such other perils as are included in a standard "all risk" or "special causes of loss" form, and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy including, without limitation, riot and civil commotion, vandalism, malicious mischief, burglary and theft. Such insurance shall be in an amount equal to the greatest of (i) the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, (ii) the outstanding principal balance of the Loan, and (iii) such amount that the insurer would not deem Mortgagor a coinsurer under said policies. The policies of insurance carried in accordance with this paragraph shall be paid annually in advance and shall contain a "Replacement Cost Endorsement" with a waiver of depreciation and an "Agreed Amount Endorsement". The policies shall have a deductible no greater than $10,000 unless agreed to by Mortgagee in writing.

(b)    Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the Term the following policies of insurance:

(i)    Flood insurance if any part of the Mortgaged Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Program in an amount at least equal to the outstanding principal amount of the Loan or the maximum limit of coverage available with respect to the Improvements and Equipment under said Program, whichever is less.

(ii)    Comprehensive General Liability or Commercial General Liability insurance, including a broad form comprehensive general liability endorsement and coverage for broad form property damage, contractual damages, personal injuries (including death resulting therefrom) and a liquor liability endorsement if liquor is sold on the Mortgaged Property, containing minimum limits per occurrence of $1,000,000.00 and $2,000,000.00 in the aggregate for any policy year.

(iii)    Insurance against loss or damage from (A) leakage of sprinkler systems and (B) explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements (without exclusion for explosions), in an amount at least equal to the outstanding principal amount of the Note or $2,000,000.00 whichever is less.

- 5 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 38 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 10 of 55

(iv)     Worker's compensation insurance with respect to any employees of Mortgagor, as required by any governmental authority or legal requirement.

(v)     During any period of repair or restoration, builder's "all risk" insurance in an amount equal to not less than the full insurable value of the Mortgaged Property against such risks (including, without limitation, fire and extended coverage and collapse of the Improvements to agreed limits) as Mortgagee may request, in form and substance acceptable to Mortgagee or deemed sufficient by Mortgagee in order to protect its interests.

(vi)     Law and ordinance coverage in an amount satisfactory to Mortgagee if the Mortgaged Property, or any part thereof, shall constitute a nonconforming use under applicable zoning ordinances, sub-division and building codes or other laws, ordinances, orders and requirements.

(vii)     Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests.

(c)     All policies of insurance (the **"Policies"**) required pursuant to this paragraph: (i) shall be issued by companies approved by Mortgagee and licensed to do business in the state where the Mortgaged Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc. and a rating of "A:VII" or better in the current Best's Insurance Reports; (ii) shall name Mortgagee and its successors and/or assigns as their interest may appear as the mortgagee; (iii) shall contain a Non-Contributory Standard Mortgagee Clause and a Lender's Loss Payable Endorsement, or their equivalents, naming Mortgagee as the person to which all payments made by such insurance company shall be paid; (iv) shall contain a waiver of subrogation against Mortgagee; (v) shall be maintained throughout the Term without cost to Mortgagee; (vi) shall be assigned and the originals or certified copies delivered to Mortgagee (including certified copies of the Policies in effect on the date hereof within thirty (30) days after the closing of the Loan); (vii) shall contain such provisions as Mortgagee deems reasonably necessary or desirable to protect its interest including, without limitation, endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies and that Mortgagee shall receive at least thirty (30) days prior written notice of any modification, reduction or cancellation; and (viii) shall be satisfactory in form and substance to Mortgagee and shall be approved by Mortgagee in its reasonable discretion as to amounts, form, risk coverage, deductibles, loss payees and insureds. Mortgagor shall pay the premiums for such Policies (the **"Insurance Premiums"**) as the same become due and payable and shall furnish to Mortgagee evidence of the renewal of each of the Policies with receipts for the payment of the Insurance Premiums or other evidence of such payment reasonably satisfactory to Mortgagee (provided, however, that Mortgagor is not required to furnish such evidence of payment to Mortgagee in the event that such Insurance Premiums have been paid by Mortgagee pursuant to <u>Paragraph 5</u> hereof). If Mortgagor does not furnish such evidence and receipts at least thirty (30) days prior

- 6 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 39 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 11 of 55

to the expiration of any expiring Policy, then Mortgagee may procure, but shall not be obligated to procure, such insurance and pay the Insurance Premiums therefor, and Mortgagor agrees to reimburse Mortgagee for the cost of such Insurance Premiums promptly on demand. Within thirty (30) days after request by Mortgagee, Mortgagor shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by Mortgagee, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.

      (d)    If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (an "**Insured Casualty**"), Mortgagor shall give prompt notice thereof to Mortgagee. Following the occurrence of an Insured Casualty, Mortgagor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law. The expenses incurred by Mortgagee in the adjustment and collection of insurance proceeds shall become part of the Debt and be secured hereby and shall be reimbursed by Mortgagor to Mortgagee upon demand.

      (e)    In case of loss or damages covered by any of the Policies, the following provisions shall apply:

          (i)    In the event of an Insured Casualty that does not exceed ten percent (10%) of the original principal amount of the Note, Mortgagor may settle and adjust any claim without the consent of Mortgagee and agree with the insurance company or companies on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In such case, Mortgagor is hereby authorized to collect and receipt for any such insurance proceeds.

          (ii)    In the event an Insured Casualty shall exceed ten percent (10%) of the original principal amount of the Note, then and in that event, Mortgagee may settle and adjust any claim without the consent of Mortgagor and agree with the insurance company or companies on the amount to be paid on the loss and the proceeds of any such policy shall be due and payable solely to Mortgagee and held in escrow by Mortgagee in accordance with the terms of this Mortgage. Mortgagor hereby irrevocably appoints Mortgagee as its attorney in fact, coupled with an interest, to settle and adjust any such claims and endorse any checks payable to the order of Mortgagee. Mortgagor hereby releases Mortgagee from any liability with respect to the settlement or adjustment by Mortgagee of any Insured Casualty.

          (iii)    In the event of an Insured Casualty where the loss is in an aggregate amount less than thirty percent (30%) of the original

- 7 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 40 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 12 of 55

principal balance of the Note, and if, in the reasonable judgment of Mortgagee, the Mortgaged Property can be restored within six (6) months following such Insured Casualty and at least six (6) months prior to maturity of the Note to an economic unit not less valuable (including an assessment of the impact of the termination of any Leases due to such Insured Casualty) and not less useful than the same was prior to the Insured Casualty, and after such restoration will adequately secure the outstanding balance of the Debt, then, if no Event of Default (as hereinafter defined) shall have occurred and be then continuing and the rent loss insurance or business interruption insurance referenced in Section 3(b)(iii) above will cover all payments due under the Loan during restoration, repairing, replacing and rebuilding, the proceeds of insurance (after reimbursement of any expenses incurred by Mortgagee) shall be applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Mortgagor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Mortgagor shall pay all costs (and if required by Mortgagee, Mortgagor shall deposit the total thereof with Mortgagee in advance) of such restoring, repairing, replacing or rebuilding in excess of the net proceeds of insurance made available pursuant to the terms hereof.

(iv)    Except as provided above, the proceeds of insurance collected upon any Insured Casualty shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Any such application to the Debt shall be without any Prepayment Consideration (as such term is defined in the Note), except that if an Event of Default has occurred and is continuing then the Mortgagor shall pay to Mortgagee an additional amount equal to the Prepayment Consideration. Any such application to the Debt shall (A) be applied to those payments of principal and interest last due under the Note but shall not postpone any payments otherwise required pursuant to the Note other than such last due payments and (B) cause the Note to be re-amortized in accordance with its terms and conditions.

(v)    In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it of the estimated cost of completion

- 8 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 41 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 13 of 55

of the restoration, repair, replacement and rebuilding, (2) funds or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee in its reasonable discretion prior to commencement of work.    No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of such costs of restoration, repair, replacement or rebuilding shall be paid retained by Mortgagee as additional collateral for the Loan.

(f)    In the event of any conflict, inconsistency or ambiguity between the provisions of this <u>Paragraph 3</u> and the provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire, the provisions of <u>Paragraph 3</u> hereof shall control.

4.    **Payment of Taxes, Etc.**    Mortgagor shall pay all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the **"Taxes"**) and all ground rents, maintenance charges, other impositions, and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the **"Other Charges"**) as the same become due and payable. Mortgagor will deliver to Mortgagee receipts for payment or other evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent no later than thirty (30) days prior to the date on which the Taxes and/or Other Charges would otherwise be delinquent if not paid. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility

- 9 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 42 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 14 of 55

services provided to the Mortgaged Property. Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes and the Other Charges prior to the date the same shall become delinquent (provided, however, that Mortgagor is not required to furnish such receipts for payment of Taxes in the event that such Taxes have been paid by Mortgagee pursuant to Paragraph 5 hereof).

     5.    **Tax Escrow Fund.**  Mortgagor shall pay to Mortgagee on the first (1st) day of each calendar month one-twelfth of the Taxes that Mortgagee estimates will be payable during the next ensuing twelve (12) months in order to accumulate with Mortgagee sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates (said amounts above hereinafter called the **"Tax Escrow Fund"**). The Tax Escrow Fund and the payments of interest or principal or both, payable pursuant to the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee and grants to Mortgagee a security interest in any and all monies now or hereafter deposited in the Tax Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Tax Escrow Fund in a timely fashion to payments of Taxes required to be made by Mortgagor pursuant to Paragraph 4 hereof. In making any payment relating to the Tax Escrow Fund, Mortgagee may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof. If the amount of the Tax Escrow Fund shall exceed the amounts due for Taxes pursuant to Paragraph 4 hereof, Mortgagee shall, in its sole discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Tax Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If at any time Mortgagee determines that the Tax Escrow Fund is not or will not be sufficient to pay the items set forth above, Mortgagee shall notify Mortgagor of such determination and Mortgagor shall increase its monthly payments to Mortgagee by the amount that Mortgagee estimates is sufficient to make up the deficiency at least thirty (30) days prior to delinquency of the Taxes. Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Tax Escrow Fund to the payment of the Debt in any order in its sole discretion. Until expended or applied as above provided, any amounts in the Tax Escrow Fund shall constitute additional security for the Debt. The Tax Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee. No interest on the Tax Escrow Fund shall be paid by Mortgagee to Mortgagor. If Mortgagee so elects at any time, Mortgagor shall provide, at Mortgagor's expense, a tax service contract for the Term issued by a tax reporting agency acceptable to Mortgagee. If Mortgagee does not so elect, Mortgagor shall reimburse Mortgagee for the cost of making annual tax searches throughout the Term.

    The Mortgagor and Mortgagee covenant and agree that provided the Mortgagor is not in default under the Note, this Mortgage or any other Loan Documents beyond the expiration of any applicable notice, grace or cure period, and provided further that Mortgagor furnishes Mortgagee with proof that all Taxes and Other Charges are being paid as required under this Mortgage, Mortgagee shall not require Mortgagor to make monthly installments for the payment of Taxes and Other Charges to the Tax Escrow Fund.

- 10 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 43 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 15 of 55

6.    **Condemnation.**    Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding (a **"Condemnation"**) and shall deliver to Mortgagee copies of any and all papers served in connection with such Condemnation.    Following the occurrence of a Condemnation, Mortgagor, regardless of whether an Award (hereinafter defined) is available, shall promptly proceed to restore, repair, replace or rebuild the same to the extent practicable to be of at least equal value and of substantially the same character as prior to such Condemnation, all to be effected in accordance with applicable law.

(a)    Mortgagee is hereby irrevocably appointed as Mortgagor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment (**"Award"**) for any taking accomplished through a Condemnation (a **"Taking"**) and to make any compromise or settlement in connection with such Condemnation, subject to the provisions of this Mortgage.    Notwithstanding any Taking by any public or quasi-public authority (including, without limitation, any transfer made in lieu of or in anticipation of such a Taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note, in this Mortgage and the other Loan Documents and the Debt shall not be reduced unless and until any Award shall have been actually received and applied by Mortgagee to expenses of collecting the Award and to discharge of the Debt.    Mortgagee shall not be limited to the interest paid on the Award by the condemning authority but shall be entitled to receive out of the Award interest at the rate or rates provided in the Note.    Mortgagor shall cause any Award that is payable to Mortgagor to be paid directly to Mortgagee.

(b)    In the event of any Condemnation where the Award is in an aggregate amount less than twenty-five percent (25%) of the original principal balance of the Note, and if, in the reasonable judgment of Mortgagee, the Mortgaged Property can be restored within six (6) months of the Taking and at least six (6) months prior to maturity of the Note to an economic unit not less valuable (including an assessment of the impact of the termination of any Leases due to such Condemnation) and not less useful than the same was prior to the Condemnation, and after such restoration will adequately secure the outstanding balance of the Debt, then, if no Event of Default shall have occurred and be then continuing and the rent loss insurance or business interruption insurance referenced in Section 3(b)(iii) above will cover all payments due under the Loan during restoration, repairing, replacing or rebuilding, the proceeds of the Award (after reimbursement of any expenses incurred by Mortgagee) shall be applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to Condemnation, in the manner set forth below.    Mortgagor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Mortgagor shall pay all costs (and if required by Mortgagee, Mortgagor shall deposit the total thereof with Mortgagee in advance) of such restoring, repairing, replacing or rebuilding in excess of the Award to be made available pursuant to the terms hereof.

(c)    Except as provided above, the Award collected upon any Condemnation shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Condemnation, in the manner set forth below.

- 11 -

14-12057-scc   Doc 100-2   Filed 02/10/15   Entered 02/10/15 14:36:33   Exhibit 2
part1   Pg 44 of 115
14-12057-scc   Claim 9-1 Part 4   Filed 12/10/14   Pg 16 of 55

Any such application to the Debt shall be without any Prepayment Consideration except that if an Event of Default has occurred and is continuing then the Mortgagor shall pay to Mortgagee an additional amount equal to the Prepayment Consideration, if any. Any such application to the Debt shall (i) be applied to those payments of principal and interest last due under the Note but shall not postpone or reduce any payments otherwise required pursuant to the Note other than such last due payments and (ii) cause the Note to be re-amortized in accordance with its terms and conditions. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such Award, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall be recoverable or shall have been sought, recovered or denied, to receive all or a portion of said Award sufficient to pay the Debt.

