# EXHIBIT 12

FILED: NEW YORK COUNTY CLERK 03/30/2012
NYSCEF DOC. NO. 562
INDEX NO. 850044/2011
RECEIVED NYSCEF: 03/30/2012

14-12057-scc    Doc 100-13    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 12
Pg 2 of 14

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: ___BERNARD J. FRIED___   PART __60__
HON. BERNARD J. FRIED    Justice    E-FILE

ORCHARD HOTEL, LLC and CAVA CONSTRUCTION
& DEVELOPMENT, INC,
                    Plaintiffs,     INDEX NO.    __850044/2011__

                                     MOTION DATE  _____

        - v -
                                     MOTION SEQ. NO.   __004__

D.A.B. GROUP, LLC, et al.,
                    Defendants.      MOTION CAL. NO.   _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                                                    PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...   _____

Answering Affidavits — Exhibits _____      _____

Replying Affidavits _____     _____

Cross-Motion:   ☐ Yes    ☐ No

    This motion is decided in accordance with the attached Memorandum Decision.

                        SO ORDERED.

Dated: __3/28/2012__

                                                    _____
                                                         J.S.C.
                                                HON. BERNARD J. FRIED

Check one:    ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION

Check if appropriate:    ☐ DO NOT POST    ☐ REFERENCE

             ☐ SUBMIT ORDER/JUDG.         ☐ SETTLE ORDER/JUDG.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIV. PART 60
------------------------------------X
ORCHARD HOTEL, LLC,

                  Plaintiffs,

      - against -                              Index No. 850044/2011

D.A.B. GROUP, LLC, ORCHARD CONSTRUCTION,
LLC, FLINTLOCK CONSTRUCTION SERVICES LLC,
JJ K MECHANICAL INC., EDWARD
MILLS & ASSOCIATES, ARCHITECTS, PC, CASINO
DEVELOPMENT GROUP, INC., CITYWIDE CONSTRUCTION
WORKS INC., EMPIRE TRANSIT MIX INC., MARJAM
SUPPLY CO., INC., ROTAVELE ELEVATOR INC., SMK
ASSOCIATES INC., FJF ELECTRICAL CO. INC.,
CITY OF NEW YORK, NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE, and JOHN DOE #1
through JOHN DOE#100,

                  Defendants.
------------------------------------X

**APPEARANCES:**

| For the Plaintiff: | For Defendant, D.A.B. Group, LLC |
|---|---|
| MORRISON COHEN LLP<br>909 Third Avenue<br>New York, NY 10022 | FAVATA & WALLACE LLP<br>229 Seventh Street<br>Garden City, NY 11530 |
| By: Y. David Scharf, Esq.<br>    Brett D. Dockwell, Esq. | By: William G. Wallace, Esq. |
| For Counterclaim Defendants:<br>Brooklyn Federal Savings Bank and<br>State Bank of Texas: | For Defendant, Edward Mills &<br>Associates: |
| O'REILLY, MARSH & CORTESELLI P.C. | INGRAM YUZEK GAINEN<br>CARROLL & BERTOLOTTI, LLP |

1

222 Old Country Road, 2nd Floor            250 Park Avenue
Mineola, NY 11501                          New York, NY 10177

By: James G. Marsh, Esq.                   By: Tara B. Mulrooney, Esq.

**Fried, J.:**

By Motion Sequence Nos. 004 and 005, Plaintiff/Counterclaim Defendant, Orchard Hotel, LLC ("Orchard"), and Additional Counterclaim Defendants, Brooklyn Federal Savings Bank ("Brooklyn") and State Bank of Texas ("State Bank"), respectively, seek dismissal of the counterclaims asserted by Defendant/Counterclaim Plaintiff, D.A.B. Group, LLC ("DAB"). Orchard, Brooklyn and State Bank move to dismiss on the bases of CPLR 3211(a)(1) and (7), and State Bank further moves to dismiss on the basis of CPLR 3211(a)(8), lack of personal jurisdiction.

