# EXHIBIT 15

FILED: NEW YORK COUNTY CLERK 03/21/2014
NYSCEF DOC. NO. 809

14-12057-scc    Doc 100-16    Filed 02/10/15    Entered 02/10/15 14:36:33    Exhibit 15
Pg 2 of 29

INDEX NO. 850044/2011
RECEIVED NYSCEF: 03/21/2014

# SUPREME COURT OF THE STATE OF NEW YORK - NEW YORK COUNTY

PRESENT:   RAMOS                                    PART   53
                                    _Justice_

ORCHARD HOTEL LLC

                                    INDEX NO.          850044/11

                                    MOTION DATE

- V -

DAB GROUP, LLC, et al               MOTION SEQ. NO.    006

                                    MOTION CAL. NO.

The following papers, numbered 1 to _____ ,were read on this motion to/for _____

Notice of Motion/Order to Show Cause - Affidavits - Exhibits  ................ No(s) _____

Answering Affidavits - Exhibits  ................ No(s) _____

Replying Affidavits  ................ No(s) _____

Upon the foregoing papers, it is ordered that this motion is

Decided in accordance with the following memorandum decision.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

DATED:   3/21/14

CHARLES E. RAMOS
J.S.C.

1. CHECK ONE         :    ☐ CASE          ☐ NON-FINAL
2. CHECK AS APPROPRIATE :   MOTIO   ☐ GRANTED   ☐ DENIED   ☒ GRANTED IN PART   ☐ OTHER
3. CHECK IF APPROPRIATE  :    ☐ SETTLE ORDER          ☐ SUBMIT ORDER
                              ☐ DO NOT POST     ☐ FIDUCIARY APPOINTMENT     ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION
------------------------------------------------X
ORCHARD HOTEL, LLC,

                                    Plaintiff,

              - against -


D.A.B. GROUP, LLC, ORCHARD CONSTRUCTION,
LLC, FLINTLOCK CONSTRUCTION SERVICE LLC,          Index No.
JJ K MECHANICAL INC., EDWARD MILLS &              850044/11
ASSOCIATES, ARCHITECTS PC, CASINO
DEVELOPMENT GROUP, INC., CITYWIDE
CONSTRUCTION WORKS INC., EMPIRE TRANSIT
MIX INC., MARJAM SUPPLY CO., INC.,
ROTAVELE ELEVATOR INC., SMK ASSOCIATES INC.,
FJF ELECTRICAL CO. INC., CITY OF NEW YORK,
NEW YORK STATE DEPARTMENT OF TAXATION &
FINANCE, LEONARD B. JOHNSON, CITY OF NEW
YORK ENVIRONMENTAL CONTROL BOARD, BROOKLYN
FEDERAL SAVINGS BANK, STATE BANK OF TEXAS,
and JOHN DOE #1 through JOHN DOE  #100, the
last 100 names being fictitious, their
true identities unknown to plaintiff, and
intended to be the tenants, occupants,
persons or corporations, if any, having or
claiming an interest in or lien upon the
premises described in the complaint,

                                    Defendants.

------------------------------------------------X

**Hon. Charles E. Ramos, J.S.C.:**

       This is an action to foreclose two mortgage loans securing

commercial property located in Manhattan.  The purpose of the

loans was to finance the development and construction of a

boutique hotel.

       In motion sequence 06, plaintiff Orchard Hotel, LLC (Orchard

Hotel) moves for summary judgment for foreclosure, to dismiss

affirmative defenses, to dismiss or sever cross claims and

counterclaims, for default judgments, to amend the caption to delete the John Doe defendants from the caption, and for the appointment of a referee to compute the amount due on the mortgages.

Plaintiff Orchard Hotel obtained the loans by assignment from defendant BFSB, the original lender, and as such is successor-in-interest to BFSB. Defendant State Bank of Texas (State Bank) was a participant in the loans.

Defendant Flintlock Construction Services, LLC (Flintlock), the holder of a mechanic's lien in the amount of $1.5 million on the property, cross-moves for summary judgment declaring that it has priority over the building loan mortgage pursuant to Lien Law § 22 and leave to amended its answer, cross-claims and counterclaim against Brooklyn Federal Savings Bank (BFSB) and defendant D.A.B. Group LLC (DAB).

Defendant Orchard Construction, LLC (Orchard), the holder of a mechanic's lien in the amount of $959,229, cross-moves for summary judgment foreclosing its lien and other relief.

Flintlock was hired as general contractor on the hotel project. DAB is the borrower and owner of the property.

