UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                          Chapter 11

D.A.B. GROUP LLC,                                                   Case No. 14-12057 (SCC)

                                    Debtor.
---------------------------------------------------------------x

### ORDER APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY AT 139-141 ORCHARD STREET, NEW YORK, NY AND OTHER ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS, TAXES, NOTICE OF PENDENCY, AND ALL OTHER NON-PERMITTED ENCUMBRANCES

Upon the motion of D.A.B. Group, LLC (the "Debtor" or the "Seller"), dated December 8, 2014, seeking approval of bidding procedures in connection with the sale of the Debtor's real property, located at 139-141 Orchard Street, New York, New York and all related included assets as set forth in the Sale Agreement, as defined below (hereinafter the "Acquired Property"), free and clear of all liens, claims, taxes, notice of pendency, and all other non-permitted encumbrances, with the same attaching to the proceeds of the sale (the "Sale Motion") (ECF #66); and the Court having entered an Amended Order on December 18, 2014 (the "Bidding Procedures Order"), *inter alia,* (i) approving the stalking horse contract with Arcade Orchard Street LLC or its assignee (the "Purchaser") to purchase the Acquired Property for $33,000,000 pursuant to an agreement of sale (the "Sale Agreement") annexed to the Sale Motion,[1] and (ii) thereafter establishing bidding procedures, including scheduling a bid deadline of January 30, 2015 for the submission of higher and better offers, and scheduling an auction for February 4, 2015 (ECF #79); and the Notice of Bidding Results (ECF #93) having been filed by the Debtor's counsel on February 3, 2015 indicating that no other conforming bids were received in excess of the offer from Purchaser in the sum of $33,000,000; and the Debtor having designated the

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Sale Agreement.

{00234516.3 / 1066-001 }

Purchaser as the high bidder; and based upon the record of the hearing held on February 10, 2015 and after considering the proffers made by the Debtor and the Purchaser as to the marketing of the Acquired Property by Massey Knakal and the good faith of the Purchaser through the Declaration of James. P. Nelson, dated February 9, 2015 (ECF #95), the Declaration of Kevin J. Nash, dated February 9, 2015 (ECF #96), and the Affidavits of William Obeid (ECF #97) and Ivaylo V. Ninov, each filed on February 9, 2015 (ECF #98); and sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT**:

A.  This Court has jurisdiction to enter this order (the "Sale Order") pursuant to 28 U.S.C §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief requested are sections 363 and 1123(a)(5)(D) of the Bankruptcy Code.

C.  Reasonable opportunity to object or be heard regarding the Sale has been afforded to all parties in interest in the bankruptcy case.

D.  The relief requested in the Sale Order is in the best interests of the Debtor, its estate, creditors, and all other parties in interest and is intended to facilitate implementation of an amended plan of reorganization, although the effectiveness of the Sale Order is not contingent on confirmation of such amended plan.

E.  The negotiation of the Sale Agreement was conducted without collusion, in good faith, and at arms-length and neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit all or any part of the sale to be avoided under section 363(n) of the Bankruptcy Code.

F.  The Acquired Property is being purchased in "good faith" by the Purchaser, and the Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.[2]

G.  The offer of $33.0 million was the only bid submitted for the Acquired Property in accordance with the Bidding Procedures Order. The purchase price of $33.0 million represents a fair and reasonable price for the Acquired Property after active marketing and establishing a process for competitive bidding. The offer of the Purchaser in the amount of $33.0 million to purchase the Acquired Property pursuant to the Sale Agreement is determined to be the highest and best bid for the Acquired Property. Its acceptance constitutes a valid and sound exercise of the Debtor's business judgment.

