# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  FIRST DEPARTMENT

-------------------------------------------------------------------x

Application of

ORCHARD HOTEL, LLC,

<em>Petitioner</em>,

For a Judgment Pursuant to CPLR Article 78

           –against–

HON. CHARLES E. RAMOS, Justice of the Supreme
Court,

            –and–

D.A.B. GROUP LLC; ORCHARD CONSTRUCTION,
LLC; FLINTLOCK CONSTRUCTION SERVICES
LLC; JJ K MECHANICAL INC.; EDWARD MILLS
& ASSOCIATES, ARCHITECTS PC; CASINO
DEVELOPMENT GROUP, INC.; CITYWIDE
CONSTRUCTION WORKS INC.; EMPIRE
TRANSIT MIX INC.; MARJAM SUPPLY CO., INC.;
ROTAVELE ELEVATOR INC.; SMK ASSOCIATES
INC.; FJF ELECTRICAL CO. INC.; CITY OF NEW
YORK; NEW YORK STATE DEPARTMENT OF
TAXATION & FINANCE; LEONARD B. JOHNSON;
CITY OF NEW YORK ENVIRONMENTAL
CONTROL BOARD; BROOKLYN FEDERAL
SAVINGS BANK; and STATE BANK OF TEXAS,

<em>Respondents</em>.

-------------------------------------------------------------------x

Index No. 850044/2011
Hon. Charles E. Ramos

NOTICE OF
<u>PETITION</u>

PLEASE TAKE NOTICE that upon (i) the annexed Petition of Orchard

Hotel, LLC ("Petitioner"), verified on June 23, 2014, (ii) the Affirmation of Y.

David Scharf, sworn to on June 23, 2014, and the exhibits annexed thereto, (iii) the

Affidavit of Simon Miller, sworn to on June 23, 2014, and the exhibits thereto, (iv)

#5173494 v1 \022022 \0004

the Affidavit of Howard Goldman, sworn to on June 23, 2014, and the exhibits annexed thereto, and (v) the Affidavit of Edward Martell, sworn to on June 19, 2014, an application will be made to this Court at the Courthouse located at 27 Madison Avenue, New York, New York, at 10 o'clock in the forenoon on the 14th day of July 2014, or as soon thereafter as counsel may be heard, pursuant to Article 78 of the Civil Practice Law and Rules and this Court's original jurisdiction as a branch of the Supreme Court for (i) emergency relief authorizing the Court-appointed Receiver, Simon Miller, to take all necessary and appropriate action to protect the Mortgaged Property's zoning entitlements and building permits, which, absent immediate action, will be revoked on July 1, 2014, (ii) an order granting summary judgment to Petitioner and foreclosing the two commercial mortgages in suit, or in the alternative, a writ of mandamus directing the respondent IAS Court to enter such order, (iii) a writ of prohibition restraining the respondent IAS Court from trying the issue of reasonable reliance because this Court has twice ruled that, as a matter of law, respondent D.A.B. Group LLC ("DAB") could not have reasonably relied on an alleged oral extension of the loans' maturity date, and (iv) granting such other and further relief as the Court deems just and proper.

A verified answer and supporting affidavits, if any, are to be served at least seven days before the return date of this application.

Venue to entertain this proceeding is properly placed before this Court pursuant to CPLR §§ 7804(b) and 506(b)(1) because this is a proceeding against a justice of the Supreme Court of New York County and the action from which this proceeding originated is triable in the First Judicial Department.

Dated: New York, New York
      June 23, 2014

MORRISON COHEN LLP

By: _____
    Jerome Tarnoff
    Y. David Scharf
    Danielle C. Lesser
    Brett D. Dockwell
909 Third Avenue
New York, New York 10022
(212) 735-8600
*Attorneys for Petitioner Orchard Hotel LLC*

TO:   Parties Listed on Schedule A

SCHEDULE A

*By personal service*

HON. CHARLES E. RAMOS
Supreme Court, New York County
60 Centre Street, Room 691
New York, NY 10007

ERIC T. SCHNEIDERMAN
Attorney General of the
    State of New York
120 Broadway, 24th Floor
New York, NY 10271

*By first-class mail*

FAVATA & WALLACE, LLP
William G. Wallace, Esq.
229 Seventh Street, Suite 300
Garden City, NY 11530
(516) 742-9494
*Attorneys for Defendant D.A.B. Group, LLC*

HOLLANDER & STRAUSS LLP
Larry Hollander, Esq.
40 Cuttermill Road, Suite 203
Great Neck, NY 11021
(516) 498-1000
*Attorneys for Flintlock Construction
    Services, LLC*

SACCO & FILLAS, LLP
John P. Gloumis, Esq.
31-19 Newtown Ave, 7th Floor
Astoria New York 11102
(718) 746-3440, ext. 228
*Attorneys for SMK Associates, Inc.*

O'REILLY, MARSH &
CORTESELLI, P.C.
James Marsh, Esq.
222 Old Country Road, 2nd Fl.
Mineola, NY 11501
(516) 741-1818
*Attorneys for Brooklyn Federal Savings
    Bank and State Bank of Texas*

INGRAM YUZEK GAINEN
    CARROLL & BERTOLOTTI LLP
Tara B. Mulrooney, Esq.
250 Park Ave.
New York, NY 10177
(212) 907-9600
*Attorneys for Edward Mills & Assocs.,
Architects, PC*

JJK Mechanical Inc.
251-25 Hand Rd.
Little Neck, NY 11362
(718) 225-8885

NEIL L. FUHRER & ASSOCS., LLP
Neil Fuhrer, Esq.
477 Madison Ave.
New York, NY 10022
(212) 681-7888
*Attorneys for Empire Transit Mix, Inc.*

RABINOWITZ & GALINA, ESQS.
Gayle A. Rosen, Esq.
94 Willis Ave.
Mineola, NY 11501
(516) 739-8222
*Attorneys for Rotavele Elevator Inc.*

SCHEDULE A

James M. Holiber, Esq.
Corporate Counsel
20 Rewe St.
Brooklyn, NY 11211
(718) 388-6465
*Attorney for MarJam Supply Co., Inc.*

Gary Schoer, Esq.
North Shore Atrium
6800 Jericho Turnpike, Suite 108W
Syosset, NY 11791
(516) 496-3500
*Attorney for Casino Development
    Group, Inc.*

New York City Department of Finance
Office of Legal Affairs
Attn: Linda Susswein, Esq.
345 Adams Street, 3rd Fl.
Brooklyn, NY 11201
(718) 403-3917

Citywide Construction Works Inc.
Attn: Farris Fayyaz, Esq.
818 Coney Island Ave.
Brooklyn, NY 11218
(718) 856-4747

FJF Electrical Co. Inc.
4242 Merrick Rd.
Massapequa, NY 11758
(516) 799-0980

NEW YORK STATE OFFICE OF
    THE ATTORNEY GENERAL
Attn: Charles E. Gary, Esq.
300 Motor Parkway, Suite 205
Hauppauge, NY 11788
(631) 231-2413
*Attorney for New York State
    Department of Taxation & Finance*

Leonard B. Johnson
295 Third Avenue, Apt. 3B
New York, NY 10010

MICHAEL A. CARDOZO
Corporation Counsel of the
    City of New York
Attn: Karen Ross, Esq.
100 Church Street, Room 3-106
New York, NY 10007

NEW YORK CITY
    DEPARTMENT OF FINANCE
Attn: Ron Medley, Esq.
345 Adams Street, 3rd Fl.
Brooklyn, NY 11201
(718) 403-4915
*Attorney for City of New York
    Environmental Control Board*

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  FIRST DEPARTMENT
-----------------------------------------------------------------x
Application of

ORCHARD HOTEL, LLC,

                    *Petitioner,*

For a Judgment Pursuant to CPLR Article 78

          –against–

HON. CHARLES E. RAMOS, Justice of the
Supreme Court,

          –and–

D.A.B. GROUP LLC; ORCHARD
CONSTRUCTION, LLC; FLINTLOCK
CONSTRUCTION SERVICES LLC; JJ K
MECHANICAL INC.; EDWARD MILLS &
ASSOCIATES, ARCHITECTS PC; CASINO
DEVELOPMENT GROUP, INC.; CITYWIDE
CONSTRUCTION WORKS INC.; EMPIRE
TRANSIT MIX INC.; MARJAM SUPPLY CO.,
INC.; ROTAVELE ELEVATOR INC.; SMK
ASSOCIATES INC.; FJF ELECTRICAL CO.
INC.; CITY OF NEW YORK; NEW YORK
STATE DEPARTMENT OF TAXATION &
FINANCE; LEONARD B. JOHNSON; CITY OF
NEW YORK ENVIRONMENTAL CONTROL
BOARD; BROOKLYN FEDERAL SAVINGS
BANK; and STATE BANK OF TEXAS,

                    *Respondents.*

-----------------------------------------------------------------x

Index No. 850044/2011
Hon. Charles E. Ramos

VERIFIED PETITION FOR
WRITS OF PROHIBITION
AND MANDAMUS,
SUMMARY JUDGMENT &
EMERGENCY RELIEF

#5130445 v5 \022022 \0004

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

PARTIES.......................................................................................... 9

JURISDICTION AND VENUE ........................................................... 11

BACKGROUND ............................................................................... 11

   I.    The Status of Construction of the Mortgaged Property ...................... 11

   II.   The July 1, 2014 Revocation of the Mortgaged Property's
       Building Permits................................................................... 13

   III.  The Expiration of the Mortgaged Property's Zoning Entitlements .... 15

   IV.  Procedural History................................................................. 17

   V.   The Relevant Orders............................................................... 22

       A.   Justice Fried's March 30, 2012 Decision and Orders and
             This Court's May 28, 2013 Affirmance.................................... 22

       B.   This Court's February 18, 2014 Decision and Order ............... 24

       C.   Justice Ramos' March 21, 2014 Order ................................... 27

   VI.  The Only Resolution of this Action Is a Court-Ordered
       Foreclosure Sale .................................................................. 33

ARGUMENT .................................................................................... 35

   I.    Emergency Relief Should Be Granted to Protect the Mortgaged
       Property Against Structural Damage and Potential Loss of Its
       Zoning Entitlements .............................................................. 35

   II.   Summary Judgment Should Be Granted in Favor of Petitioner, or
       in the Alternative, A Writ of Mandamus Should Be Granted

#5130445 v5 \022022 \0004

i

Compelling The IAS Court To Enter Such an Order Because the
IAS Court Has Already Held that Petitioner Is Entitled to
Summary Judgment as a Matter of Law .............................................41

III.    A Writ of Prohibition Should Be Granted to Enjoin the IAS Court
From Implementing an Order that Fails to Adhere to the Prior
Orders of the Appellate Division and of a Court of Coordinate
Jurisdiction ..........................................................................................43

        A.    The IAS Court Lacked the Authority to Deviate from this
              Court's Two Prior Orders and Justice Fried's Prior Orders .....46

        B.    Appeal of the IAS Court's Order Is Not an Adequate
              Remedy .................................................................................53

