UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: : | Chapter 11 |
| : | |
| D.A.B. GROUP LLC, : | Case No. 14-12057 (SCC) |
| : | |
| Debtor. : | |
| : | |

# DECLARATION OF BRETT DOCKWELL

BRETT DOCKWELL declares the following to be true under penalties of perjury:

1. I am a member of Morrison Cohen LLP, counsel to Orchard Hotel, LLC ("Orchard"). I submit this declaration in support of Orchard's Response to the Objection of D.A.B. Group LLC (the "Debtor") to Orchard's Claim. I am fully familiar with the facts set forth herein based on my personal knowledge and my review of the relevant loan files of Brooklyn Federal Savings Bank ("BFSB"), which are in Orchard's possession.

2. **Exhibit 1** is comprised of true and correct copies of the Assignments of Mortgage and Security Agreement for each of the Project Loan Mortgage and Building Loan Mortgage, each such assignment duly recorded in the Office of the New York City Register on July 7, 2011 at CRFN 2011000239639 and CRFN 2011000239638, respectively.

3. Unless otherwise noted, the exhibits attached to this declaration and described below are part of the record in the state court foreclosure action, entitled *Orchard Hotel, LLC v. D.A.B. Group LLC, et al.*, No. 850044/2011 (N.Y. Sup. Ct.).

**Factual Background**

4. This chapter 11 case was commenced on July 14, 2014, following Orchard's three-year effort to foreclose the two Mortgages encumbering the Debtor's Mortgaged Property.[1]

5. The Debtor was represented in the state court foreclosure action by William Wallace ("Wallace") of Favata & Wallace LLP. Wallace also represented the Debtor in negotiating the Loans in 2007 and 2008 and, according to the closing statements, was paid at the closing of each Loan.

6. **Exhibit 2** is a true and correct copy of excerpts from the transcript of the January 7, 2013 deposition of Joanne B. Gallo, the former Chief Credit Officer of BFSB and the head of its Loan Workout Department during the events at issue.

7. **Exhibit 3** is a true and correct copy of a May 24, 2011 letter from Wallace, the Debtor's counsel, to David Kriss, counsel for BFSB.

8. **Exhibit 4** is a true and correct copy of excerpts from the transcript of the hearing before the Trial Court on July 31, 2012.

9. **Exhibit 5** is a true and correct copy of excerpts from the transcript of the hearing before the Trial Court on July 9, 2013.

10. **Exhibit 6** is a true and correct copy of the Memorandum Decision and Order of the Honorable Bernard J. Fried, entered on March 30, 2012.

11. **Exhibit 7** is a true and correct copy of the Decision and Order of the Appellate Division, First Department, entered on May 28, 2013.

---

[1] Capitalized terms shall have the meanings set forth in Orchard's Response to the Objection to Claim, filed March 13, 2015, unless specifically defined herein.

#5611670 v3 \022022 \0004

12. **Exhibit 8** is a true and correct copy of the Decision and Order of the Appellate Division, First Department, entered on February 18, 2014.

13. **Exhibit 9** is a true and correct copy of Debtor's Supplemental Summons and Verified Answer and Counterclaims, filed on August 15, 2011.

14. **Exhibit 10** is a true and correct copy of Affidavit of Ben Zhavian ("Zhavian"), the Debtor's principal, in Opposition to Motions to Dismiss the Debtor's Counterclaims, filed on November 3, 2011.

15. **Exhibit 11** is a true and correct copy of BFSB's Commercial Loan Action Plan dated February 15, 2011, which was maintained in BFSB's loan files.

16. **Exhibit 12** is a true and correct copy of the Debtor's Amended Verified Answer, Cross-Claims and Counterclaims, filed on August 8, 2013.

17. **Exhibit 13** is a true and correct copy of the Brief for Plaintiff-Appellant filed by Orchard in the Appellate Division, First Department, on September 3, 2013.