(d)     In the event Mortgagor is entitled to reimbursement out of the Award received by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence reasonably satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding resulting from such condemnation, (2) finds or, at Mortgagee's option, receives assurances reasonably satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of the Award to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of costs, payment and performance as Mortgagee may reasonably require and approve; and Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of the Award shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the costs of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of the Award received by Mortgagee after payment of such costs of restoration, repair, replacement or rebuilding shall, in the sole and absolute discretion of Mortgagee, be retained by Mortgagee and applied to payment of the Debt provided that such application to the Debt shall be without any Prepayment Consideration as long as no Event of Default has occurred and is continuing.

7.     **Leases and Rents.**

(a)     Mortgagor does hereby absolutely and unconditionally assign to Mortgagee, all of Mortgagor's right, title and interest in all current and future Leases and Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Mortgagee shall not be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Mortgagee. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereafter be requested by Mortgagee to further

- 12 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 45 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 17 of 55

evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof, sufficient to discharge all current sums due on the Debt, in trust for the benefit of Mortgagee for use in the payment of such sums. Upon an Event of Default, without the need for notice or demand, the license granted to Mortgagor herein shall automatically be revoked, and Mortgagee shall immediately be entitled to possession of all Rents, whether or not Mortgagee enters upon or takes control of the Mortgaged Property. Mortgagee is hereby granted and assigned by Mortgagor the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.

(b)    All residential leases shall be written on the standard form of residential lease which has been approved by Mortgagee and all commercial leases shall be written on the standard form of commercial lease which has been approved by Mortgagee. No material changes may be made to the Mortgagee-approved standard residential or commercial lease except for customary alterations made in the ordinary course of business. All Leases shall provide that they are subordinate to lien, terms and provisions of this Mortgage and that the tenant agrees to attorn to Mortgagee. All renewals of residential leases and all proposed residential leases shall provide for rental rates comparable to existing local market rates and shall be arms length transactions. None of the commercial leases shall contain any non-disturbance or similar recognition agreement, any requirement that the Mortgagor rebuild the Mortgaged Property in connection with a casualty or condemnation of any portion of the Mortgaged Property, or any other similar provisions which adversely affect the Mortgaged Property or which might adversely affect the rights of any holder of the Loan without the prior written consent of Mortgagee. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all residential and commercial leases.

(c)    Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notices of default which can lead to an offset of Rents or termination of the applicable Lease that Mortgagor shall send or receive thereunder; (iii) shall enforce all the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; (vi) shall use its best efforts to deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee, provided that Mortgagor shall not be required to deliver such certificates more frequently than four (4) times in any calendar year; and (vii) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require. Except to the extent Mortgagor is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Mortgagor (A) shall not, alter, modify or change the terms of the Leases in any material respect without the prior written consent of

- 13 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 46 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 18 of 55

Mortgagee, such consent not to be unreasonably withheld or delayed; (B) shall not convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, tenants under the Leases; (C) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (D) shall not cancel or terminate the Leases or accept a surrender thereof, except if a tenant is in default thereunder; provided, however, that any Lease may be cancelled if at the time of the cancellation thereof a new Lease is entered into on substantially the same terms or more favorable terms as the cancelled Lease.

(d)    Mortgagor may enter into proposed new commercial leases and proposed renewals or extensions of existing commercial leases without the prior written consent of Mortgagee if such proposed commercial leases or extension: (i) is not for greater than or equal to ten percent (10%) of the gross leaseable area of the Mortgaged Property, or greater than or equal to ten percent (10%) of the total gross rental revenues of the Mortgaged Property; (ii) shall have an initial term of not less than three (3) years or greater than ten (10) years; (iii) shall provide for rental rates comparable to existing local market rates and shall be an arms-length transaction; (iv) shall not contain any options for renewal or expansion by the tenant thereunder at rental rates which are either below comparable market levels or less than the rental rates paid by the tenant during the initial lease term; (v) shall be to a tenant which is experienced, creditworthy and reputable; and (vi) shall comply with the requirements of subparagraph (b), above. Mortgagor may enter into a proposed lease which does not satisfy all of the conditions set forth in clauses (i) through (vi) immediately above only with the prior written consent of Mortgagee, such consent not to be unreasonably withheld or delayed. Mortgagor expressly understands that any and all new or proposed commercial leases are included in the definition of "Lease" or "Leases" as such terms may be used throughout this Mortgage and the other Loan Documents.

(e)    All security deposits of tenants, whether held in cash or any other form, shall not be commingled with any other funds of Mortgagor and, if cash, shall be deposited by Mortgagor at such commercial or savings bank or banks as may be reasonably satisfactory to Mortgagee. Any bond or other instrument which Mortgagor is permitted to hold in lieu of cash security deposits under any applicable legal requirements shall be maintained in full force and effect in the full amount of such deposits unless replaced by cash deposits as hereinabove described, shall be issued by an institution reasonably satisfactory to Mortgagee, shall, if permitted pursuant to any legal requirements, name Mortgagee as payee or mortgagee thereunder (or at Mortgagee's option, be fully assignable to Mortgagee) and shall, in all respects, comply with any applicable legal requirements and otherwise be reasonably satisfactory to Mortgagee. Mortgagor shall, upon request, provide Mortgagee with evidence reasonably satisfactory to Mortgagee of Mortgagor's compliance with the foregoing. Following the occurrence and during the continuance of any Event of Default, Mortgagor shall, upon Mortgagee's request, if permitted by any applicable legal requirements, turn over to Mortgagee the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Mortgaged Property, to be held by Mortgagee subject to the terms of the Leases.

8.    **Representations and Covenants Concerning the Loan.**  Mortgagor represents, warrants and covenants as follows:

- 14 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 47 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 19 of 55

(a)    The Note, this Mortgage and the other Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Mortgage and the other Loan Documents, or the exercise of any right thereunder, render this Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

(b)    All certifications, permits, licenses and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Mortgaged Property as used on the date hereof have been obtained and are in full force and effect. The Mortgaged Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Mortgaged Property.    The Mortgagor shall comply with all of the recommendations concerning the maintenance and repair of the Mortgaged Property which are contained in the inspection and engineering report which was delivered to Mortgagee in connection with the origination of the Loan.

(c)    All of the Improvements which were included in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except those which are insured against by title insurance. All of the Improvements comply with all material requirements of any applicable zoning, building codes, fire codes and subdivision laws and ordinances.

(d)    The Mortgaged Property is not subject to any Leases other than the Leases described in the rent roll delivered to Mortgagee in connection with this Mortgage. No person has any possessory interest in the Mortgaged Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are in full force and effect and there are no defaults thereunder by either party and there are no conditions that, with the passage of time or the giving of notice, or both, would constitute defaults thereunder.

(e)    The survey of the Mortgaged Property delivered to Mortgagee in connection with this Mortgage, has been performed by a duly licensed surveyor or registered professional engineer in the jurisdiction in which the Mortgaged Property is situated, is certified to the Mortgagee, its successors and assigns, and the title insurance company, and is in accordance with the most current minimum standards for title surveys as determined by the American Land Title Association, with the signature and seal of a licensed engineer or surveyor affixed thereto, and does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

(f)    The Mortgaged Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or hereafter relating to the ownership, construction, use or operation of the Mortgaged Property.

- 15 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 48 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 20 of 55

(g)    Mortgagor operates the Mortgaged Property and has not entered into any agreement with any third party relating to the operation and management of the Mortgaged Property, and no third party is entitled to any management fee or any portion of the Rents.

9.    **Trust Fund.** Pursuant to Section 13 of the lien law of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

10.    **Maintenance of Mortgaged Property.**    Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair.    The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee.    Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof subject to the applicable provisions of this Mortgage.    Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property that is destroyed by any casualty, or becomes damaged, worn or dilapidated or that is affected by any proceeding of the character referred to in Paragraph 6 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises.    Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.    If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.    Mortgagor shall not (i) change the use of the Mortgaged Property, (ii) permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof or (iii) take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of management.    Mortgagor will not install or permit to be installed on the Premises any underground storage tank.

11.    **Transfer or Encumbrance of the Mortgaged Property.**

(a)    Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt.    Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property.    Mortgagor shall not, without the prior written consent of Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

- 16 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 49 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 21 of 55

(b)    A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Paragraph 11 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, any persons or entity(ies) guaranteeing the Loan and/or any of Mortgagor's obligations under the Loan Documents (collectively, the "**Guarantor**"), or any general partner of Mortgagor or Guarantor is a company, the voluntary or involuntary sale, conveyance or transfer of such company's stock (or the stock of any corporation directly or indirectly controlling such company by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such company's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such company; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of the partnership interest of any general partner, managing partner or limited partner or the transfer of the interest of any joint venturer or member; and (v) any pledge, hypothecation, assignment, transfer or other encumbrance of any ownership interest in Mortgagor.

(c)    Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof without Mortgagee's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

(d)    Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof made in contravention of this paragraph shall be null and void and of no force and effect.

(e)    Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Mortgagee in connection with the review, approval and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer.

12.    **Estoppel Certificates and No Default Affidavits.**

- 17 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 50 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 22 of 55

(a)    After request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b)    After request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a certificate reaffirming all representations and warranties of Mortgagor set forth herein and in the other Loan Documents as of the date requested by Mortgagee or, to the extent of any changes to any such representations and warranties, so stating such changes.

(c)    Mortgagor shall deliver to Mortgagee upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee provided that Mortgagor shall not be required to deliver such certificates more frequently than four (4) times in any calendar year.

13.    **Changes in Laws Regarding Taxation.**    If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any.    In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable, provided that Mortgagor shall not be required to pay any Prepayment Consideration in connection herewith unless an Event of Default has occurred and is continuing.

14.    **Documentary Stamps.**    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

15.    **Controlling Agreement.**    It is expressly stipulated and agreed to be the intent of Mortgagor and Mortgagee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Mortgagee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Paragraph 15 shall control every other covenant and agreement in this Mortgage and the other Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Mortgagee's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Mortgagor results in Mortgagor having paid any interest in excess of that permitted by applicable law, then it is Mortgagor's and Mortgagee's express intent that all excess amounts theretofore collected by

- 18 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 51 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 23 of 55

Mortgagee shall be credited on the principal balance of the Note and all other Debt, and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Mortgagee for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Mortgagee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

16. **Financial Statements.**

(a)     The financial statements heretofore furnished to Mortgagee are, as of the dates specified therein, complete and correct and fairly present the financial condition of the Mortgagor and any other persons or entities that are the subject of such financial statements, and are prepared in accordance with generally accepted accounting principles. Mortgagor does not have any liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments that are known to Mortgagor and reasonably likely to have a materially adverse effect on the Mortgaged Property or the operation thereof, except as referred to or reflected in said financial statements. Since the date of such financial statements, there has been no materially adverse change in the financial condition, operation or business of Mortgagor from that set forth in said financial statements.

(b)     Mortgagor will maintain full and accurate books of accounts and other records reflecting the results of the operations of the Mortgaged Property and will furnish to Mortgagee on or before forty-five (45) days after the end of each calendar quarter the following items, each certified by Mortgagor as being true and correct: (i) a written statement (rent roll) dated as of the last day of each such calendar quarter identifying each of the Leases by the term, space occupied, rental required to be paid, security deposit paid, any rental concessions, and identifying any material defaults or payment delinquencies thereunder; and (ii) monthly and year to date operating statements prepared for each calendar month during each such calendar quarter, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period. Within one hundred ninety (90) days following the end of each calendar year, Mortgagor shall furnish statements of its financial affairs and condition including a balance sheet and a statement of profit and loss for the Mortgagor in such detail as Mortgagee may reasonably request, and setting forth the financial condition and the income and expenses for the Mortgaged Property for the immediately preceding calendar year, which shall be accompanied by a certificate executed by the chief financial officer, the general partner or managing member of Mortgagor, as applicable, stating that each such annual financial statement presents fairly the financial condition of the Mortgaged Property being reported upon and has been prepared in accordance with generally accepted accounting principles consistently applied. Mortgagor's annual financial statements shall include (i) a list of commercial tenants, if any, occupying more

- 19 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 52 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 24 of 55

than twenty (20%) percent of the total floor area of the Improvements, and (ii) a breakdown showing the year in which each commercial lease then in effect expires and the percentage of total floor area of the Improvements and the percentage of base rent with respect to which commercial leases shall expire in each such year, each such percentage to be expressed on both a per year and a cumulative basis. At any time and from time to time Mortgagor shall deliver to Mortgagee or its agents such other financial data as Mortgagee or its agents shall reasonably request with respect to the ownership, maintenance, use and operation of the Mortgaged Property. In the event Borrower or any Guarantor fails to provide the financial documents required to be delivered pursuant to the Mortgage, the Guaranty or any of the other loan documents within the time periods set forth in the Mortgage, the Guaranty or any of the other loan documents and such failure continues for thirty (30) days following written demand from Lender, the interest rate under the Loan shall be increased by one (1%) percent and such increase shall remain in effect until such time as Borrower or Guarantor deliver all of the required financial documents.

      **17.**   <u>**Performance of Other Agreements.**</u>     Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

      **18.**   <u>**Further Acts, Etc.**</u>  Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage or for facilitating the sale of the Loan and the Loan Documents (if Mortgage elects to do so). Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Upon foreclosure, the appointment of a receiver or any other relevant action, Mortgagor will, at the cost of Mortgagor and without expense to Mortgagee, cooperate fully and completely to effect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including, without limitation, such rights and remedies available to Mortgagee pursuant to this paragraph.

      **19.**   <u>**Recording of Mortgage, Etc.**</u>  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed,

- 20 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 53 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 25 of 55

registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

 **20.    Reporting Requirements.**   Mortgagor agrees to give prompt notice to Mortgagee of the insolvency or bankruptcy filing of Mortgagor or the death, insolvency or bankruptcy filing of Mortgagor or any Guarantor.