This action arises out of two loan agreements between DAB and Brooklyn (together, the "Loans"). In November, 2007, DAB and Brooklyn executed a promissory note in connection with a project loan (the "Project Loan"), for the principal sum of $5.5 million (the "Project Loan Note"). The Project Loan Note had an initial maturity date of June 1, 2008, with an optional extension term to December 1, 2008. Pursuant to a Loan Modification Agreement dated August 21, 2008, the maturity date of the Project Loan Note was extended to September 1, 2009, with three additional, optional extensions, to March 1, 2011.

In August, 2008, DAB and Brooklyn executed a second promissory note, in connection with a building loan (the "Building Loan"), for the principal sum of $19.05 million (the "Building Loan Note"). The initial maturity date of the Building Loan Note was September 1, 2009, with three optional extension terms to March 1, 2011.

Each of the Notes was secured by a mortgage on real property located at 139-141 Orchard Street, in New York City (the "Project Loan Mortgage" and the "Building Loan Mortgage"; together, the "Mortgages").

By letter dated March 23, 2011, Brooklyn notified DAB that both of the Notes secured by the Mortgages were in default and payable immediately. (*See* Compl. ¶¶ 41-42, 76-77.) On June 17, 2011, Brooklyn assigned the Notes and Mortgages to Orchard. (*See id.* ¶¶ 43-46, 78-81.) On July 1, 2011, Orchard filed this action, seeking to foreclose upon the Mortgages. DAB has asserted counterclaims against Orchard and Brooklyn, as well as against State Bank, which, through a participation agreement with Brooklyn, agreed to participate in the funding of the Project Loan and the Building Loan. There is no dispute that State Bank is not named in any of the documents evidencing the Loans.

By its counterclaims, DAB alleges that Brooklyn and State Bank fraudulently misrepresented their intention to extend the maturity date of the Loans beyond March 1, 2011. Since Orchard stands in the shoes of the assignor, this counterclaim is asserted against Orchard as well. (*See* Counterclaims[1] ¶¶ 31-49.) DAB also asserts a counterclaim for breach of contract, alleging that Brooklyn improperly delayed in funding loan advances, which, in turn, impaired DAB's ability to pay contractors and sub-contractors. DAB alleges that State Bank is liable for the actions of Brooklyn, and that Orchard, as assignee, is liable to the extent of an offset. (*See id.* ¶¶ 52-58.) Finally, although the precise cause of action asserted is unclear, DAB alleges that both Brooklyn and Orchard have miscalculated interest and late

---

[1] Verified Answer and Counterclaims, August 15, 2011.

3

charges, and have thereby exaggerated the amount due and owing on the Loans, which has left DAB unable to satisfy, or obtain refinancing on, the Loans. (*See id.* ¶¶ 61-62.)

Orchard, Brooklyn and State Bank (collectively, the "Counterclaim Defendants") now move to dismiss the counterclaims, both for failure to state a cause of action, and because they are flatly contradicted by the documentary evidence. State Bank also moves to dismiss for lack of personal jurisdiction.

I turn, first, to the counterclaim for fraudulent misrepresentation. All of the Counterclaim Defendants argue, first, that the pleadings giving rise to this counterclaim are vague and conclusory, and are thus not pled with the particularity required by CPLR 3016(b). Moreover, all Counterclaim Defendants argue, DAB has not alleged – and cannot allege – the pecuniary loss and reasonable reliance necessary to make out a claim of fraudulent misrepresentation.

On a motion to dismiss, the allegations contained in the complaint are to be taken as true, and the plaintiff provided the benefit of every possible inference. *EBC I., Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (2005). However, those "allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence, are not entitled to such consideration." *Kliebert v. McKoan*, 228 A.D.2d 232, 232 (1st Dep't 1996). Affidavits submitted in opposition to the motion "may be used freely to preserve inartfully pleaded, but potentially meritorious, claims." *Rovello v. Orofino Realty Co. Inc.*, 40 N.Y.2d 633, 635-36 (1976). To the extent that external evidence, including affidavits and documentary evidence, is considered, "the standard of review under a CPLR 3211 motion is 'whether the proponent of the pleading has

4

a cause of action, not whether he has stated one.'" *Biondi v. Beekman Hill House Apartment Corp.*, 257 A.D.2d 76, 81 (1st Dep't 1999) (*quoting Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 275 (1977)).