BFSB extended the first loan for $5.5 million in November 2007, pursuant to a promissory note (the project loan note) and the Mortgage Consolidation, Extension, Modification and Security Agreement (the Mortgage Consolidation). The project loan note

had a maturity date of June 1, 2008.  BFSB extended the second
loan for $19.05 million on August 21, 2008, pursuant to a
promissory note (the building loan note) and the Building Loan
Agreement.  The maturity date of the building loan note was
September 1, 2009.

Also, on August 21, 2008, pursuant to a Loan Modification
Agreement (the Modification), the project loan note was given the
same maturity date and optional extensions as the building loan
note.

The parties extended the loans' maturity date to the last
optional date of March 1, 2011.  There is an alleged agreement to
extend the loan made in the month of February, 2011.  On March
23, 2011, BFSB notified DAB that the loans had matured, were
payable immediately, and did not consent to any further
extensions.  On June 17, 2011, BFSB assigned the notes and
mortgages to the Orchard Hotel, which filed this foreclosure
action on July 1, 2011.

DAB's defenses and counterclaims were based upon the
allegation that BFSB had orally agreed to extending the loans'
maturity date, in February 2011, which it thereafter reneged
upon.

Justice Fried, who previously presided over this action,
granted Orchard Hotel's, BFSB's and State Bank's motion to
dismiss DAB's counterclaims (*Orchard Hotel, LLC v D.A.B. Group,*

*LLC,* 2012 NY Slip Op 50576[U] [Sup Ct, NY County 2012], *affirmed* 106 AD3d 628 [1st Dept 2013]).

In August 2013, this Court granted DAB's motion to renew, and upon renewal, vacated the prior order of Justice Fried which dismissed DAB's counterclaims, reinstated the counterclaims, and permitted DAB to serve an amended answer adding counterclaims for fraud and breach of contract. This Court determined that, upon the discovery of a previously unproduced internal BFSB document, referred to as the Action Plan document, which refers to BFSB's agreement to extend the loans' maturity date beyond the date set forth in the loan documents, that there was a potential counterclaim as DAB had alleged.

The Court separately ordered the parties to conduct discovery, including the depositions of former executives and employees of BFSB.

By order dated February 2014, the First Department reversed, denied the motion to renew and vacated the grant of leave to serve an amended answer on the ground that the extension granted on February of 2011 as now reflected in the internal BFSB document was unenforceable because it was never approved by the Office of Thrift Supervision (*Orchard Hotel, LLC, v D.A.B. Group, LLC,* 114 AD3d 508 [1st Dept 2014]).

Orchard Hotel has also brought an action in Kings County against Ben Zhavian, the principal of DAB (Guarantor), who

4

guaranteed payment of the mortgages. The court in that action granted Orchard Hotel's summary judgment in lieu of complaint on the issue of liability, and is holding the action in abeyance as to calculation of damages pending the granting of leave by this Court to proceed (*Orchard Hotel, LLC v Zhavian*, 34 Misc 3d 1219[A], 2012 NY Slip Op 50180[U] [Sup Ct, Kings County 2012] [the Kings County action]).

## Discussion

### I. Orchard Hotel's Motions For Summary Judgment

In moving for summary judgment in a mortgage foreclosure action, the mortgagee establishes a prima facie right to foreclose by producing the mortgage, the assignment, if any, the unpaid note, and evidence of default (*see CitiFinancial Co. (DE) v McKinney*, 27 AD3d 224, 226 [1st Dept 2006]). Upon establishing its initial burden, the burden shifts to the defendant to raise a triable issue of fact on any remaining affirmative defenses or counterclaims (*Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 183, *rearg denied* 56 NY2d 175 [1982]).

Orchard Hotel has met its initial burden by submitting copies of the mortgages, notes, assignment and evidence of DAB's default by its undisputed failure to pay.

In opposition to the motion, DAB contends that it has valid affirmative defenses and that BFSB wrongfully declared the notes in default. Orchard Hotel separately moves to now dismiss DAB's

5

affirmative defenses.  Allegedly, BFSB misled DAB by falsely representing that it would extend the maturity date.

DAB makes identical arguments in support of its affirmative defenses as it made previously made in its counterclaims, which were dismissed (*Orchard Hotel, LLC* 106 AD3d 628 1st Dept 3013).  DAB's first affirmative defense is that the instant foreclosure action is barred by CPLR 3211 (a) (4), under which an action may be dismissed when there is another action pending between the same parties for the same cause of action.

The second affirmative defense is that the instant action is barred by the election of remedies provision in Real Property Actions and Proceedings Law (RPAPL) 1301.  While a foreclosure action is pending or after it results in a final judgment for the plaintiff, the plaintiff cannot commence or maintain another action to recover any part of the mortgage debt, unless the court in the foreclosure action gives permission (RPAPL 1301 [3]; *Wells Fargo Bank Minn. v Cohn*, 4 AD3d 189, 189 [1st Dept 2004]).