H.  The Sale Agreement contemplates that the Sale shall occur after entry of an Order (the "Confirmation Order") confirming the Debtor's Amended Plan of Reorganization (the "Plan") and the Debtor and the Purchaser have agreed that such proposed Confirmation Order shall be in a form reasonably acceptable to Purchaser. As provided in this Sale Order, the Sale Agreement is modified to provide that if the Confirmation Order has not been entered by or before April 15, 2015, the Sale may proceed without plan confirmation.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Sale Motion is granted; and the Debtor is authorized to sell, transfer, and convey the Acquired Property to the Purchaser (the "Sale"), free and clear of all liens, claims, taxes, notice of pendency, and all other non-permitted encumbrances, with the same

---

[2] Section 22 of the Sale Agreement authorizes the assignment of the Sale Agreement to Purchaser's permitted successors or assignees. Arcade Orchard Street LLC has disclosed that it intends, prior to the Closing Date, to assign the Sale Agreement and all obligations of the Purchaser thereunder, to a limited partnership that is principally owned by (i) Arcade and (ii) Western Heritable Investment Company (U.S.) Ltd. or an affiliate of Western Heritable, and which partnership shall be known as 139 Orchard Fee Owner L.P. or something similar.

{00234516.3 / 1066-001 }

3

attaching to the proceeds of the Sale, pursuant to the Sale Agreement, which Sale Agreement is hereby approved in all respects and shall be fully binding and enforceable upon entry of this Order.

2. Upon and following the Closing, whether such Closing occurs after entry of the Confirmation Order or otherwise, (i) all persons and entities holding any interest, lien or claim in or against the Acquired Property shall be hereby barred from asserting such interest, lien or claim against the Purchaser, its successors or assigns, or against the Acquired Property; (ii) no person or entity shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Property on account of any such interest, lien or claim; and (iii) all persons and entities in possession of the Acquired Property will be directed to surrender possession thereof to the Purchaser upon demand.

3. Upon and following the Closing, the Purchaser shall not acquire or assume, or be deemed to have acquired or assumed any obligations or liabilities of the Debtor. Accordingly, the Purchaser shall not be a successor or successor in interest to the Debtor or its creditors and equity holders with respect to any successor liability claims, including with respect to any liabilities arising from or under any tax, environmental, or other applicable law.

4. Section 2.3 of the Sale Agreement, which addresses the rights of the Purchaser in the event that the Debtor fails to convey the Acquired Property on the Closing Date, is hereby modified to provide that confirmation of a plan shall not be a condition to the Closing and, if a Confirmation Order has not been entered by the Confirmation Deadline of April 15, 2015, the Purchaser may notify the Debtor in writing that it elects to close regardless. In such case, the Closing shall occur within thirty (30) days of such notice, provided that all other conditions to Closing have been satisfied pursuant to the terms of the Sale Agreement and this

Order, and the Debtor shall be obligated to convey the Acquired Property to the Purchaser pursuant to and in accordance with the terms of the Sale Agreement as modified by this Order.

5. The terms and provisions of this Sale Order shall be binding in all respects upon the Debtor, its bankruptcy estate, its creditors and equity holders, as well as the Purchaser and its affiliates, and each of their respective successors and assigns.

6. If any person or entity that has filed financing statements, mortgages, *lis pendens*, or other document or agreement encumbering or evidencing liens on or any other claim against or interest in the Acquired Property shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, waivers, termination statements, vacatur of lis pendis, instruments of satisfaction, or releases of any such lien, claim, or interest which the person or entity has with respect to the Acquired Property, each such person or entity is hereby directed to deliver all such waivers, termination statements, vacaturs of lis pendis, instruments of satisfaction or releases to the Debtor, and the Debtor and the Purchaser are hereby authorized to execute and file such waivers, termination statements, vacaturs of *lis pendens*, instruments of satisfaction, releases, and other documents on behalf of the person or entity asserting the same, and to the extent any such waivers, termination statements, vacatur of *lis pendens*, instruments of satisfaction, or releases are not received, the Purchaser is authorized to file a copy of this Sale Order after closing which, upon filing, shall be conclusive evidence of any necessary waiver, release or termination of any possible lien, claim, judgment, lis pendis, or adverse interest.

7. Upon the Closing, the Receiver is (a) released from his duties under prior Orders of this Court with respect to the Acquired Property and (b) directed to release and turn over the Acquired Property and any Acquired Property in the possession of the Receiver or his

agents to the Purchaser, including, without limitation, copies of all books and records maintained or in the custody of the Receiver as it concerns the Acquired Property.  The Receiver shall promptly take any other steps necessary to be released from his duties with respect to the Acquired Property, provided that all parties to the New York State Court Action shall execute a Stipulation of Discharge in favor of the Receiver (in a form to be provided by the Receiver) which stipulation the Receiver shall submit to the Court in the New York State Court Action for endorsement.  The automatic stay under section 362 of the Bankruptcy Code is lifted to the extent necessary to effectuate the approval of the discharge of the Receiver by the court in the New York State Court Action.