CONCLUSION.............................................................................................54

#5130445 v5 \022022 \0004

# TABLE OF AUTHORITIES

<span style="float:right">**Page**</span>

Baron v. Baron,
128 A.D.2d 821 (2d Dep't 1987) ....................................................51

Barton Realty Corp. v. Mangan,
25 A.D.2d 730 (1st Dep't 1966) ...................................................52

Bass Building Corp. v. Village of Pomona,
142 A.D.2d 657 (2d Dep't 1988) ....................................................1

Board of Managers of the 235 E. 22nd St. Condo. v. Lavy Corp.,
233 A.D.2d 158 (1st Dep't 1996) ..................................................37

Brown v. Brown,
169 A.D.2d 487 (1st Dep't 1991) ..................................................49

Carmona v. Mathisson,
92 A.D.3d 492 (1st Dep't 2012) ...................................................50

City of White Plains v. Griffen,
255 A.D. 1003 (2d Dep't 1938) .................................................1, 38

Copeland v. Salomon,
56 N.Y.2d 222 (1982) ...........................................................3, 40

Cottle v. Wright,
140 Misc. 373 (Sup. Ct. Chautauqua Cnty. 1931) ...............................40

CrossLand Sav., FSB v. Loguidice-Chatwal Real Estate Inv. Co.,
171 A.D.2d 457 (1st Dep't 1991) ..................................................48

DeCintio v. Cohalan,
18 A.D.3d 872 (2d Dep't 2005) ....................................................43

#5130445 v5 \022022 \0004

De Rosa v. Slattery Contracting Co.,
  14 A.D.2d 278 (1st Dep't 1961), aff'd, 12 N.Y.2d 735 (1962) ......................3, 39

Fleet Credit Corp. v. Cabin Serv. Co.,
  210 A.D.2d 57 (1st Dep't 1994) .................................................................49

Forbush v. Forbush,
  115 A.D.2d 335 (4th Dep't 1985) ..............................................................51

George W. Collins, Inc. v. Olsker-McLain Indus., Inc.,
  22 A.D.2d 485 (4th Dep't 1965) ...............................................................51

Grisi v. Shainswit,
  119 A.D.2d 418 (1st Dep't 1986) ..............................................................43

Grossman v. Meller,
  213 A.D.2d 221 (1st Dep't 1995) ..............................................................50

Hartford Accident & Indemnity Co. v. Wesolowski,
  33 N.Y.2d 169 (1973) ...............................................................................42

In re Jennifer G.,
  110 A.D.2d 801 (2d Dep't 1985) ...............................................................50

JMD Holding Corp. v. Congress Financial Corp.,
  4 N.Y.3d 373, 384 (2005) (same) .............................................................42

Kaplan v. 2108-2116 Walton Ave. Realty Co.,
  74 A.D.2d 786 (1st Dep't 1980) ..............................................................3, 39

Kenney v. City of New York,
  74 A.D.3d 630 (1st Dep't 2010) ................................................................50

Kirkpatrick Home for Childless Women v. Kenyon,
  209 A.D. 179 (4th Dep't 1924) .................................................................52

Littlejohn v. Leffingwell,
  40 A.D. 13 (2d Dep't 1899) .....................................................................1, 38

Ma v. Lien,
198 A.D.2d 186 (1st Dep't 1993) ................................................................1, 38

Maracina v. Schirrmeister,
152 A.D.2d 502 (1st Dep't 1989) .......................................................................49

Matter of Assn. of the Bar of the City of New York,
222 A.D. 580 (1st Dep't 1928) .......................................................................3, 39

Matter of B.T. Prods., Inc. v. Barr,
44 N.Y.2d 226 (1978) ........................................................................................52

Matter of Brown v. Blumenfeld,
296 A.D.2d 405 (2d Dep't 2002) ......................................................................52

Matter of Culver Contracting Corp. v. Humphrey,
268 N.Y. 26 (1935) ...........................................................................................45

Matter of Cunha v. Urias,
112 A.D.3d 923 (2d Dep't 2013) ......................................................................49

Matter of Dondi v. Jones,
40 N.Y.2d 8 (1976) .....................................................................................44, 45

Matter of Law Offices of Russell I. Marnell, P.C. v. Blydenburgh,
26 A.D.3d 495 (2d Dep't 2006) ........................................................................43

Matter of Lee v. County Court of Erie County,
27 N.Y.2d 432 (1971) ................................................................................44, 45

Matter of Nat'l Equip. Corp. v. Ruiz,
19 A.D.3d 5 (1st Dep't 2005) ....................................................................43, 44

Matter of Silk & Bunks, P.C. v. Greenfield,
102 A.D.2d 734 (1st Dep't 1984) .....................................................................43

#5130445 v5 \022022 \0004

Matter of the Ministers, Elders and Deacons of the Reformed Protestant Dutch
Church v. Municipal Ct. of New York,
   185 Misc. 1003 (Sup. Ct. N.Y. Cnty. 1945), aff'd, 270 A.D. 993
   (1st Dep't 1946), aff'd, 296 N.Y. 822 (1947) .........................................44, 45, 52

Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.,
   61 N.Y.2d 106 (1984) ...........................................................................41

Murphy v. RMTS Assocs., LLC,
   71 A.D.3d 582 (1st Dep't 2010) ...........................................................42

NAMA Holdings, LLC v. Greenberg Traurig, LLP,
   92 A.D.3d 614 (1st Dep't 2012) ...........................................................50

Post v. Post,
   141 A.D.2d 518 (2d Dep't 1988) ...........................................................51

Princes Point, LLC v. AKRF Engineering, P.C.,
   94 A.D.3d 588 (1st Dep't 2012) ...........................................................48

State v. Philip Morris, Inc.,
   308 A.D.2d 57 (1st Dep't 2003) ...........................................................51

Wasserman v. Harriman,
   234 A.D.2d 596 (2d Dep't 1996) ...........................................................49

Wiener v. Wiener,
   10 A.D.3d 362 (2d Dep't 2004) ...........................................................49

## STATUTES

C.P.L.R. § 506(b)(1) ...........................................................................11

C.P.L.R. § 7804(b) ...........................................................................11

R.P.A.P.L. § 211 ...........................................................................40

# MISCELLANEOUS

7 Weinstein-Korn-Miller, <u>New York Civil Practice</u>, ¶ 5524.02 .............................52

23 Carmody-Wait, <u>N. Y. Prac.</u>, Costs, § 339 .......................................................52

#5130445 v5 \022022 \0004

Petitioner Orchard Hotel, LLC alleges as follows:

## PRELIMINARY STATEMENT

1.    Petitioner seeks emergency relief to immediately re-commence construction of a dormant, partially constructed hotel and save it from the imminent loss of its development rights, further structural damage and possible demolition.  This unfolding calamity is the result of a three-year-old foreclosure action in which a desperate and vexatious borrower, respondent D.A.B. Group LLC ("DAB"), has been enabled by a sympathetic Court, effectively denying Petitioner its bargained-for rights under a comprehensive set of commercial loan documents.  This judicial gridlock – in which the IAS Court has twice ignored clear rulings from this Court – has pushed this litigation to the point where Petitioner and the dozen other creditors in this action now face irreparable harm through substantial damage to the Mortgaged Property, an inactive construction site located on the Lower East Side, which secures approximately $30 million of DAB's unpaid obligations.[1]

---

[1]    Courts have held that equitable relief is appropriate where, absent such relief, the movant's lien might be extinguished.  Risk to a lien, which is Petitioner's only security here, warrants injunctive relief.  Ma v. Lien, 198 A.D.2d 186, 186 (1st Dep't 1993); Bass Building Corp. v. Village of Pomona, 142 A.D.2d 657, 659 (2d Dep't 1988) Courts have also recognized the need for injunctive relief in foreclosure actions in which the mortgaged property is subject to potential waste, which is unquestionably the case here.  See City of White Plains v. Griffen, 255 A.D. 1003 (2d Dep't 1938); Littlejohn v. Leffingwell, 40 A.D. 13 (2d Dep't 1899).

#5130445 v5 \022022 \0004

1

2.     Petitioner has pursued a summary judgment order of foreclosure from the IAS Court, the respondent Justice Charles E. Ramos, since April 2012. This Court has issued unambiguous decisions in this action twice in the past 13 months holding that DAB's only defense to foreclosure – that the maturity date of the commercial-mortgage loans (the "Loans") was orally extended – is barred as a matter of law under the plain terms of the loan documents. Twice, Justice Ramos has ignored those decisions and permitted DAB to avoid foreclosure by asserting the very same meritless defense. In ordinary circumstances, Petitioner would appeal the IAS Court's latest erroneous decision and perfect its appeal for the September Term, bringing this action back to this Court for a third time on the very same issue. However, because of the dire and immediate risk to the Mortgaged Property if this protracted action is allowed to continue on its present aimless path, Petitioner has no choice but to seek emergency relief from this Court. Petitioner respectfully requests that the Court enter an order granting the Receiver authority to re-commence construction and that the Court grant summary judgment in Petitioner's favor based on the decisions of record in this action, which demonstrate that the mortgages in suit (the "Mortgages") are valid, the Loans have

been due and unpaid since March 1, 2011 and DAB has no defenses to foreclosure.[2]

3.      The foundation for a grant of summary judgment is in place.  In a March 30, 2012 decision, Justice Bernard L. Fried, to whom this action was initially assigned, held that in light of unambiguous contractual provisions in the loan documents, "the allegation that DAB justifiably relied on unsigned, unwritten representations by agents acting on behalf of Brooklyn [Federal] or State Bank, cannot be credited."[3]  This Court affirmed Justice Fried on May 28, 2013, holding that "D.A.B. fails to allege the requisite reasonable reliance on these oral misrepresentations."[4]  This Court addressed the issue of reasonable reliance again on February 18, 2014, after Justice Ramos vacated Justice Fried's affirmed March 30, 2012 decision.  Reversing Justice Ramos, this Court held that a newly

---

[2]  This Court has the authority to grant the relief sought here. "The Appellate Division, as the successor of the General Term, possesses all of the original jurisdiction of the Supreme Court, including the hearing and determination of motions." De Rosa v. Slattery Contracting Co., 14 A.D.2d 278, 281 (1st Dep't 1961), aff'd, 12 N.Y.2d 735 (1962). It is well-established that the Appellate Division is not a separate court, but a branch of the Supreme Court, and that it possess all of the original jurisdiction of the Supreme Court. Matter of Assn. of the Bar of the City of New York, 222 A.D. 580 (1st Dep't 1928). Because the Receiver is an officer of both the IAS Court and this Court, this Court may expand or modify the scope of the Receiver's authority to the same extent as the IAS Court. Kaplan v. 2108-2116 Walton Ave. Realty Co., 74 A.D.2d 786, 786 (1st Dep't 1980); Copeland v. Salomon, 56 N.Y.2d 222, 228 (1982).

[3]  Affirmation of Y. David Scharf, June 23, 2014 ("Scharf Aff."), Ex. 1 at 7.