18. **Exhibit 14** is a true and correct copy of Brief for Defendants-Respondent filed by the Debtor in the Appellate Division, First Department, on October 28, 2013. The brief is 56 pages long and contains 13,998 words. On December 4, 2013, the Debtor's counsel argued the points raised in its brief before a five-judge panel in the Appellate Division.

19. **Exhibit 15** is a true and correct copy of construction superintendent's log book for the work performed by Cava Construction & Development, Inc. ("Cava") and its sub-contractors. A copy of this log book was provided to Orchard by Cava as one of the exhibits used in the arbitration between Cava and the Debtor in late 2010.

20.     **Exhibit 16** is a true and correct copy of the February 3, 2012 Affidavit of Joanne B. Gallo with Exhibits B and E thereto, which are copies of BFSB's loan history reports for the Project Loan and Building Loan, respectively.

21.     **Exhibit 17** is a true and correct copy a letter from the Debtor to BFSB, dated September 1, 2010 and signed on October 4, 2010, requesting a six-month extension of the maturity date of the Loans. A copy of this letter was maintained in BFSB's loan files.

22.     **Exhibit 18** is a true and correct copy of excerpts from the transcript of the January 7, 2013 deposition of Bruce Gordon, a former consultant in BFSB's Loan Workout Department during the events at issue.

23.     **Exhibit 19** true and correct copy of excerpts from the transcript of the April 3, 2013 deposition of Richard Maher ("Maher"), a former BFSB Loan Administrator who handled administration of the Loans during the events at issue.

24.     **Exhibit 20** is a true and correct copy of an August 24, 2010 email from Jack Rosenfield to Zhavian, as filed by the Debtor in opposition to Orchard's motion to dismiss. The handwriting on the email is part of the document as filed.

25.     **Exhibit 21** is a true and correct copy of the April 18, 2013 Supplemental Affirmation of William Wallace, without exhibits, filed in opposition to Orchard's motion for summary judgment.

26.     **Exhibit 22** is a true and correct copy of BFSB's internal History Sheet for the Loans, which was maintained in BFSB's loan files.

27.     **Exhibit 23** is a true and correct copy of a string of emails, beginning with an email on March 3, 2011 from Maher to Zhavian discussing the "misuse of funds and potential

violations of the law." The string of emails was forwarded to David Aviram, an Orchard manager, on March 23, 2011.

28. **Exhibit 24** is a true and correct copy of the March 22, 2011 memorandum of BFSB's Loan Workout Committee regarding the sale of the Loans. This memorandum was maintained in BFSB's loan files.

29. **Exhibit 25** is a true and correct copy of the June 22, 2011 letter from James G. Marsh, counsel to BFSB, to Wallace.

30. **Exhibit 26** is a true and correct copy of June 23, 2011 Notice of Default from Orchard to the Debtor, with exhibits thereto.

31. After attempting unsuccessfully to discuss a workout with the Debtor, on July 1, 2011 Orchard commenced an action in state court to foreclose the Mortgages.

32. **Exhibit 27** is a true and correct copy of the July 1, 2011 Foreclosure Complaint, without exhibits.

33. **Exhibit 28** is a true and correct copy of the Mortgage Note filed in *In re Sheba Realty Corp.*, No. 12-75455 (Bankr. E.D.N.Y.) as an exhibit to the claim of ADHY Advisors LLC (Claim No. 3).

34. **Exhibit 29** is a true and correct copy of the Adjustable Rate Mortgage Note filed in *In re Marcia Campbell*, No. 13-40003 (Bankr. S.D.N.Y.) as an exhibit to the claim of 3939 WPR Funding, LLC (Claim No. 7).

35. **Exhibit 30** is a true and correct copy of a Mailing Address Verification Form dated August 1, 2008 and signed by the Debtor's principal. The form was maintained in BFSB's loan files.