 **21.    Events of Default.**   The Debt shall become immediately due and payable at the option of Mortgagee upon the happening of any one or more of the following events of default (each an **"Event of Default"**):

 (a)    if any portion of the Debt is not paid when due including the failure to repay the Debt on or before the Maturity Date;

 (b)    subject to Mortgagor's right to contest as provided herein, if any of the Taxes or Other Charges are not paid when the same are due and payable in accordance with Paragraph 4 and Paragraph 5 of this Mortgage;

 (c)    If the Policies are not kept in full force and effect or are not delivered to Mortgagee upon request and in accordance with the requirements contained in this Mortgage;

 (d)    if Mortgagor transfers or encumbers any portion of the Mortgaged Property without Mortgagee's prior written consent, it being expressly agreed and acknowledged by Mortgagor that subordinate financing is prohibited by this Mortgage;

 (e)    if any material representation or warranty of Mortgagor, or of any Guarantor, made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

 (f)    if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

 (g)    if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by,

- 21 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 54 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 26 of 55

Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days:

        (h)    if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage;

        (i)    subject to Mortgagor's rights set forth in <u>Paragraph 3</u> of this Mortgage, if the Mortgaged Property becomes subject to any mechanic's, materialman's or other lien in excess of $10,000.00 except a lien for local real estate taxes and assessments not then due and payable;

        (j)    if Mortgagor fails to cure properly any (i) building department violations, or (ii) rent impairing violations affecting or which may be interpreted to affect the Mortgaged Property and which have or may have a negative adverse impact on Rents in the sole judgment of Mortgagee within thirty (30) days after Mortgagor first receives notice of any such violations;

        (k)    except as permitted in this Mortgage, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee;

        (l)    if Mortgagor shall continue to be in default under any term, covenant, or provision of the Note or any of the other Loan Documents, beyond applicable cure periods contained in those documents;

        (m)    if Mortgagor fails to cure a default under any other term, covenant or provision of this Mortgage within thirty (30) days after Mortgagor first receives notice of any such default; provided, however, if such default is reasonably susceptible of cure, but not within such thirty (30) day period, then Mortgagor may be permitted up to an additional sixty (60) days to cure such default provided that Mortgagor diligently and continuously pursues such cure;

        (n)    if, without Mortgagee's prior written consent, such consent not to be unreasonably withheld or delayed, (i) Mortgagor ceases to act as the manager of the Mortgaged Property, (ii) Mortgagor shall enter into a management agreement with any party or there is any material change in any management agreement approved by Mortgagee, (iii) the management of the Mortgaged Property is transferred to a person or entity other than Mortgagor, or (iv) there is any material change in the management, operation or control of the Mortgaged Property;

        (o)    if Mortgagor ceases to continuously operate the Mortgaged Property or any material portion thereof for any reason whatsoever (other than temporary cessation in connection with any repair or renovation thereof undertaken with the consent of Mortgagee);

        (p)    damage to the Mortgaged Property in any manner which is not covered by insurance solely as a result of Mortgagor's failure to maintain insurance required in accordance with this Mortgage;

- 22 -

(q)    if any adverse change occurs in the financial condition of Mortgagor or any Guarantor which Mortgagee shall, in good faith, deem to be material or to otherwise materially impair the prospect of payment or performance by Mortgagor of its obligations evidenced by the Note and secured by this Mortgage or any Loan Document;

(r)    the occurrence of any default, beyond the expiration of any applicable notice, grace or cure period under any other loans made by Mortgagee to Mortgagor any Guarantor or any principal of Mortgagor giving rise to a right to accelerate payment thereof including, without limitation, any secured or unsecured loans; or

(s)    if, upon application by Mortgagee to two (2) or more fire insurance companies which are lawfully doing business in the State of New York and which are issuing policies of fire insurance upon buildings situated within the area wherein the Mortgaged Property is situated, such companies shall refuse to issue such policies.

## 22.    <u>Late Payment Charge and Default Rate.</u>

(a)    If any payment is not paid within ten (10) days of the date on which it is due, Mortgagor shall pay to Mortgagee upon demand an amount equal to the lesser of five percent (5%) of such unpaid payment or the maximum amount permitted by applicable law in order to defray a portion of the expenses incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be deemed to be secured by this Mortgage.

(b)    From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Mortgagee, interest shall accrue on the outstanding Principal Sum at a rate equal to lesser of (i) twenty-four percent (24%) per annum, or (ii) the maximum rate allowed by law (the "Default Rate"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the Debt. The Default Rate shall be in effect at all times after the maturity of the Debt (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under the Note, the Mortgage and the Loan Documents shall have been paid in full.

23.    <u>Right To Cure Defaults.</u>    Upon the occurrence of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt, shall be

- 23 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 56 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 28 of 55

secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.

### 24.    Remedies.

(a)    Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)    declare the entire Debt to be immediately due and payable;

(ii)    institute a proceeding or proceedings, judicial or non-judicial, by advertisement or otherwise (including, without limitation, the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law and any amendments or substitute statutes in regard thereto), for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)    sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the other Loan Documents;

(vi)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without

- 24 -

regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii)    enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees;

(ix)    pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code; or

(x)    exercise any of its rights and remedies under any Loan Document (including, without limitation, any guaranty executed in connection with the Loan).

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)    The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(c)    Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or

- 25 -

for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)    Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(e)    Upon any sale made under or by virtue of this paragraph, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the other Loan Documents.

(f)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)    Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this paragraph at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)    Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the other Loan Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the other Loan Documents. The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the other Loan Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the other Loan Documents. No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Mortgagor, or Mortgagor's liability to pay such

- 26 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 59 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 31 of 55

obligation. No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt. No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Mortgagee in exercising its rights and remedies under this <u>Paragraph 24</u> (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(i)    The interests and rights of Mortgagee under the Note, this Mortgage or any of the other Loan Documents shall not be impaired by any indulgence, including, without limitation, (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

(j)    Upon the occurrence of any Event of Default and pending the exercise by Mortgagee of its right to exclude Mortgagor from all or any part of the Mortgaged Property, Mortgagor agrees to pay the fair and reasonable rental value for the use and occupancy of the Mortgaged Property or any portion thereof which are in its possession for such period and, upon default of any such payment, will vacate and surrender possession of the Mortgaged Property to Mortgagee or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery or possession of the Mortgaged Property for non-payment of rent, however designated.

(k)    In any suit to foreclose the lien hereof (including any partial foreclosure) or to enforce any other remedy of Mortgagee under this Mortgage or the Note, there shall be allowed and included as additional indebtedness in the decree for sale or other judgment or decree, all expenditures and appraiser's fees, outlays for documentary and expert evidence, stenographer's charges, publication costs, and costs which may be estimated as items to be expended after entry of the decree of procuring all such abstracts of title, title searches and examinations, title insurance policies, Torrens certificates, and similar data and assurances with respect to title and value as Mortgagee may deem necessary either to prosecute such suit or to evidence to bidders at any sale which may be had pursuant to such decree the true condition of the title or the value of the Mortgaged Property.

25.    **Right of Entry**.    In addition to any other rights or remedies granted under this Mortgage, Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property with 24 hours notice at any reasonable time during the Term. The cost of such inspections or audits shall be borne by Mortgagor should Mortgagee determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Mortgagee. The cost of such inspections, if not paid

- 27 -

for by Mortgagor following demand, may be added to the principal balance of the sums due under the Note and this Mortgage and shall bear interest thereafter until paid at the Default Rate.

26.    **Security Agreement.**    This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph the **"Collateral"**). Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. As such, this Mortgage covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper. In the event of any change in name, identity or structure of any Mortgagor, such Mortgagor shall notify Mortgagee thereof and promptly after request shall execute, file and record such Uniform Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its

- 28 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 61 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 33 of 55

behalf any financing or other statements signed only by Mortgagee, as secured party, in connection with the Collateral covered by this Mortgage. Mortgagor hereby irrevocably authorizes Mortgagee to file UCC Financing Statements, Amendments and/or Continuations in order to perfect or continue the perfection of Mortgagee's security interest in the Collateral.

    **27.**  **Actions and Proceedings.** Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its sole discretion, decides should be brought to protect their interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

    **28.**  **Contest of Certain Claims.** Notwithstanding the provisions of Paragraphs 4 hereof, but subject in any event to the provisions of Paragraph 5 hereof, Mortgagor shall not be in default for failure to pay or discharge Taxes, Other Charges or mechanic's or materialman's lien asserted against the Mortgaged Property if, and so long as, (a) Mortgagor shall have notified Mortgagee of same within ten (10) days of obtaining knowledge thereof; (b) Mortgagor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Mortgaged Property or any part thereof, to satisfy the same; (c) Mortgagor shall have furnished to Mortgagee a cash deposit, or an indemnity bond satisfactory to Mortgagee with a surety satisfactory to Mortgagee, in the amount of the Taxes, Other Charges or mechanic's or materialman's lien claim, plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, to assure payment of the matters under contest and to prevent any sale or forfeiture of the Mortgaged Property or any part thereof; (d) Mortgagor shall promptly upon final determination thereof pay the amount of any such Taxes, Other Charges or claim so determined, together with all costs, interest and penalties which may be payable in connection therewith; (e) the failure to pay the Taxes, Other Charges or mechanic's or materialman's lien claim does not constitute a default under any other deed of trust, mortgage or security interest covering or affecting any part of the Mortgaged Property; and (f) notwithstanding the foregoing, Mortgagor shall immediately upon request of Mortgagee pay (and if Mortgagor shall fail so to do, Mortgagee may, but shall not be required to, pay or cause to be discharged or bonded against) any such Taxes, Other Charges or claim notwithstanding such contest, if in the opinion of Mortgagee, the Mortgaged Property or any part thereof or interest therein may be in danger of being sold, forfeited, foreclosed, terminated, cancelled or lost. Mortgagee may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Mortgagee, the entitlement of such claimant is established.

    **29.**  **Recovery of Sums Required to be Paid.** Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 62 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 34 of 55

    **30.    Marshalling and Other Matters.**    Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein.  Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

    **31.    Hazardous Substances.**    Except as may have been disclosed in any environmental report prepared for Mortgagor and submitted to Mortgagee prior to the date hereof in connection with the Loan (the **"Environmental Report"**), Mortgagor hereby represents and warrants to Mortgagee that: (a) the Mortgaged Property is not in direct or indirect violation of any local, state, federal or other governmental authority, statute, ordinance, code, order, decree, law, rule or regulation pertaining to or imposing liability or standards of conduct concerning environmental regulation, contamination or clean-up including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, as amended (**"CERCLA"**), the Resource Conservation and Recovery Act, as amended (**"RCRA"**), the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Hazardous Substances Transportation Act, as amended, the Solid Waste Disposal Act, as amended, the Clean Water Act, as amended, the Clean Air Act, as amended, the Toxic Substance Control Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, any state super-lien and environmental clean-up statutes and all regulations adopted in respect to the foregoing laws (collectively, **"Environmental Laws"**); (b) the Mortgaged Property is not subject to any private or governmental lien or judicial or administrative notice or action or inquiry, investigation or claim relating to hazardous and/or toxic, dangerous and/or regulated, substances, wastes, materials, raw materials which include hazardous constituents, pollutants or contaminants including without limitation, petroleum, tremolite, anthlophylie, actinolite or polychlorinated biphenyls and any other substances or materials which are included under or regulated by Environmental Laws or which are considered by scientific opinion to be otherwise dangerous in terms of the health, safety and welfare of humans (collectively, **"Hazardous Substances"**); (c) no Hazardous Substances are or have been (including the period prior to Mortgagor's acquisition of the Mortgaged Property), discharged, generated, treated, disposed of or stored on, incorporated in, or removed or transported from the Mortgaged Property other than in compliance with all Environmental Laws; (d) no Hazardous Substances are present in, on or under any nearby real property which could migrate to or otherwise affect the Mortgaged Property; and (e) no underground storage tanks exist on any of the Mortgaged Property.  So long as Mortgagor owns or is in possession of the Mortgaged Property, Mortgagor (i) shall keep or cause the Mortgaged Property to be kept free from Hazardous Substances and in compliance with all Environmental Laws, (ii) shall promptly notify Mortgagee if Mortgagor shall become aware of any Hazardous Substances on or near the Mortgaged Property and/or if Mortgagor shall become aware that the Mortgaged Property is in direct or indirect violation of any Environmental Laws and/or if Mortgagor shall become aware of any condition on or near the Mortgaged Property which shall pose a threat to the health, safety or welfare of humans, (iii) shall remove such Hazardous Substances and/or cure such violations and/or remove such threats, as applicable, as required by law (or as shall be required by Mortgagee in the case of removal

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 63 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 35 of 55

which is not required by law, but in response to the opinion of a licensed hydrogeologist, licensed environmental engineer or other qualified consultant engaged by Mortgagee ("Mortgagee's Consultant"), promptly after Mortgagor becomes aware of same, at Mortgagor's sole expense and (iv) shall comply with all of the recommendations contained in the environmental report which was delivered to Mortgagee in connection with the origination of the Loan. Nothing herein shall prevent Mortgagor from recovering such expenses from any other party that may be liable for such removal or cure. The obligations and liabilities of Mortgagor under this Paragraph 31 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, without limitation, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

32.    **Asbestos.**    Mortgagor represents and warrants that, to the best of Mortgagor's knowledge and except as set forth in the Environmental Report, no asbestos or any substance or material containing asbestos ("**Asbestos**") is located on the Mortgaged Property except as may have been disclosed in the Environmental Report. Mortgagor shall not install in the Mortgaged Property, nor permit to be installed in the Mortgaged Property, Asbestos and shall remove any Asbestos promptly upon discovery to the satisfaction of Mortgagee, at Mortgagor's sole expense. Mortgagor shall in all instances comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. The obligations and liabilities of Mortgagor under this Paragraph 32 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

33.    **Environmental Monitoring.**    Mortgagor shall give prompt written notices to Mortgagee of: (a) any proceeding or inquiry by any party with respect to the presence of any Hazardous Substance or Asbestos on, under, from or about the Mortgaged Property, (b) all claims made or threatened by any third party against Mortgagor or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance or Asbestos, and (c) Mortgagor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause the Mortgaged Property to be subject to any investigation or cleanup pursuant to any Environmental Law. Mortgagor shall permit Mortgagee to join and participate in, as a party if it so elects, any legal proceedings or actions initiated with respect to the Mortgaged Property in connection with any Environmental Law or Hazardous Substance, and Mortgagor shall pay all attorneys' fees and disbursements incurred by Mortgagee in connection therewith. Upon Mortgagee's reasonable request, at any time and from time to time while this Mortgage is in effect, Mortgagor shall provide (i) an inspection or audit of the Mortgaged Property prepared by a licensed hydrogeologist or licensed environmental engineer approved by Mortgagee indicating the presence or absence of Hazardous Substances on, in or near the Mortgaged Property, and (ii) an inspection or audit of the Mortgaged Property prepared

by a duly qualified engineering or consulting firm approved by Mortgagee, indicating the presence or absence of Asbestos on the Mortgaged Property. The cost and expense of such audit or inspection shall be paid by Mortgagor. If Mortgagor fails to provide any inspection or audit required pursuant to this Paragraph 33 within thirty (30) days after such request, Mortgagee may order same, and Mortgagor hereby grants to Mortgagee and its employees and agents access to the Mortgaged Property and a license to undertake such inspection or audit. The cost of such inspection or audit may be added to the Debt and shall bear interest thereafter until paid at the Default Rate. In the event that any environmental site assessment report prepared in connection with such inspection or audit recommends that an operations and maintenance plan be implemented for Asbestos or any Hazardous Substance, Mortgagor shall cause such operations and maintenance plan to be prepared and implemented at Mortgagor's expense upon request of Mortgagee. In the event that any investigation, site monitoring, containment cleanup, removal, restoration or other work of any kind is reasonably necessary or desirable under an applicable Environmental Law (the **"Remedial Work"**), Mortgagor shall commence all such Remedial Work within thirty (30) days after written demand by Mortgagee for performance thereof (or such shorter period of time as may be required under applicable law) and thereafter diligently prosecute to completion all such Remedial Work within ninety (90) days after written demand by Mortgagee for performance thereof (or such shorter period of time as may be required under applicable law). All Remedial Work shall be performed by contractors approved in advance by Mortgagee, and under the supervision of a consulting engineer approved by Mortgagee. All costs and expenses of such Remedial Work shall be paid by Mortgagor including, without limitation, Mortgagee's attorneys' fees and disbursements incurred in connection with monitoring or review of such Remedial Work. In the event Mortgagor shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Mortgagee may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, may be added to the Debt and shall bear interest thereafter until paid at the Default Rate.