The allegations giving rise to the counterclaim of fraudulent misrepresentation are as follows. DAB alleges that, prior to March 1, 2011, it had negotiated with Brooklyn and State Bank for an extension of the maturity dates on the Loans, beyond March 1, 2011. DAB further alleges that, in connection with those negotiations, Brooklyn and State Bank approved a general contract between DAB and co-defendant, Flintlock Construction Services LLC ("Flintlock"), which provided for a construction completion date after March 1, 2011. (Counterclaims ¶¶ 31-33.) Furthermore, DAB alleges that, "in furtherance of their express approval" of the contract with Flintlock, Brooklyn and State Bank "drafted and required DAB to execute" an estoppel certificate (the "Estoppel Certificate"), which provides for confirmation, renewal and extension of certain rights. (*Id.* ¶¶ 34-35.) Moreover, DAB alleges, both Brooklyn and State Bank "repeatedly represented to DAB that the maturity date would be extended beyond March 1, 2011." (*Id.* ¶¶ 36-37.)

DAB alleges that these, and other statements, were false, and known by Brooklyn and State Bank to be false when made, and that they were made in order to induce DAB's reliance thereon. (*See id.* ¶¶ 38-45.) DAB alleges that, "[b]y reason of the course of dealing between the parties prior thereto, DAB's reliance . . . was justifiable." (*Id.* ¶ 42.) DAB also alleges that its reliance was justifiable in light of Brooklyn's approval of the Flintlock contract, and in light of the "confirm, renew and extend" language contained in the Estoppel Certificate. Finally, DAB alleges that, in reliance on the statements that the maturity date

5

had been extended, "DAB delayed in seeking a refinance of the loan or sale of the building project" (*id.* ¶ 45, 48), and that it "has been damaged in a sum not yet determined but believed to be in excess of fifty million dollars." (*Id.* ¶ 50.)

In order to state a claim for fraudulent misrepresentation, a claimant must plead "representation of a material existing fact, falsity, scienter, deception and injury." *Edison Stone Corp. v. 42nd Street Development Corp.*, 145 A.D.2d 249, 257 (1st Dep't 1989). "Moreover, reliance is an essential element of such a claim or defense." *Bank Leumi Trust Co. of New York v. D'evori International*, 163 A.D.2d 26, 32 (1st Dep't 1990). It is well-settled that each of these elements must be pled with the particularity required by CPLR 3016(b), the standard of which is "more stringent . . . than the generally applicable 'notice of the transaction' rule of CPLR 3013, and complaints based on fraud . . . which fail in whole or in part to meet this special test of factual pleading have consistently been dismissed." *Edison Stone Corp.*, 145 A.D.2d at 32 (*quoting Lanzi v. Brooks*, 54 A.D.2d 1057, 1058 (3d Dep't 1976), *aff'd* 43 N.Y.2d 778 (1977)).

Even a cursory review of the allegations giving rise to the counterclaim for fraudulent misrepresentation shows that they have not been pled with the requisite particularity. However, even crediting all of the factual assertions contained in both the pleadings and the affidavit in opposition to this motion, it is clear that DAB has not sufficiently alleged – and cannot allege – the required element of reliance.

Each of the Loan documents expressly prohibits oral amendment or termination, and provides that any amendment or termination must be effectuated "in writing signed by

Holder." (Project Loan Note[2] § 8.1; Building Loan Note[3] § 9.1.) The Loan documents further provide, "No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note." (Project Loan Note § 8.7; Building Loan Note § 9.7.) Finally, the Building Loan Mortgage Agreement also contains a provision setting forth DAB's acknowledgment that the Loan documents "can be extended, modified or amended only in writing executed by the Mortgagee," and, further, of DAB's "understanding that no officer or administrator of the mortgagee has the power or the authority from the Mortgagee to make an oral extension or modification or amendment" of any of the Loan documents on behalf of the Mortgagee. (Building Loan Mortgage Agreement[4] § 3.21.)

DAB does not dispute that these provisions are contained within the valid, binding agreements between the parties.

In light of these bargained-for, and agreed-upon, contractual provisions, the allegation that DAB justifiably relied on unsigned, unwritten representations by agents acting on behalf of Brooklyn or State Bank, cannot be credited.[5] Therefore, the counterclaim for fraudulent

---

[2] A copy of the Project Loan Note is annexed to the Complaint at Exhibit A.