In the Kings County action, the Guarantor argued in support of a dismissal or a stay, pursuant to RPAPL 1301 (3), on the ground that a foreclosure action (the instant action) was already pending.  Justice Carolyn Demarest agreed, granting Orchard Hotel's motion for summary judgment in lieu of complaint on the issue of liability only, and otherwise holding the action in abeyance as to calculation of damages and entry of judgment,

pending the granting of leave by this Court to proceed (*Orchard Hotel*, 2012 NY Slip Op 50180[U], *16-17). Judge Demarest noted that an assessment of DAB's debt to Orchard Hotel would necessarily be made in this action and would be dispositive as to the amount of a judgment against the Guarantor. As the Kings County action has been stayed, Orchard Hotel may prosecute this foreclosure action without danger of incompatible or multiple decisions. Thus, DAB's first and second affirmative defenses are dismissed.

DAB's third and fourth affirmative defenses are for failure to state a cause of action for foreclosure. However, as stated, Orchard Hotel presents a prima facie case for foreclosure.

### DAB's Fifth Affirmative Defense for Estoppel

In its fifth affirmative defense for estoppel, DAB alleges that BFSB expressly extended the loan maturity date beyond March 1, 2011 by its repeated assurances to DAB that the loan had been extended. DAB's estoppel defense is premised upon BFSB's conduct in approving the new contract with Flintlock as general contractor calling for the completion of the project within the 430 day period from the contract's approval and the commencement of the work in August 2010, or until November 2011 (Flintlock contract). The Flintlock contract was approved by BFSB on August 26, 2010, and thus, construction would continue until at least November 2011, months beyond the March 1, 2011 maturity date.

7

Additionally, DAB submits evidence of BFSB's express and repeated assurances and advisements to DAB that the loan had been extended beyond the March 1, 2011 date.

DAB alleges that it was lulled into believing that the loans would be extended and in reliance upon BFSB's assurances that the loans were extended did not seek to refinance the loan or restructure the loans at a time they were performing.

An estoppel lies where a "mortgagee makes a promise in bad faith, on which the mortgagor relies to his or her detriment, the mortgagee can be equitably estopped from foreclosing on the mortgage" (*Massachusetts Mut. Life Ins. Co. v Gramercy Twins Assocs.*, 199 AD2d 214, 216-217 [1st Dept 1993]). The defense of estoppel requires no writing and may "rest upon a word or deed," and it is imposed by law in the interest of fairness to prevent enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and, in justifiable reliance upon the opposing party's words or conduct, has been misled (*Nassau Trust Co. v Montrose Concrete Products Corp.*, 56 NY2d 175, *rearg denied* 57 NY2d 674 [1982]). "A party may not, even innocently, mislead an opponent and then claim the benefit of his deception" (*Triple Cities Constr. Co. v Maryland Cas. Co.*, 4 NY2d 443, 448 [1958]).

DAB has raised a triable issue of fact with respect to its affirmative defense of estoppel. Notwithstanding the fact that

the withheld BFSB "Action Plan" document containing the recommendation to extend the loans and Office of Thrift Supervision's failure to approve the loan extension, were the subject of DAB's prior motion to renew and the First Department's most recent decision, there is evidence in the record that establishes a rational basis to find that BFSB led DAB to believe that the loans had been extended.[1]

For instance, it is undisputed that the Flintlock contract, dated March 2010, called for work to commence upon approval of the general contractor by BFSB.  The Flintlock contract provided for a 430 day time period from commencement of work to completion, which BFSB was demonstrably aware of (*see* deposition).  BFSB approved the Flintlock contract in late August 2010.  DAB submits evidence that BFSB was aware that construction thereunder would continue until at least November 2011, months beyond the March 1, 2011 maturity date set forth in the loan documents (*see* testimony of Joanne Gallo, BFSB chief credit office and senior vice president [Gallo Dep Tr 30:14-16, 32:14-21], Richard Maher, BSFB mortgage underwriter and loan administrator [Maher Dep Tr 24:3-25; 30, 75-76]).

---

[1] BFSB entered into a supervisory agreement with the OTS, whereby the OTS was provided direct oversight to BSFB as a troubled bank, culminating in BFSB's stipulation to a voluntary "cease and desist" order with respect to its banking practices on March 31, 2011 (Exhibits A-B, annexed to the Wallace Supp. Aff.).