        8.      Upon the Closing, the releases contemplated in Section 14.1(h) of the Sale Agreement shall become effective, as follows:

    (a)    Seller, on its own behalf, and on behalf of its legal and personal representatives, successors, assigns and affiliates (collectively, the "Seller Parties") shall fully release, acquit and forever discharge the Purchaser and each of its parents, subsidiaries, affiliates, predecessors, successors and assigns, and their respective officers, directors, shareholders, members, partners, employees, agents, attorneys, representatives, insurers, successors, beneficiaries, heirs and assigns (collectively, the "Purchaser Releasees") from and against and with respect to any and all actions, accounts, agreements, causes of action, complaints, charges, claims, covenants, contracts, costs, damages, demands, debts, defenses, duties, expenses, executions, fees, injuries, interest, judgments, settlements, liabilities, losses, obligations, penalties, promises, reimbursements, remedies, suits, sums of money and torts of any kind and nature whatsoever, all of the foregoing whether at law or in equity, direct or indirect, fixed or contingent, foreseeable or unforeseeable, liquidated or unliquidated, known or unknown, matured or unmatured, absolute or contingent, determinable or determinable, which Seller and any of its successors, affiliates and assigns, or anyone claiming through the Seller, ever had or now had against the Purchaser Releasees for or by reason of any matter, cause of thing whatsoever arising out of, or relating to, the Acquired Property, through the Closing, except that this release shall not release the Purchaser from any of its obligations under the Sale Agreement.

(b) The Purchaser, on its own behalf, and on behalf of its legal and personal representatives, successors, assigns and affiliates (collectively, the "Purchaser Parties") shall fully release, acquit and forever discharge Seller and each of its parents, subsidiaries, affiliates, predecessors, successors and assigns, and their respective officers, directors, shareholders, members, partners, employees, agents, attorneys, representatives, insurers, successors, beneficiaries, heirs and assigns (collectively, the "Seller Releasees") from and against and with respect to any and all actions, accounts, agreements, causes of action, complaints, charges, claims, covenants, contracts, costs, damages, demands, debts, defenses, duties, expenses, executions, fees, injuries, interest, judgments, settlements, liabilities, losses, obligations, penalties, promises, reimbursements, remedies, suits, sums of money and torts of any kind and nature whatsoever, all of the foregoing whether at law or in equity, direct or indirect, fixed or contingent, foreseeable or unforeseeable, liquidated or unliquidated, known or unknown, matured or unmatured, absolute or contingent, determinable or determinable, which the Purchaser and any of its successors, affiliates and assigns, or anyone claiming through the Purchaser, ever had or now had against the Seller Releasees for or by reason of any matter, cause of thing whatsoever arising out of, or relating to, the Acquired Property, through the Closing, except that this release shall not release the Seller Releasees from any obligations under the Sale Agreement or any order of this Court.

9. Pursuant to section 1146(a) of the Bankruptcy Code, but expressly subject to confirmation of a plan in bankruptcy pursuant section 1129 of the Bankruptcy Code prior to the Closing, the Sale shall be deemed to be a transfer to implement such plan, and the making or delivery of any deed or other instrument of transfer shall not be subject to any deed or real estate transfer taxes ordinarily imposed by the City or State of New York.  In the event that the Closing on the Acquired Property does not take place pursuant to or in furtherance of a confirmed plan under section 1129 of the Bankruptcy Code, then the transfer tax exemptions under section 1146(a) shall not apply, without affecting the enforceability of the other provisions of this Sale Order, and pursuant to the terms of the Sale Agreement, the Debtor shall promptly pay such taxes.

10. This Court shall retain exclusive jurisdiction with respect to all matters or disputes arising from or relating to the Acquired Property and the implementation of this Sale Order.

Dated: New York, New York
February 19, 2015

/S/ Shelley C. Chapman
Honorable Shelley C. Chapman
United States Bankruptcy Judge