[4]  Id., Ex. 2 at 55.

#5130445 v5 \022022 \0004

3

discovered document cited by DAB "provides no basis to find that there was reasonable reliance on a writing that extended the loans' maturity date."[5]

4.    Upon remittitur from this Court, Justice Ramos issued a decision and order on Petitioner's motion for summary judgment on March 21, 2014 (the "March 21 Order"). Justice Ramos found that Petitioner had "met its initial burden by submitting copies of the mortgages, notes, assignment and evidence of DAB's default by its undisputed failure to pay" and no party disputed these facts.[6] Nevertheless, Justice Ramos denied Petitioner's summary judgment motion and held, in contradiction of this Court's two prior rulings, that DAB had raised a question of fact as to whether it may have reasonably relied not only on oral representations by Brooklyn Federal, but also on an internal bank document that this Court held was legally and factually irrelevant.[7]

5.    The IAS Court's refusal to grant summary judgment despite the indisputable absence of any impediment to foreclosure threatens immediate and irreparable harm to the Mortgaged Property, which includes the land at 139-141 Orchard Street, New York, New York, and all improvements and development rights thereto.    The site, which will eventually be the location of a hotel, is

---

[5] Id., Ex. 3 at 26-27.

[6] Id., Ex. 4 at 5.

[7] Id. at 8-9.

#5130445 v5 \022022 \0004

4

currently improved by a 16-story concrete superstructure that lacks exterior walls or internal finishings. Within the last two weeks, the Court-appointed Receiver, Simon Miller, has learned that the New York City Department of Buildings will revoke the Mortgaged Property's building permits on July 1, 2014 unless active construction recommences at the site. If these permits are revoked, the Mortgaged Property would lose valuable grandfathered development rights and would be forced to undergo costly and prejudicial design and construction changes. Most drastically, absent relief, nine of the 16 floors of the completed concrete superstructure would have to be demolished.

6.     These losses would irreparable harm each of DAB's creditors in this action. Because DAB is a thinly capitalized entity with no assets other than the Mortgaged Property, all claimants in this action are entirely dependent on the Mortgaged Property for recovery of DAB's debts to them. The claimants are frankly at the mercy of Justice Ramos who has withheld a judgment of foreclosure, jeopardizing the Mortgaged Property and millions of dollars of investment for all concerned parties.

7.     In addition to jeopardizing the Mortgaged Property's development rights, Justice Ramos' refusal to grant a foreclosure judgment is imperiling the physical condition of the Mortgaged Property, which will be subjected to its fourth

#5130445 v5 \022022 \0004

consecutive winter fully exposed to the elements. The concrete superstructure was not designed or intended to be exposed to weather for such a prolonged period of time.

8.    However, this waste is preventable. Petitioner asks this Court for an emergency order authorizing the Receiver to recommence construction and complete the building envelope, thereby protecting the Mortgaged Property's development rights and its physical condition. The Receiver, Simon Miller, has been managing the Mortgaged Property since July 2011 and is respected and trusted by all parties to this action. Mr. Miller has the ability to execute the necessary work. Since August 2011, Mr. Miller has retained a general contracting firm, Richter + Ratner, to maintain the Mortgaged Property, and this firm is familiar with the Mortgaged Property and possesses the expertise needed to oversee this work. Petitioner is willing to fund the cost of these items in order to preserve the entitlements and protect the value of the Mortgaged Property for itself and all other parties.

9.    The emergency relief sought here is carefully tailored, is fully consistent with the Receiver's statutory obligations and Petitioner's rights as a mortgagee, and will benefit all parties to this action, including DAB. Petitioner seeks this relief from this Court at this time because an appeal of the IAS Court's

#5130445 v5 \022022 \0004

6

most recent erroneous order will not be heard before the September Term, which will be too late for the Receiver to protect the Mortgaged Property from the loss of its permits on July 1, 2014 and further deterioration from the exposure to the weather.

10.    In addition to the emergency relief sought here, Petitioner seeks an order granting Petitioner summary judgment and foreclosing on the Mortgages. Justice Ramos has already found that Petitioner established its entitlement to summary judgment as a matter of law, and the IAS Court's only basis for withholding a grant of foreclosure is its erroneous ruling that a trial must be held on DAB's purported reasonable reliance on an oral extension of the Loans. Because this Court's two prior orders bar any such defense as a matter of law, Petitioner has a clear legal right to summary judgment.  It is well-recognized that this Court has the power to search the record and grant summary judgment, even without a request from one of the parties.  In the alternative, Petitioner requests a writ of mandamus directing the IAS Court to enter summary judgment in favor of Petitioner on its foreclosure causes of action.  Petitioner also requests a writ of prohibition enjoining the IAS Court from holding a trial on DAB's meritless defense to foreclosure.

11.     The Mortgaged Property has been sitting as an inactive construction project since March 1, 2011, when the Loans matured and DAB failed to repay its debt or its contractors. After attempting unsuccessfully to negotiate with DAB, Petitioner commenced this foreclosure action on July 1, 2011. In the intervening three years, DAB has not paid a dime toward any of its financial obligations, nor toward ensuring the safety of the construction site, property taxes, maintenance, or the preservation of zoning rights and permits, all of which have been entirely and exclusively funded by Petitioner. Rather than attempting to satisfy its uncontested obligations, DAB has fought its creditors at every turn both inside and outside of court, making frivolous claims and intentionally jeopardizing the Mortgaged Property.

12.     Because of multiple erroneous rulings by the IAS Court, this foreclosure action, in which the validity of the Mortgages and the fact of DAB's default have never been in serious doubt, has dragged on for three years with no end in sight. As a result of this inordinate and unnecessary delay, the Mortgaged Property faces swift and irreparable harm, absent relief from this Court. Petitioner respectfully requests interim emergency relief enabling the Receiver to protect the Mortgaged Property for the benefit of all parties, and an order of summary judgment, or in the alternative a writ of mandamus, and a writ of prohibition,

implementing this Court's two prior rulings.  Petitioner seeks this relief from this Court now because time is of the essence.[8]

## PARTIES

13.    Petitioner is the assignee of the two Mortgages, which secure approximately $28 million in unpaid indebtedness.  Petitioner commenced this foreclosure action following the failure of DAB to repay the Loans at maturity on March 1, 2011.

14.    Respondent Hon. Charles E. Ramos is a Justice of the Supreme Court, New York County, and the Justice to whom this action is assigned.  Justice Ramos issued the March 21 Order which, *inter alia*, denied Petitioner's motion for summary judgment seeking foreclosure of the Mortgages.

15.    Respondent DAB is the owner of the Mortgaged Property, which consists of certain real property known as 139-141 Orchard Street, New York, New York, and designated as Block 415, Lots 66 and 67, on the New York County Tax Map, and related rights.  DAB is the borrower on the Loans and has not paid any part of its obligations or property taxes or maintenance since the Loans

---

[8]  Petitioner has timely appealed the March 21 Order and, to protect its rights should this Court deny the requested relief, intends to perfect that appeal for the Court's September Term. However, even if Petitioner's appeal is heard in September, any relief granted by this Court will necessarily come too late for the Receiver to protect the Mortgaged Property from further damage and a potential loss of its entitlements.  If the Court grants the relief sought in this petition, Petitioner intends to withdraw its appeal.

#5130445 v5 \022022 \0004

matured on March 1, 2011. All of these expenses have been paid by Petitioner. (See Affidavit of Simon Miller, June 23, 2014 ("Miller Aff.")) ¶ 3).

16.    Respondents Orchard Construction, LLC; Flintlock Construction Services LLC; JJ K Mechanical Inc.; Edward Mills & Associates, Architects PC; Casino Development Group, Inc.; Citywide Construction Works Inc.; Empire Transit Mix Inc.; Marjam Supply Co., Inc.; Rotavele Elevator Inc.; SMK Associates, Inc.; FJF Electrical Co. Inc.; and Leonard Johnson all have or claim to have some interest or lien upon the Mortgaged Property.

17.    Respondents City of New York; New York State Department of Taxation and Finance; and City of New York Environmental Control Board were named as defendants by virtue of any possible unpaid taxes or fines owed by DAB.

18.    Respondent Brooklyn Federal Savings Bank ("Brooklyn Federal") was the original lender and assignor of the Loans to Petitioner. Brooklyn Federal was named as a third-party defendant on DAB's counterclaims.

19.    Respondent State Bank of Texas ("State Bank," and together with Brooklyn Federal, the "Bank Defendants") was a participant in the Loans with Brooklyn Federal. State Bank was not a party to the loan documents but was named along with Brooklyn Federal as a third-party defendant on DAB's counterclaims.

#5130445 v5 \022022 \0004

## JURISDICTION AND VENUE

20.    This petition is brought pursuant to Article 78 of the Civil Practice Law and Rules (CPLR) because respondent Justice Ramos has exceeded his authority by refusing to follow three separate decisions, two from this Court, which hold that DAB cannot, as a matter of law, demonstrate reasonable reliance on any alleged oral extension of the Loans' maturity date.

21.    Jurisdiction and venue to entertain this proceeding are properly placed before this Court pursuant to CPLR §§ 7804(b) and 506(b)(1) because this is a proceeding against a justice of the Supreme Court of New York County and the action from which this proceeding originated is triable in the First Judicial Department.

## BACKGROUND

### I.    THE STATUS OF CONSTRUCTION ON THE MORTGAGED PROPERTY

22.    The hotel building currently consists of a 16-story concrete superstructure. (Affidavit of Edward Martell dated June 19, 2014 ("Martell Aff.") ¶ 2).

23.    The structure is "topped off" but does not have a facade, roof or exterior walls. Some mechanical risers have been installed and some framing has been completed. (Id.).

#5130445 v5 \022022 \0004

11

24.    The concrete superstructure was never intended to be exposed to the weather for a prolonged period of time. If construction had continued as planned, the superstructure would have been enclosed and protected by the building envelope approximately 180 days after the superstructure was topped off. (See id. ¶ 13).

25.    Because of this exposure, the superstructure will need to be carefully inspected and may require remediation or replacement. (Id. ¶ 12).

26.    Petitioner has the right under the loan documents to complete construction without DAB's involvement or consent. Under the Building Loan Agreement, upon an event of default, Petitioner is authorized (although not required) to –

> take immediate possession of the Project as well as all other property to which title is held by Borrower [DAB] and in which Lender [Petitioner] has a lien as is necessary to fully complete the Construction Work and do anything in its sole judgment to fulfill the obligations of Borrower hereunder, including availing itself of and procuring performance of existing contracts, amending the same, or entering into new contracts with the same contractors or others and employment of watchmen to protect the Project from injury. Without restricting the generality of the foregoing and for the purposes aforesaid, Borrower hereby appoints and constitutes Lender its lawful attorney-in-fact with full power of substitution in the premises to complete construction and equip the Improvements . . . [and] to retain or employ new construction managers, general contractors,

contractors, subcontractors, architects, engineers and
inspectors as shall be required to complete the
Construction Work; to pay, settle, or compromise all bills
and claims, which may be incurred in connection with
the Construction Work; to purchase any fixtures,
equipment, machinery, furniture or any other personal
property as may be necessary or desirable for the
completion of the Construction Work or for the clearance
of title; to execute all applications and certificates in the
name of Borrower which may be required;

(Scharf Aff., Ex. 13 at § 6.1(b) (emphasis added)).