36.     **Exhibit 31** is comprised of true and correct copies of two letters, dated March 9, 2009 and March 25, 2010, from the Debtor to BFSB requesting a six-month extension of the maturity date of the Loans. These letters were maintained in BFSB's loan files.

37.     **Exhibit 32** is comprised of true and correct copies of Orchard's legal bills in connection with its enforcement of the Loan Documents.

**The State Court Foreclosure Action**

*Dispositive Motions*

38.     Orchard filed three motions to dismiss and one motion for summary judgment. Orchard also opposed a cross-motion for summary judgment filed by Flintlock.

39.     Orchard's first motion to dismiss sought dismissal of the Debtor's three counterclaims. The motion was briefed in Fall 2011 and argued on January 18, 2012.

40.     Orchard filed its summary judgment motion on February 3, 2012.

41.     **Exhibit 33** is a true and correct copy of the February 3, 2012 Notice of Motion of Orchard, setting forth the relief sought by Orchard's motion for summary judgment.

42.     In support of its summary judgment motion, Orchard filed five affidavits and 57 exhibits. Orchard's motion was opposed by four defendants.

43.     In response to Orchard's summary judgment motion, Flintlock Construction Services LLC ("Flintlock"), a mechanic's lienor, cross-moved for summary judgment and for leave to file an amended answer and counterclaims. Because Flintlock's motions challenged the enforceability of the Mortgages and could have obstructed foreclosure, Orchard was forced to oppose Flintlock's motions.

44. Briefing on Orchard's summary judgment motion and Flintlock's cross-motions was completed on April 2, 2012. At the Trial Court's direction, the parties filed supplemental briefs on April 18, 2013. In addition to its brief, Orchard submitted two supplemental affidavits and nine additional exhibits to rebut the Debtor's allegations.

45. On May 31, 2013, the Debtor's counsel wrote an inflammatory letter to the Trial Court, accusing Orchard's counsel, *inter alia*, of making "false representations" to the court and "secreting" documents. Those charges were entirely without merit, but required a response nonetheless. Accordingly, Orchard's counsel drafted a rebuttal affirmation, which was filed on June 4, 2013 along with 20 exhibits that refuted the Debtor's claims.

46. Orchard's motion for summary judgment was orally argued four times: on July 31, 2012, May 1, 2013, June 11, 2013 and July 9, 2013. Each of these arguments required substantial preparation.

47. At the July 9, 2013 oral argument, the Trial Court granted Flintlock leave to file its amended answer and counterclaims and, *sua sponte*, granted the Debtor leave to file an amended answer and counterclaims.

48. On August 28, 2013, Orchard moved to dismiss Flintlock's and the Debtor's respective counterclaims. Briefing of the two motions was completed on November 20, 2013.

*Appeals and Appellate Motions*

49. On January 23, 2013, the Debtor perfected an appeal of Justice Fried's March 30, 2012 order. Briefing was completed on March 7, 2013, and the appeal was argued before a five-judge panel on May 7, 2013.

50. **Exhibit 34** is a true and correct copy of a July 18, 2013 letter mailed by Orchard to all parties and e-filed, attaching the July 9, 2013 hearing transcript with a five-line errata sheet.

51. As a courtesy, Orchard sent a copy of the July 9, 2013 transcript to the Debtor on July 15, 2013. Orchard attempted to negotiate a proposed order with the Debtor to memorialize the Trial Court's rulings from the bench on July 9, but the Debtor refused to cooperate. The Debtor also refused to stipulate to the July 9 transcript or provide its own errata.

52. **Exhibit 35** is a true and correct copy of a string of emails between Wallace and me on July 18, 2013 regarding the July 9, 2013 transcript and Orchard's errata sheet.

53. From July 30, 2013 to August 2, 2013, I attempted to reach Wallace after he agreed to provide me with any objections or responses to my July 18, 2013 letter. I was told repeatedly by Wallace's assistant that Wallace was "in a meeting" and would call me back, but he did not.