      **34.**    **Indemnification.**    In addition to any other indemnifications provided herein or in the other Loan Documents, Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house staff, retained firms, or otherwise, and disbursements), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Substance or Asbestos on, from, or affecting the Mortgaged Property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance or

- 32 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 65 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 37 of 55

Asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance or Asbestos; (i) any violation of the Environmental Laws, which are based upon or in any way related to such Hazardous Substance or Asbestos including, without limitation, the costs and expenses of any Remedial Work, attorneys' and consultant fees and disbursements, investigation and laboratory fees, court costs, and litigation expenses; (j) any failure of the Mortgaged Property to comply with any Access Laws; (k) any representation or warranty made in the Note, this Mortgage or any of the other Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made; (l) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto, including mortgage brokerage fees; (m) any ongoing matters arising out of the transaction contemplated by this Mortgage, the Note and the Loan Documents and the Debt (including, but not limited to, all costs and any reappraisals of the Mortgaged Property or any other collateral for the Debt), (n) the claims of any lessee of any or any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease, (o) any amounts payable to Mortgagee by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date the loss or damage is sustained by Mortgagee until paid and any amendment to, or restructuring of, the Debt and the Loan Documents, (p) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (q) the past, current and/or future sale or offering for sale of any interests in Mortgagor, including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the Default Rate. The obligations and liabilities of Mortgagor under this Paragraph 34 shall survive the termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

35.    **Notices.**    Any notice, demand, statement, request or consent made hereunder shall be in writing, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor or Mortgagee, as the case may be, shall designate in writing, and shall be deemed to be received by the addressee on (i) the day such notice is personally delivered to such addressee, (ii) the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, (iii) the day following the day on which such notice is delivered to a nationally recognized overnight courier delivery service, or (iv) the day facsimile transmission is confirmed after transmission of such notice by telecopy to such telecopier number as Mortgagor or Mortgagee, as the case may be, shall have previously designated in writing.

- 33 -

36.    **Authority.**    (a) Mortgagor (and the undersigned representative of Mortgagor, if any) represent and warrant that it (or they, as the case may be) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed; and (b) Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

37.    **Non-Waiver.**    The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note, or any of the other Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any of the other Loan Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its sole discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclosure this Mortgage. The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

38.    **No Oral Change.**    This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

39.    **Liability.**    If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

40.    **Inapplicable Provision**.    If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

- 34 -

**41.    Headings, Etc.**    The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**42.    Duplicate Originals.**    This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

**43.    Definitions.**    Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Mortgagee" shall mean "Mortgagee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein and the words **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, without limitation, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**44.    Assignments.**

(a)    Mortgagee shall have the right to assign or transfer its rights under this Mortgage without limitation.  Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage.

(b)    Mortgagee shall at the request of Mortgagor assign the Mortgage to another financial institution provided that the debt secured by this Mortgage is paid in full and that Mortgagor pays Mortgagee's reasonable fees (including reasonable attorneys' fees) in connection with said assignment.

**45.    Waiver of Jury Trial.    MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY**

- 35 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 68 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 40 of 55

**AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.**

46.    **Miscellaneous.**

(a)    The Loan Documents contain the entire agreement between Mortgagor and Mortgagee relating to or connected with the Loan.  Any other agreements relating to or connected with the Loan not expressly set forth in the Loan Documents are null and void and superseded in their entirety by the provisions of the Loan Documents.

(b)    Mortgagor represents and warrants to Mortgagee that there has not been committed by Mortgagor or any other person in occupancy of or involved with the operation or use of the Mortgaged Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Mortgaged Property or any part thereof or any monies paid in performance of Mortgagor's obligations under the Note or under any of the other Loan Documents.  Mortgagor hereby covenants and agrees not to commit, permit or suffer to exist any act, omission or circumstance affording such right of forfeiture.  In furtherance thereof, Mortgagor hereby indemnifies Mortgagee and agrees to defend and hold Mortgagee harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the representations and warranties set forth in this paragraph.  Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Mortgagor or all or any part of the Mortgaged Property under any federal or state law for which forfeiture of the Mortgaged Property or any part thereof or of any monies paid in performance of Mortgagor's obligations under the Loan Documents is a potential result, shall, at the election of Mortgagee, constitute an Event of Default hereunder without notice or opportunity to cure.

(c)    Mortgagor acknowledges that, with respect to the Loan, Mortgagor is relying solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Mortgagee or any parent, subsidiary or affiliate of Mortgagee.  Mortgagor acknowledges that Mortgagee engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of the Mortgagor or its affiliates.  Mortgagor acknowledges that it is represented by competent counsel and has consulted counsel before executing the Loan Documents.

(d)    Mortgagor covenants and agrees to pay Mortgagee upon receipt of written notice from Mortgagee, all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements and the costs and expenses of any title insurance company, appraisers, engineers or surveyors) incurred by Mortgagee in connection with (i) the preparation, negotiation, execution and delivery of this Mortgage and the other Loan Documents; (ii) Mortgagor's performance of and compliance with Mortgagor's respective agreements and covenants contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iii) Mortgagee's performance and compliance with all agreements and conditions contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iv) the negotiation, preparation,

- 36 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 69 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 41 of 55

execution, delivery and administration of any consents, amendments, waivers or other modifications to this Mortgage and the other Loan Documents; and (v) the filing and recording fees and expenses, title insurance fees and expenses, and other similar expenses incurred in creating and perfecting the lien in favor of Mortgagee pursuant to this Mortgage and the other Loan Documents.

(e)    This Mortgage shall be governed by and construed in accordance with the laws of the State of New York and the applicable laws of the United States of America.

(f)    Mortgagee shall not be obligated to perform or discharge any obligation of the Mortgagor as a result of the collateral assignment hereby effected, and the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless from and against any and all liability, loss or damage which the Mortgagee may incur by reason of any act of the Mortgagee under this Mortgage, other than as a result of the Mortgagee's willful misconduct or gross negligence. Should the Mortgagee incur any such liability, loss or damage by reason of this Mortgage and which is covered by the foregoing indemnity, or in defense against any such claims or demands, or perform any acts or covenants on the part of Mortgagor to be performed under any lease, or pay for the account of the Mortgagor any and all sums, costs and expenses for the discharge of taxes, assessments, water rents or other liens against the Mortgaged Property or any part thereof, or on account of insurance premiums or repairs, and also any amounts and expenses necessary to perform any covenants and conditions to be performed on the part of the Mortgagor under any lease, the amount thereof, including costs, expenses and attorneys' fees, together with interest thereon at the Default Rate from the date such expenses were paid by the Mortgagee to the date of payment to the Mortgagee by the Mortgagor, shall be included in the obligations secured by this Mortgage, and the Mortgagor shall reimburse the Mortgagee therefor upon demand.

(g)    Anything in this Mortgage or the other Loan Documents to the contrary notwithstanding, Mortgagor shall indemnify and hold Mortgagee harmless and defend it at Mortgagor's sole cost and expense against any loss or liability, cost or expense (including, without limitation, reasonable attorneys' fees and disbursements of Mortgagee's counsel, whether in-house staff, retained firms, or otherwise) and all claims, actions, procedures and suits arising out of or in connection with (a) any ongoing matters arising out of the transaction contemplated by this Mortgage, the Note and the Loan Documents and the Debt (including, but not limited to, all costs and any reappraisals of the Mortgaged Property or any other collateral for the Debt, (b) any amendment to, or restructuring of, the Debt and the Loan Documents, (c) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (d) the past, current and/or future sale or offering for sale of any interests in Mortgagor, including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the Default Rate.

- 37 -

47.    **Section 291-f Agreement.**    This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and Mortgagee shall be entitled to the benefits afforded thereby. Mortgagor shall (unless such notice is contained in such commercial lease) deliver notice of this Mortgage in form and substance reasonably acceptable to Mortgagee, to all present and future holders of any interest in any commercial lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Mortgagee the fall protections and benefits of Section 291-f.    Mortgagor shall request the recipient of any such notice to acknowledge the receipt thereof.

48.    **Single Asset Mortgagor.**    Until the Debt is paid in full, Mortgagor (a) shall not acquire any real or personal property other than the Mortgaged Property and personal property related to the operation and maintenance of the Mortgaged Property; (b) shall not operate any business other than the management and operation of the Mortgaged Property; and (c) shall not maintain its assets in a way difficult to segregate and identify.

49.    **Transfer Tax Provisions.**    (a) Mortgagor covenants and agrees that, in the event of a sale of the Mortgaged Property or other transfer, it will duly complete, execute and deliver to Mortgagee contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes, including, without limitation, any real estate transfer taxes payable under Article 31 of the New York State Tax Law or under Title 11, Chapter 21 of the Administrative Code of the City of New York, if applicable, or any successor provisions thereto (collectively, "Transfer Taxes") by reason of such sale or other transfer or recording of the deed evidencing such sale or other transfer. This subsection (a) shall apply only if this Mortgage remains outstanding after any such sale or transfer.

(b)    Mortgagor shall pay all transfer Taxes that may hereafter become due and payable with respect to any transfer, and in default thereof Mortgagee may pay the same and the amount of such payment shall be added to the Debt and, unless incurred in connection with a foreclosure of this Mortgage, be secured by this Mortgage. The provisions of this Section shall survive any transfer and the delivery of the deed in connection with any transfer.

50.    **Maximum    Principal    Amount.**    NOTWITHSTANDING ANY PROVISION SET FORTH HEREIN TO THE CONTRARY, THE MAXIMUM AMOUNT OF PRINCIPAL INDEBTEDNESS SECURED BY THIS MORTGAGE AT EXECUTION, OR WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY TIME HEREAFTER, IS U.S. $5,500,000.00 PLUS ALL INTEREST PAYABLE UNDER THE NOTE AND ALL AMOUNTS EXPENDED BY MORTGAGEE AFTER DEFAULT BY MORTGAGOR (A) FOR THE PAYMENT OF TAXES, CHARGES OR ASSESSMENTS WHICH MAY BE IMPOSED BY LEGAL REQUIREMENTS UPON THE MORTGAGED PROPERTY; (B) TO MAINTAIN THE INSURANCE REQUIRED UNDER THIS MORTGAGE; (C) FOR ANY EXPENSES INCURRED IN MAINTAINING THE MORTGAGED PROPERTY AND UPHOLDING THE LIEN OF THIS MORTGAGE, INCLUDING, BUT NOT LIMITED TO, THE EXPENSE OF ANY LITIGATION TO

- 38 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 71 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 43 of 55

PROSECUTE OR DEFEND THE RIGHTS AND LIEN CREATED BY THIS MORTGAGE, AND (D) FOR ANY AMOUNT, COST OR CHARGE TO WHICH MORTGAGEE BECOMES SUBROGATED, UPON PAYMENT, WHETHER UNDER RECOGNIZED PRINCIPLES OF LAW OR EQUITY, OR UNDER EXPRESS STATUTORY AUTHORITY.

**51.    Covenants in Addition to RPL.** All covenants hereof shall be construed as affording to Mortgagee rights in addition to and not exclusive of the rights conferred under the provisions of Sections 254, 271, 272, 273 and 291-f of the Real Property Law of the State of New York or any other applicable legal requirement.

**52.    Existing Mortgages and Notes.** Mortgagor represents and warrants to Mortgagee that there is no existing default under the provisions of the Existing Mortgages or the Existing Notes, or in the performance of any of the terms, covenants, conditions or warranties thereof on the part of Mortgagor to be performed or observed. Mortgagor hereby ratifies and confirms that the Loan is evidenced by the Note, which consolidates, extends and restates the Existing Notes, and Mortgagee and Mortgagor hereby mutually covenant and agree that the lien of this Mortgage consolidates, restates and extends the Existing Mortgages, which are hereby combined, consolidated, made equal and coordinated in lien so that together this Mortgage and Existing Mortgages shall constitute one mortgage on the Mortgaged Property in the principal sum of the Loan with interest thereon, and is to be paid in accordance with the terms hereof and the Note.

**53.    Variable Rate Note.** The Note is subject to interest rate adjustment from time to time as provided in the Note.

**54.    DHCR and Rent Requirements.** (a) Mortgagor represents and warrants to Mortgagee that (i) the Leases are in full compliance with all rent control, rent stabilization and other rent regulations laws, rules, regulations and requirements applicable thereto, including, without limitation, DHCR registration requirements and the payment of all sums required under Section 26-517 of the New York City Rent Stabilization Law, and there are no actions or proceedings before any court or administrative agency alleging a breach of any such rent control, rent stabilization or other rent regulations laws, rules, regulations and requirements (including, without limitation, actions or proceedings in respect of failure to maintain services, rent overcharges or harassment, fair market rent appeals or proceedings to compel the correction of violations affecting the Mortgaged Property or other actions or proceedings) pending before any court or administrative agency having jurisdiction thereover, and (ii) no tenant has any credit, offset or defense to the payment of the maximum lawful rent entitled to be collected in respect of the Leases, including, without limitation, any credit, offset or defense arising in connection with any rent overcharge order, rent reduction order or other order.