[3] A copy of the Building Loan Note is annexed to the Complaint at Exhibit I.

[4] A copy of the Building Loan Mortgage and Security Agreement is annexed to the Complaint at Exhibit K.

[5] The e-mails attached to the Affidavit of Ben Zhavian, DAB's majority and managing member, do not alter this conclusion. Although DAB contends that these messages amount to written representations that the term of the Loans had been extended, no such representation can be teased out of these e-mails, even upon an exceedingly generous reading. (See Zhavian Aff. ¶¶ 23-24, 26, 32, Exs. F, G, H.)

7

misrepresentation is dismissed. *See Bank Leumi Trust Co. of New York v. D'Evori International*, 163 A.D.2d 26, 32 (1st Dep't 1990) (dismissing a fraud claim where the allegations were vague and conclusory, and where the "unambiguous terms of the loan agreement" rendered unjustifiable any reliance on the alleged misrepresentation.)

I turn, next, to the second counterclaim, for breach of contract. DAB alleges that, "[d]uring the term of The Building Loan, Brooklyn Federal failed and refused to make appropriate building loan advances," and "wrongfully and improperly delayed making loan advances without just cause and in breach of the terms of The Building Loan." (Counterclaims ¶¶ 52-53.) DAB further alleges that these failures and delays prevented DAB from paying subcontractors, which then resulted in judgments against DAB (*id.* ¶¶ 54-55); that those actions "constitute a breach of contract pursuant to the loan documents" (*id.* ¶ 57); that State Bank is liable as a "participant lender and joint venturer" of Brooklyn (*id.* ¶ 56); and that Orchard is liable, as assignee, "at least to the extent of an offset" (*id.* ¶ 58).

As it attempted to do in connection with the first counterclaim, DAB supplements its pleadings with the affidavit of Ben Zhavian, DAB's majority and managing member. With respect to the counterclaim for breach of contract, Zhavian avers that Brooklyn failed to fund the Project from November 2008 to June 2009, and that Brooklyn withheld funding for four months, beginning in June 2009. (Zhavian Aff. ¶¶ 8-9, 12.) More specifically, Zhavian asserts that, while Flintlock was still working on the Project, it had "submitted requisition numbers 8 and 9 totaling $1.5 million dollars for payment. . . . Brooklyn Federal failed and refused to fund the requisitions for payment." (Zhavian Aff. ¶ 31.)

Zhavian further avers that Flintlock, as general contractor, walked off the job due to

Brooklyn's failure to fund requisitions for work, "which predated even the March 1, 2010 date," and that Brooklyn failed to honor an agreement to reserve $960,000 for the payment of a mechanic's lien filed by Cava Construction & Development, Inc. (the "Cava Lien"). (*Id.* ¶¶ 38-39.)

All of the Counterclaim Defendants argue that this counterclaim must be dismissed for failure to state a claim, because the allegations, even as supplemented by the affidavit in opposition, do not set forth what contractual provision was allegedly breached. Furthermore, they argue, Zhavian's assertions of non-funding from November 2008 to June 2009 are foreclosed by the Estoppel Certificate, executed August 26, 2010, by which DAB, Zhavian and Flintlock all represented and warranted that, as of that date, they had no claims against Brooklyn, and that Brooklyn had satisfied all obligations under the Loan documents. (Estoppel Certificate[6] at 2-3.) Moreover, Brooklyn and State Bank argue that DAB fails to plead (and cannot plead) that DAB had fully complied with the terms of the Building Loan Agreement.

In order to successfully plead a claim for breach of contract, the claimant must allege the existence of a contract, the claimant's performance thereunder, the defendant's breach thereof, and resulting damages. *See, e.g. Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010). Even construing liberally the allegations contained in the complaint and the assertions contained in the Zhavian Affidavit, and granting to DAB the benefit of every favorable inference, I cannot conclude that DAB has a claim for breach of

---

[6] A copy of the Estoppel Certificate is annexed to the Complaint at Exhibit D.

contract.