DAB also submits testamentary evidence establishing that the
BFSB loan officers responsible for the loans had taken steps to
obtain approval for extending the maturity date of the loans,
including requesting approval from the OTS (see Gallo Dep Tr 59-
62; Gordon Dep Tr 32; Maher Dep Tr 30, 35-36, 74-76).

DAB's principal, Ben Zhavian, himself testified that BFSB
and State Bank loan officers misled him into believing that the
loans were being extended beyond March 1, 2011 to be coordinated
and run parallel with the completion dates set forth in the
Flintlock contract (Zhavian Aff., annexed to the Wallace Aff. in
Opp., ¶¶ 18-23).

DAB points to evidence in the record that shows that, 1)
around the same time BFSB loan officers were assuring DAB that
the loans had been extended, 2) the DAB project was an active
construction site, and 3) the loan had been current and
performing at all times. At this time, BFSB began marketing
DAB's loan for sale, and BFSB actually entered into a contract to
sell the loan to plaintiff, Orchard Hotel in late March 2011
(Gallo Dep Tr 42, 95; Gordon Dep Tr 21, 24). Incidentally, when
asked BFSB's motivation in putting the DAB loan up for sale
although it was a performing loan, BFSB loan consultant Bruce
Gordon testified that it was because they "didn't trust Mr.
Zhavian," DAB's principal (Gordon Dep Tr 22:21-24).

In sum, viewing the record in a light most favorable to the

10

non-movant, as the Court must do at this procedural juncture, DAB
has raised an affirmative defense that Orchard Hotel should be
estopped from proceeding with foreclosure due to the specific
assurances and conduct of its loan officers that the loans would
be extended (*Fundamental Portfolio Advisors, Inc. v Tocqueville
Asset Mgt., L.P.,* 7 NY3d 96 [2006]). A fact-finder must assess
whether DAB was misled or that it "significantly and justifiably
relied" on these assurances and conduct, including the issue of
witness credibility (*Id.; see also 205 W. 19th St. Corp. v
Plymouth Mgt. Group, Inc.,* 74 AD3d 564 [1st Dept 2010]; *Cadlerock
L.L.C. v Z. Renner,* 72 AD3d 454 [1st Dept 2010]). Because there
are questions of fact that must be resolved before application of
estoppel may be determined, Orchard Hotel is not entitled to
summary judgment and an award of foreclosure at this time.

### Flintlock's Affirmative Defenses and Cross-Motion for Partial Summary Judgment

Flintlock, the general contractor, also opposes Orchard
Hotel's motion for summary judgment on the ground that the
project loan mortgage actually constitutes a building
construction loan, and by application of Lien Law § 22 is
subordinate to its own mechanic's lien. Flintlock urges that
discovery is necessary in order to determine whether the loan is,
in fact, subject to the Lien Law. Orchard Hotel, in turn, moves
to dismiss Flintlock's affirmative defenses.

11

Under the Lien Law, a building loan contract must include the borrower's affidavit setting forth, among other things, expenses of the loan, and the "net sum available to [DAB] for the improvement" (Lien Law § 22). In addition, a building loan contract must be filed in the office of the county clerk, accompanied by a covenant stating that the mortgage is subject to the trust provisions of that section (Lien Law § 22).

Although a mechanic's lien is generally subordinate to a prior recorded mortgage (Lien Law § 13 [1]), [2]; *Atlantic Bank of N.Y. v Forrest House Holding Co.,* 234 AD2d 491, 491 [2d Dept 1996]), if a lender fails to comply with the filing requirements of the Lien Law, its entire mortgage becomes subordinate to any subsequently filed mechanic's liens (Lien Law § 22; *Aspro Mechanical Contract, Inc. v Fleet Bank, N.A.,* 1 NY3d 324, 329-31, *rearg denied* 2 NY3d 760 [2004]).

A building loan contract "is an agreement to provide a loan for the purpose of erecting a building where the funds are advanced in installments as construction progresses" (*Altshuler Shaham Provident Funds, Ltd. v GML Tower LLC,* 28 Misc 3d 475, 479 [Sup Ct, Onondaga County 2010], *affirmed* 83 AD3d 1563 [4th Dept], *lv denied* 86 AD3d 934 [2011], 18 NY3d 892 [2012]).

A building loan mortgage "means a mortgage made pursuant to a building loan contract and includes an agreement wherein and whereby a building loan mortgage is consolidated with existing

12

mortgages so as to constitute one lien upon the mortgaged property" (Lien Law § 2 [14]).

Although not immediately evident, it appears that the "Mortgage Consolidation" is the project loan agreement. The documents concerning the project loan refer to the project loan mortgage, the project loan note, the Modification, and the Mortgage Consolidation. There is no mention of another agreement.