## II.    THE JULY 1, 2014 REVOCATION OF THE MORTGAGED PROPERTY'S BUILDING PERMITS

27.    By order dated September 28, 2011 (see Miller Aff., Ex. 2), Justice Fried empowered the Receiver to opt into the Stalled Sites program, which was created by the New York City Department of Buildings in 2009. (Martell Aff. ¶ 4). The purpose of this program was to enable troubled developers and project owners to discontinue construction without losing their entitlements as long as they put a safety program in place for their construction sites. (Id. ¶ 3). Given the pendency of this action, the Receiver opted into this program in order to safeguard the site and protect the investments inherent in, and the value of, the Mortgaged Property. (Miller Aff. ¶ 9).

28.     The Receiver was empowered to and retained the construction firm of Richter + Ratner to oversee the construction site during the pendency of the foreclosure action. (Id., Ex. 2).

29.     Within the last two weeks, the Receiver learned that the Department of Buildings will terminate the Mortgaged Property's protection under the Stalled Sites Program as of July 1, 2014 unless active construction commences at the site by that date. (Id. ¶ 14). Therefore, in order to retain the building permits, which were tolled during the program, construction at the site must resume by that date.

30.     If construction is not resumed, the permits, which were granted and grandfathered under the then-existing building code and zoning regulations, will lapse. The Mortgaged Property would thus lose its right to be constructed as designed, under the regulations in place when construction commenced. To comply with the newer regulations, substantial re-design and demolition of significant portions of the current concrete superstructure would be required at substantial cost. (Id. ¶¶ 15-16).

31.     All of the foregoing would certainly drastically alter the status quo and would dramatically increase the cost of development, reduce the development capacity and hence, reduce the value of the Mortgaged Property. (Id. ¶ 17).

#5130445 v5 \022022 \0004

14

32.    In addition, the Receiver has been advised that if the building permit is revoked, the DOB could issue various violations on the Mortgaged Property every day that the Mortgaged Property does not cure such violations, with fines ranging as high as $20,000 to $50,000 per day. (Id. ¶ 18).

33.    The Receiver has the ability to proceed with the construction and development of the Mortgaged Property and to retain construction and architectural consultants or such other qualified consultants as are necessary and appropriate in order to safeguard the Mortgaged Property and have the construction and development completed. (Id. ¶ 20).

34.    Absent court intervention now, modifying the Receivership Order to authorize the Receiver to proceed with the construction and development of the Mortgaged Property, the Mortgaged Property will be irreparably damaged.

## III.    THE EXPIRATION OF THE MORTGAGED PROPERTY'S ZONING ENTITLEMENTS

35.    Equally as pressing is the looming deadline of August 2015, which is the end-date for the zoning for the site. After this project obtained its zoning entitlements, the area in which it is located was "down zoned," meaning that the zoning was changed to permit construction of buildings with substantially less square footage. Thus, if construction of the project is not completed by August 2015, the building will no longer be eligible for the grandfathered zoning

#5130445 v5 \022022 \0004

15

entitlements and, instead, must be constructed consistent with the down-zoned regulations. The newer zoning will require the demolition of the top nine floors of the planned hotel.

36.    On August 20, 2013, the Receiver was granted a final as-of-right extension of the deadline to complete construction. Pursuant to this extension, the property owner has two years to obtain a certificate of occupancy under grandfathered zoning entitlements. (Affidavit of Howard Goldman dated June 23, 2014 ("Goldman Aff.") ¶ 5). If the property owner fails to obtain a certificate of occupancy for the hotel by August 20, 2015, the project could be forced to comply with the now-applicable zoning restrictions, which would require the demolition of approximately one-third of the floor area of the existing structure (from 39,064 square feet to 26,040 square feet) and more than one-half of the structure's height (from 191 feet to 80 feet). (Id. ¶¶ 6, 7).

37.    A substantial amount of construction work remains to be done before the hotel can obtain a certificate of occupancy. (Martell Aff. ¶ 13). If construction on the Mortgaged Property does not resume immediately, it will be virtually impossible for the property owner to obtain a certificate of occupancy by August 2015.

38.     Given the substantial work that remains to be done on the project and the status of this litigation as a result of the March 21 Order, this foreclosure will not be concluded in time to complete construction to preserve the zoning entitlements. Unless this Court grants emergency relief, the Mortgaged Property's zoning entitlements could be permanently lost, irreparably harming all parties to this action, including DAB.

## IV.   PROCEDURAL HISTORY

39.     Petitioner commenced this action on July 1, 2011 to foreclose the Mortgages.

40.     DAB answered and asserted three counterclaims against Petitioner and the Bank Defendants. (Scharf Aff., Ex. 6).

41.     As relevant here, DAB pled a combination counterclaim and affirmative defense, alleging that Brooklyn Federal misrepresented to DAB on August 26, 2010 that the maturity date of the Loans would be extended by 430 days, to approximately November 2011. (Id. ¶ 36; Scharf Aff., Ex. 7 ¶ 23). DAB characterized its allegations as a counterclaim for fraud and an affirmative defense of estoppel.

42.     Petitioner and the Bank Defendants moved separately to dismiss DAB's counterclaims, and both motions were granted by Justice Fried in a decision and two orders entered on March 30, 2012. (Id., Ex. 1).

43.     Justice Fried's decision and orders were affirmed by this Court by Decision and Order entered May 28, 2013. (Id., Ex. 2). (The decisions of this Court and Justice Fried are discussed in further detail in Section V(A) below.)

44.     When Justice Fried retired in June 2012, the action was reassigned to Justice Ramos. At that time, a motion for summary judgment filed by Petitioner was fully briefed and awaiting oral argument.

45.     The parties appeared before Justice Ramos for the first time on July 31, 2012, for oral argument on Petitioner's motion for summary judgment and two cross-motions.

46.     At the outset of the hearing, Justice Ramos articulated his misperception that Petitioner is a "vulture" and that he dislikes "vultures." (Scharf Aff. ¶ 2).

47.     Ruling from the bench, Justice Ramos placed the summary judgment motion in abeyance and granted DAB leave to take depositions that DAB requested for the first time at oral argument.

#5130445 v5 \022022 \0004

48.    The IAS Court heard three more oral arguments on the summary judgment motion, on May 1, 2013, June 11, 2013 and July 9, 2013. The Court also directed supplemental briefing on the motion.

49.    At the May 1, 2013 oral argument, the Court again continued Petitioner's summary judgment motion and directed DAB to serve new document requests seeking internal Brooklyn Federal documents relating to the alleged extension of the Loans. DAB had never previously requested any such documents.

50.    Petitioner objected, noting that the parties had recently appeared in Court several times and "[n]obody said a word, a singular word, about needing additional documents – nobody served a document [request], nobody followed up a deposition with a letter requesting, by the way, do you have that." (Id., Ex. 8 at 32-33). Petitioner's counsel also noted that DAB had filed supplemental papers only two weeks prior, on April 18, 2013, and did not request additional discovery –

> We have rules. I would, respectfully, suggest we need to play by them. Otherwise we end up where we were last July, which is coming into court, everything is briefed and they say, "Oh, I need more discovery." Even the last time, when they told your Honor they noticed depositions [of Brooklyn Federal witnesses], they had not noticed any of the depositions that they [later] took.

(Id. at 37-38). Nevertheless, Justice Ramos postponed consideration of the summary judgment motion and directed DAB to serve new document requests.

"Guess what? We're continuing again. You [DAB] make the demand on the plaintiff and we'll take it from there." (Id. at 38).

51.    Following the May 1, 2013 hearing, Petitioner produced documents in response to the Court-directed discovery requests.    Included in Petitioner's production was an internal Brooklyn Federal "Commercial Loan Action Plan" dated February 15, 2011 (the "Action Plan"), which discussed a potential extension of the maturity date of the Loans. The Action Plan was produced for the first time in May 2013 because DAB had not previously sought any internal Brooklyn Federal documents relating to a purported loan extension, indeed DAB never even bothered to seek the Bank's loan file underlying the loan. As this Court held, the record demonstrates that "had DAB exercised due diligence during discovery, it could have obtained the Action Plan through discovery well over a year earlier than it did." (Id., Ex. 3 at 28).

52.    The Action Plan expressly stated that any extension of the Loans would require prior approval from Brooklyn Federal's primary regulator, the federal Office of Thrift Supervision (OTS), and all parties acknowledge this approval was never obtained. Also undisputed is the fact that the Action Plan was rescinded in March 2011 after Brooklyn Federal caught DAB's principal misappropriating Loan proceeds. DAB admits that it was never told of the Action

Plan or its terms, which materially differed from the terms of the alleged misrepresentations pled in DAB's fraud counterclaim and estoppel defense.

53.     The parties resumed oral argument on Petitioner's summary judgment motion on June 11, 2013. Once again, the Court deferred decision on Petitioner's motion and, from the bench, granted DAB leave to seek renewal of Justice Fried's affirmed orders based on the Action Plan. "Everything is held in abeyance. . . . So if I deny their motion to renew then I'll grant this motion [for summary judgment]." (Id., Ex. 9 at 16-17).

54.     The parties next appeared before Justice Ramos on July 9, 2013, for further argument on Petitioner's summary judgment motion and on DAB's motion to renew and vacate Justice Fried's affirmed March 30, 2012 orders. Again ruling from the bench, Justice Ramos granted DAB's motion, stating: "Judge Fried's decision is withdrawn by me because now I am the judge." (Id., Ex. 10 at 30). Without a prior request or a proffered pleading, Justice Ramos also, *sua sponte*, directed DAB to file an amended pleading referencing the Action Plan. (Id. at 28, 30).

55.     DAB filed an amended answer and counterclaims on August 8, 2013. (Id., Ex. 11). Included in DAB's amended pleading was an affirmative defense of estoppel, in which DAB alleged that agents of Brooklyn Federal orally stated that

#5130445 v5 \022022 \0004

21

the Loans' maturity date would be extended and these alleged statements were "later confirmed and corroborated" by the Action Plan. (Id. ¶ 58).

56.    The July 9, 2013 bench rulings were memorialized in an order entered August 28, 2013, which Petitioner and the Bank Defendants immediately appealed.

57.    Petitioner's appeal briefs expressly addressed DAB's estoppel defense, arguing that the very same provisions of the loan documents that barred DAB's fraud counterclaim also barred any estoppel defense. DAB did not contest this point in its opposition brief.

58.    By Decision and Order entered on February 18, 2014, this Court reversed Justice Ramos' August 28, 2013 order, reinstating Justice Fried's decision and vacating DAB's amended pleading. (Id., Ex. 3). (The Court's decision is discussed in further detail in Section V(B) below.)