54. **Exhibit 36** is a true and correct copy of a letter I sent to Wallace on August 2, 2013 regarding Wallace's failure to respond to my July 18 letter.

55. **Exhibit 37** is a true and correct copy of email correspondence between Wallace and me on August 2, 2013, in response to my letter of the same date.

56. On July 30, 2013, the Trial Court entered a short-form order stating that the Court's decision was "reflected in the Court's transcript." Orchard perfected its appeal of the Trial Court's July 30, 2013 order on August 5, 2013, in time for the Appellate Division's October Term.

57. In response to Orchard's appeal, the Debtor filed a notice of settlement *in the Trial Court*, seeking entry of a proposed long-form order to replace the July 30 short-form order. The Debtor's proposed long-form order was substantively the same as the July 30 short-form order and was sought in a transparent attempt to delay Orchard's appeal.

58. The Debtor then moved the Appellate Division to dismiss Orchard's appeal on the ground that July 30 order was not "appealable." The Debtor also moved for a two-month adjournment of Orchard's appeal. The Debtor sought the adjournment on an expedited basis, requiring counsel to appear at the Appellate Division on August 21, 2013 to orally argue the motion.

59. Orchard opposed the Debtor's motions and cross-moved for expedited hearing of the appeal. In an attempt to resolve the motions, Orchard offered a one-month extension of the appeal, which the Debtor refused. Following oral argument, the Appellate Division granted the Debtor a one-month extension.

60. On August 28, 2013, the Trial Court settled an order proposed by the Debtor, which essentially repeated the relief recited in the July 9 transcript. The Trial Court's August 28, 2013 order vitiated the Debtor's motion to dismiss Orchard's appeal because the August 28 order was indisputably "appealable." Accordingly, Orchard immediately appealed the August 28, 2013 order.

61. Rather perfecting an entirely new appeal simply to add the new August 28 order, Orchard proposed to the Debtor that the parties simply incorporate the new order into the existing appeal, a common practice in the Appellate Division. This proposal was especially sensible because the record on appeal was 2,990 pages, and the Appellate Division required nine

copies. Amending or supplementing the existing record would have avoided the unnecessary reprinting of nearly 27,000 pages and would not have prejudiced any party.

62. The Debtor refused Orchard's proposal. As a result, Orchard was forced to perfect a new appeal, filing nine new copies of virtually the same brief and record.

63. After filing its new appeal, Orchard moved for expedited hearing of the appeal, which the Appellate Division granted.

64. Three business days before its opposition brief was due, the Debtor filed a motion to strike the record on appeal. The Debtor brought an emergency application in the Appellate Division to adjourn Orchard's appeal on the basis of the Debtor's motion to strike. The Appellate Division denied the Debtor's motion, but the appeal was delayed by a further month.

65. When Justice Ramos issued his March 21, 2014 decision, Orchard immediately filed a notice of appeal. However, the Appellate Division's calendar prevented Orchard from seeking timely appellate review.

66. The calendar for the Appellate Division, First Department, is divided into "terms," each of which has pre-set filing deadlines. Because the First Department does not sit during the summer months, appeals that do not meet the filing deadline for the final term each spring cannot be heard until the following fall. In 2014, the filing deadline for the final spring term was March 17, 2014, four days *before* the March 21, 2014 decision was entered. As a result, the soonest Orchard could obtain appellate review of the March 21 ruling was September 2014.

67. This six-month delay posed a substantial risk to Orchard and all other creditors because of the time-limited nature of the Mortgaged Property's zoning entitlements. That delay

would have virtually ensured that the remaining construction work could not be completed before the zoning entitlements expired, Orchard was concerned that the expiration of these entitlements would chill bidding in a state court foreclosure auction or otherwise devastate the value of the Mortgaged Property. These concerns appear to have been well-founded, as Massey Knakal's report on its marketing activities revealed that several potential bidders were concerned about the status of construction.