(b)    Mortgagor shall and does hereby agree to indemnify and hold Mortgagee free and harmless of, from and against any and all liability, loss, cost, expense, damage, claims or demands of any kind whatsoever which Mortgagee may or might incur or which may be asserted against Mortgagee by reason of Mortgagor's failure to comply fully at all times with all rent control, rent stabilization and other rent regulation laws, rules, regulations and requirements applicable to the Leases or to maintain all required services to be provided to the tenants thereunder, or by reason of the entry of any rent overcharge, rent reduction or other order in any

- 39 -

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 72 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 44 of 55

rent overcharge, harassment, fair market, rent appeal, or proceedings to compel the correction of violations affecting the Mortgaged Property or other action or proceeding. This paragraph shall survive the satisfaction and payment in full of the Debt.

55. **Patriot Act Compliance.** (c) Mortgagor will use its good faith and commercially reasonable efforts to comply with the Patriot Act (as defined below) and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. The Mortgagee shall have the right to audit the Mortgagor's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. In the event that the Mortgagor fails to comply with the Patriot Act or any such requirements of governmental authorities, then the Mortgagee may, at its option, cause the Mortgagor to comply therewith and any and all reasonable costs and expenses incurred by the Mortgagee in connection therewith shall be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable. For purposes hereof, the term "Patriot Act" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws.

Neither the Mortgagor nor any partner in the Mortgagor or member of such partner nor any owner of a direct or indirect interest in the Mortgagor (a) is listed on any Government Lists (as defined below), (b) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (c) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "Patriot Act Offense" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (a) the criminal laws against terrorism; (b) the criminal laws against money laundering, (c) the Bank Secrecy Act, as amended, (d) the Money Laundering Control Act of 1986, as amended, or the (e) Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control ("OFAC"), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists".

- 40 -

56.    **Cross Collateralization.**    This Mortgage is cross-collateralized against the two (2) properties described in Schedule "A", which make up the Premises.  In the Event of a Default under this Mortgage or the Note, Mortgagee reserves the right, in its sole and absolute discretion to exercise its remedies against each of the Properties in any such order determined by Mortgagee or to foreclose simultaneously on both Properties. Further, the foreclosure on any less than all of the Properties shall in no way be considered the exclusive remedy of Mortgagee and Mortgagee shall be permitted to foreclose with respect to both of the Properties until the entire indebtedness due under the Note is satisfied or paid in full. The contemporaneous or separate foreclosure on all or any of the properties making up the Premises shall not constitute an election of remedies by Mortgagor.

57.    **Foreclosure Remedy.**    The Mortgaged Property contains more than one tax lot.  If Mortgagee determines, in its sole and absolute discretion, that it is not feasible to own both of the tax lots, the foreclosure of this Mortgage, as set forth herein may be limited to one tax lot. Notwithstanding anything to the contrary set forth herein, the two tax lots that encompass the Mortgaged Property are interdependent and shall be foreclosed as one tax lot, in the sole and absolute discretion of Mortgagee.

**[NO FURTHER TEXT ON THIS PAGE]**

- 41 -

**IN WITNESS WHEREOF,** the parties have executed this instrument the day and year first above written.

MORTGAGOR:

D.A.B. Group LLC, a
New York limited liability company

By: _____
Name:        Isidore Perlstein
TITLE:       Authorized Signatory

MORTGAGEE:

BROOKLYN FEDERAL SAVINGS BANK

By: _____
Name:        Marc Leno
Title:        Senior Vice-President
             and Chief Lending Officer

STATE OF NEW YORK         )
                                      ) ss:

COUNTY OF NEW YORK     )

On the 8th day of November in the year 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared, ISIDORE PERLSTEIN, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

ANDREW B. WINSTON
Notary Public, State of New York
No. 01WI4811387
Qualified in Nassau County
Commission Expires Feb. 28, 2011

STATE OF NEW YORK       )
                                        ) ss:

COUNTY OF NEW YORK     )

On the 8th day of November in the year 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared, MARC LENO, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

JILL DIGREGORIO
Notary Public, State of New York
No. 01DI6120989
Qualified in Nassau County
Commission Expires January 3, 2009

SEAL

METROPOLITAN ABSTRACT
CORPORATION
One Old Country Road
Carle Place, New York 11514

## SCHEDULE A

### (DESCRIPTION OF PREMISES)



# METROPOLITAN ABSTRACT CORP.

### Title No. NY344007

### SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Orchard Street, distant 77 feet southerly from the corner formed by the intersection of the southerly side of Rivington Street with the westerly side of Orchard Street;

THENCE Westerly parallel with Rivington Street, 87 feet 8 1/2 inches to the easterly side of Allen Street;

THENCE Southerly along the easterly side of Allen Street, 25 feet;

THENCE Easterly parallel with Rivington Street, 87 feet 8 1/2 inches to the westerly side of Orchard Street;

THENCE Northerly along the westerly side of Orchard Street, 25 feet to the point or place of BEGINNING. (Lot 66)

Said Property being known as and by the street number 141 Orchard Street, New York, New York.

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Orchard Street, distant 102 feet southerly from the corner formed by the intersection of the southerly side of Rivington Street with the westerly side of Orchard Street;

THENCE Westerly parallel with Rivington Street, 87 feet 6 inches to the easterly side of Allen Street;

THENCE Southerly along the easterly side of Allen Street, 25 feet;

THENCE Easterly parallel with Rivington Street, 87 feet 6 inches to the westerly side of Orchard Street;

THENCE Northerly along the westerly side of Orchard Street, 25 feet to the point or place of BEGINNING. (Lot 67)

Said Property being known as and by the street number 139 Orchard Street, New York, New York.

**FOR CONVEYANCING ONLY**

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

## SCHEDULE B

### (EXISTING MORTGAGES)

1.    Mortgage dated March 29, 1999 made by D.A.B. GROUP LLC as Mortgagor to CFS BANK as Mortgagee in the principal sum of $825,000.00 and recorded on April 20, 1999 in Reel 2859, Page 85 in the office of the City Register of the County and State of New York (the "Register's Office").

2.    Mortgage dated May 18, 2000 made by D.A.B. GROUP LLC as Mortgagor to CFS BANK as Mortgagee in the principal sum of $575,000.00 and recorded on September 18, 2000 in Reel 3160, Page 604 in said Register's Office.

   Above Mortgages 1 and 2 were consolidated and extended by a Consolidation and Extension Agreement made by and between D.A.B. GROUP LLC and CFS BANK dated May 18, 2000 and recorded on September 18, 2000 in Reel 3160, page 1794 in said Register's Office to form a single lien of $1,400,000.00.

3.    Mortgage dated July 10, 2001 made by D.A.B GROUP LLC as Mortgagor to NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK as Mortgagee in the principal sum of $366,288.22 and recorded on August 22, 2001 in Reel 3346, Page 1193 in said Register's Office.

   Above Mortgages 1, 2 and 3 were consolidated, modified and extended by a Consolidation, Modification and Extension Agreement made by and between D.A.B. GROUP LLC and NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK dated July 10, 2001 and recorded on August 22, 2001 in Reel 3346, page 1207 in said Register's Office to form a single lien of $1,750,000.00.

   Which above mortgage, as consolidated, was assigned by an Assignment of Mortgage from the NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK to THE DIME SAVINGS BANK OF WILLIAMSBURGH dated September 3, 2002 and recorded on November 8, 2002 in Reel 3655, Page 1944 in said Register's Office.

4.    Mortgage dated September 4, 2002 made by D.A.B GROUP LLC as Mortgagor to THE DIME SAVINGS BANK OF WILLIAMSBURGH as Mortgagee in the principal sum of $972,019.84 and recorded on November 8, 2002 in Reel 3655, Page 1949 in said Register's Office.

   Above Mortgages 1, 2, 3 and 4 were consolidated, modified and extended by a Consolidation, Modification and Extension Agreement made by and between D.A.B. GROUP LLC and THE DIME SAVINGS BANK OF WILLIAMSBURGH dated September 4, 2002 and recorded on November 8, 2005 in Reel 3655, page 1962 in said Register's Office to form a single lien of $2,700,000.00.

   Which above mortgage, as consolidated, was assigned by an Assignment of Mortgage from THE DIME SAVINGS BANK OF WILLIAMSBURGH to CITIBANK, N.A. dated October 14, 2004 and recorded on January 6, 2005 in CRFN 2005000009666 in said Register's Office.

5.    Mortgage dated October 14, 2004 made by D.A.B GROUP LLC as Mortgagor to CITIBANK, N.A. as Mortgagee in the principal sum of $764,345.43 and recorded on January 6, 2005 in CRFN 2005000009667 in said Register's Office.

Above Mortgages 1, 2, 3, 4 and 5 were consolidated, modified and extended by a Consolidation, Modification and Extension Agreement made by and between D.A.B. GROUP LLC and CITIBANK, N.A. dated October 14, 2004 and recorded on January 6, 2005 in CRFN 2005000009668 in said Register's Office to form a single lien of $3,400,000.00.

Which above mortgage, as consolidated, was assigned by an Assignment of Mortgage from CITIBANK, N.A. to BROOKLYN FEDERAL SAVINGS BANK dated November 8, 2007 and intended to be immediately recorded in said Register's Office, assigning the principal sum of $3,273,304.14.    ~Simultaneously herewith~

6.    Gap Mortgage dated as of November 8, 2007 made by D.A.B GROUP LLC as Mortgagor to BROOKLYN FEDERAL SAVINGS BANK as Mortgagee in the principal sum of    $2,226,695.86 and intended to be immediately recorded in said Register's Office.    ~Simultaneously herewith~

Which above Mortgages 1, 2, 3, 4, 5 and 6 were consolidated, extended and modified by a Mortgage Consolidation, Extension, Modification and Security Agreement made by and between D.A.B. GROUP LLC and BROOKLYN FEDERAL SAVINGS BANK and dated as of November 8, 2007 and intended to be immediately recorded in said Register's Office to form a single lien in the amount of $5,500,000.00.

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 80 of 115
14-12057-scc    Claim 9-1 Part 4    Filed 12/10/14    Pg 52 of 55

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007112800233003001S29E5

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2007112800233003    **Document Date:** 11-08-2007    **Preparation Date:** 11-28-2007
**Document Type:** AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

255 MORTGAGE TAX EXEMPT AFFIDAVIT

Page Count
3

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK   )

ISIDORE PERLSTEIN, being duly sworn, deposes and says:

I am an Authorized Signatory of **D.A.B. GROUP LLC**, the borrower under those certain mortgages set forth on the attached schedule which mortgages encumbers property located at 139 and 141 Orchard Street, New York, New York 10002:

The mortgage tax due on the aforesaid mortgages was paid in full at the time of recording.

There is offered for recording simultaneously herewith a Mortgage Consolidation, Extension, Modification and Security Agreement dated November 8, 2007 between D.A.B. Group LLC and Brooklyn Federal Savings Bank (the "Modification Agreement").

After the maximum amount became secured thereby, no reloans or readvances have become secured thereunder to the date of execution of the said supplemental instrument.

The said Modification Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the above mentioned primary mortgages.

**WHEREFORE,** deponent respectfully requests that said Modification Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law.

**D.A.B. GROUP LLC,**
a New York limited liability company

By: _____
Name: Isidore Perlstein
Title:   Authorized Signatory

Sworn to before me this
8th day of November, 2007

_____
Notary Public

ANDREW B. WINSTON
Notary Public, State of New York
No. 01WI4811387
Qualified in Nassau County
Commission Expires Feb. 28, 2011



## SCHEDULE B

## (EXISTING MORTGAGES)

1.  Mortgage dated March 29, 1999 made by D.A.B. GROUP LLC as Mortgagor to CFS BANK as Mortgagee in the principal sum of $825,000.00 and recorded on April 20, 1999 in Reel 2859, Page 85 in the office of the City Register of the County and State of New York (the "Register's Office").
    Mortgage Tax Pd. $22,687.50

2.  Mortgage dated May 18, 2000 made by D.A.B. GROUP LLC as Mortgagor to CFS BANK as Mortgagee in the principal sum of $575,000.00 and recorded on September 18, 2000 in Reel 3160, Page 604 in said Register's Office.
    Mortgage Tax Pd. $15,812.50
    Above Mortgages 1 and 2 were consolidated and extended by a Consolidation and Extension Agreement made by and between D.A.B. GROUP LLC and CFS BANK dated May 18, 2000 and recorded on September 18, 2000 in Reel 3160, page 1794 in said Register's Office to form a single lien of $1,400,000.00.

3.  Mortgage dated July 10, 2001 made by D.A.B GROUP LLC as Mortgagor to NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK as Mortgagee in the principal sum of $366,288.22 and recorded on August 22, 2001 in Reel 3346, Page 1193 in said Register's Office.
    Mortgage Tax Pd. $10,072.35
    Above Mortgages 1, 2 and 3 were consolidated, modified and extended by a Consolidation, Modification and Extension Agreement made by and between D.A.B. GROUP LLC and NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK dated July 10, 2001 and recorded on August 22, 2001 in Reel 3346, page 1207 in said Register's Office to form a single lien of $1,750,000.00.

    Which above mortgage, as consolidated, was assigned by an Assignment of Mortgage from the NEW YORK COMMUNITY BANK, SUCCESSOR TO CFS BANK to THE DIME SAVINGS BANK OF WILLIAMSBURGH dated September 3, 2002 and recorded on November 8, 2002 in Reel 3655, Page 1944 in said Register's Office.

4.  Mortgage dated September 4, 2002 made by D.A.B GROUP LLC as Mortgagor to THE DIME SAVINGS BANK OF WILLIAMSBURGH as Mortgagee in the principal sum of $972,019.84 and recorded on November 8, 2002 in Reel 3655, Page 1949 in said Register's Office.
    Mortgage Tax Pd. $26,730.00
    Above Mortgages 1, 2, 3 and 4 were consolidated, modified and extended by a Consolidation, Modification and Extension Agreement made by and between D.A.B. GROUP LLC and THE DIME SAVINGS BANK OF WILLIAMSBURGH dated September 4, 2002 and recorded on November 8, 2005 in Reel 3655, page 1962 in said Register's Office to form a single lien of $2,700,000.00.

    Which above mortgage, as consolidated, was assigned by an Assignment of Mortgage from THE DIME SAVINGS BANK OF WILLIAMSBURGH to CITIBANK, N.A. dated October 14, 2004 and recorded on January 6, 2005 in CRFN 2005000009666 in said Register's Office.

5.    Mortgage dated October 14, 2004 made by D.A.B GROUP LLC as Mortgagor to CITIBANK, N.A. as Mortgagee in the principal sum of $764,345.43 and recorded on January 6, 2005 in CRFN 2005000009667 in said Register's Office.