In executing the Estoppel Certificate, DAB acknowledged and agreed that Brooklyn (and its successors and assigns) "shall have no obligation to provide any Advances . . . except as provided for in the Building Loan Agreement and based upon the Advances to date as detailed in this Certificate. [DAB] . . . [is] hereby estopped from raising any claims or making any defenses contrary to the foregoing." (Estoppel Certificate at 2.) DAB further represented and warranted to Brooklyn that it has "no claims against the Lender;" and that, to the best of DAB's and Zhavian's knowledge, "Lender has performed and satisfied all of its obligations under the Note, the Mortgage and the Loan Documents through the date hereof." (*Id.*) In light of these acknowledgments, any allegation relating to the denial of funding prior to August 26, 2010, is flatly contradicted by the documentary evidence and need not be considered. *See, e.g., Kliebert v. McKoan*, 228 A.D.2d 232 (1st Dep't 1996).

Therefore, the only possible bases for the breach of contract claim are Zhavian's assertions that Brooklyn and State Bank failed to "honor" an agreement to set aside $960,000 for payment of the Cava Lien, and that Brooklyn failed to fund requisitions numbered 8 and 9.

Requisitions numbered 8 and 9 were certified on March 3 and March 22, 2011, respectively. (*See* Aviram Aff.[7] Exs. 3 and 4.) On March 1, 2011, Brooklyn advised DAB that the Loans had matured, but DAB did not pay any of the amounts due. (*See* Compl. ¶¶ 40, 75.) Pursuant to Section 2.3 of the Building Loan Agreement, Brooklyn had no

---

[7] Affidavit of David Aviram in Support of Plaintiff Orchard Hotel, LLC's Motion to Dismiss the Counterclaims of D.A.B. Group, LLC, November 9, 2011.

10

obligation to fund Advances if an Event of Default, or an event that, "with the passage of time or notice, or both, would constitute an Event of Default[,] shall have occurred or be continuing." (Building Loan Mortgage Agreement § 2.3.) Since the Loans matured on March 1 and DAB had not made payment, it is clear that, by the time requisitions 8 and 9 were certified, an event that, with the passage of time or notice, would constitute an Event of Default, had occurred. Therefore, by the plain language of the Building Loan Mortgage Agreement, Brooklyn had no obligation to fund those requisitions, and to the extent the breach of contract claim is based on this alleged failure to fund, it is dismissed.

With respect to the Cava Lien, DAB contends that, "It was agreed among all parties, DAB, [Brooklyn]. . . and State Bank . . . that $960,000, the amount initially claimed by the general contractor which filed its lien, would be set aside from the loan proceeds," in order to satisfy the lien if the contractor was successful in the mechanic's lien proceeding. (Zhavian Aff. ¶ 16.) Zhavian further avers that Brooklyn, State Bank and Orchard "have each failed and refused to honor that agreement by failing to satisfy the Cava Lien," which resulted in a judgment against DAB, in favor of Cava Construction & Development, Inc., and that this judgment should be satisfied by the Counterclaim Defendants. (*Id.* ¶ 39.)

Although Zhavian does not directly refer to any particular written agreement to support this contention, the Estoppel Certificate provides:

> The sum of $12,040,000 is available to [Flintlock] which sum may be increased by the amount, if any, by which the [Cava Lien] is resolved, to the satisfaction of [Brooklyn], for a sum less than $960,000, provided that no assurances are made as to the availability of any such additional funds.

(Estoppel Certificate at 2.)

11

Nothing in this provision indicates an agreement, by Brooklyn, to pay the Cava Lien. In the absence of any such agreement, DAB's second counterclaim, for breach of contract, is dismissed.

Since the only claims against State Bank are set forth in the first and second counterclaims, which have now been dismissed, I need not reach the question of whether DAB has established personal jurisdiction over State Bank.

Finally, I turn to the third counterclaim, by which DAB asserts that Brooklyn and Orchard have exaggerated the amounts due and owing on the Loans, leaving DAB unable to satisfy, or refinance, them. Even assuming these allegations are true, I cannot discern any cognizable legal theory into which they might fit. The third counterclaim is therefore dismissed.

Accordingly, it is

ORDERED that Orchard's motion to dismiss the counterclaims (Seq. No. 004) is GRANTED; and it is further

ORDERED that the motion by Brooklyn and State Bank (Seq. No. 005) to dismiss the counterclaims, is GRANTED.

Date: March 28, 2012

ENTER:

_____
J.S.C.

**HON. BERNARD J. FRIED**