Under the Mortgage Consolidation, the several mortgages existing on the property are consolidated to "constitute a valid single first mortgage lien covering the Mortgaged Property and securing" payment of the $5.5 million debt that DAB owes to Orchard Hotel (Exhibit 1, annexed to the Scharf Aff.). All but one of the mortgages being consolidated, along with their co-extensive loans, were created before the date of the Mortgage Consolidation. The exception is the Gap Mortgage (Gap Mortgage), securing a loan for $2.2 million (Gap Loan), dated November 8, 2007, the same date as the Mortgage Consolidation.

In his affidavit, Flintlock's principal, Stephen Weiss, testifies that Zhavian of DAB told him that architectural, engineering, drafting, and design services for the proposed hotel were completed in the summer of 2008, and were paid for using "funds from a prior project mortgage from [BFSB]" (Weiss Aff., ¶ 4). According to Flintlock, the Gap Mortgage was the "prior

13

project mortgage" that Zhavian referred to, and the Gap Loan was used to pay for construction work on the project, thereby demonstrating that the project loan is a building loan agreement subject to Lien Law § 22 filing rules.

Orchard Hotel does not deny that the project loan was used to pay for "improvement(s)" as defined in the Lien Law and the Mortgage Consolidation consolidated preexisting mortgages on the property. Nonetheless, the Mortgage Consolidation is not a building loan agreement because the latter must include an express promise to construct a building (see In re 455 CPW Assoc., 225 F3d 645, *3 [2d Cir 2000]). Without an express promise "the mere use of loan proceeds to improve or erect real property does not convert a loan into a building loan contract within the meaning of Section 22" (Id.).

The Mortgage Consolidation, Gap Mortgage and promissory note for the Gap Loan do not contain any promise, express or otherwise, that DAB will make any improvements to a building (Aviram Reply Aff.). Therefore, although the project loan may have been used to pay for improvements as defined in the Lien Law, Flintlock fails to raise a triable issue that the project loan agreement constitutes a building loan agreement.

Orchard Hotel claims that Flintlock's arguments and defenses are estopped by the Affidavit and Estoppel Certificate (Estoppel Certificate), dated August 26, 2010, which Flintlock, DAB, and

the Guarantor executed when Flintlock became general contractor. In turn, Flintlock seeks a declaration that the Estoppel Certificate is void under Lien Law § 34.

The Estoppel Certificate states that DAB, Flintlock (identified as Contractor), and the Guarantor are estopped from raising any claims or making any defenses, and that the mortgages are valid first and second liens on the property, and that any lien of the Contractor's are subordinated to the mortgages. Additionally, DAB and Flintlock both certified as to the amount of the budget for construction therein.

In general, estoppel certificates are enforceable unless there is an equitable basis for invalidation such as fraud or duress (*JRK Franklin, LLC v 164 E. 87th St. LLC*, 27 AD3d 392, 393 [1st Dept], *lv denied* 7 NY3d 705 [2006]).

Flintlock argues that the Building Loan Agreement contains a material misstatement. Flintlock points to DAB's affidavit, which purportedly materially misstates that $2 million in interest reserve is being used to pay interest on the building loan, when it fact it went to pay the outstanding interest on the project loan as well. According to Flintlock, DAB's affidavit, by not stating that the interest reserve applies to both loans, makes a material misstatement as to the net sum available for improvement.

The Building Loan Agreement defines "interest reserve" as

the amount that will be used to pay interest charges accruing under both the building loan and the project loan.

A lender that knowingly materially misrepresents the net sum available to the borrower for improvement may suffer a subordination of its mortgage to subsequently arising mechanics' liens (*Nanuet Natl. Bank v Eckerson Terrace*, 47 NY2d 243, 247-248 [1979]).

Even assuming arguendo that DAB's affidavit misstated that the interest reserve was for one loan while it may have been for both, this misstatement is not a material one. The affidavit did not misrepresent the sum available to the contractor, who was not prevented from determining the ability of the owner of the project to pay for services and supplies. Nor is there any suggestion that the alleged falsity was knowingly filed. Accordingly, the policy underlying section 22 of the Lien Law § 22 is not implicated.

That portion of Orchard Hotel's motion that seeks to dismiss Flintlock's affirmative defenses is granted insofar as they are largely boiler plate for which no supporting allegations are proffered. Flintlock's cross-motion for partial summary judgment is denied, and its ninth through thirteenth affirmative defenses, which concern its mechanic's lien, a right to surplus monies and a deficiency judgment, are not dismissed but are subject to severance, is discussed below.