## V.    THE RELEVANT ORDERS

### A.    Justice Fried's March 30, 2012 Decision and Orders and This Court's May 28, 2013 Affirmance

59.    Justice Fried described DAB's fraud counterclaim as follows: "DAB alleges that, in reliance on the statements that the maturity date had been extended, 'DAB delayed in seeking a refinance of the loan or sale of the building project.'" (Id., Ex. 1 at 5-6).

#5130445 v5 \022022 \0004

60.    According to DAB, these allegations stated not only a counterclaim for fraud, but also the affirmative defense of estoppel. DAB pled these allegations under a single heading:

> As and For a <u>Fifth Affirmative Defense, First Counterclaim and Offset Against Plaintiff Orchard Hotel, LLC</u> and As and For a First Counterclaim Against Additional Defendants on the Counterclaim Brooklyn Federal Savings Bank and State Bank of Texas Pursuant to CPLR § 3019(a) and (d), this Answering Defendant Alleges the Following: . . .

(<u>Id.</u>, Ex. 6 at 4) (emphasis added).

61.    In dismissing DAB's fraud counterclaim, Justice Fried noted that the loan documents are replete with provisions prohibiting oral modifications and that "DAB does not dispute that these provisions are contained within the valid, binding agreements between the parties." (<u>Id.</u>, Ex. 1 at 7). Justice Fried held that DAB's allegations did not give rise to a fraud claim because, in light of the "bargained-for, and agreed-upon, contractual provisions [in the loan documents], the allegation that DAB justifiably relied on unsigned, unwritten representations by agents acting on behalf of Brooklyn [Federal] or State Bank, cannot be credited." (<u>Id.</u>).

62.    This Court unanimously affirmed Justice Fried's decision and orders on the same grounds. In its May 28, 2013 Decision and Order, this Court held that

"D.A.B. fails to allege the requisite reasonable reliance on these oral misrepresentations." (Id., Ex. 2 at 55). The Court stated:

> The loan documents expressly prohibit oral termination or amendment and provide for termination or amendment only in writing signed by Brooklyn Federal, and in the mortgage agreement D.A.B. acknowledged that the mortgage and all the other documents could be extended, modified or amended only in writing executed by Brooklyn Federal, and that no officer or administrator of the bank had the power or authority from the bank to make an oral extension or modification or amendment on any of the loan documents on its behalf.

(Id.).

63.    Notice of entry of the May 28, 2013 order was served on the same date, and no appeal was taken. (Id., Ex. 2). Thus, as of June 27, 2013, DAB's allegations that it reasonably relied on a purported oral extension of the Loans' maturity date – the same allegations that underlay both DAB's fraud counterclaim and its estoppel defense – were conclusively dismissed from this action as a matter of law. CPLR § 5513(a).

**B.    This Court's February 18, 2014 Decision and Order**

64.    By order entered August 28, 2013, Justice Ramos vacated Justice Fried's affirmed March 30, 2012 decision and orders and granted DAB leave to file an amended pleading.

65.   On September 3, 2013, Petitioner and the Bank Defendants filed and perfected separate appeals from Justice Ramos' August 28, 2013 order.

66.   This Court unanimously reversed Justice Ramos by Decision and Order entered on February 18, 2014. (Id., Ex. 3). Again, a central issue on appeal was whether DAB could establish reasonable reliance on any oral representations by Brooklyn Federal.

67.   The Record on Appeal included the entire factual record that had been submitted to the IAS Court in connection with Petitioner's motion for summary judgment.

68.   This Court held that the Action Plan was not an enforceable written modification of the Loans as required by the loan documents and therefore could not have been reasonably relied upon by DAB:

> [The] Action Plan, dated February 15, 2011, was unenforceable because it was an internal bank document that the Office of Thrift Supervision (OTS), the federal oversight agency, never approved – an unfulfilled condition precedent.  In addition, Brooklyn Federal ultimately rescinded the Action Plan pursuant to a March 22, 2011 memorandum that it issued prior to OTS's consideration of an extension.  Thus, the Action Plan provides no basis to find that there was reasonable reliance on a writing that extended the loans' maturity date.

(Id., Ex. 3 at 26-27) (emphasis added).

#5130445 v5 \022022 \0004

25

69.    The Court then went a step further, holding that the Action Plan also could not be used to corroborate DAB's claims of oral misrepresentations because during the events at issue, DAB did not even know the Action Plan existed.

> Further, even if this Court were to consider this document an indication of misrepresentation, <u>DAB cannot establish that it reasonably relied upon the Action Plan</u> – a document it was unaware of until May 2013 – because it was an internal document that was not communicated, delivered or presented to DAB.

(<u>Id.</u> at 27) (emphasis added).

70.    This latter holding squarely disposed of DAB's affirmative defense of estoppel, as pled in its proposed amended answer. According to DAB, Brooklyn Federal's alleged oral representations that the Loans' maturity date was extended were "later confirmed and corroborated" by the Action Plan. (<u>Id.</u>, Ex. 11 ¶ 58). The Court's February 18, 2014 order precluded any such defense by rejecting the notion that DAB could have reasonably relied on the Action Plan, which DAB never received nor even knew existed until May 2013.

71.    The Court also held that DAB's "proposed amendment lacks merit." (<u>Id.</u>, Ex. 3 at 29). Because the allegations in DAB's proposed amendment are common to all defenses and counterclaims (<u>see id.</u>, Ex. 11 ¶¶ 7-53), and DAB expressly reiterated its affirmative defenses *within* each of its counterclaims, there

#5130445 v5 \022022 \0004

26

can be no dispute that this Court's February 18, 2014 order precludes DAB's affirmative defense of estoppel. (See id. ¶¶ 82, 91, 98).

72.    Concluding that Justice Ramos had erred in "vacating an order that this Court had affirmed" and in granting DAB leave to amend its answer, this Court returned this case to its posture of June 27, 2013, reinstating Justice Fried's affirmed orders and vacating DAB's amended pleading. (Id., Ex. 3 at 26, 28-29).

73.    In sum, as of February 18, 2014, three separate decisions in this action had established that, as a matter of law, DAB could not demonstrate reasonable reliance on any alleged extension of the Loans' maturity date, thereby clearing the path to foreclosure of the Mortgages and a Court-ordered sale of the Mortgaged Property.

C.    Justice Ramos' March 21, 2014 Order

74.    Upon remittitur of this action to the IAS Court, Petitioner requested oral argument on its summary judgment motion in light of this Court's February 18, 2014 Decision and Order. The summary judgment motion had been pending since April 2, 2012.

75.    Justice Ramos denied Petitioner's request and issued a memorandum decision and order on March 21, 2014.

#5130445 v5 \022022 \0004

27

76.     Although Justice Ramos found that Petitioner had "met its initial burden by submitting copies of the mortgages, notes, assignment and evidence of DAB's default by its undisputed failure to pay" and no party disputed these facts, Justice Ramos nevertheless denied Petitioner's summary judgment motion. (Scharf Aff., Ex. 4 at 5).  Incredibly, the IAS Court held that DAB had raised a question of fact on its estoppel defense and that DAB may have reasonably relied not only on oral representations by Brooklyn Federal, but also on the Action Plan.[9]

77.     The March 21 Order begins by briefly reviewing the procedural history of the case, noting that Justice Fried had dismissed DAB's counterclaims and was affirmed.  The March 21 Order does not mention that the basis of those rulings was DAB's inability to establish reasonable reliance. (Id. at 3-4).

78.     The March 21 Order also mentions this Court's February 18, 2014 Decision and Order and characterizes the decision as having been made "on the ground that the extension granted on February of 2011 as now reflected in the

---

[9] The March 21 Order contains numerous factual errors, such as failing to acknowledge two separate contemporaneous letters from DAB to Brooklyn Federal in which DAB acknowledged that the Loans had not been extended, thereby conclusively disproving DAB's allegations of reasonable reliance.  However, because this petition is limited to the IAS Court's authority to disregard prior rulings of this Court and Justice Fried, such substantive errors of law and fact will not be addressed here.  Should a direct appeal of the March 21 Order become necessary, Petitioner will raise all such issues for appellate review at that time.

#5130445 v5 \022022 \0004

28

internal BFSB document was unenforceable because it was never approved by the Office of Thrift Supervision." (Id. at 4).[10]

79.    The IAS Court disregarded this Court's holdings that "the Action Plan provides no basis to find that there was reasonable reliance on a writing that extended the loans' maturity date" and that "DAB cannot establish that it reasonably relied upon the Action Plan – a document it was unaware of until May 2013 – because it was an internal document that was not communicated, delivered or presented to DAB." (Id., Ex. 3 at 26-27).

80.    The IAS Court then noted that the basis for DAB's estoppel defense is precisely the same as the basis for its dismissed fraud counterclaim. "DAB makes identical arguments in support of DAB's affirmative defenses as it made previously in its counterclaims, which were dismissed. (*Orchard Hotel, LLC* 106 AD3d 628 1st Dept [2]013)." (Id., Ex. 4 at 6).

81.    Nonetheless, squarely contradicting Justice Fried's March 30, 2012 decision and this Court's May 28, 2013 affirmance, Justice Ramos found that "evidence of [Brooklyn Federal's] express and repeated assurances and advisements to DAB that the loan had been extended beyond the March 1, 2011

---

[10]    The IAS Court's decision incorrectly suggests that "the extension [was] granted on February of 2011." (Scharf Aff., Ex. 4 at 4). However, it is law of the case that the Loans were not extended in February 2011. DAB alleged precisely such an extension in its amended pleading (see id., Ex. 11 ¶¶ 86-88), and this Court vacated that pleading as "lack[ing] merit." (Id., Ex. 3 at 29).

#5130445 v5 \022022 \0004

date" was sufficient to establish "a rational basis to find that [Brooklyn Federal] led DAB to believe that the loans had been extended." (Id. at 8-9).

82.    In support of its finding, the IAS Court cited an affidavit from DAB's principal, Ben Zhavian, in opposition to summary judgment in which Zhavian asserted that the Bank Defendants "misled him into believing that the loans were being extended beyond March 1, 2011." (Scharf Aff., Ex. 4 at 10). A copy of the Zhavian affidavit cited by Justice Ramos (the "Zhavian 3/15/12 Affidavit") is attached as Exhibit 12 to the Scharf Affirmation.

83.    Each of Zhavian's allegations was previously presented to Justice Fried in a substantially identical affidavit filed in opposition to Petitioner's and the Bank Defendants' motions to dismiss (the "Zhavian 11/3/11 Affidavit"). (See Scharf Aff., Ex. 7 ¶¶ 25-33).