68. **Exhibit 38** is a true and correct copy of the Verified Petition for Writs of Prohibition and Mandamus, Summary Judgment and Emergency Relief, filed by Orchard in the Appellate Division on June 23, 2014.

69. Orchard's petition was heard on an emergency basis by a single justice of the Appellate Division on June 23, 2014, who directed the parties to seek relief from Justice Ramos in the first instance to protect the Mortgaged Property's development rights. The petition was referred to a five-judge panel for consideration.

70. On July 7, 2014 Orchard perfected its appeal of the March 21 Ramos Ruling.

*State Court Discovery and the Debtor's Strategy of Delay*

71. During litigation in the state court, the Debtor served two rounds of document requests and deposed four witnesses of its choosing.

72. The Debtor's first document requests were served on Orchard on August 18, 2011. In October 2011, I informed Wallace that Orchard was ready to produce documents, and the parties agreed that they would enter into a confidentiality stipulation. I sent Wallace a slightly modified copy of the New York City Bar Association Model Confidentiality Form on October 21, 2011. However, the Debtor refused to execute the confidentiality stipulation.

73. **Exhibit 39** is comprised of true and correct copies of letters I sent to Wallace on November 1, 2011, November 18, 2011 and January 5, 2012 regarding the Debtor's refusal to execute the confidentiality agreement.

74. At a conference with the Trial Court on December 20, 2011, I informed the court that the Debtor had refused to execute a confidentiality stipulation. The Court directed the parties to sign the stipulation. However, the Debtor waited until January 6, 2011 to sign the stipulation. As a result, rather than producing documents in October 2011, Orchard was forced to wait until January 2012.

75. **Exhibit 40** is comprised of true and correct copies of subpoenas dated September 11, 2012 from the Debtor to Joanne Gallo and Bruce Gordon, and a subpoena dated September 26, 2012 from the Debtor to Richard Maher.

76. **Exhibit 41** is comprised of true and correct copies of letters sent to the Trial Court on August 15, 2012 and October 24, 2012 regarding the Debtor's delay in scheduling depositions. Orchard's counsel also raised this issue during status conferences with the Trial Court on November 20, 2012 and January 8, 2013.

77. The Debtor deposed the final BFSB witness on April 3, 2013. As of that date, all of the Debtor's discovery requests had been answered, and the Debtor made no further requests.

78. At the direction of the Trial Court, the parties filed supplemental briefs on April 18, 2013, incorporating deposition testimony into the summary judgment motion and cross-motions.

79. The parties appeared before the Trial Court for oral argument on the summary judgment motion and cross-motions on May 1, 2013. During oral argument, the Debtor told the Court it was unable to review BFSB's loan files because it did not know where the files were.

80. However, the Debtor had been told numerous times that Orchard possessed BFSB's loan files, and the Debtor never sought their production. Nevertheless, Justice Ramos again postponed consideration of Orchard's summary judgment motion so that the Debtor could serve new document requests on Orchard.

81. **Exhibit 42** is a true and correct copy of the April 2, 2012 Reply Affidavit of David Aviram, filed more than a year before the May 1, 2013 oral argument, in which Mr. Aviram states that he had reviewed "the loan files provided to Mortgagee by Brooklyn Federal Savings Bank, the assignor of the Mortgages, of which I am the custodian."

82. **Exhibit 43** is comprised of true and correct copies of letters from Wallace to the Trial Court requesting adjournments of various deadlines on October 25, 2011, February 22, 2012, May 2, 2012, June 6, 2012, October 16, 2012, January 2, 2013 and April 4, 2013.

83. Over Orchard's objections, the Debtor obtained 28 days of adjournments of Orchard's motion to dismiss alone, and an additional 65 days of adjournments of Orchard's summary judgment motion.

*The Mortgaged Property's Entitlements*

84. The Debtor initially obtained its building permits for the project in Fall 2008.

85. However, the Debtor refused to cooperate with, and at times actively attempted to thwart, the Receiver's efforts to protect the Mortgaged Property's building permits and zoning entitlements.