Mortgage Tax Pd. $21,018.96

Above Mortgages 1, 2, 3, 4 and 5 were consolidated, modified and extended by a Consolidation, Modification and Extension Agreement made by and between D.A.B. GROUP LLC and CITIBANK, N.A. dated October 14, 2004 and recorded on January 6, 2005 in CRFN 2005000009668 in said Register's Office to form a single lien of $3,400,000.00.

Which above mortgage, as consolidated, was assigned by an Assignment of Mortgage from CITIBANK, N.A. to BROOKLYN FEDERAL SAVINGS BANK dated November 8, 2007 and intended to be immediately recorded in said Register's Office, assigning the principal sum of $3,273,304.14.    Simultaneously herewith

6.    Gap Mortgage dated as of November 8, 2007 made by D.A.B GROUP LLC as Mortgagor to BROOKLYN FEDERAL SAVINGS BANK as Mortgagee in the principal sum of    $2,226,695.86 and intended to be immediately recorded in said Register's Office.    Simultaneously herewith

Mortgage Tax Pd. $62,347.61

Which above Mortgages 1, 2, 3, 4, 5 and 6 were consolidated, extended and modified by a Mortgage Consolidation, Extension, Modification and Security Agreement made by and between D.A.B. GROUP LLC and BROOKLYN FEDERAL SAVINGS BANK and dated as of November 8, 2007 and intended to be immediately recorded in said Register's Office to form a single lien in the amount of $5,500,000.00.

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
14-12057-scc    Claim 9-1 Part 3    Filed 12/10/14    Pg 1 of 7
part1    Pg 84 of 115

# EXHIBIT C

## LOAN MODIFICATION AGREEMENT

      **THIS AGREEMENT** (the "**Agreement**") made as of this 21st day of August, 2008, and effective as of August 21, 2008, between **D.A.B. GROUP LLC**, a New York limited liability company having an address at 154 Acres Road, Monroe, New York 10950 ("**Borrower**") and **BROOKLYN FEDERAL SAVINGS BANK**, having an address at 81 Court Street, Brooklyn, NY 11201 ("**Lender**").

      **WHEREAS**, on November 8, 2007, Lender originated to Borrower a loan ("**Loan**") in the principal sum of FIVE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($5,500,000.00) ("**Loan Amount**").

      **WHEREAS**, the Loan is evidenced by a Consolidated Secured Promissory Note ("**Note**") in the amount of FIVE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($5,500,000.00), dated as of November 8, 2007, which Note is secured by a Mortgage, Consolidation, Extension, Modification and Security Agreement of even date therewith ("**Mortgage**"), which Mortgage encumbers the property commonly known as 139 and 141 Orchard Street, New York, New York 10002 (collectively, the "**Property**"), and was recorded in the office of the Kings County Register's Office on December 3, 2007 in CRFN 2007000596685, and by certain other documents executed by Borrower as additional security for the repayment of the sums due under the Note and Mortgage ("**Loan Documents**");

      **WHEREAS**, on the date hereof, Lender has originated to Borrower a construction loan ("**Building Loan**") in the amount of NINETEEN MILLION FIFTY THOUSAND AND 00/100 DOLLARS ($19,050,000.00), as evidenced by a Secured Building Loan Promissory Note in the same amount and dated as of the date hereof (the "**Building Note**"), as secured by a Building Loan Mortgage and Security Agreement dated as of the date hereof, encumbering the Property (the "**Building Mortgage**"), to be immediately recorded in the office of the Kings County Register's Office, and as secured by certain other documents executed by Borrower as additional security for the repayment of the sums due under the Note and Mortgage ("**Building Loan Documents**"), including but not limited to a Building Loan Agreement dated as of the date hereof (the "Building Loan Agreement").

      **WHEREAS**, Borrower and Lender have agreed to make the Loan and the Building Loan co-terminus, as accomplished in accordance with the terms and conditions of this Agreement.

      **NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Recitals</u>. The above recitals are incorporated herein.

2.    <u>Principal Sum</u>. As of the date hereof the Principal Sum of the Note is $5,500,000.00.

3.    <u>Interest Rate</u>. The term "Interest Rate", as defined in the Note, shall hereby be

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 86 of 115
14-12057-scc    Claim 9-1 Part 5    Filed 12/10/14    Pg 3 of 7

rendered null and void and completely replaced to be a per annum interest rate equal to the greater of (i) 7.75% per annum or (ii) the Floating Prime Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate. This Interest Rate, as described in this paragraph 3, shall apply to all extension terms contained in the Note, as modified by this Agreement.

4.    <u>Co-Terminus Maturity</u>. The definition of Maturity Date contained in the Note and Mortgage as modified by this Agreement shall hereby be rendered null and void and completely replaced with the definition of Maturity Date contained within the Building Note and Building Mortgage. Thus, paragraph 12 of the Note "Extension Option" is hereby rendered null and void and completely replaced with paragraphs 13 ("First Six Month Option to Extend"), 14 ("Second Six Month Option to Extend") and 15 ("Third Six Month Option to Extend") of the Building Note, except that any references to the Loan in said paragraphs of the Building Note shall be references to the Building Loan in the Note, as modified by this Agreement. All terms of paragraphs 13, 14 and 15 of the Building Note shall apply to the Note.

5.    <u>Payments</u>. Following the sentence "Maker shall pay to Holder on the date hereof the sum of $34,260.42 representing interest only for the period from the date hereof until November 30, 2007," in Paragraph 2 "Payments" of the Note, said paragraph shall hereby be considered null and void and completely replaced with the following:

"The Principal Sum and interest thereon is and shall be payable as follows:

Maker shall pay to Holder, during the Initial Term (as hereinafter defined) a payment of interest only on the unpaid balance of the Principal Sum on the first day of September, 2008 and on the first day of each calendar month thereafter up to and including the Initial Maturity Date (as hereinafter defined). During the First Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the First Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of October, 2009, and on the first day of each calendar month thereafter up to and including the first day of March, 2010. During the Second Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the Second Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of April, 2010, and on the first day of each calendar month thereafter up to and including the first day of September, 2010. During the Third Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the Third Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of October, 2010, and on the first day of each calendar month thereafter up to and including the first day of March, 2011.

On the Maturity Date, whether by acceleration, prepayment, or otherwise, the

outstanding balance of the Principal Sum, together with accrued and unpaid interest and any other amounts due and payable to the Holder hereunder, under the Mortgage (as hereinafter defined) or the Loan Documents (as hereinafter defined), shall be due and payable. Interest shall for all purposes hereunder be calculated on the basis of a 360-day year. Interest will be calculated on the actual number of days the Principal Sum is outstanding between receipt of payments. The amount of the last payment, whether by prepayment or otherwise, may vary depending on the amount of interest actually accrued between each payment.

6.   Catch-All. Any operative date(s) in the Note not herein explicitly mentioned is hereby modified to mirror the corresponding date(s) contained in the Building Note.

7.   Further Assurances and Acknowledgment of Parties Regarding Obligations. Lender and Borrower hereby confirm, renew and extend the rights, titles, security interests, liens, powers and privileges existing under or by virtue of the Loan Documents until all of the indebtedness evidenced by the Note and secured by the Loan Documents has been paid in full, and agree that this Agreement shall not in any way or manner release, discharge, affect, change, modify or impair the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges existing by virtue of, arising under or in connection with, or relating to the Note and the Loan Documents, the purpose of this Agreement being simply to renew, extend and modify the indebtedness evidenced by the Note in accordance with the terms and provisions herein and to continue and carry forward all of the rights, titles, security interests, liens, powers and privileges existing by virtue of the Loan Documents, each of which are hereby acknowledged by Borrower and Lender to be legal, valid and subsisting. Borrower and Lender acknowledge and agree that the Loan Documents secure the payment of the Note. Lender and Borrower agree that a novation is expressly denied and not intended to be effected, and except as amended or modified by this Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Loan Documents shall remain unchanged and unimpaired by this Agreement and are in full force and effect.

8.   Representations and Warranties.

Borrower hereby represents and warrants to Lender as follows:

a.   This Agreement is a valid, binding and enforceable obligation of Borrower;

b.   Borrower has no claims against the Lender;

c.   The Mortgage is a valid first lien on the Property;

d.   Borrower has no defenses to, or offsets against, any of its obligations

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 88 of 115
14-12057-scc    Claim 9-1 Part 5    Filed 12/10/14    Pg 5 of 7

under the Note, the Mortgage or under the Loan Documents;

e.    To the best of Borrower's knowledge Lender has performed and satisfied all of its obligations under the Note, the Mortgage and the Loan Documents through the date hereof;

f.    To the best of Borrower's knowledge no documentary taxes or other similar taxes are payable in connection with the transaction evidenced by this Agreement;

g.    To the best of Borrower's knowledge the Property is not in violation of any applicable laws, rules, regulations or ordinances including, without limitation, any applicable environmental laws; and

h.    Borrower has obtained all consents and authorizations necessary to execute this Agreement.

9.    <u>Fees and Expenses</u>.  Borrower shall be responsible for the payment of all costs and expenses incurred in connection with the preparation of this Agreement including, without limitation, attorney's fees and expenses, title fees and premiums, filing fees and recording costs and appraisal fees, which fees and expenses shall be added to the amount due and owing under the Loan, specifically including lender's legal fee in the amount of $250.00 as a condition precedent to this Agreement becoming effective.

10.    <u>Legal Counsel</u>.  Borrower acknowledges that it has been advised by Lender to seek the advice of legal counsel in connection with the negotiation and preparation of this Agreement.  If Borrower has chosen not to obtain legal representation, whether due to cost considerations or for other reasons, the lack of such representation shall not furnish Borrower with any defense to the enforcement of this Agreement by Lender.

11.    <u>Counterparts</u>.  To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature and acknowledgment of or that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute single instrument.  It shall not be necessary in making proof of this Agreement to produce or account for more than a single instrument.  It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto.

12.    <u>Governing Law.</u>  Notwithstanding any provision of any previous documents to the

4

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
14-12057-scc    Claim 9-1 Part 3    Filed 12/10/14    Pg 6 of 7
part1    Pg 89 of 115

contrary, this Agreement, the Note and the Loan Documents, as amended hereby, shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law), except where federal law is applicable (including, without limitation, any applicable federal law preempting state laws).

13.    Capitalized Terms.  All capitalized terms not defined herein shall have the meanings given to them in the Note, the Mortgage and the Loan Documents.  In the case of a conflict, the terms of this Agreement shall prevail.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**BROOKLYN FEDERAL SAVINGS BANK**

By: _____
Marc Leno,
Senior Vice-President and
Chief Lending Officer

**D.A.B. GROUP LLC**, a
New York limited liability company

By: _____
BEN ZHAVIAN, Member

THE UNDERSIGNED GUARANTOR
AUTHORIZES AND APPROVES OF THIS
MODIFICATION AND ACKNOWLEDGES
THE CONTINUING EFFECTIVENESS OF
THE GUARANTEE

_____
BEN ZHAVIAN, INDIVIDUALLY

5

STATE OF NEW YORK            )
                            ) ss:
COUNTY OF NEW YORK          )

On the 21st day of August in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared, BEN ZHAVIAN, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

ANDREW B. WINSTON
Notary Public, State of New York
No. 01WI4811357
Qualified in Nassau County
Commission Expires Feb. 28, 2011

STATE OF NEW YORK        )
                        ) ss:
COUNTY OF NEW YORK      )

On the 21st day of August in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared, MARC LENO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

DAVID KEUSCH
Notary Public, State of New York
No. 02KE6112510
Qualified in Nassau County
Commission Expires July 6, 2012

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 91 of 115
14-12057-scc    Claim 9-1 Part 8    Filed 12/10/14    Pg 1 of 7

# EXHIBIT D

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
14-12057-scc    Claim 9-1 Part 6    Filed 12/10/14    Pg 2 of 7
part1  Pg 92 of 115

## AFFIDAVIT AND ESTOPPEL CERTIFICATE

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF NEW YORK  )

The undersigned, being duly sworn, deposes and states:

     This Certificate is given to BROOKLYN FEDERAL SAVINGS BANK, a Federal
Savings Bank, its successors and/or assigns ("**Lender**"), by D.A.B. Group LLC("**Borrower**"),
MR. BEN ZHAVIAN ("**Guarantor**") and FLINTLOCK CONSTRUCTION SERVICES LLC
("**Contractor**") with the understanding that Lender and its counsel will rely on this Certificate in
connection with certain mortgage loans on the Building commonly known as 139 and 141
Orchard Street, New York, New York 10002 (collectively,the "**Property**"). On November 8,
2007, Lender originated a loan (the "**Project Loan**") to Borrower in the amount of
$5,500,000.00, as evidenced by a Consolidated Secured Promissory Note in said amount (the
"**Project Note**"), dated as of November 8, 2007, and as secured by a Mortgage, Consolidation,
Extension, Modification and Security Agreement (the "**Project Mortgage**"), also dated
November 8, 2007, encumbering the Property, and duly recorded in the Office of the Register for
the City of New York, County of Kings. The Project Loan is further evidenced and secured by
certain other documents executed by Borrower and certain third party guarantors as additional
security for the repayment of the sums due under the Project Note and Project Mortgage
(collectively, the "**Project Loan Documents**"). Lender further originated a building loan to
Borrower on August 21, 2008 in the amount of up to $19,050,000.00 (the "**Building Loan**", and
together with the Project Loan, unless otherwise expressly delineated herein, the "**Loans**"), as
evidenced by a Secured Building Loan Promissory Note in said amount (the "**Building Note**",
and together with the Project Note, unless otherwise expressly delineated herein, the "**Note**"),
dated as of August 21, 2008, and as secured by a Building Loan Mortgage and Security
Agreement(the "**BuildingMortgage**",and together with the Project Mortgage, unless otherwise
expressly delineated herein, the "**Mortgage**"), also dated August 21, 2008, encumbering the
Property, and duly recorded in the Office of the Register for the City of New York, County of
Kings. The Building Loan is further evidenced and secured by certain other documents executed
by Borrower and certain third party guarantors as additional security for the repayment of the
sums due under the Building Note and Building Mortgage (collectively, the "**Building Loan
Documents**", and together with the Project Loan Documents, unless otherwise expressly
delineated herein, the "**Loan Documents**"), including without limitation, that certain Building
Loan Agreement among Borrower and Lender, also dated as of August 21, 2008 (the "**Building
Loan Agreement**"). Guarantor guaranteed payment in full of both Loans, as well as Borrower's
performance of all its obligations thereunder, by way of Guarantees executed November 8, 2007
and August 21, 2008 (collectively, the "**Guarantee**"), in conjunction with each of the Loans.