16

To the extent that Flintlock cross-moves for a declaration that its lien is superior to the mortgages, for a declaration that Lien Law § 34 prevents enforcement of the Estoppel Certificate as against it, and to foreclose on its mechanic's lien, it is denied for the reasons set forth below.

II.   Severing Counter and Cross-Claims

Orchard Hotel moves to sever Flintlock's cross-claims against DAB and a counterclaim seeking foreclosure of its lien, which is granted.   Flintlock asserted cross-claims against DAB seeking money damages for breach of contract, quantum meruit, and account stated.   The cross claims have no bearing on the validity of the mortgages or DAB's default thereunder, and are otherwise unrelated both legally and factually to the merits of Orchard Hotel's mortgage foreclosure action.   Under these circumstances, severance of Flintlock's cross claims from Orchard Hotel's complaint is appropriate (CPLR 603; see generally Shanley v Callanan Industries, Inc., 54 NY2d 52, 57 [1981]).   Flintlock may pursue its counterclaim against DAB in a surplus money proceeding under RPAPL § 1361.

III.   Flintlock's Motion to Amend its Answer

Flintlock moves to amend its answer to add cross claims against BFSB and DAB for fraudulent inducement, constructive fraud in contract, and negligent misrepresentation.   As against BFSB, Flintlock seeks to add cross claims for trust fund

17

diversion and promissory estoppel.  As against Orchard Hotel,
Flintlock seeks to add a counterclaim for fraudulent inducement
and for trust fund diversion, and as against Orchard, the
affirmative defense of champerty.

On a motion to amend a pleading, a movant need not establish
the merit of the proposed new allegations, but must show that the
proffered amendment is not "palpably insufficient or clearly
devoid of merit" (*Miller v Cohen*, 93 AD3d 424, 425 [1st Dept
2012).

As against BFSB, it is noted at the outset that the Court
previously dismissed the third party complaint against BFSB in
its entirety when it granted its motion to dismiss, by decision
and order dated March 28, 2012.  Otherwise, Flintlock offers no
explanation for waiting until this juncture of litigation to seek
to add additional claims against BFSB.  In any event, Flintlock's
proposed amendments alleging in fraud are "palpably
insufficient."

Flintlock alleges that it was fraudulently induced to
execute the Estoppel Certificate and to perform work under its
contract with DAB.  These proposed cross claims are duplicative
of its breach of contract cross claim against DAB for nonpayment.
Otherwise, Flintlock does not allege any facts supporting the
claim that DAB intended not to honor the contract, that it did
not have enough money to pay Flintlock when the Estoppel

18

Certificate was entered into, or that either BFSB or DAB owed it a special duty of disclosure. The enforceable contract with DAB also bars its proposed cross-claim for promissory estoppel.

Flintlock also alleges that BFSB, in concert with DAB, diverted trust funds, in spite of the mechanic's lien filed by Cava (the prior contractor), and improperly failed to set aside monies for Cava's lien. BFSB also allegedly diverted funds by using building loan funds to pay interest on the project loan.

Before judgment or order, the trustee has discretion to apply trust funds to legitimate trust purposes as it chooses (Lien Law § 74 [1]). "[A] transaction will not be deemed an improper diversion as long as its ultimate effect is the application of the trust assets ... to the payment of beneficiary claims" (*Teman Bros. v New York Plumbers' Specialties Co.*, 109 Misc 2d 197, 201 [Sup Ct, NY County 1981). Flintlock does not provide any authority for the proposition that the failure to put aside funds for a mechanic's lien or the payment to workers, including Flintlock, constitutes a diversion of trust funds. Neither is there any merit to its allegation that paying interest on the project loan mortgage, a preexisting mortgage, was a diversion of funds.

Finally, Flintlock seeks to add the affirmative defense of champerty against Orchard. However, Orchard, an affiliate of Orchard Hotel to whom Cava assigned all of its interest in its

19

mechanic's lien, is not a stranger to this suit which obtained claims only in order to sue. Orchard took Cava's place as defendant on September 15, 2011, after this action began, and Orchard Hotel took its assignment from BFSB after DAB allegedly defaulted on the loan (*see BF Holdings I v South Oak Holding*, 251 AD2d 1, 1 [1st Dept 1998] [champerty not found where the mortgage loan had already fallen into default and been accelerated before its assignment to plaintiff]). Consequently, there is no merit to the proposed defense of champerty. Flintlock's motion to amend its answer is denied in its entirety.

IV. Orchard Hotel's Motion for Summary Judgment re Answering Defendants

Defendants SMK Associates, Inc. (SMK), Empire Transit Mix (Empire), MarJam Supply Co. (MarJam), and Edward Mills & Associates, Architects PC (Mills) are mechanic's lienors and answered the complaint.