84.    Below is a comparison of the allegations from the Zhavian 11/3/11 Affidavit considered and rejected by Justice Fried and the identical allegations from the Zhavian 3/15/12 Affidavit cited by Justice Ramos as evidence of reasonable reliance.

| Allegations from Zhavian 11/3/11 Aff. rejected by Justice Fried in March 30, 2012 Decision & Orders | Allegations from Zhavian 3/15/12 Aff. credited by Justice Ramos in March 21, 2014 Decision & Order |
|---|---|
| Joanne B. Gallo herself repeatedly assured me that the loans were being extended beyond March 1, 2011 to be coordinated with and run parallel with the completion dates set forth in the general contract between DAB and Flintlock. (Scharf Aff., Ex. 12 ¶ 25). | Joanne B. Gallo and others at Brooklyn Federal, Plaintiff's assignor, repeatedly assured me that the loans were being extended beyond March 1, 2011 to be coordinated and run parallel with the completion date set forth in the general contract between DAB and Flintlock. (Scharf Aff., Ex. 7 ¶ 18). |
| Not only were those representations made by Ms. Gallo on behalf of Brooklyn Federal but Sushil Patel, the Executive Vice-President and Chief Lending Officer at State DAB, the participant with Brooklyn Federal in the loans in question, also assured me that the subject loans were extended in accordance with the Flintlock general contract. Annexed hereto as Exhibit "G" is an e-mail dated June 30, 2010 from Mr. Patel to me affirming State Bank's commitment to seeing this Project through to the end. (Ex. 12 ¶ 26). | Not only were these representations made by Ms. Gallo, on behalf of Brooklyn Federal, but also by Sushel Patel who was the executive vice president and chief lending officer at State Bank the participant lender with Brooklyn Federal. Annexed hereto as Exhibit "B" is an e-mail from Mr. Patel to me affirming State Bank's commitment to seeing this Project through to the end. (Ex. 7 ¶¶ 19, 20). |
| In the early part of 2011, Brooklyn Federal, the assignor of the Plaintiff herein advised me that it had come under the supervision of the Office of Thrift Supervision ("OTS") and that any approval for the extension of the building loan agreement would require OTS approval. It was my understanding that no extension would be required until November 2011 as the lender had already extended the loan to that date commensurate with the completion date in the general contract with Flintlock. (Ex. 12 ¶ 30). | It wasn't until early part of 2011 that I was advised by Brooklyn Federal that it was under the supervision of the Federal Office of Thrift Supervision ("OTS") and that approval for extensions of the building loan agreement would require OTS approval. It was my understanding that no extension would be required until November, 2011 as the lender had already extended the loan to that date commensurate with the completion date committed in the general contract with Flintlock. (Ex. 7 ¶ 21). |

| | |
|---|---|
| When I pointedly asked Ms. Gallo, who is now Vice-President of the bank, if the loan was in the process of being sold, she directly and falsely told me that there were no meaningful conversations regarding the sale of the DAB loan. Annexed hereto as Exhibit "I" is her e-mail to me as late as June 2, 2011 in which she again requests that I sign a waiver of defense letter and pointedly advises me that there have been "no meaningful conversations" regarding the sale of the DAB loan. (Ex. 12 ¶ 33). | When I pointedly asked Ms. Gallo, who is now vice president of the bank, if the loan was in the process of being sold she directly and falsely told me that there were no meaningful conversations regarding the sale of my loan. Annexed hereto as Exhibit "C" is her e-mail to me as late as June 2, 2011 in which she again request that I sign her waiver agreement and advises me that there have been "no meaning conversations" regarding the sale of my loan. (Ex. 7 ¶ 23). |

85.    In addition to directly conflicting with Justice Fried's March 30, 2012 decision and this Court's May 28, 2013 decision, the March 21 Order conflicts with this Court's February 18, 2014 decision. Justice Ramos concluded that Brooklyn Federal's communications with the OTS regarding the Action Plan – a document that DAB did not even know existed until May 2013 – supported DAB's claims of reasonable reliance. (Id., Ex. 4 at 10).

86.    Based on DAB's allegations that it was orally told by Brooklyn Federal that the Loans would be extended (allegations held to be non-actionable by Justice Fried and this Court) and the events surrounding the Action Plan (which this Court held to be irrelevant), Justice Ramos concluded that DAB had raised a triable issue of fact as to whether DAB reasonably relied on the alleged oral extension.

> DAB has raised an affirmative defense that Orchard
> Hotel should be estopped from proceeding with
> foreclosure due to the specific assurances and conduct of
> its loan officers that the loans would be extended. <u>A
> fact-finder must assess whether DAB was misled or that
> [<em>sic</em>] it "significantly and justifiably relied" on these
> assurances and conduct,</u> including the issue of witness
> credibility.

(<u>Id.</u>, Ex. 4 at 11) (internal citations omitted; emphasis added).

87.    Justice Ramos directed the parties to schedule a pre-trial conference for the purpose of trying the issue of estoppel. (<u>Id.</u> at 26-27). This direction contravenes the specific and unambiguous decisions and orders of Justice Fried and this Court, all of which held that DAB cannot establish reasonable reliance on any purported oral extension as a matter of law.

88.    As of this date, a pre-trial conference is not scheduled.

## VI.    THE ONLY RESOLUTION OF THIS ACTION IS A COURT-ORDERED FORECLOSURE SALE

89.    This action can be resolved only by a Court-ordered foreclosure sale.

90.    Since the Loans matured on March 1, 2011, DAB has not paid a dime toward any of its financial obligations, nor toward ensuring the safety of the construction site, property taxes, maintenance, or the preservation of zoning rights and permits, all of which have been entirely and exclusively funded by Petitioner.

91.    DAB has now had three years to refinance the Mortgaged Property to repay its debts and has been unable to do so.

92.    Moreover, from the beginning of this action, DAB's principal, Ben Zhavian, has exhibited a pattern of reckless and threatening behavior toward Petitioner and its attorneys, making settlement all but impossible. (Scharf Aff. ¶ 16).

93.    Zhavian has repeatedly tried to intimidate Petitioner and its attorneys through physical threats and by initiating proceedings against them in religious courts. (Id. ¶ 18, 22).

94.    Among other threats, Zhavian has threatened to kill one of Petitioner's principals and his family and has vowed that everyone affiliated with Petitioner will "get what's coming to you." (Id. ¶ 18).

95.    Zhavian has also made abhorrent threats to sexually assault one of Petitioner's attorneys. (Id. ¶ 19).

96.    On or about November 13, 2013, Petitioner sought an order from the IAS Court enjoining Zhavian from any further harassment. (Id. ¶ 20).

97.    Rather than proceed to a hearing on that application, Zhavian signed a stipulation agreeing to the relief Petitioner had sought from the Court. That stipulation was so-ordered by the IAS Court. (Id. ¶ 21, Ex. 20).

#5130445 v5 \022022 \0004

34

98.   Zhavian has been flagrantly disregarding this order.  Most recently, immediately after learning that Petitioner intended to seek relief from this Court, Zhavian emailed and called one of Petitioner's attorneys, resuming his campaign of harassment.

99.   In light of Zhavian's ongoing extreme behavior, the only resolution to this matter is by a Court-ordered foreclosure sale of the Mortgaged Property.

## ARGUMENT

### I.   EMERGENCY RELIEF SHOULD BE GRANTED TO PROTECT THE MORTGAGED PROPERTY AGAINST STRUCTURAL DAMAGE AND POTENTIAL LOSS OF ITS ZONING ENTITLEMENTS

100.   Loss of the existing zoning entitlements would substantially damage the Mortgaged Property by significantly reducing its developable area and maximum building height, requiring substantial demolition of the existing 16-story superstructure.  Loss of the zoning entitlements threatens to wipe out the potential recovery of DAB's creditors.

101.   Although DAB is obligated under the Mortgages to preserve the Mortgaged Property, it has made no effort to do so and has failed to make any contribution to the Mortgaged Property's upkeep.  In fact, because of DAB's failure to pay property taxes, a significant tax lien was levied against the Mortgaged Property, imperiling the interests of DAB's other creditors.

#5130445 v5 \022022 \0004

35

102.  The Receiver brought this matter to the attention of the IAS Court. On March 5, 2014, the Receiver notified the IAS Court of the existence of the tax lien and that the City's Department of Finance was going to auction the lien if property taxes were not paid before May 15, 2014. (Scharf Aff., Ex. 14). The Receiver requested "the Court's guidance" and noted that sale of the lien was "a matter of some urgency which has the prospect of affecting the rights of some or all of the parties to this proceeding." (Id.).

103.  The IAS Court has never addressed the Receiver's request for guidance on this urgent matter.

104.  Moreover, the IAS Court is well aware of the danger posed to Mortgaged Property by its exposure to winter weather and the potential loss of its zoning entitlements.  (See id., Ex. 15).  In August 2013, the IAS Court acknowledged the need to resolve this action in "the most expeditious way" because of the time-limited zoning entitlements. (Id., Ex. 16 at 23).[11]

105.  The matter is serious enough that four of the parties in this action – otherwise adversaries – were moved to write a joint letter imploring the IAS Court

---

[11] Petitioner also informed this Court of the time constraints relating to the Mortgaged Property's zoning entitlements when Petitioner appealed Justice Ramos' vacatur order in September 2013. In recognition of the time constraints, this Court granted Petitioner a calendar preference. (Scharf Aff., Ex. 5).

#5130445 v5 \022022 \0004

to resolve this action because of the threat posed to the Mortgaged Property by the

passage of time. As the parties explained to the IAS Court:

> although we are adversaries, we have a common interest
> in the soonest possible resolution of Motion Seq. No. 6
> [Petitioner's motion for summary judgment]. We have,
> individually and collectively, attempted to settle this
> action with DAB on countless occasions and are
> convinced that the only way in which any of the parties,
> including DAB, will recover any money is by selling the
> Mortgaged Property at a foreclosure auction. Given the
> amount of construction work remaining on the unfinished
> hotel and the time limitation imposed by the Mortgaged
> Property's zoning entitlements, the prospects of full
> recovery by all parties diminish by the day.

(Id., Ex. 17). Underscoring the urgency, two of the parties to the joint letter had

previously *opposed* Petitioner's summary judgment motion, but they effectively

dropped their opposition out of concern that delaying a foreclosure judgment

would risk irreparably harm all parties by damaging the Mortgaged Property.

106.   A week after receiving the joint letter, the IAS Court issued the March

21 Order denying summary judgment and directing a trial. As of this time,

approximately three months after the March 21 Order, the IAS Court has not yet

set a date for a pretrial conference.

107.   Courts have recognized the need for judicial relief in such situations.

For example, in Board of Managers of the 235 E. 22nd St. Condo. v. Lavy Corp.,

233 A.D.2d 158, 161 (1st Dep't 1996), this Court found that an equitable relief was

#5130445 v5 \022022 \0004

37

appropriate where, absent such relief, the movant's lien might be extinguished. "[T]he extinguishing of plaintiff's lien, which is plaintiff's only security for the past due common charges, clearly constitutes harm warranting injunctive relief." See also Ma v. Lien, 198 A.D.2d 186, 186 (1st Dep't 1993) (finding that plaintiff had established irreparable harm where, absent injunctive relief, "a substantial amount of the money may be dissipated or otherwise unavailable for recovery"); Bass Building Corp. v. Village of Pomona, 142 A.D.2d 657, 659 (2d Dep't 1988) ("Bass has further shown that it is at risk of irreparable injury, since Pomona remains at liberty to so alter or alienate the disputed roadway that, should Bass ultimately win on the merits, its victory would be meaningless.").