86. In Fall 2012, the Receiver began to prepare an application to the New York City Board of Standards and Appeals ("BSA") for a further extension of the zoning entitlements.

87. Orchard hired zoning counsel, Goldman Harris LLP, to prepare the application and present it at public hearings of the Community Board and the BSA on behalf of the Receiver. Orchard paid all of these fees.

88. The Receiver and Orchard repeatedly asked the Debtor to execute a form so that the Receiver could file the application with the BSA, but the Debtor refused.

89. On several occasions, including during a December 5, 2012 telephonic conference with the Trial Court's law clerk and other counsel, Wallace stated that the Debtor would not voluntarily extend the Mortgaged Property's entitlements. According to Wallace, the Debtor recognized that it would likely lose the Mortgaged Property through foreclosure and the Debtor refused to take any action that might benefit the property's next owner.

90. **Exhibit 44** is a true and correct copy of an Order to Show Cause filed by the Receiver on December 21, 2012 seeking authority from the Trial Court to execute documents on the Debtor's behalf in order to apply to the BSA to extend the zoning entitlements.

91. **Exhibit 45** is a true and correct copy of an Order to Show Cause filed by Orchard on December 26, 2012 in support of the Receiver's motion and seeking to enjoin the Debtor from interfering with the Receiver's attempts to extend the entitlements.

92. **Exhibit 46** is a true and correct copy of a December 20, 2012 Affidavit of Howard Goldman in support of Orchard's Order to Show Cause.

#5611670 v3 \022022 \0004

93. The Receiver's motion and Orchard's motion were heard by the Trial Court on January 8, 2013. At that hearing, Wallace informed the court that the Debtor had relented after months of intransigence and would now cooperate in applying for the extension.

94. **Exhibit 47** is a true and correct copy of an Order to Show Cause filed by Orchard on April 29, 2013 seeking, again, to enjoin the Debtor from interfering with the Receiver's attempts to extend the entitlements, and the Affidavit of Eugene Travers filed in support thereof, without exhibit.

95. On August 20, 2013, the BSA approved the application to extend the Mortgaged Property's zoning entitlements for two years.

96. **Exhibit 48** is a true and correct copy of the June 24, 2014 Affirmation of Receiver Simon Miller in support of his Order to Show Cause seeking authority to take necessary steps to protect the Mortgaged Property's building permits.

97. **Exhibit 49** is a true and correct copy of a June 20, 2014 Notice of Default sent by Orchard to the Debtor.

98. **Exhibit 50** is a true and correct copy of a June 25, 2014 email from Zhavian to the Receiver and Orchard in response to the June 20 Notice of Default.

99. As a result of the Debtor's inaction, Orchard and the Receiver were forced to seek emergency relief through the state court.

100. On June 24, 2014, the Receiver filed an Order to Show Cause before the Trial Court seeking the authority to negotiate an extension of the building permits with the Department of Buildings ("DOB"). That relief was granted two days later.

101. **Exhibit 51** is a true and correct copy of the order entered on June 26, 2014, authorizing the Receiver, *inter alia*, "to take all necessary, reasonable and appropriate action to protect the Mortgaged Property's zoning entitlements and building permits."

102. The Receiver was in discussions with the DOB when the Debtor filed its chapter 11 petition. By Order of this Court entered October 1, 2014, the Receiver was authorized to continue discussions with the DOB and to implement a site safety and maintenance plan.

*The Restraining Order*

103. **Exhibit 52** is a true and correct copy of an email sent by David Aviram ("Aviram") on May 24, 2011, forwarding a voicemail he received from Zhavian and referencing eight other calls he had received from Zhavian "in the middle of the night."