     Borrower and Contractor hereby certifies as follows:

As of the date hereof the Budget (as defined in the Building Loan Agreement) for the
construction at the Property is:

1

|  | LOAN | USED | REMAINING |
|---|---|---|---|
| HARD COST | $ 15,250,000.00 | $ 2,330,136.54 | $ 12,919,863.46* |
| SOFT COST | $ 1,800,000.00 | $ 1,764,256.84 | $ 35,743.16 |
| INTEREST RESERVE | $ 2,000,000.00 | $ 952,650.84 | $ 1,047,349.16 |
| TOTAL | $ 19,050,000.00 | $5,047,044.22 | $ 14,002,955.78 |

* The sum of $12,040,000 is available to Contractor which sum may be increased by the amount, if any, by which the Cava Construction mechanic's lien is resolved, to the satisfaction of Lender, for a sum less than $960,000, provided that no assurances are made as to the availability of any such additional funds.

The Contractor and the Borrower acknowledge and agree that Lender shall have no obligation to provide any Advances to Contractor or Borrower except as provided for in the Building Loan Agreement and based upon the Advances to date as detailed in this Certificate. The Borrower and Contractor are hereby estopped from raising any claims or making any defenses contrary to the foregoing.

Lender and Borrower hereby confirm, renew and extend the rights, titles, security interests, liens, powers and privileges existing under or by virtue of the Loan Documents until all of the indebtedness evidenced by the Note and secured by the Loan Documents has been paid in full, and agree that this Certificate shall not in any way or manner release, discharge, affect, change, modify or impair the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges existing by virtue of, arising under or in connection with, or relating to the Note and the Loan Documents, the purpose of this Certificate being simply to renew and modify the indebtedness evidenced by the Note in accordance with the terms and provisions herein and to continue and carry forward all of the rights, titles, security interests, liens, powers and privileges existing by virtue of the Loan Documents, each of which are hereby acknowledged by Borrower to be legal, valid and subsisting. Borrower acknowledges and agrees that the Loan Documents secure the payment of the Note. Borrower agrees that a novation is expressly denied and not intended to be effected, and except as amended or modified by this Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Loan Documents shall remain unchanged and unimpaired by this Certificate and are in full force and effect.

Borrower, Contractor and Ben Zhavianhereby represents and warrants to Lender as follows:

a.    This Certificate is a valid, binding and enforceable obligation of Borrower and Contractor;

b.    Borrower, Ben Zhavianand Contractor have no claims against the Lender;

c.    The Project Mortgage and Building Mortgageare valid first and second liens, respectively, on the Property;

d.    Borrower and Ben Zhavianhave no defenses to, or offsets against, any of its obligations under the Note, the Mortgage, theGuarantee or under the

2

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 94 of 115
14-12057-scc    Claim 9-1 Part 8    Filed 12/10/14    Pg 4 of 7

Loan Documents;

e.    To the best of Borrower's and Ben Zhavian'sknowledge, Lender has performed and satisfied all of its obligations under the Note, the Mortgage and the Loan Documents through the date hereof;

f.    Borrower has obtained all consents and authorizations necessary to execute this Agreement;

g.    Any lien of Contractor upon the Property, now or in the future, or any judgment in connection with any claim of liability otherwise that Contractor has asserted or may assert in the future against Borrower, is expressly subordinate and subject to the liens of the Project Mortgage and Building Mortgage.

All capitalized terms not defined herein shall have the meanings given to them in Loan Documents which evidence and secure the Loans. In the case of a conflict, the terms of this Contract shall prevail.

Lender and its successors and assigns may rely upon the truth and accuracy of the certifications contained herein, and said certifications shall be binding upon Borrower and Contractor and their successors and assigns, and inure to the benefit of Lender and its successors and assigns. This Certificate shall not be deemed to alter or modify any of the terms and conditions of the Building Loan Agreement.

This Certificate is made knowing that Brooklyn Federal Savings Bank will rely on the statements hereinabove.

Dated: New York, NY
August 26 2010

By: _____

D.A.B. Group LLC, a
New York limited liability company

BEN ZHAVIAN, Member

_____
BEN ZHAVIAN, individually

FLINTLOCK CONSTRUCTION
SERVICES LLC

By: _____
STEPHEN WEISS JR, MEMBER

4

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
14-12057-scc    Claim 9-1 Part 6    Filed 12/10/14    Pg 6 of 7
part1    Pg 96 of 115

STATE OF NEW YORK            )
            ) ss:
COUNTY OF NEW YORK            )

On the 24 day of August in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared, BEN ZHAVIAN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

NANCY RODRIGUEZ
Notary Public State of New York
No. 31-4503053
Qualified in New York County
Commission Expires July 31,2013

STATE OF NEW YORK            )
            ) ss:
COUNTY OF NEW YORK            )

On the 26 day of August in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared, STEPHEN WEISS JR, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

Marguerite J. Spears
Notary Public - State of New York
No. 01SP5048926
Qualified in Westchester County
My Commission Expires 9/5/2013

5

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 97 of 115
14-12057-scc    Claim 9-1 Part 6    Filed 12/10/14    Pg 7 of 7

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 98 of 115
14-12057-scc    Claim 9-1 Part 9    Filed 12/10/14    Pg 1 of 2

# EXHIBIT E



**Kriss & Feuerstein** LLP
ATTORNEYS AT LAW

David S. Kriss, Esq.
p: 212-661-2900
f: 212-661-9397
dkriss@kandfllp.com

March 23, 2011

**BY FEDERAL EXPRESS**

Mr. Ben Zhavian
DAB Group LLC
85 Hawthorne Avenue
Valley Stream, NY 11580

Re:   139-141 Orchard Street a/k/a 138-140
Allen Street, New York, NY 10002

Dear Mr. Zhavian:

Our firm is counsel to Brooklyn Federal Savings Bank ("**Lender**"), the holder of a
Project Loan Note, Project Loan Mortgage, Building Loan Note and Building Loan Mortgage
each dated August 21, 2008 (collectively, the "**Mortgages**") encumbering the above-referenced
property with DAB Group LLC as borrower. As you are aware, the Notes (the "**Notes**") secured
by the Mortgages matured by their respective terms on March 1, 2011. Please be advised that
Lender does not consent to any further extension of the Notes and accordingly the Notes are
payable in full at this time.

Please note that this letter is sent without prejudice to any of lender's rights at law or in
equity.

Please govern yourself accordingly.

Very truly yours,

David Kriss

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 100 of 115
14-12057-scc    Claim 9-1 Part 8    Filed 12/10/14    Pg 1 of 15

# EXHIBIT F

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
14-12057-scc    Claim 9-1 Part 8    Filed 12/10/14    Pg 2 of 15
part1    Pg 101 of 115

Loan No.  18-010588-2

# SECURED BUILDING LOAN PROMISSORY NOTE

### in the principal amount of

### $19,050,000.00

### BY

## D.A.B. GROUP LLC, a
## New York limited liability company

### TO

## BROOKLYN FEDERAL SAVINGS BANK

### August 21, 2008

1

## SECURED BUILDING LOAN PROMISSORY NOTE

Up to $19,050,000.00

August 21, 2008
New York, New York

FOR VALUE RECEIVED, **D.A.B. GROUP LLC**, a New York limited liability company having an address at 154 Acres Road, Monroe, New York 10950 ("**Maker**"), promises to pay to the order of **BROOKLYN FEDERAL SAVINGS BANK**, having an office at 81 Court Street, Brooklyn, NY 11201 (hereinafter referred to, together with each subsequent holder(s) hereof, as "**Holder**"), at the above address, or at such other place as Holder may designate in writing, the principal sum of **NINETEEN MILLION FIFTY THOUSAND AND 00/100 DOLLARS ($19,050,000.00)** (the "**Principal Sum**"), with interest thereon computed from the date hereof to the Maturity Date (as hereinafter defined) at the Interest Rate (as hereinafter defined).

1. <u>**Promissory Note**</u>. This Secured Building Loan Promissory Note ("**Note**") is secured by, among other things, that certain Building Loan Mortgage and Security Agreement of even date herewith (the "**Mortgage**"), granted by Maker, pursuant to which Maker has mortgaged to Holder its property located in the County of New York and State of New York known by the street address(es) of 139 and 141 Orchard Street, New York, New York 10002, as further described in the Mortgage (collectively the "**Property**"), and by certain other documents executed by Maker and certain guarantors as additional security for the repayment of the sums due under the Note and Mortgage (the "**Loan Documents**").

2. <u>**Payments**</u>. The Principal Sum and interest thereon is and shall be payable as follows:

Maker shall pay to Holder, during the Initial Term (as hereinafter defined) a payment of interest only on the unpaid balance of the Principal Sum disbursed in accordance with the Building Loan Agreement dated the date hereof (the "**Building Agreement**") on the first day of September, 2008 and on the first day of each calendar month thereafter up to and including the Initial Maturity Date (as hereinafter defined). During the First Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the First Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of October, 2009, and on the first day of each calendar month thereafter up to and including the first day of March, 2010. During the Second Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the Second Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of April, 2010, and on the first day of each calendar month thereafter up to and including the first day of September, 2010. During the Third Extension Term (as hereinafter defined), if any, Maker shall pay to Holder a payment equal to the Third Extension Term Monthly Payment Amount (as hereinafter defined) on the first day of October, 2010, and on the

2

first day of each calendar month thereafter up to and including the first day of March, 2011.

On the Maturity Date, whether by acceleration, prepayment, or otherwise, the outstanding balance of the Principal Sum, together with accrued and unpaid interest and any other amounts due and payable to the Holder hereunder, under the Mortgage (as hereinafter defined) or the Loan Documents (as hereinafter defined), shall be due and payable. Interest shall for all purposes hereunder be calculated on the basis of a 360-day year. Interest will be calculated on the actual number of days the Principal Sum is outstanding between receipt of payments. The amount of the last payment, whether by prepayment or otherwise, may vary depending on the amount of interest actually accrued between each payment.

3.    **Prepayment**.

Provided no Event of Default (as hereinafter defined), or an event which, with or without the giving of notice and/or the passage of time, or both, would constitute an Event of Default, has occurred, the outstanding Principal Sum of this Note may be prepaid in multiples of $1,000.00, upon not less than thirty (30) days prior written notice to the Holder specifying the date on which prepayment is to be made (the "**Prepayment Date**") and upon the payment of:

A.    all accrued interest to and including the Prepayment Date;

B.    all interest which would have accrued on the principal balance of this Note after the Prepayment Date to and including the last day of the calendar month in which the Prepayment Date occurs (the "**Interest Shortfall Payment**") if such prepayment occurs on a date which is not on the first day of a month; and

C.    all other sums due under this Note, the Mortgage and all the Loan Documents;

Holder shall notify Maker of the amount and basis of determination of the required Prepayment Consideration, which shall be conclusive and binding on Maker absent manifest error.

4.    **Default**.

4.1    **Events of Default**. The failure to make any payment as and when required under this Note (after a ten day grace period, except that there shall be no grace period for the payment due on the Maturity Date) or the occurrence of any Event of Default (as such term is defined in the Mortgage or any of the Loan Documents) shall constitute an "**Event of Default**" under this Note.

4.2    **Remedies**. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as hereinafter defined), (b) Holder may, at its option, declare and demand this Note and sums due under the Mortgage and Loan Documents immediately due and payable and (c) Holder may pursue all rights and remedies available hereunder or under the Mortgage or any of the Loan Documents. Holder's rights, remedies and

3

powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property (as hereinafter defined) or any guarantor of the indebtedness evidenced hereby or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to declare and demand this Note immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

4.3    **Costs of Collection**. Maker agrees to pay all costs and expenses of collection incurred by Holder, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Holder of any of its rights or remedies hereunder or under the Mortgage or any of the Loan Documents or the protection of, or realization of, collateral, or in connection with any of Holder's collection efforts, whether or not any action or proceeding on this Note, the Mortgage or any of the Loan Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Loan Documents.

4.4    **Late Charges and Default Rate**.

(a)    If any payment is not paid within ten (10) days of the date on which it is due, Maker shall pay to Holder upon demand an amount equal to the lesser of five percent (5%) of such unpaid payment or the maximum amount permitted by applicable law in order to defray a portion of the expenses incurred by Holder in handling and processing such delinquent payment and to compensate Holder for the loss of the use of such delinquent payment, and such amount shall be deemed to be secured by the Mortgage.

(b)    From and after the occurrence of an Event of Default, regardless of whether or not there has been an acceleration of the indebtedness evidence by this Note, and at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise) interest shall accrue on the outstanding Principal Sum plus accrued and unpaid interest at a rate equal to twenty-four percent (24%) per annum (the "**Default Rate**") until all sums due under this Note, the Mortgage and the Loan Documents shall be paid in full. In addition, Maker shall pay to Holder the sum of $100.00 for any payment which is returned for any reason by Maker's bank unpaid.

5.    **Governing Law; Severability**. This Note shall be governed, construed and enforced in accordance with the internal laws of the State of New York (without giving effect to any principles of conflicts of law). The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

6.    **Waivers**. Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their

4

heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Loan Documents, and in connection with any suit, action or proceeding brought by Holder on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Holder on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

7.    **Application of Payments**. Each and every payment made by Maker to Holder in accordance with the terms of the Mortgage and the Loan Documents and all other proceeds received by Holder with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) first, if applicable in accordance with the terms of this Note, to interest at the Default Rate or other premiums and other sums payable hereunder or under the Mortgage or any of the Loan Documents (other than pursuant to subdivisions (b) or (c) of this Section 6), (b) second, to all interest at the applicable Interest Rate which shall be due and payable under this Note, and (c) third, in reduction of the outstanding balance of the Principal Sum, or in such other order and priority as determined by Holder in its sole discretion. To the extent that Maker makes a payment or Holder receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Holder.

8.    **Intentionally Omitted**.

9.    **Miscellaneous**.

9.1.    **Amendments**. This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by Holder.

5

9.2.    **Usury**. It is the intention of Maker and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Holder, or collected by Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in the Mortgage or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the "**Maximum Amount**"). If under any circumstances whatsoever fulfillment of any provision hereof or the Mortgage, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then *ipso facto*, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the principal amount owing under this Note and shall be so applied to principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to Maker or to any other person making such payment on Maker's behalf.