Marjam and Empire did not assert any defenses or claims.

SMK asserted fifteen affirmative defenses, similar to Flintlock's, of which the first through the tenth have absolutely no merit, and thus, are dismissed. SMK's eleventh through the fifteenth affirmative defenses concern SMK's mechanic's lien, and are not dismissed.

Mills's first affirmative defense has no merit and is dismissed. Mills's second affirmative defense concerns the

20

mechanic's lien and is not dismissed.

V.   Orchard Hotel's Unopposed Motion for Default Judgment

Mechanic's lienors Casino Development Group, Inc. (Casino), Rotavele Elevator, Inc. (Rotavele), and the City of New York filed notices of appearance but did not answer the complaint.

Cava filed and later withdrew a motion to dismiss the complaint.  On September 15, 2011, Cava and Orchard filed a stipulation substituting Orchard for Cava as defendant.  Neither has answered the complaint.

New York State Department of Taxation and Finance and mechanic's lienors JJ K Mechanical (JJK), Citywide Construction Works, Inc. (Citywide), and FJF Electrical Co., Inc. (FJF) have not appeared or answered the complaint.

Orchard Hotel's motion for default judgments against the non-answering defendants is granted.  CPLR 3215 (f) governs the proof needed on an application for a default judgment: proof of service of summons and complaint; proof of the claim, including the amount due if it is a money claim; and proof of the default. Any defendant who has appeared must receive at least five days notice of the time and place of the application for default (CPLR 3215 [g] [1]).

Orchard Hotel, which is not seeking damages from the other defendants, demonstrates entitlement to default judgments, with the exception of Rotavele.  The Court is unable to locate

evidence that Rotavele was served with Orchard Hotel's default notice. This branch of Orchard Hotel's motion for default is denied without prejudice, pending its demonstration of proof of service.

VI.  Orchard's Cross Motion

Orchard moves for summary judgment against DAB, dismissal of DAB's affirmative defenses, a default judgment against defendants Leonard B. Johnson, City of New York and City of New York Environmental Control Board (ECB), a declaration that Orchard is entitled to be paid from the proceeds of a sale of the mortgaged premises the sum of $959,229, by virtue of its mechanic's lien, the appointment of a referee to compute the amounts due for interests, costs, and disbursements, and an order that DAB pay any deficiency that may remain after a sale of the property.

Cava worked as general contractor from October 2008 through December 2009. On February 23, 2010, Cava filed a mechanic's lien in the amount of $959,229. Cava and DAB arbitrated Cava's claim and the arbitrator awarded Cava $1,015,687 with interest at the rate of 9% per annum from January 1, 2010. The Supreme Court, Westchester County affirmed the award in a decision entered on April 12, 2011 (*Cava Constr. & Dev. v DAB Group,* index No. 5785/11). On April 14, 2011, judgment was entered in the amount of $1,133,341.61 in favor of Cava and against DAB. In May 2011, DAB filed a special proceeding in Westchester County to

22

modify the arbitration award (*DAB Group v Cava Constr. & Dev.*, index No. 11355/11). The Court has not been advised as to whether a decision has been issued in that proceeding.

On March 23, 2011, Cava commenced a lien action (Cava's action) against DAB, BFSB, and others under index number 650775/11, in New York County. Orchard Hotel commenced the instant foreclosure action in July 2011. On August 23, 2011, Cava assigned its interest in the lien and the Cava action to Orchard. On August 31, 2011, Orchard was substituted as plaintiff in place of Cava in Cava's action. On September 14, 2011, Orchard Hotel was substituted as defendant in place of BFSB in Cava's action. In October 2011, the Cava action was consolidated with the instant action.

"When a building loan mortgage is delivered and recorded a lien shall have priority over advances made on the building loan mortgage after the filing of the notice of lien ..." (Lien Law § 13 [2]). Under Lien Law § 13 (2), to the extent of advances made before the lien is filed, the building loan mortgage, whenever recorded, has priority over the lien, provided that the mortgage or building loan contract contains the covenant required by Lien Law § 13 (3) and the contract is filed as required by Lien Law § 22.

Orchard has demonstrated that the covenant and filing requirements of the Lien Law have been satisfied. The building

23

loan mortgage was recorded on September 12, 2008. Cava's
mechanic's lien was filed on February 23, 2010. Advances on the
building loan were made both before and after Cava filed its lien
(Joanne B. Gallo Aff.). Thus, Orchard's lien has priority over
the building loan mortgage in regard to advances made on the
building loan after Orchard filed its lien. Orchard's lien does
not have priority over the building loan mortgage in regard to
advances made before it filed its lien.