108. Courts have also recognized the need for injunctive relief in foreclosure actions in which the mortgaged property is subject to potential waste. See City of White Plains v. Griffen, 255 A.D. 1003 (2d Dep't 1938) (affirming injunction prohibiting property owners in tax lien foreclosure from removing topsoil from property); Littlejohn v. Leffingwell, 40 A.D. 13 (2d Dep't 1899) (affirming restraining order against property owner preventing removal of timber from the subject land).

109. Injunctive relief – namely, an order authorizing the Receiver to complete the building envelope and commencing such work immediately, and in

any event, prior to July 1, 2014 – is appropriate here.  Time is of the essence because only a small window exists within which to order and install the necessary items and because a failure to begin this process now will make it all but impossible for the property owner to construct the project or complete construction before the Mortgaged Property's zoning entitlements expire.

110.  This Court has the authority to grant the equitable relief sought here. "The Appellate Division, as the successor of the General Term, possesses all of the original jurisdiction of the Supreme Court, including the hearing and determination of motions." De Rosa, 14 A.D.2d at 281.

111.  As this Court explained in Matter of Assn. of the Bar of the City of New York, 222 A.D. 580 (1st Dep't 1928), it is well-established that the Appellate Division –

> is not a separate court, but a branch of the Supreme Court; that in effect it is the Supreme Court sitting *in banc*; that it possess all of the original jurisdiction of the Supreme Court; that, while as a matter of administrative convenience it will ordinarily decline to take original jurisdiction, it has full power to do so and may do so whenever it sees fit.

112.  The Receiver is therefore an officer of both the IAS Court and this Court, and this Court may expand or modify the scope of the Receiver's authority to the same extent as the IAS Court.  Kaplan v. 2108-2116 Walton Ave. Realty

Co., 74 A.D.2d 786, 786 (1st Dep't 1980) ("A Receiver is an officer of the court."); Copeland v. Salomon, 56 N.Y.2d 222, 228 (1982) (same).

113.   Furthermore, it is well-settled that a court may control "a foreclosure action by affording the mortgagee at any time during the pendency of the action injunctive relief to prevent waste." Cottle v. Wright, 140 Misc. 373, 376 (Sup. Ct. Chautauqua Cnty. 1931). In fact, the RPAPL expressly provides for such relief. RPAPL § 211 states as follows:

> If, during the pendency of an action to recover a judgment affecting the title to, or the possession, use or enjoyment of, real property, a party commits waste upon, or does any other damage to, the property in controversy, the court may grant, without notice or security, an order restraining him from the commission of any further waste upon or damage to the property. Disobedience to such an order may be punished as a contempt of court. This section does not affect the right to a permanent or temporary injunction in such action.

114.   Because the Mortgaged Property is now threatened with the expiring Stalled Sites program, structural damage and potential demolition, Petitioner respectfully requests that this Court exercise its original jurisdiction and enter an order authorizing the Receiver to take all necessary action to complete the building envelope.

**II.**  **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF PETITIONER, OR IN THE ALTERNATIVE, A WRIT OF MANDAMUS SHOULD BE GRANTED COMPELLING THE IAS COURT TO ENTER SUCH AN ORDER BECAUSE THE IAS COURT HAS ALREADY HELD THAT PETITIONER IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW**

115.  The IAS Court has already exercised its discretion by holding that (i) Petitioner established its *prima facie* case for summary judgment foreclosing the Mortgages and (ii) none of the defendants had raised a triable issue of fact in opposition thereto, with the singular exception of DAB's legally barred estoppel defense.  Because the IAS Court's only ground for denying summary judgment to Petitioner was DAB's estoppel defense, which has been found by this Court and Justice Fried to be unviable, Petitioner respectfully requests entry of summary judgment.

116.  It is well-recognized that the Appellate Division has broad power to search the record and grant summary judgment even in the absence of an appeal. As the Court of Appeals stated in Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc., 61 N.Y.2d 106, 111 (1984):

> Unlike this court, which has no original jurisdiction over motions and limited authority to review facts, the Appellate Division is a division of the Supreme Court (see *NY Const, art VI, §§ 4, 7*) and shares that court's power to search the record and award summary judgment to a nonmoving party even where, as here, the nonmovant did not appeal.

See also JMD Holding Corp. v. Congress Financial Corp., 4 N.Y.3d 373, 384 (2005) (same); Murphy v. RMTS Assocs., LLC, 71 A.D.3d 582, 583 (1st Dep't 2010) (searching the record and granting summary judgment).

117. Here, Justice Fried's March 30, 2012 Memorandum Decision and Order (Scharf Aff., Ex. 1), this Court's May 28, 2013 Decision and Order (id., Ex. 2), this Court's February 28, 2014 Decision and Order (id., Ex. 3) and Justice Ramos' March 21, 2014 Decision and Order (id., Ex. 4) establish that Petitioner is entitled to summary judgment as a matter of law, and under the CPLR, "[t]he motion shall be granted." CPLR 3212(b) (emphasis added).

118. "[T]he test on a motion for summary judgment is whether there are issues of fact properly to be resolved by a jury." Hartford Accident & Indemnity Co. v. Wesolowski, 33 N.Y.2d 169, 172 (1973). That test is met here, and a grant of summary judgment is appropriate.

119. In the alternative, Petitioner respectfully requests a writ of mandamus directing summary judgment in favor of Petitioner. The IAS Court has already exercised its discretion and given the prior orders of this Court, Petitioner has a clear legal right to the relief sought, making entry of summary judgment merely a ministerial matter.

120.  Given Petitioner's clear legal right to a judgment of foreclosure, "[m]andamus is the appropriate, albeit extraordinary, remedy." <u>Grisi v. Shainswit</u>, 119 A.D.2d 418, 420 (1st Dep't 1986).  <u>See also</u> <u>Matter of Nat'l Equip. Corp. v. Ruiz</u>, 19 A.D.3d 5, 15 (1st Dep't 2005) (granting writ of mandamus directing court to enter judgment); <u>Matter of Silk & Bunks, P.C. v. Greenfield</u>, 102 A.D.2d 734, 734 (1st Dep't 1984) (granting writ of mandamus "compelling respondent to render a decision in motions now pending before him"); <u>Matter of Law Offices of Russell I. Marnell, P.C. v. Blydenburgh</u>, 26 A.D.3d 495, 495 (2d Dep't 2006) ("Mandamus will lie to compel the determination of a motion."); <u>DeCintio v. Cohalan</u>, 18 A.D.3d 872, 872 (2d Dep't 2005) (same).

## III.  A WRIT OF PROHIBITION SHOULD BE GRANTED TO ENJOIN THE IAS COURT FROM IMPLEMENTING AN ORDER THAT FAILS TO ADHERE TO THE PRIOR ORDERS OF THE APPELLATE DIVISION AND OF A COURT OF COORDINATE JURISDICTION

121.  Section 7803(2) of the CPLR authorizes a party to seek a writ of prohibition where a Court "is proceeding or is about to proceed without or in excess of jurisdiction."

122.  A writ of prohibition "is an extraordinary remedy that lies where there is a clear legal right to the relief requested, and where one seeks either to prevent a court from proceeding or threatening to proceed without jurisdiction, or to restrain a court from exceeding its authorized powers in a proceeding over which it has

jurisdiction." Matter of Nat'l Equip. Corp. v. Ruiz, 19 A.D.3d 5, 10 (1st Dep't 2005) (granting writ of prohibition to restrain trial court from exceeding its authority). See also Matter of Dondi v. Jones, 40 N.Y.2d 8, 13 (1976) (same); Matter of Lee v. County Court of Erie County, 27 N.Y.2d 432, 437 (1971) (writ of prohibition can be used "to restrain an inferior court from exceeding its authorized powers in a proceeding over which it has jurisdiction") (citation omitted).

123.    The determination of whether to issue a writ of prohibition lies within "the sound discretion of the court. In exercising this discretion, various factors are to be considered, such as the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity and the remedial effectiveness of prohibition if such an adequate remedy does not exist." Dondi, 40 N.Y.2d at 13 (internal citations omitted).

124.    "The writ of prohibition has never been governed by narrow technical rules but may be resorted to as a convenient method of exercising a wholesome control over inferior tribunals. While the remedy is an extraordinary one, it lies within the sound discretion of the court." Matter of the Ministers, Elders and Deacons of the Reformed Protestant Dutch Church v. Municipal Ct. of New York, 185 Misc. 1003, 1007 (Sup. Ct. N.Y. Cnty. 1945), aff'd, 270 A.D. 993 (1st Dep't 1946), aff'd, 296 N.Y. 822 (1947) (internal citation omitted).

125.    Although a writ of prohibition is not ordinarily available as a method of premature appeal, where "the writ or order furnishes a more effective remedy, it may be availed of although the error might be corrected by appeal." Reformed Protestant Dutch Church, 185 Misc. at 1007 (quoting Matter of Culver Contracting Corp. v. Humphrey, 268 N.Y. 26, 39-40 (1935)).

126.    If an appeal or other remedy "would be inadequate to prevent the harm and prohibition would furnish a more complete and efficacious remedy, it may be employed even though other methods of redress are technically available." Dondi, 40 N.Y.2d at 14 (affirming issuance of writ of prohibition); see also Lee, 27 N.Y.2d at 437 (same).

127.    Prohibition is appropriate here.  The IAS Court exceeded its power by issuing the March 21 Order, which directly contravenes the prior orders of this Court and of Justice Fried.

128.    Petitioner cannot obtain adequate relief by direct appeal because the March 21, 2014 order was entered after the filing deadline for this Court's June Term, thereby pushing any appeal to the September Term or later.  Such delayed relief would imperil the Mortgaged Property's valuable development rights by making it impossible to complete construction on the Mortgaged Property before the termination of the Stalled Sites program, let alone August 2015, the expiration

of the property's zoning entitlements. As explained below, the loss of those development rights would irreparably harm Petitioner and all party-respondents by destroying the value of the collateral to which all parties must look for satisfaction of DAB's unpaid obligations.

### A.    The IAS Court Lacked the Authority to Deviate from this Court's Two Prior Orders and Justice Fried's Prior Orders

129.    The IAS Court's finding that a "fact-finder must assess whether DAB was misled or that [*sic*] it 'significantly and justifiably relied' on these assurances and conduct" (Scharf Aff., Ex. 4 at 11) contravenes the prior orders in this action.