104. **Exhibit 53** is a true and correct copy of the August 27, 2014 Affidavit of Jordan Socaransky ("Socaransky") filed in support of Orchard's motion for contempt against Zhavian. Socaransky submitted an earlier and substantially more detailed affidavit in support of Orchard's November 2013 motion for a restraining order against Zhavian (*see* Ex. 57 below). Because that earlier affidavit recounted graphic statements made by Zhavian, Orchard consented to seal that affidavit (although Wallace never followed up with the Court clerk to have the affidavit removed from the publicly available electronic court docket, where it remains). Zhavian has never requested that the affidavit attached here be sealed, and it is part of the public record. (*See Orchard Hotel, LLC v. D.A.B. Group LLC, et al.*, No. 850044-2011 (N.Y. Sup. Ct.) NYSCEF Doc. No. 876).

105. **Exhibit 54** is a true and correct copy of a March 13, 2012 letter I sent to Wallace regarding Zhavian's harassment of Aviram.

#5611670 v3 \022022 \0004

106. Since the commencement of the state court foreclosure action, Zhavian has sent at least 94 emails directly to Orchard's counsel and left at least 26 voicemails – most of which were long and rambling – for Orchard's attorneys.

107. **Exhibit 55** is comprised of true and correct copies of emails sent by Orchard attorney Danielle Lesser to Wallace and Zhavian on August 7, 2014, September 18, 2013 and September 17, 2013, asking that Zhavian cease communicating with Orchard's counsel. Zhavian's communications continued unabated.

108. In 2013, Zhavian initiated a rabbinical court proceeding against Orchard attorney Y. David Scharf, seeking to have Scharf shunned solely for representing Orchard. Zhavian showed up unannounced and uninvited at Scharf's synagogue and office. Scharf was forced to retain a rabbi to represent him in the proceeding.

109. Zhavian also filed disciplinary complaints with the First Department Disciplinary Committee against two other Orchard attorneys, Danielle Lesser and Brett Dockwell, based solely on their advocacy for Orchard.

110. **Exhibit 56** is a true and correct copy of a November 5, 2014 email from Zhavian to a group of recipients, including the courts reporter for the *New York Post*, Julia Marsh, attaching copies of Disciplinary Complaints filed by Zhavian against Danielle Lesser and me with the Departmental Disciplinary Committee.

111. **Exhibit 57** is a true and correct copy of an Order to Show Cause filed by Orchard on November 13, 2013 seeking a restraining order against the Debtor and Zhavian. On the return date of Orchard's motion, Zhavian stipulated to the entry of the restraining order.

112. **Exhibit 58** is a true and correct copy of the restraining order entered against the Debtor and Zhavian on December 11, 2013.

113. **Exhibit 59** is a true and correct copy of a July 8, 2014 letter from Danielle Lesser to Wallace notifying him that Zhavian was breaching the restraining order and warning that if Zhavian did not comply with the order, Orchard would seek a contempt order.

114. **Exhibit 60** is a true and correct copy of a July 9, 2014 email from Zhavian, responding to Lesser's July 8 letter by acknowledging his breach of the restraining order.

115. Zhavian has continued his obstreperous conduct.

**The Guaranty Action**

116. On June 30, 2011, Orchard commenced an action against Zhavian to enforce the guaranties of the Loans. *Orchard Hotel, LLC v. Zhavian* (Sup. Ct. Kings Cnty. Index No. 15013/11).

117. The action was brought under CPLR 3213 for summary judgment in lieu of complaint. The motion was fully briefed on September 6, 2011 and orally argued on or about September 7, 2011.

118. At oral argument, the presiding judge, Justice Carolyn Demarest asked the parties to submit bench memos addressing whether New York's one-action rule, RPAPL § 1301, applied. On September 30, 2011, Orchard filed an 18-page brief addressing this point.

119. On January 31, 2012, Justice Demarest granted Orchard's motion, finding that Zhavian was liable under the guaranties. However, Justice Demarest stayed further proceedings in the guaranty action until the amount of the Debtor's liability to Orchard is established.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2015 in New York, New York.

s/ Brett Dockwell  
Brett Dockwell