9.3    **Captions**. The captions of the Sections of this Note are for convenience of reference only and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

9.4.    **Notices**. Notices shall be given under this Note in conformity with the terms and conditions of the Mortgage.

9.5    **Joint and Several Obligations**. The obligations of Maker under this Note shall be joint and several obligations of Maker and of each Maker, if more than one, and of each Maker's heirs, personal representatives, successors and assigns. The filing of a petition (the "**Petition**") under Chapter 11 of the United States Code (the "**Bankruptcy Code**"), whether voluntary or involuntary, shall not stay or in any manner abridge or interfere with the right of Holder to proceed against any Maker not subject to such Petition.

9.6    **Time of Essence, Authority and Business, Commercial or Investment Purposes**. Time is of the essence of this Note and the performance of each of the covenants and agreements on Maker's part to be performed hereunder. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note, the Mortgage and the Loan Documents and that this Note, the Mortgage and the Loan Documents constitute valid and binding obligations of Maker. Maker

6

represents that the Loan evidenced by this Note is being made solely for business, commercial or investment purposes.

9.7    **No Waiver by Holder**. Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder (including the acceptance of past due payments) shall be construed as a waiver by Holder of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note, the Mortgage or under any other security document nor shall the exercise of any single or partial exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

In the event Holder shall advance or cause to be advanced any amounts to or for the benefit of Maker, on account of insurance premiums, real estate or other taxes, assessments or governmental charges or on account of any other matter which, in the sole discretion of Holder is necessary or desirable to sustain the lien of the Mortgage or protect any collateral security held by Holder or the Maker's assets, including, but not limited to, payments to avoid the filing of any lien on any of Maker's assets and/or payments to discharge any such lien, the same shall be deemed a part of the Principal Sum and shall bear interest at the applicable Interest Rate or the Default Rate, as the case may be, until paid in full.

9.8    **Obligations**. Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker hereunder or the obligations of any other person or party relating to this Note or the obligations of Maker hereunder. This Note sets forth the entire agreement and understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crossclaim of any nature whatsoever with respect hereto or the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Principal Sum, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof, or to enforce, foreclose and realize upon the liens created by the Mortgage and any other security document.

10.    **Participations**. Holder, at any time and without the consent of Maker, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the loan obligations, this Note, the Mortgage, the Loan Documents any guaranties given in connection with the loan obligations and any collateral given to secure the loan obligations.

11.    **Venue; Service of Process**. Maker consents to the personal jurisdiction over Maker by any federal or state court situated in the State of New York and consents to the laying of venue in any jurisdiction over Maker by any federal or state court situated in the State of New York. Maker irrevocably appoints Ben Zhavian having an address at 154 Acres Road, Monroe, New York 10950, as Maker's agent for receipt of service of process on Maker's behalf in connection with any suit, writ, attachment, execution or discovery of supplementary proceedings in connection with the enforcement of this Note (collectively, an "Action"). Service in any Action and any notice of sale or other notices required under Article 14 of the New York Real Property Actions and Proceedings Law shall be effected by any means permitted by the court in which any Action is filed, with a copy sent by certified mail, return receipt requested, to Maker at its address as hereinbefore stated or at such other address as shall be designated from time to time by Maker. Maker or its agent for receipt of process may designate a change of address or may substitute another agent for the service of process who shall be acceptable to Holder in its sole but reasonable discretion, by written notice to Holder by certified mail, return receipt requested, at least ten (10) days before such change of address is to become effective. MAKER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH.

12.    **Jury Trial Waiver**. MAKER, AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER, AND MAKER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MAKER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. MAKER AND HOLDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

13.    **First Six Month Option To Extend.**  Provided that (i) Maker is not in default under the terms of this Note or any of the other Loan Documents and is not in default under the terms of any of the documents (the "**Project Loan Documents**") executed in connection with that certain $5,500,000 loan entered into on November 8, 2007 made by Holder to Maker (the "**Project Loan**"), (ii) Maker has furnished all of the information and documentation Maker is required to furnish to Holder pursuant to the Note and any security documents given to Holder in connection therewith, (iii) Maker has not been late in making any of the monthly payments

8

required under the terms of the Note more than three (3) times in any twelve (12) month period, (iv) Maker has proceeded with the construction of the Construction Work (as such term is defined in the Building Agreement) in accordance with the plans and specifications approved by Lender to Lender's reasonable satisfaction, (v) the Loan amount, taken together with all sums due under the Consolidated Secured Promissory Note given under the Project Loan Documents, does not exceed 75% of the "as-completed" stabilized appraised value on a rental basis and it does not exceed 75% of the total project costs and (vi) the debt service coverage ratio of the Project as determined by an appraiser selected by Holder is calculated to be not less than 1.72x when completed, (vii) Maker shall fund the interest reserve as described in the Building Loan Agreement (the "Interest Reserve") in an amount determined by Holder to be sufficient to cover all payments due under the Loan and the Project Loan for such six month period, and (viii) Maker shall have elected to extend the Initial Maturity Date by written notice to Holder delivered not less than thirty (30) days and not more than ninety (90) days prior to the Initial Maturity Date and has extended the Project Loan for the same term, then Maker shall have the option to extend the term of the Note for an additional six (6) month period ending on March 1, 2010 (the "**First Extension Term**") on the following conditions:

13.1    The interest rate payable during the First Extension Term (the "**First Extension Term Interest Rate**") shall be a floating rate of interest equal to the greater of (i) 7.75% per annum or (ii) the Floating Prime Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate. Monthly payments during the First Extension Term will be calculated to consist of payments of interest only on the amount advanced under the Building Agreement. Interest during the First Extension Term shall be calculated on the basis of a 360 day year based on the actual number of days the Loan is outstanding between receipt of payments. The amount of the last payment, whether by prepayment or otherwise, may vary depending on the amount of interest actually accrued between each payment. In the event Maker shall have properly elected to extend the First Extension Maturity Date for the First Extension Term, this Note shall mature on March 1, 2010 (the "**First Extension Maturity Date**").

14.    **Second Six Month Option To Extend.**  Provided that (i) Maker is not in default under the terms of this Note or any of the other Loan Documents and that Maker is not in default of any Project Loan Documents, (ii) Maker has furnished all of the information and documentation Maker is required to furnish to Holder pursuant to the Note and any security documents given to Holder in connection therewith, (iii) Maker has not been late in making any of the monthly payments required under the terms of the Note more than three (3) times in any twelve (12) month period, and (iv) Maker has proceeded with the construction of the Construction Work (as such term is defined in the Building Agreement) in accordance with the plans and specifications approved by Lender to Lender's reasonable satisfaction, (v) the Loan amount, taken together with all sums due under the Consolidated Secured Promissory Note given under the Project Loan Documents, does not exceed 75% of the "as-completed" stabilized appraised value on a rental basis and it does not exceed 75% of the total project costs and (vi) the debt service coverage ratio of the Project as determined by an appraiser selected by Holder is calculated to be not less than 1.72x when completed, (vii) Maker shall fund the Interest Reserve in an amount determined by Holder to be sufficient to cover all payments due under the Loan

and the Project Loan for such six month period, and (viii) Maker shall have elected to extend the First Extension Maturity Date by written notice to Holder delivered not less than thirty (30) days and not more than ninety (90) days prior to the First Extension Maturity Date and has extended the Building Loan for the same term, then Maker shall have the option to extend the term of the Note for an additional six (6) month period ending on September 1, 2010 (the "**Second Extension Term**") on the following conditions:

14.1.    The interest rate payable during the Second Extension Term (the "**Second Extension Term Interest Rate**") shall be a floating rate of interest equal to the greater of (i) 7.75% per annum or (ii) the Floating Prime Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate. Monthly payments during the Second Extension Term will be calculated to consist of payments of interest only on the amount advanced under the Building Agreement. Interest during the Second Extension Term shall be calculated on the basis of a 360 day year based on the actual number of days the Loan is outstanding between receipt of payments. The amount of the last payment, whether by prepayment or otherwise, may vary depending on the amount of interest actually accrued between each payment. In the event Maker shall have properly elected to extend the Second Extension Maturity Date for the Second Extension Term, this Note shall mature on September 1, 2010 (the "**Second Extension Maturity Date**").

15.    **Third Six Month Option To Extend.**    Provided that (i) Maker is not in default under the terms of this Note or any of the other Loan Documents and that Maker is not in default of any Project Loan Documents, (ii) Maker has furnished all of the information and documentation Maker is required to furnish to Holder pursuant to the Note and any security documents given to Holder in connection therewith, (iii) Maker has not been late in making any of the monthly payments required under the terms of the Note more than three (3) times in any twelve (12) month period, and (iv) Maker has proceeded with the construction of the Construction Work (as such term is defined in the Building Agreement) in accordance with the plans and specifications approved by Lender to Lender's reasonable satisfaction, (v) the Loan amount, taken together with all sums due under the Consolidated Secured Promissory Note given under the Project Loan Documents, does not exceed 75% of the "as-completed" stabilized appraised value on a rental basis and it does not exceed 75% of the total project costs and (vi) the debt service coverage ratio of the Project as determined by an appraiser selected by Holder is calculated to be not less than 1.72x when completed, (vii) Maker shall fund the Interest Reserve in an amount determined by Holder to be sufficient to cover all payments due under the Loan and the Project Loan for such six month period, and (viii) Maker shall have elected to extend the Second Extension Maturity Date by written notice to Holder delivered not less than thirty (30) days and not more than ninety (90) days prior to the Second Extension Maturity Date and has extended the Building Loan for the same term, then Maker shall have the option to extend the term of the Note for an additional six (6) month period ending on March 1, 2011 (the "**Third Extension Term**") on the following conditions:

14.1.    The interest rate payable during the Third Extension Term (the "**Third Extension Term Interest Rate**") shall be a floating rate of interest equal to the greater of (i) 7.75% per annum or (ii) the Floating Prime Rate as announced in the Wall Street Journal

10

plus 175 basis points adjusted for each change in the Prime Rate. Monthly payments during the Third Extension Term will be calculated to consist of payments of interest only on the amount advanced under the Building Agreement. Interest during the Third Extension Term shall be calculated on the basis of a 360 day year based on the actual number of days the Loan is outstanding between receipt of payments. The amount of the last payment, whether by prepayment or otherwise, may vary depending on the amount of interest actually accrued between each payment. In the event Maker shall have properly elected to extend the Third Extension Maturity Date for the Third Extension Term, this Note shall mature on March 1, 2011 (the "**Third Extension Maturity Date**").

16.     **Definitions**. As used in this Note, the following terms shall have the meanings ascribed to them:

"**Extension**" has the meaning given in Sections 13, 14, 15 and 16 hereof.

"**First Extension Term**" means that period, if any, between the Initial Maturity Date and the First Extended Maturity Date.

"**First Extension Maturity Date**" means March 1, 2010.

"**First Extension Term Monthly Payment Amount**" means a monthly payment of interest only on the unpaid balance of the Principal Sum disbursed in accordance with the Building Agreement at the applicable interest rate.

"**Initial Maturity Date**" means September 1, 2009.

"**Initial Term**" means that period between the date hereof and the Initial Maturity Date.

"**Interest Rate**" means (i) during the Initial Term a per annum interest rate equal to the greater of (i) 7.75% per annum or (ii) the Floating Prime Rate as announced in the Wall Street Journal plus 175 basis points adjusted for each change in the Prime Rate, (b) during the First Extension Term the First Extension Interest Rate (c) during the Second Extension Term the Second Extension Term Interest Rate and (d) during the Third Loan Term the Third Extension Term Interest Rate.

"**Maturity Date**" means the Initial Maturity Date or, if the Extension shall have been properly effected pursuant to and in strict accordance with the terms of Sections 13, 14 and 15 hereof, the First Extended Maturity Date during the First Extension Term, or the Second Extended Maturity Date during the Second Extension Term or the Third Loan Maturity Date during the Third Loan Term.

"**Principal Sum**" shall mean an amount equal to **NINETEEN MILLION FIFTY THOUSAND AND 00/100 DOLLARS ($19,050,000.00)**

"**Second Extension Term**" means that period, if any, between the First Extended Maturity Date and the Second Extended Maturity Date.

11

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 112 of 115
14-12057-scc    Claim 9-1 Part 8    Filed 12/10/14    Pg 13 of 15

"**Second Extension Maturity Date**" means September 1, 2010.

"**Second Extension Term Monthly Payment Amount**" means a monthly payment of interest only on the unpaid balance of the Principal Sum disbursed in accordance with the Building Agreement at the applicable interest rate.

"**Loan Documents**" means collectively, this Note, the Mortgage and any other documents executed by Maker, any guarantor and/or others in favor of Holder which further evidences and/or secures the indebtedness evidenced by this Note.

"**Mortgage**" means that certain Building Loan Mortgage and Security Agreement made by Maker, as mortgagor, to Holder, as mortgagee, dated even date herewith and recorded or to be recorded against the Property as a second priority mortgage lien.

"**Note**" means this Secured Building Loan Promissory Note.

"**Property**" means, collectively, 139 and 141 Orchard Street, New York, New York 10002

"**Third Extension Term**" means that period, if any, between the Second Extended Maturity Date and the Third Extended Maturity Date.

"**Third Extension Maturity Date**" means March 1, 2011.

"**Third Extension Term Monthly Payment Amount**" means a monthly payment of interest only on the unpaid balance of the Principal Sum disbursed in accordance with the Building Agreement at the applicable interest rate.

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
14-12057-scc    Claim 9-1 Part 8    Filed 12/10/14    Pg 14 of 15
part 1    Pg 113 of 115

**IN WITNESS WHEREOF,** Maker has caused this Note to be executed by its duly authorized representative as of the day and year first above written.

D.A.B. GROUP LLC, a
New York limited liability company

By: _____
BEN ZHAVIAN, Member

STATE OF NEW YORK          )
                          ) ss:
COUNTY OF NEW YORK         )

On the 21st day of August in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared, BEN ZHAVIAN, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

ANDREW B. WINSTON
Notary Public, State of New York
No. 01WI4811367
Qualified in Nassau County
Commission Expires Feb. 28, 2011

13

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 114 of 115
14-12057-scc    Claim 9-1 Part 3    Filed 12/10/14    Pg 15 of 15

14-12057-scc    Doc 100-2    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 2
part1    Pg 115 of 115
14-12057-scc    Claim 9-1 Part 9    Filed 12/10/14    Pg 1 of 35

# EXHIBIT G