Orchard Hotel contends that Orchard's mechanic's lien is
superior to the other liens. Lien Law § 13 (1) provides that
mechanic's liens are on a parity regardless of when they are
filed, citing to a treatise which states that there are three
exceptions to parity, one of which is an intervening encumbrance
(8-92 Warren's Weed New York Real Property § 92.50, sec. [1]
[2012]). The filing of an intervening encumbrance affects the
priority rights of lienors. Judgments for the value of labor
performed or for material supplied on the property liened
constitute such an encumbrance (*id.*, sec. [5]). To take priority
over a mechanic's lien, a judgment must be docketed (*In re
Elmwood Farms, Inc.*, 30 BR 282 [Bankr SD NY 1983]). A mechanic's
lien has priority over any judgment not docketed at the time that
the lien is filed and over any judgment docketed after the lien
is filed (Lien Law § 13 [1]; Robert H. Bowmar, 36 NY Prac, Lien
Priorities in New York § 3:30 [Westlaw ed 2012] [NYPRAC-LIENPR §

24

3:30]).

As Orchard's arbitration judgment has not been docketed, it is not an intervening encumbrance. Nonetheless, Orchard's mechanic's lien takes priority over the mechanic's liens of its co-defendants by virtue of its priority over the building loan mortgage, in regard to advances made on the building loan after Orchard filed its lien.

To establish the right to enforce a mechanic's lien, the contractor must make a prima facie case that the lien is valid, and that it is entitled to the amount asserted in the lien (*Ruckle & Guarino, Inc. v Hangan*, 49 AD3d 267, 267 [1st Dept 2008]). An arbitrator's decision as to the value of labor is conclusive as to all parties to the arbitration in any action to foreclose a mechanic's lien (Lien Law § 35) (*Sette-Juliano Contr., Inc./Halcyon Constr. Corp. v Aetna Cas. & Sur. Co.*, 246 AD2d 142, 148 [1st Dept 1998]).

The arbitrator determined the value of Orchard's services, which DAB has challenged in its special proceeding to modify the award, pending in Westchester County. As no party disputes the validity of the lien and fails to raise technical or other meritorious defenses to the lien, Orchard has demonstrated its entitlement to enforce the lien, with interest and costs as part of the amount due a successful lienor (Lien Law § 3).

As against Johnson, ECB, and the City of New York (which

25

filed a notice of appearance), Orchard is entitled to default judgments based on their failure to answer the complaint in the Cava action.

Any other requested relief not expressly addressed has nonetheless been considered and is hereby denied.

Accordingly, it is hereby

ORDERED that plaintiff Orchard Hotel LLC's motion

1) for summary judgment on the complaint is denied;

2) dismissing or severing defendants' affirmative defenses, counterclaims, and cross claims is granted, in part, and denied, in part, as follows: as to D.A.B. Group, LLC, granted as to dismissal of affirmative defenses and denied with respect to the fifth affirmative defense of estoppel and denied as moot as to dismissal of counterclaims which have been already dismissed; as to SMK Associates, Inc., granted as to dismissal of first through tenth affirmative defenses and otherwise denied; as to Edward Mills & Associates, Architects PC, granted as to dismissal of first affirmative defense and otherwise denied; and as to Flintlock Construction Services LLC, granted as to dismissal of first through eighth affirmative defenses, and granted as to severance of cross claims and counterclaim against D.A.B. Group, Inc. and otherwise denied;

4) for default judgments against defendants Orchard Construction LLC, Casino Development Group, Inc. JJ K Mechanical

26

Inc., Citywide Construction Works Inc., City of New York, and New York State Department of Taxation and Finance is granted, and is denied as to Rotavele Elevator, Inc., without prejudice to renew on showing of service of default notice;

5) to amend the caption to delete references to "JOHN DOE" is granted;

6) for a protective order is denied; and it is further

ORDERED that the cross motion by Flintlock Construction Services LLC is denied; and it is further

ORDERED that the cross motion by Orchard Construction LLC

1) for summary judgment foreclosing its lien is denied without prejudice to be restored upon determination of pending, related proceedings,

2) for dismissal of the affirmative defenses of D.A.B. Group, Inc. is granted,

3) for default judgments against defendants Leonard B. Johnson, City of New York, and City of New York Environmental Control Board is granted; and it is further

ORDERED that plaintiff Orchard Hotel, LLC shall serve a copy of this order with notice of entry within twenty (20) days of receipt, whereupon the parties are directed to contact the Part Clerk to schedule a pre-trial conference in this matter.

Dated: March 21, 2014          ENTER:

                                              J.S.C.

                        CHARLES E. RAMOS

27