130.    All three prior decisions squarely addressed the issue of reasonable reliance and held that DAB's allegations of reasonable reliance lack merit and thus fail as a matter of law.

a.    In his March 30, 2012 decision, Justice Fried held that DAB's allegations of fraud (and estoppel) did not adequately plead reasonable reliance because the "bargained-for, and agreed-upon, contractual provisions" in the Loan Documents prohibited DAB from relying on anything short of a signed, written loan modification agreement, which DAB conceded did not exist. (Id., Ex. 1 at 7-8).

b.    In its May 28, 2013 decision, this Court affirmed Justice Fried, holding that "D.A.B. fails to allege the requisite reasonable reliance on these

#5130445 v5 \022022 \0004

46

oral misrepresentations" because "[t]he loan documents expressly prohibit oral termination or amendment and provide for termination or amendment only in writing signed by Brooklyn Federal." (Id., Ex. 2 at 55).

c.    In its February 18, 2014 decision, this Court re-affirmed Justice Fried, holding that "the Action Plan provides no basis to find that there was reasonable reliance on a writing that extended the loans' maturity date" and that "DAB cannot establish that it reasonably relied upon the Action Plan – a document it was unaware of until May 2013 – because it was an internal document that was not communicated, delivered or presented to DAB." (Id., Ex. 3 at 26-27).

131.    These holdings precluded Justice Ramos from finding that DAB might be able to establish reasonable reliance based on the factual record here, the entirety of which was presented to this Court in the September 2013 Record on Appeal.

132.    Furthermore, because reasonable reliance is an element of estoppel, by virtue of the prior holdings in this case, DAB's estoppel defense fails as a matter of law.

133.    Indeed, in a case, like here, involving fraud and estoppel allegations, this Court affirmed Justice Ramos and held that contract language disclaiming any

reliance on the defendants' representations was fatal to both of the plaintiff's

claims. "Plaintiff's claims for promissory estoppel and fraud relating to the June

2004 contract fail since, pursuant to the contract, the property was being purchased

'AS IS . . . AND WITH ALL FAULTS,' and plaintiff was relying solely on its

own inspections of the property.    Thus, plaintiff accepted all defects in the

premises and was not relying on any assurances made by defendants as to the

condition of the property." Princes Point, LLC v. AKRF Engineering, P.C., 94

A.D.3d 588, 588 (1st Dep't 2012).[12]  See also CrossLand Sav., FSB v. Loguidice-

Chatwal Real Estate Inv. Co., 171 A.D.2d 457, 457 (1st Dep't 1991) (dismissing

---

[12]    The relevant contractual provision here is clearer and more expansive than the
provision in Princes Point.  Section 3.21 of the Building Loan Mortgage states as follows
(emphasis added):

> "The Mortgagor recognizes that, in general, borrowers who experience difficulties
> in honoring their loan obligations, in an effort to inhibit or impede lenders from
> exercising the rights and remedies available to lenders pursuant to mortgages,
> notes, loan agreements or other instruments evidencing or affecting loan
> transactions, frequently present in court the argument, without merit, that some
> loan officer or administrator of the lender made an oral modification or made
> some statement that could be interpreted as an extension or modification or
> amendment of one or more debt instruments and that the borrower relied to its
> detriment upon such "oral modification of the loan document".  For that reason,
> and in order to protect the Mortgagee from such allegations in connection with the
> transactions contemplated by this Mortgage and the Building Loan Agreement,
> **the Mortgagor acknowledges that this Mortgage, the Note, the Building Loan**
> **Agreement, and all instruments referred to in any of them can be extended,**
> **modified or amended only in writing executed by the Mortgagee** and that none
> of the rights or benefits of the Mortgagee can be waived permanently except in a
> written document executed by the Mortgagee.    The Mortgagor further
> acknowledges the Mortgagor's understanding that no officer or administrator of
> the Mortgagee has the power or the authority from the Mortgagee to make an oral
> extension or modification or amendment of any such instrument or agreement on
> behalf of the Mortgagee."

estoppel defense in mortgage foreclosure action as "negated by the express terms of the parties' unambiguous written agreements"); Wasserman v. Harriman, 234 A.D.2d 596, 597 (2d Dep't 1996) (estoppel defense in foreclosure action precluded by "mortgage provision barring oral modifications.").

134.    By disregarding the prior orders of this Court, the IAS Court exceeded its authority.    "The respondent cites no authority, and indeed, none exists, to support the Trial Judge's disregard of the earlier order of this court.    Trial courts are without authority to vacate or modify orders of the Appellate Division, or to reverse holdings of this court." Maracina v. Schirrmeister, 152 A.D.2d 502, 502-503 (1st Dep't 1989). See also Fleet Credit Corp. v. Cabin Serv. Co., 210 A.D.2d 57, 57 (1st Dep't 1994) (IAS court is "without authority to modify or vacate an order of the Appellate Division"); Brown v. Brown, 169 A.D.2d 487, 487 (1st Dep't 1991) ("The IAS court was without authority to grant the relief requested by appellant, which was previously denied by an order of this court."); Wiener v. Wiener, 10 A.D.3d 362, 363 (2d Dep't 2004) ("[A] trial court, upon a remand or remittitur, is without power to do anything except to obey the mandate of the higher court, and render judgment in conformity therewith.") (citation omitted); Matter of Cunha v. Urias, 112 A.D.3d 923, 924 (2d Dep't 2013) (same); In re

Jennifer G., 110 A.D.2d 801, 801 (2d Dep't 1985) ("Trial Judges cannot flout the remittitur of this court, either expressly or implicitly.").

135.  Furthermore, Justice Fried's March 30, 2012 decision and orders, having been affirmed on appeal, are law of the case.  Justice Ramos lacked the power to disregard the March 30, 2012 decision and reopen inquiry into DAB's purported reasonable reliance.  "The ruling issued by Justice [Fried] on this question remains the law of the case, and it may not be contravened by a court of coordinate jurisdiction."  Grossman v. Meller, 213 A.D.2d 221, 224 (1st Dep't 1995).

136.  "An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court . . . and operates to foreclose re-examination of [the] question absent a showing of subsequent evidence or change of law."  Carmona v. Mathisson, 92 A.D.3d 492, 493 (1st Dep't 2012) (quoting Kenney v. City of New York, 74 A.D.3d 630, 630-31 (1st Dep't 2010); NAMA Holdings, LLC v. Greenberg Traurig, LLP, 92 A.D.3d 614, 614 (1st Dep't 2012) (same).  Here, there is neither new evidence nor a change of law to justify a re-examination of the issue of reasonable reliance.

137.  "The doctrine of law of the case 'is essential to an orderly and seemly administration of justice in a court composed of several judges.  [Violation of the

doctrine] is a breach of comity which, if sanctioned, could only lead to unseemly conflicts of decision and to protracting the litigation.'" Post v. Post, 141 A.D.2d 518, 519 (2d Dep't 1988) (quoting George W. Collins, Inc. v. Olsker-McLain Indus., Inc., 22 A.D.2d 485, 489 (4th Dep't 1965)). See also Forbush v. Forbush, 115 A.D.2d 335, 336 (4th Dep't 1985) ("It is fundamental that a Judge may not review or overrule an order of another Judge of co-ordinate jurisdiction in the same action or proceeding.") (citation omitted). Cf., Baron v. Baron, 128 A.D.2d 821, 822 (2d Dep't 1987) ("The Supreme Court properly held that the doctrine of law of the case precluded the defendant from relitigating an issue that was previously decided by order of the same court dated July 12, 1983.").

138.   When a trial court violates the law of the case doctrine, "the Appellate Division may properly reverse it for that reason alone, without regard to the merits." Post, 141 A.D.2d at 519. In fact, this Court has held that trial courts lack subject matter jurisdiction to contravene orders like Justice Fried's, which were previously affirmed on appeal. "Because Justice Crane's approval of the MSA was subsequently affirmed by this Court, Justice Ramos lacked the subject matter jurisdiction or the power to, in effect, reverse this Court by modifying the MSA." State v. Philip Morris, Inc., 308 A.D.2d 57, 66 (1st Dep't 2003).

139.   Moreover, when a trial court exceeds its power, whether by violating the law of the case doctrine or disregarding an appellate order, the error can be remedied through a writ of prohibition.

140.   "[The Civil Court] had no power to change the terms of a remittitur from an appellate court.   Moreover, it has been held that prohibition is an appropriate remedy to correct such an abuse of power." Barton Realty Corp. v. Mangan, 25 A.D.2d 730, 731 (1st Dep't 1966) (citing Reformed Protestant Dutch Church, 185 Misc. at 1007; Kirkpatrick Home for Childless Women v. Kenyon, 209 A.D. 179 (4th Dep't 1924); 7 Weinstein-Korn-Miller, New York Civil Practice, ¶ 5524.02, p. 55-174; 23 Carmody-Wait, N. Y. Prac., Costs, § 339). See also Matter of Brown v. Blumenfeld, 296 A.D.2d 405, 406 (2d Dep't 2002) (granting writ of prohibition where trial court's order lacked "statutory or constitutional support"); Matter of B.T. Prods., Inc. v. Barr, 44 N.Y.2d 226, 236 (1978) (affirming writ of prohibition where trial court lacked jurisdiction to issue search warrant).

141.   Because the IAS Court lacked authority to disregard the prior orders in this case, a writ of prohibition is appropriate.

## B.    Appeal of the IAS Court's Order Is Not an Adequate Remedy

142.  Petitioner has no other adequate remedy but a proceeding under Article 78 because an appeal of the March 21 Order will not be considered by this Court until the September Term at the soonest, which will be too late to enable the building envelope to be completed before winter and too late for construction to be completed before expiration of critical zoning entitlements in August 2015.[13]

143.  For the reasons explained above, extraordinary relief is appropriate here because the IAS Court has disregarded the decisions of this Court and Justice Fried, thereby exceeding its authority, and absent immediate relief, Petitioner and all of DAB's other creditors will be irreparably harmed.

---

[13]  In addition, Petitioner will be forced to incur the expense of trial and the risk of inconsistent rulings by Justice Ramos even though this Court and Justice Fried have already resolved the principal issue to be tried – DAB's purported reasonable reliance – in favor of Petitioner as a matter of law.

#5130445 v5 \022022 \0004

## CONCLUSION

WHEREFORE, Petitioner respectfully requests an order prohibiting the IAS

Court from trying DAB's affirmative defense of estoppel, and granting such other

and further relief as the Court deems just and proper.

Dated: New York, New York
      June 23, 2014

MORRISON COHEN LLP

By:
    Jerome Tarnoff
    Y. David Scharf
    Danielle C. Lesser
    Brett D. Dockwell
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Petitioner Orchard Hotel LLC*

#5130445 v5 \022022 \0004

54

## VERIFICATION

JEROME TARNOFF, pursuant to CPLR 2106 and under penalty of perjury, affirms as follows:

1.    I am an attorney admitted to practice before the Courts of this State and am a member of the law firm of Morrison Cohen LLP, counsel for Petitioner Orchard Hotel, LLC and as such am fully familiar with the facts and circumstances of the instant case.

2.    I have read the foregoing Verified Petition for Writs of Prohibition and Mandamus, Summary Judgment and Emergency Relief and the same is true to my own knowledge.

Dated:  New York, New York
        June 23, 2014

                                        _____
                                        Jerome Tarnoff

#5130445 v5 \022022 \0004