# Exhibit 12

14-12057-scc    Doc 130-12    Filed 03/13/15    Entered 03/13/15 18:07:40    Exhibit 12
Pg 2 of 44

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK
------------------------------------------------------------------------X

ORCHARD HOTEL, LLC,

INDEX NO.: 850044/2011

                          Plaintiff,

         -against-

**AMENDED VERIFIED
ANSWER, CROSS-CLAIMS
AND COUNTERCLAIMS**

D.A.B. GROUP LLC, ORCHARD
CONSTRUCTION LLC, FLINTLOCK
CONSTRUCTION SERVICES LLC, JJK
MECHANICAL INC., EDWARD MILLS &
ASSOCIATES, ARCHITECTS PC, CASINO
DEVELOPMENT GROUP, INC., CITYWIDE
CONSTRUCTION WORKS INC., EMPIRE
TRANSIT MIX INC., MARJAM SUPPLY CO.,
INC., ROTAVELE ELEVATOR INC., SMK
ASSOCIATES INC., FJF ELECTRICAL CO. INC.,
CITY OF NEW YORK, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE,
LEONARD B. JOHNSON, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD,
BROOKLYN FEDERAL SAVINGS BANK,
STATE BANK OF TEXAS, JOHN DOE #1
through JOHN DOE #100, the last 100 names
being fictitious and unknown to plaintiff, the
persons, or parties intended being the tenants,
occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
premises described in the complaint,

                          *Defendants,*
------------------------------------------------------------------------X

         Defendant D.A.B. Group LLC ("DAB") by its attorneys FAVATA &

WALLACE, LLP answers the Complaint herein and asserts affirmative defenses,

cross claims and counterclaims against the Plaintiff and against Defendants

Brooklyn Federal Savings Bank and State Bank of Texas, as follows:

         1.    Denies knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraphs 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12,

13, 14, 15, 16, 17, 18, 20, 27, 28, 33, 43, 44, 52, 53, 56, 65, 66, 67, 68, 76, 77, 78, 79, 80, 86, 89 and 90.

2. Denies each and every allegation set forth in Paragraphs 19, 21, 22, 23, 25, 29 and 30 and refers this Court to the document referred to therein for the terms, conditions and construction of said document.

3. Denies each and every allegation set forth in Paragraphs 24, 34, 40, 45, 46, 47, 49, 50, 51, 61, 62, 63, 69, 75, 81, 82, 83, 84, 85 and 87.

4. Denies each and every allegation set forth in Paragraph 54 of the Complaint except admits that there is a prior action pending between the Plaintiff and this Defendant's principal for relief based on the identical documents as alleged herein and said prior action pending constitutes a bar to this action pursuant to CPLR Rule3211(a)(4) and RPAPL§1301 and further constitutes a bar to this action based on the legal doctrine of "election of remedies".

5. Denies each and every allegation set forth in Paragraphs 55, 57, 58, 59, 60, 70 and 71 and refers this Court to the document referred to therein for the terms, conditions and construction thereof.

6. Denies each and every allegation set forth in Paragraph 88 of the Complaint except admits that there is a prior action pending between this Plaintiff and this answering Defendant's principal, which prior action pending constitutes a bar to this action pursuant to CPLR Rule3211(a)(4) and RPAPL§1301 and

constitutes a further bar to this action based on the legal doctrine of "election of remedies".

## ALLEGATIONS COMMON TO ALL AFFIRMATIVE DEFENSES, CROSSCLAIMS AND COUNTERCLAIMS

7.    At all times hereinafter mentioned, the Defendant D.A.B. Group, LLC ("DAB") was and still is a New York limited liability company.

8.    Upon information and belief, at all times hereinafter mentioned, the Defendant Brooklyn Federal Savings Bank ("Brooklyn Federal") was a federally chartered savings bank maintaining its principal place of business in the County of Kings, State of New York.

9.    Upon information and belief, at all times hereinafter mentioned, the Defendant State Bank of Texas ("State Bank") was and still is a bank organized and existing and chartered in the State of Texas.

10.    Upon information and belief, at all times hereinafter mentioned, the Defendant State Bank was doing business in the State of New York.

11.    Upon information and belief, at all times hereinafter mentioned, the Defendant State Bank was transacting business in the State of New York.

12.    Upon information and belief, at all times hereinafter mentioned, the Plaintiff Orchard Hotel, LLC ("Orchard Hotel") was and still is a New York limited liability company.

13.     Upon information and belief, at all times herein mentioned, the defendant DAB was the borrower under "The Project Loan Note" ("Project Loan") dated November 8, 2007 as defined in the complaint herein and as annexed to the complaint as Exhibit A and incorporated herein, a loan in which the Plaintiff's Assignor, Brooklyn Federal was the named lender.

14.     Upon information and belief, at all times herein mentioned, the aforesaid Project Loan as so defined and annexed to the complaint was allegedly secured by "The Project Loan Mortgage" ("Project Loan Mortgage") on which the Defendant, DAB was the mortgagor and the Plaintiff's Assignor, BROOKLYN FEDERAL[1], was the mortgagee, a copy of which document is annexed to the complaint as Exhibit B and incorporated herein.

15.     Upon information and belief, at all times herein mentioned, the aforesaid Project Loan as so defined and annexed to the complaint had a maturity date of June 1, 2008 with an extension to December 1, 2008.

16.     Upon information and belief, at all times herein mentioned, the aforesaid Project Loan as so defined and annexed to the complaint had its maturity date further extended by a "Loan Modification Agreement" dated August 21, 2008, signed by the defendant DAB as borrower and the Defendant BROOKLYN

---

[1] All references hereafter to BROOKLYN FEDERAL include the acts and omissions of the participant lender, STATE BANK.

FEDERAL as lender, which agreement contained three optional further extensions ending on March 1, 2011; the aforesaid Loan Modification Agreement annexed to the complaint as Exhibit C and incorporated herein.

17.    Upon information and belief, The Project Loan and Loan Modification Agreement as defined aforesaid was a loan in which Defendant State Bank was a participant lender together with Defendant BROOKLYN FEDERAL, and an active participant in the loan process and processing, but unnamed in the loan documents.

18.    Upon information and belief, at all times herein mentioned, the Defendant, DAB was the borrower under "The Building Loan Note" ("Building Loan") dated August 21, 2008, as defined in the complaint herein and annexed to the complaint as Exhibit I and incorporated herein, a loan in which Plaintiff's Assignor Brooklyn Federal was the named lender and DAB the named Borrower.

19.    Upon information and belief, at all times herein mentioned, simultaneously with the execution of the aforesaid Building Loan Note, Defendant DAB as borrower and Defendant BROOKLYN FEDERAL as lender entered into the "Building Loan Agreement", which is annexed to the Complaint as Exhibit "J" and incorporated by reference herein.

20.    Upon information and belief, at all times herein mentioned, the

aforesaid Building Loan as so defined and annexed to the complaint was allegedly secured by "The Building Loan Mortgage" ("Building Loan Mortgage") on which the Defendant DAB was the mortgagor and the Plaintiff's Assignor, BROOKLYN FEDERAL, was the mortgagee, a copy of which document is annexed to the complaint as Exhibit K and incorporated herein.

21.    Upon information and belief, at all times herein mentioned, the aforesaid Building Loan as so defined and annexed to the complaint had a maturity date of September 1, 2009, with optional extensions ending on March 1, 2011.

22.    Upon information and belief, The Building Loan as defined aforesaid was a loan in which Defendant State Bank was a participant lender together with Defendant BROOKLYN FEDERAL, and an active participant in the loan process and processing, but unnamed in the loan documents.

23.    Upon information and belief, Plaintiff ORCHARD HOTEL is the Assignee of BROOKLYN FEDERAL and its successor in interest with respect to The Project Loan, The Loan Modification Agreement and The Building Loan and all of the loan documents evidencing those loans including but not limited to the notes, mortgages and building loan agreements.

24.    Upon information and belief, by virtue of Defendant STATE BANK'S participation in each of the aforesaid loans, Plaintiff ORCHARD HOTEL

is also the Assignee of STATE BANK.

25.    Commencing in or about August 2010, it became apparent that the hotel project undertaken by Defendant DAB at 139-41 Orchard Street in New York County, whose construction the loans was intended to contribute to financing, would take additional time not originally contemplated by DAB and the lenders, Defendants BROOKLYN FEDERAL and STATE BANK, (hereinafter "the parties") to complete.

26.    Upon information and belief, it was in the parties' interest that construction of the hotel proceed without delay in order that the hotel project be completed within certain time constraints imposed by zoning restrictions and time deadlines in order for the hotel to be constructed as planned.

27.    Upon information and belief, commencing in or about August, 2010, the Defendant DAB and the Defendants BROOKLYN FEDERAL and STATE BANK knowing of the need to keep construction of the hotel project being financed by the loans underway in order to substantially complete the construction of the hotel within the time constraints imposed by the zoning restraints and time deadlines, engaged in negotiations for a further extension of the loans' maturity date beyond the March 1, 2011 date set forth in The Project Loan Note, The Loan Modification Agreement and The Building Loan Note.

28.     Upon information and belief, in order for the construction of the hotel project being financed by the loans to proceed, it was necessary that a new general contractor be retained by the Defendant DAB at its substantial cost and expense.

29.     Upon information and belief, Defendant DAB contracted with the Defendant FLINTLOCK CONSTRUCTION SERVICES, LLC as contractor ("Flintlock") to be the new general contractor on the project subject to the contract being approved by the Defendants BROKLYN FEDERAL and STATE BANK.

30.     Upon information and belief, in or about August, 2010 Defendants BROOKLYN FEDERAL and STATE BANK approved the construction contract ("The Flintlock Contract") between Defendant DAB as owner and Defendant FLINTLOCK as general contractor relative to the resumption of and completion of the construction of the hotel project that was being financed by the loans.

31.     Upon information and belief, The Flintlock Contract provided for a 430 day period for construction to be completed and provided a construction budget approved by Defendants BROOKLYN FEDERAL and STATE BANK as the construction lenders.

32.     Upon information and belief, in reliance on Defendant

BROOKLYN FEDERAL's and Defendant STATE BANK's approval of the Flintlock contract, Defendant DAB obligated itself to Flintlock to perform under the Flintlock Contract.

33.    Upon information and belief, subsequent to the execution of the Flintlock Contract and its approval by Defendants BROOKLYN FEDERAL and STATE BANK, as the construction lenders, Flintlock commenced substantial performance under the contract, submitted requisitions to Defendant DAB and its lenders BROOKLYN FEDERAL and STATE BANK and commenced being paid pursuant to the terms of the loan agreements between the parties.

34.    Upon information and belief, commencing in August, 2010 when Defendants BROOKLYN FEDERAL and STATE BANK approved the Flintlock Contract providing for a period of 430 days for completion of construction and funding of The Building Loan, it was represented to Defendant DAB and Defendant FLINTLOCK, by word and deed, by authorized representatives of Defendant BROOKLYN FEDERAL and Defendant State Bank that the loan would be funded and monies advanced so that the proposed hotel project could be completed in accordance with the Flintlock Contract and in a timely manner considering the zoning restraints and time deadlines..

35.    Upon information and belief, it was repeatedly represented to

DAB by Defendants Brooklyn Federal and State Bank that the loan term (maturity date) would be and was extended in order that the hotel project could be completed.

36.   Upon information and belief, in reliance upon the representations made to Defendant DAB by Defendants BROOKLYN FEDERAL and STATE BANK, DAB entered into the Flintlock Contract, invested sums of money, resumed and recommenced work on the construction project at its substantial obligation, costs and expense, and did not seek to sell the hotel project, its land or to refinance the loans.

37.   Upon information and belief, with knowledge of the representations made to the Defendant DAB and the Defendant FLINTLOCK and aware of the need to complete construction of the hotel project considering the zoning restraints and time deadlines as the March 1, 2011 loan maturity date set forth in the loan documents above approached, the senior loan officers of Defendants BROOKLYN FEDERAL and STATE BANK, including but not limited to Joanne Gallo, Richard Maher, Bruce Gordon and Sushil Patel, who had repeatedly and continuously since August 2010 represented to DAB that the loans' maturity date would be and had been extended, made a formal recommendation to the members of that bank's Loan Workout Committee which consisted of

members of the Board of Directors of BROOKLYN FEDERAL who were the ultimate authority regarding the loans at the bank, for written approval of the extension of the maturity date of DAB's loans, as they had represented to DAB would be and had been done.

38.   Upon information and belief, based on the recommendation by Defendant BROOKLYN FEDERAL's senior loan officers as aforesaid, the Loan Workout Committee of Brooklyn Federal, the nominal lender on the loans, signed a writing amending and modifying the notes and the DAB loan documents set forth aforesaid, approving a one year extension of the maturity date of the loans, consisting of two six month extensions beyond the March 1, 2011 date previously agreed to and set forth in the loan documents.

39.   Upon information and belief, the aforesaid writing signed by the authorized members of the Defendant BROOKLYN FEDERAL's Board of Directors, dated February 15, 2011, modified and amended the loan documents in the manner and form provided in the loan documents, and specifically the "governing documents" of the loans, the promissory notes, which provide for instance:

(a)    ¶8.1 of the Project Loan Note (Exhibit A to the complaint incorporated herein) and ¶9.1 of the Building Loan Note (Exhibit I to the complaint incorporated herein), which both state in identical terms:

> "Amendments.  This Note may not be terminated or amended orally, but only by termination or amendment *in writing signed by Holder.)* [Emphasis added.]

(b)    ¶3.21 of the Building Loan Agreement (annexed as Exhibit K to the complaint and incorporated herein):

> "The Mortgagor recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement that could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such 'oral modification of the loan document'. For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage and the Building Loan Agreement, the Mortgagor acknowledges that *this Mortgage, the Note, the Building Loan Agreement, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee.* The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the Mortgagee has the power or authority from the Mortgagee to make an oral extension or modification or amendment of any

such instrument or agreement on behalf of the Mortgagee."
[Emphasis added.]

40.     Upon information and belief, the aforesaid writing signed by
the authorized members of the Defendant BROOKLYN FEDERAL's Board of
Directors dated February 15, 2011 extending The Loan maturity date for one year
(two six month terms) beyond March 1, 2011, constituted an amendment and/or
modification of the existing contracts, agreements and notes of and between the
parties, thereby formalizing, confirming and corroborating the oral representations
and actions that had been made by, to and acted upon by the parties including
Defendant DAB, Defendant FLINTLOCK and Defendants BROOKLYN
FEDERAL and STATE BANK.

41.     Upon information and belief, based upon the representations
repeatedly made, and which were confirmed, corroborated and formalized by the
signed writing dated February 15, 2013, of the Defendant BROOKLYN
FEDERAL's Board of Directors charged with the oversight of the loans, the
defendant DAB in reliance thereon, proceeded with the resumption and
construction of the hotel project, incurring obligations, costs and expenses to its
detriment in the absence of funds being advanced pursuant to the loans' terms,
instead of seeking the refinancing of the loans or the sale of the hotel project..

42.    Upon information and belief, in furtherance of the Flintlock Contract and the Building Loan Agreement, (Exhibit "J" to Plaintiff's complaint), the Defendant FLINTLOCK submitted payment requisitions approved by the project architect (Defendant EDWARD MILLS & ASSOCIATES, ARCHITECTS, P.C.) and approved by Defendant Brooklyn Federal's own project engineer.

43.    Upon information and belief, the aforesaid payment requisitions were submitted on March 3, 2011 and March 22, 2011 for work performed prior thereto.

44.    Both of the aforesaid requisitions were submitted prior to the maturity date of the loans as extended.

45.    Upon information and belief, although the aforesaid requisitions were approved by both The Project architect and The Lender's engineer, Defendant BROOKLYN FEDERAL failed and refused to fund the aforesaid requisitions.

46.    Upon information and belief, pursuant to Article II of the Building Loan Agreement annexed to the complaint as Exhibit J and incorporated herein, the Defendant BROOKLYN FEDERAL was obligated to make advances to or on behalf of Defendant DAB for applicable requisitions.

47.    Upon information and belief, the Defendant BROOKLYN

FEDERAL failed to pay requisitions as required under the Building Loan Agreement with respect to requisitions dated March 3, 2011 and March 22, 2011.

48.    Upon information and belief, by reason of Defendant BROOKLYN FEDERAL's failure to make advances pursuant to the aforesaid requisitions, Defendant FLINTLOCK stopped work on The Project, filed a mechanic's lien against the subject Premises and asserted monetary claims against Defendant DAB in excess of 1.5 million dollars.

49.    Upon information and belief, as a result of the foregoing, the project came to a grinding halt resulting in the filing of mechanics' liens and claims asserted against DAB.

50.    Upon information and belief, at all times herein mentioned, the Defendant, BROOKLYN FEDERAL became a "troubled" banking institution under scrutiny of its federal regulators, whose continued viability as an ongoing bank was questioned and placed in doubt by those regulators.

51.    Upon information and belief, at all times herein mentioned, the Defendant, BROOKLYN FEDERAL, through its senior management, employees and agents and servants, engaged in conduct they deemed necessary in order to try to "save" the bank as an ongoing institution, including both taking those steps deemed necessary to satisfy federal regulators as well as, upon information and

belief, taking those steps deemed most advantageous to it and its survival including

knowingly making and providing false and misleading information to borrowers

relative to the status of loans, including the Defendant DAB.

52.   Upon information and belief, at all times herein mentioned, the

Defendant BROOKLYN FEDERAL, knowingly engaged in a pattern of dishonest

and deceptive behavior toward the Defendant DAB and acted in bad faith with

regard to the DAB loans, including but not limited to such acts as representing to

DAB that the maturity date of its loans had been extended in order to have DAB, in

reliance thereon proceed with the construction of the hotel project, engage a new

general contractor and so on, while at the same time failing and refusing to confirm

the extension of the maturity date in writing; thereafter when said representations

were confirmed and corroborated by the signed writing of the authorized members

of the Defendant BROOKLYN FEDERAL's Board of Directors which modified

and amended the loan documents, failing to advise the Defendant DAB of same,

upon information all to buy time for it to try to resolve its problems with its federal

regulators as it determined whether to keep the loans or sell them, without regard

for interests of its borrower.

53.   Upon information and belief, the Plaintiff herein, ORCHARD

HOTEL, is the Assignee and successor in interest to Defendants BROOKLYN

FEDERAL and STATE BANK and as such stands in the shoes of and its claims and liabilities are subject to any defenses or claims available against Defendants, BROOKLYN FEDERAL and STATE BANK.

### FIRST AFFIRMATIVE DEFENSE (Waiver)

54.    This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth at length herein.

55.    Defendant BROOKLYN FEDERAL'S extension of the Defendant DAB loans' maturity date beyond March 1, 2011, by its actions and oral representations, as thereafter confirmed and corroborated in the signed writing by the authorized members of its Board of Directors dated February 15, 2011, which were reasonably relied upon by the Defendant DAB by its actions in executing the Flintlock contract, assuming obligations, costs and expenses, resuming construction, declining to refinance the loans or sell the project and land, constitutes a waiver of its right to enforce the March 1, 2011 maturity date, and its successors and assigns, including the Plaintiff ORCHARD HOTEL, are thereby estopped from asserting the default alleged in the foreclosure complaint.

56.    By reason of the foregoing the complaint herein must be

Page 17 of 34

dismissed in its entirety.

### SECOND AFFIRMATIVE DEFENSE (Estoppel)

57.   This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth at length.

58.   The representations of the extensions of the loans' maturity date beyond March 1, 2011, made by the agents, servants and/or employees of Defendant BROOKLYN FEDERAL to Defendant DAB, later confirmed and corroborated in a signed writing dated February 15, 2011, by the authorized members of the Defendant BROOKLYN FEDERAL's Board of Directors, the "holder" of the notes and the "mortgagee" as provided for by the very terms of the notes and the Building Loan Agreement constitutes an estoppel, barring the claims asserted in the Complaint.

59.   By reason of the representations made by Plaintiff's Assignor and its actions with regard to the loans including its approval of the Flintlock contract, that the loans' maturity date had been extended beyond the March 1, 2011 date, the Defendant DAB was misled into reasonably believing that the loans' maturity date had in fact been extended beyond March 1, 2011, and that no default would be declared based upon a March 1, 2011 loan maturity date.

60.    By reason of DAB's reasonable reliance on the representations made by Plaintiff's Assignor, Defendant BROOKLYN FEDERAL, Defendant DAB entered into the Flintlock Contract, obligated itself under the Flintlock Contract, incurred substantial costs and expenses, relinquished its right to refinance the hotel project, and did not sell or attempt to sell the hotel project when it was a viable project, all of which resulted in claims being made by the general contractor and subcontractors against this answering Defendant and the eventual shut down of the construction.

61.    Based upon the foregoing the Plaintiff, Assignor of the Defendant BROOKLYN FEDERAL, herein, is estopped from enforcing the March 1, 2011 maturity date, and the complaint must be dismissed.

### THIRD AFFIRMATIVE DEFENSE (Unconscionability)

63.    This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth herein at length.

64.    Plaintiff's Assignors conduct in extending the loans' maturity date beyond March 1, 2011 and thereafter attempting to enforce the March 1, 2011 maturity date constitutes unconscionable conduct requiring dismissal of this foreclosure action.

## FOURTH AFFIRMATIVE DEFENSE (Unclean Hands)

65.   This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth herein at length.

66.   The Plaintiff, as assignee of the Defendant BROOKLYN FEDERAL, stands in its shoes, and is liable for the acts and omissions of that defendant as set forth.

67.   The relief sought in Plaintiff complaint, the foreclosure of its purported liens against the Defendant DAB's premises is therefore barred by the doctrine of "Unclean Hands".

68.   By reason of the foregoing the complaint must be dismissed.

## FIFTH AFFIRMATIVE DEFENSE (FAILURE TO STATE A CAUSE OF ACTION)

69.   This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth herein at length.

70.   The Defendant DAB's loans were not in default on March 1, 2011 as the loans' maturity date had been extended by a signed writing of the authorized representatives of the Defendant BROOKLYN FEDERAL.

71.   By reason of the foregoing the complaint must be dismissed.

## SIXTH AFFIRMATIVE DEFENSE (BAD FAITH AND LACK OF FAIR DEALING)

72.    This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth herein at length.

73.    The Defendant BROOKLYN FEDERAL is guilty of bad faith and lack of fair dealing in its transactions relative to the extension of the DAB loans' and the extension of their maturity date.

74.    At all times herein mentioned, the Defendant BROOKLYN FEDERAL, engaged in a pattern of dishonest and deceptive behavior toward the Defendant DAB and acted in bad faith with regard to the DAB loans, including but not limited to such acts as representing to DAB that the maturity date of its loans had been extended in order to have DAB, in reliance thereon proceed with the construction of the hotel project, engage a new general contractor and so on, while at the same time failing and refusing to confirm the extension of the maturity date in writing; thereafter when said representations were confirmed and corroborated by the signed writing of the authorized members of the Defendant BROOKLYN FEDERAL's Board of Directors which modified and amended the loan documents, failing to advise the Defendant DAB of same, upon information all to buy time for

Page 21 of 34

it to try to resolve its problems with its federal regulators as it determined whether to keep the loans or sell them, without regard for interests of its borrower.

75.   By reason of the foregoing, the Plaintiff's complaint should be dismissed.

### SEVENTH AFFIRMATIVE DEFENSE (RPAPL§1301)

76.   This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53 as if more fully set forth herein at length.

77.   The Plaintiff commenced an action in Supreme Court, Kings County under Index No.: 15013/11 (the "Kings County Action").

78.   The Kings County Action was commenced on June 30, 2011.

79.   The Kings County Action seeks judgment on the identical Project Loan notes and Building Loan notes that are the subject of this foreclosure action.

80.   The within action was commenced on July 1, 2011 subsequent to the Kings County Action.

81.   By reason of the foregoing, this action is barred by RPAPL§1301 and must be dismissed in its entirety.

### FIRST COUNTERCLAIM AGAINST PLAINTIFF AND FIRST CROSS CLAIM AGAINST DEFENDANTS BROOKLYN FEDERAL SAVINGS BANK AND STATE BANK OF TEXAS (BREACH OF CONTRACT)

82. This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53, and paragraphs 54 through 81 of AFFIRMATIVE DEFENSES FIRST through SEVENTH as if fully set forth herein at length.

83. In connection with the loans, the Plaintiff's Assignor and STATE BANK, required the execution of various loan documents including but not limited to The Project Loan Note (Exhibit "A" to the Complaint), Project Loan Mortgage (Exhibit "B" to the Complaint), Loan Modification Agreement (Exhibit "C" to the Complaint), Building Loan Note (Exhibit "I" to the Complaint), Building Loan Agreement (Exhibit "J" to the Complaint), Building Loan Mortgage (Exhibit "K" to the Complaint) (the foregoing exhibits to Plaintiff's Complaint may sometimes hereinafter be collectively referred to as the "Loan Documents").

84. Each one of the foregoing Loan Documents contains a provision that the subject document may be modified, amended, waived or extended by a writing signed by the holder, owner or mortgagee, in this case, the Defendant BROOKLYN FEDERAL and specifically the "governing documents" of the loans, the promissory notes, provide as follows with regard to amendments or modifications of the notes:

(a)    ¶8.1 of the Project Loan Note (Exhibit A to the complaint incorporated herein) and ¶9.1 of the Building Loan Note (Exhibit I to the complaint incorporated herein), which state in identical terms:

> "Amendments.  This Note may not be terminated or amended orally, but only by termination or amendment *in writing signed by Holder.)*  [Emphasis added.]

(b)    In addition, ¶3.21 of the Building Loan Agreement (annexed as Exhibit K to the complaint and incorporated herein) provides:

> "The Mortgagor recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement that could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such 'oral modification of the loan document'. For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage and the Building Loan Agreement, the Mortgagor acknowledges that *this Mortgage, the Note, the Building Loan Agreement, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee.* The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the Mortgagee has the power or authority from the Mortgagee to make an oral extension or modification or amendment of any

such instrument or agreement on behalf of the Mortgagee."
[Emphasis added.]

85.    As the governing loan documents, the notes, upon which the Plaintiff herein relies in this foreclosure action and the Building Loan Agreement, provide that they may be amended only by a writing signed by Holder and/or that "this Mortgage, the Note, the Building Loan Agreement, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee," the Defendant herein, BROOKLYN FEDERAL and its Assignee, the Plaintiff ORCHARD HOTEL are the "Holder" and "the Mortgagee" herein subject to the aforesaid terms of said loan documents,

86.    By writing dated February 15, 2011, a copy of which is annexed hereto as Exhibit "A", Plaintiff's assignor, the authorized members of the Board of Directors of the Defendant Brooklyn Federal, signed a writing extending the loans' maturity date for one year (two six month periods) beyond March 1, 2011.

87.    Notwithstanding the grant of the loans' extension beyond March 1, 2011 by the authorized members of the Defendant BROOKLYN FEDERAL's Board of Directors, on March 23, 2011 Plaintiff's Assignor declared the Notes due and payable as of March 1, 2011 (Exhibit "E" to the Complaint).

88.    Again, despite the grant of the amendment, extension and modification of the Loan Documents by the signed writing of the authorized members of the Defendant BROOKLYN FEDERAL's Board of Directors dated February 15, 2011, the Plaintiff on or about June 23, 2011 declared the loan in default based on a maturity date of March 1, 2011 (Exhibit "H" to the Complaint).

88.    The Plaintiff and its assignors Defendants BROOKLYN FEDERAL and STATE BANK have breached the Notes and the Loan Documents aforesaid by wrongfully declaring the loans in default and wrongfully declaring that the loans matured and became due and payable on March 1, 2011.

89.    The Plaintiff and its assignors Defendants BROOKLYN FEDERAL and STATE BANK breached the terms of the Loan Documents by failing to continue to fund the Building Loan after March 1, 2011.

90.    By reason of the Plaintiff's and Defendants BROOKLYN FEDERAL and STATE BANK breach of the Loan Documents, Defendant DAB has been damaged in the sum of THIRTY FIVE MILLION (35,000,000.00) DOLLARS, consisting of but not limited to damages due to, costs and expenses of, and obligations to contractors, subcontractors, architects, engineers, interest, professional fees, loss of equity and profit in the project.

SECOND COUNTERCLAIM AGAINST PLAINTIFF
AND SECOND CROSS AGAINST DEFENDANTS
BROOKLYN FEDERAL SAVINGS BANK
AND STATE BANK OF TEXAS (BREACH OF CONTRACT)

91.    This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53, and paragraphs 54 through 81 of AFFIRMATIVE DEFENSES FIRST through SEVENTH as if fully set forth herein at length.

92.    The Building Loan Agreement (Exhibit "J" to the Complaint) in Article II thereof, paragraph 2.1 provides that the Plaintiff's Assignor agreed to lend to Defendant DAB the loan amount set forth therein, to be disbursed in advances in accordance with the terms and procedures set forth in said Building Loan Agreement.

93.    Defendant, DAB, as borrower, complied with all of its obligations under said Agreement.

94.    Despite Defendant DAB's compliance, Plaintiff's Assignor failed and refused to make advances, specifically those advances designated regard requisition #8 dated March 3, 2011, and requisition #9 dated March 23, 2011.

95.    By reason of Defendant BROOKLYN FEDERAL's failure to advance the loan funds to pay the aforesaid requisitions, Defendant BROOKLYN FEDERAL breached the Building Loan Agreement.

96.   By reason of Defendant BROOKLYN FEDERAL's breach of the Building Loan Agreement as aforesaid, the general contractor and subcontractors ceased work on the project bringing it to an immediate halt.

97.   By reason of the Plaintiff's and Defendants BROOKLYN FEDERAL and STATE BANK breach of the Building Loan Agreement as aforesaid, Defendant DAB has been damaged in the sum of THIRTY FIVE MILLION (35,000,000.00) DOLLARS, consisting of but not limited to damages due to, costs and expenses of, and obligations to contractors, subcontractors, architects, engineers, interest, professional fees, loss of equity and profit in the project.

<u>THIRD COUNTERCLAIM AGAINST PLAINTIFF AND
THIRD CROSS CLAIM AGAINST DEFENDANTS
BROOKLYN FEDERAL SAVINGS BANK AND
STATE BANK OF TEXAS (FRAUD/BAD FAITH/LACK OF FAIR DEALING)</u>

98.   This answering Defendant repeats and reiterates each and every admission, denial and allegation set forth herein in paragraphs 1 through 53, and paragraphs 54 through 81 of AFFIRMATIVE DEFENSES FIRST through SEVENTH as if fully set forth herein at length.

99.   At the request of the Defendant BROOKLYN FEDERAL, specifically it senior loan officers and managers, Joanne Gallo, Richard Maher, Bruce Gordon and Sushil Patel, and as a condition of the loan documents, the

Defendant DABH was required to obtain approval of the new general contract between it as owner and Defendant FLINTLOCK as contractor in order for construction of the hotel project to resume in August 2010.

100.    The Flintlock contract provided that the contractor "shall achieve Substantial Completion of the entire work not later than 430 (calendar days) from the date of commencement".

101.    At or about this time, the Defendant, BROOKLYN FEDERAL, had come under the scrutiny of its federal regulators relative to its survival as an ongoing banking institution.

102.    The Defendant BROOKLYN FEDERAL, through its representatives aforesaid determined to do and undertake those measures it deemed necessary in order to survive regardless of its duty of fair dealing and good faith with its borrower, the Defendant DAB.

103.    Upon information and belief, the defendant, BROOKLYN FEDERAL, through its representatives aforesaid determined that it was necessary to maintain and resume the construction of the hotel project so that the status of the DAB loans on its books would be satisfactory to federal regulators pending its resolution of the loans' status vis a vis its status with the regulators.

104.    In order to induce DAB to enter into the Flintlock contract and

keep the project operating as a functional project and the DAB loans as performing loans on its books, the Defendant BROOKLYN FEDERAL prepared a certain "Affidavit and Estoppel Certificate" dated August 26, 2010 (Estoppel Certificate) and required both Defendant DAB and Defendant FLINTLOCK to sign the Estoppel Certificate (see Exhibit "D" to Complaint).

105.    In furtherance of its approval of the Flintlock Contract, Defendant BROOKLYN FEDERAL, through its employees and or agents Joanne Gallo, Richard Maher, Bruce Gordon and Sushil Patel represented to DAB that the Loan Maturity Date would be and thereafter had been extended beyond March 1, 2011.

106.    The aforesaid representatives of Defendant BROOKLYN FEDERAL and STATE BANK made the representations to DAB for the purpose of inducing DAB to enter into the Flintlock Contract so that construction on the project would continue thereby preserving certain rights and privileges afforded under the then allowed zoning regulations.

107.    The representations made by Defendant BROOKLYN FEDERAL and its representatives were made solely and wholly to induce DAB to continue the construction and preserve zoning rights.

108.    The representations made by Defendant BROOKLYN

FEDERAL to Defendant DAB granting the extension of the Maturity Date of the loans were false when made to the extent that Defendant BROOKLYN FEDERAL was engaged at the time in a scheme of representing to the Defendant DAB that the loans' maturity date had been extended, without corroborating those representations in a signed writing as required by the loan documents, in order that it could deny the validity of the extension should a "better" opportunity for the loans' status come about.

109.    The aforesaid false representations were made in bad faith by Defendant BROOKLYN FEDERAL to induce DAB to enter into the Flintlock Contract thereby obligating DAB for sums due and owing under the Flintlock Contract, all the while knowing that BROOKLYN FEDERAL had no intention of funding the Building Loan through the term of the Flintlock Contract.

110.    In reliance on said false representations of BROOKLYN FEDERAL, DAB proceeded with the Flintlock Contract and executed the aforesaid Estoppel Certificate (Exhibit "D" to the Complaint).

111.    The false representations made by BROOKLYN FEDERAL to DAB that the Loan Maturity Date would be and had been extended were made for the purpose of inducing DAB to continue to perform under the Flintlock Contract so that the loans would be more saleable to potential purchasers, such as

the Plaintiff herein.

112. In furtherance of their fraud, bad faith and lack of fair dealing, BROOKLYN FEDERAL arranged for a written Loan Amendment, Modification, Waiver and Extension to be executed by the Loan Workout Committee of Brooklyn Federal on February 15, 2011 (Exhibit "A").

113. On March 22, 2011, the Loan Amendment, Modification, Waiver and Extension was unilaterally rescinded by BROOKLYN FEDERAL.

114. The rescission of the Loan Amendment, Modification, Waiver and Extension was unilateral and never communicated to DAB.

115. In reliance on said false representations of BROOKLYN FEDERAL, DAB entered into the Flintlock contract and did not attempt to refinance the loan and did not attempt to sell the project.

116. If not for the misrepresentations made by BROOKLYN FEDERAL, DAB would not have sought the approval of the Flintlock Contract and obligated itself under the Flintlock Contract since there would be no funds available to pay for the construction if the loan had not been extended beyond March 1, 2011.

117. DAB's reliance on the false representations made by BROOKLYN FEDERAL was justifiable under the circumstances in that

BROOKLYN FEDERAL approved the general contract between DAB and Flintlock which contract provided for a construction completion date of 430 days from August 26, 2010 and was further justifiable on the grounds that BROOKLYN FEDERAL did in fact modify and extend the Loan Documents in a writing dated February 15, 2011 which it thereafter unilaterally rescinded.

118. By its own allegations, in the Complaint herein, Plaintiff Orchard Hotel is the successor in interest to Defendant Brooklyn Federal as the owner and holder of the mortgages and notes evidencing The Loan and therefore stands in the shoes of and is be liable for the fraud perpetrated by Brooklyn Federal and State Bank.

119. The false and fraudulent representations made by Plaintiff's Aassignor were made solely for the purpose of inducing DAB to rely thereon in entering into the Flintlock Contract and proceeding with construction.

120. DAB did in fact rely on the false representations in entering into the Flintlock contract and in not pursuing a refinance of the loan or a sale of the building project.

121. By reason of the foregoing, DAB has been damaged in a sum not yet determined but believed to be in excess of THIRTY FIVE MILLION ($35,000,000.00) DOLLARS representing actual and consequential damages.

WHEREFORE, Defendant D.A.B. Group, LLC demands judgment dismissing the complaint in its entirety together with an award on each one of its counterclaims in a sum not yet determined but believed to be in excess of THIRTY FIVE MILLION ($35,000,000.00) DOLLARS together with attorney's fees, costs, interest and such other and further relief as may be just proper and equitable under the circumstances.

Dated:   Garden City, New York
         August 8, 2013

                              Yours etc.,

                              FAVATA & WALLACE, LLP

                      By:  William G. Wallace, Esq.
                           229 Seventh Street, Suite 300
                           Garden City, New York 11530
                           (516) 742-9494

## ATTORNEY VERIFICATION

STATE OF NEW YORK   }
                                        } :ss:
COUNTY OF NASSAU    }

WILLIAM G. WALLACE , ESQ., being duly admitted to practice law before the Courts of the State of New York, respectfully affirms the following under the penalty of perjury:

1.      ·I am a member of the law firm of **FAVATA & WALLACE, LLP** attorneys for the *Defendant* herein, and as such, I am fully familiar with the facts and circumstances of the instant case.

2.      I have read the foregoing **Verified Answer, Cross Claim and Counterclaim** and know the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters affirmant believes it to be true.

3.      Your affirmant further says that the reason this verification is made by affirmant and not by *Defendant*, is that *Defendant* is a Limited Liability Company, the sole managing member of which is outside the county in which I maintain my office.  Your affirmant's knowledge is based on books, records and conversations with my client's managing member.

Dated:      **Garden City, New York**
                **August 8, 2013**

_____
WILLIAM G. WALLACE

Verification*

EXHIBIT A

EXHIBIT A

ORIGINAL

# COMMERCIAL LOAN ACTION PLAN

| | |
|---|---|
| To: | Loan Workout Committee |
| From: | Loan Workout Department |
| Date: | February 15, 2011 |
| Request: | Modification – Maturity Extension<br>DAB Group LLC<br>Account # 20-070052<br>Loan # 18-010521-3<br>139-141 Orchard Street, New York, NY 10002<br>Developer/Guarantor: Zvi Zhavian |

## PURPOSE:

The above loan is scheduled for final maturity on 3/1/2011. The purpose of this review is to recommend (2) six-month extensions to allow for sufficient time to complete the construction, stabilize the property, and secure permanent take-out financing. This is the first extension request beyond the original maturity date. An OTS "non-object" is required as this loan is rated substandard and is a maturity extension to allow BFSF to hold this loan until payoff. The Bank's CFO has confirmed an impairment charge of $764,000 was taken 9/30/10.

| Borrower | D.A.B. Group LLC | Date | February 15, 2011 |
|---|---|---|---|
| Loan # | 18-010588-2<br>18-010521-3 | Account # | 20-080020 |
| Guarantor | Zvi (Ben) Zhavian | Risk Rating: | Substandard |
| Orig. Date:<br>Amount: | 8/21/2008<br>$5,500,000 (acquisition note)<br>$19,050,000 (building note) | Current Balance | $5,500,000 (acquisition note)<br>$7,259,568 (building note) |
| Orig. Maturity Date | 9/1/2009 | Current Maturity Date: | 3/1/2011 |
| Original (BFSB) Amt. & % | $11,550,000<br>47.046832% | Book Balance (BFSB) | $6,003,074 |
| Participant Amt. & % | $13,000,000<br>52.9531568% - SBOT | Participant Bank Balance Amt. | $6,756,594<br>52.9531568% - SBOT |
| Collateral | 139-141 Orchard Street<br>Aka 138-140 Allen Street<br>New York, NY | Due for:<br>Accrual/Non Accrual | 3/1/2011<br>Accrual |
| Collateral Type | Hospitality | Block/Lot | Block: 415<br>Lot(s): 66 & 67 |
| Appraisal Date | $37,000,000 (as-stabilized)<br>9/6/2007 – C&W | Impairment/Charge-Off | $764,000 (12/31/10) |
| | | Net Carrying Value | $5,239,074 |
| Legal Status | Current | Counsel | Kriss & Feuerstein |

1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001171

## LOAN HISTORY:

The referenced facilities consist of a Project Loan Note and a Building Loan Note. The total proceeds between the two facilities are $24,550,000 which was used to (a) finance the acquisition of two mixed use buildings for $5,500,000 (Loan #18-010521-3) and (b) $19,050,000 (Loan #18-010588-2) to finance the construction of a 92 room, sixteen-story boutique hotel with a total gross floor area of 50,644 square feet located in New York, New York ( the "collateral").   The State Bank of Texas participated in the transaction and provided (52.95315%) of the total financing.

The acquisition loan was executed on November 8, 2007 and has an outstanding balance of $5,500,000. The building loan was executed on August 21, 2008 and has an outstanding balance of $3,844,170.38. The Project Note was modified on August 21, 2008 to make both loans co-terminus with a final maturity of 3/1/2011.

The Mortgagor is D.A.G. Group LLC (a New York limited liability company). The guarantor on this facility is Zvi Zhavian.

The Loans are priced at WSJP + 175 bps, floor 7.75%. The loan carries an initial term of 12 months with (3) six month renewal options. There is no option to convert to perm.

## CONSTRUCTION STATUS

Based on a site inspection performed by Koch Engineering, P.C on December 22, 2010, the project is at the 33% level of construction completion.  The total hard cost budget for this project is $15,250,000 and the total completed and stored to date amount is $5,094,242.11. The project is a year behind schedule due to a stop-work-order implemented by the Building Department as a result of down-zoning of the area. The project was grandfathered and allowed to continue to be built based on the original plans and specifications.

## ACTION REQUESTED:

The Borrower has requested a twelve month extension to allow for the completion of the hotel, stabilization of the property and to obtain permanent take-out financing.  The Borrower requires additional time because of the stop-work-order imposed on the project due to the down-zoning of the area.

**The loan will be modified as follows:**

| | Current Terms | Requested Terms |
|---|---|---|
| Loan Amount | $5,500,000 (acquisition)<br>$19,050,000 (building) | Same |
| Rate | WSJP + 175 bps (7.75% floor) | Same |
| Term | One-year + (3) six-month renewal options | (2) six-month renewal options |
| Amortization | None | Same |
| Maturity | 9/1/09, 3/1/10, 9/1/10, 3/1/11 | 9/1/11, 3/1/12 |
| Extension Fee | - | .25% per extension option |
| Appraisal | $37,000,000 (as-stabilized)<br>9/6/2007 – C&W<br>$9,180,000 – PBF (9/30/10) | Same |

2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001172

## APPRAISAL SUMMARY:

The property was underwritten as follows. The lesser of $5,500,000 for the project loan and $19,050,000 for the construction loan ($24,550,000 total loan) or 75% of the "as is" appraised value on a stabilized rental basis, or 75% of the total project cost.

The appraisal dated September 6, 2007 reflected an as-stabilized value of $37,000,000 which at 75% LTV yielded a loan amount of $27,750,000 or $3,199,000 over the loan approval.

The total project cost was estimated at $36,050,000 which at 75% LTV yielded a loan amount of $27,037,500 or $1,487,500 over the loan approval. The appraisal was performed by Cushman & Wakefield.

| Cushman & Wakefield September 6, 2007 | Value Conclusion |
|---|---|
| "As-Is" Value | $11,000,000 |
| "As-complete" | $33,000,000 |
| Value at stabilized rental occupancy | $37,000,000 |

## PERFORMANCE HISTORY:

The guarantor has an insufficient credit history to determine his mortgage creditworthiness. The table below shows past and present credit history.

### Credit Analysis:

| Description | Zvi Zhavian 2/20/08 | Zvi Zhavian 12/3/10 |
|---|---|---|
| Equifax Score | N/A | N/A |
| Experian Score | N/A | N/A |
| Trans Union Score | N/A | N/A |
| Mortgage Score | N/A | N/A |
| DELINQUENCY | 0x30, 0x60, 0x90 | 0x30, 0x60, 0x90/ |

* Per OCC/OTS Metrics Report 2nd qtr 2010. Prime (660+), Alt-A (620-659), and Sub-Prime (-620).

Mr. Zhavian's credit profile was established in 1999. There are no credit scores as Mr. Zhavian retains a minimum of credit usage as a principal (as opposed to as a guarantor).

In the past, he has had three tradelines two of which were leased vehicles and one $500.00 line of credit with HSBC, his primary bank. Both lines have zero balances.

Recurring AGI per tax returns and Net Worth are set for below.

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001173

**Personal Financial Statements (Un-Audited/Borrower Prepared):**

| Zvi (Ben) Zhavian (100%) | a/o 6/30/2010 | a/o 6/5/2009 | a/o 2/28/2008 |
|---|---|---|---|
| Assets | $23,341,174 | $36,705,766 | $33,990,000 |
| Liabilities | $14,443,695 | $12,300,000 | $9,900,000 |
| Net Worth | $8,897,479 | $24,405,766 | $24,090,000 |
| Liquid Assets | $1,200,000 | $1,435,766 | $4,500,000 |
| RE Assets | $21,941,174 | $35,230,000 | $29,250,000 |

**Cash/Income Analysis (Per IRS Form 1040)**

| Source | 2006 | 2007 | 2008 | 2009 | AVG Adj. Recurring Income |
|---|---|---|---|---|---|
| Wages | $0 | $0 | $0 | $0 | $0 |
| Interest | $164,310 | $17,932 | $0 | $3,978 | $46,555 |
| Dividends | $197 | $246 | $0 | $0 | $111 |
| Tax Refunds | $0 | $0 | $0 | $0 | $0 |
| Bus. Income | $0 | $0 | $0 | $0 | $0 |
| Capital Gains | <$3,000> | <$3,000> | <$3,000> | <$3,000> | <$3,000> |
| RE/Part/S Corps | <$222,096> | <$768,899> | <$457,070> | <$444,743> | <$473,202> |
| Other | $3,125 | $0 | $0 | $0 | $781.25 |
| AGI | <$57,464> | <$753,721> | <$460,070> | <$443,765> | <$428,755> |

## GUARANTOR ANALYSIS:

The guarantor has shown insufficient recurring AGI ($428,755) to cover portions of the current debt service of $77,500 on the loan's outstanding balance of $12,759,568. However, there is $556,945 of interest reserve balance which will carry the loan for 5 to 6 months.

The Borrower also had a liquid asset balance of $1.2 million which will be sufficient to cover the remaining interest to project completion and stabilization. The project is expected to be completed over the next 10 to 12 months.

## LOANS TO ONE BORROWER:

Current BFSB Exposure To This Loan      $6,003,074.00 ($11,790,432 undrawn amount)
Current BFSB Limit                                  $9,195,000.00

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001174

## MARKET TRENDS

After the worst slump in decades, all key hotel metrics – occupancy, room rates, and revenues have begun to show signs of improvements but hotel performance correlates closely to growth in gross domestic product (GDP), and an expected elongated economic recovery bodes for a more-sluggish-than typical resurgence in the lodging sector. Strong brands will attract more business. Guests prefer to play it safe with tried-and-true innkeepers and make sure budgets go further. Overall, better capitalized owners can reduce rates and knock out competitors but business-center hotels in gateway destinations enjoy the best prospects in this sector of the real estate market.

The graphs below shows hotel investment prospect trends, occupancy rates and RevPar in the hotel sector.





3 = poor, 4 = modestly poor, 5 = fair, 6 = modestly good, 7 = good.
Source: *Emerging Trends in Real Estate* surveys.

Emerging Trends in Real Estate 2011 | 47

5

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**OH-001175**

## FINANCIAL ANALYSIS:

### Original Underwriting Criteria Reveals The Following Project Economics (Un-Audited):

| Proforma: | | |
|---|---|---|
| Proposed Hotel Income: | Based on 111 Rooms at $300 per night at 365 days | $12,154,500 |
| | 30% Vacancy | $3,646,350 |
| Effective Gross Income | | $8,508,150 |
| | Expenses: 40% | $3,403,260 |
| Net Operating Income (NOI): | | $5,104,890 |
| | Debt Service ($24.55 MM@7.5%/25 yr. amort) | $2,177,068 |
| Cash Flow: | | $2,927,822 |
| DSCR: | 30% Vacancy | 2.36x |
| | 40% Vacancy | 2.00x |
| | 50% Vacancy | 1.72x |

## SUMMARY ANALYSIS

### The loan will be modified as follows:

| | Requested Terms: | |
|---|---|---|
| Term: | (2) 6-month extensions | |
| Maturity: | 3/1/12 | |

### Recommendation:

The project is 33% complete and the Borrower has requested additional time to complete the project, stabilize the building, and secure permanent take-out financing.

The project is a year behind schedule due to a stop-work-order implemented by the Building Department as a result of down-zoning of the area. The project was grandfathered and allowed to continue to be built based on the original plans and specifications. In light of the above, two six-month extension options is recommended to allow the project to be completed.

### Conclusion:

In the absence of proceeding with this proposal, BFSB would face a timely foreclose action on the property or sale of the note at a discount. A foreclosure will take time with additional carry costs accreting to the bank. Allowing this extension will enable the loan to be paid off.

6

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001176

ORIGINAL

| | |
|---|---|
| **Loan #** | 18010521-3 |
| **Account #** | 20-070052 |
| **Borrower:** | DAB Group LLC |
| **Guarantor:** | Zvi (Ben) Zhavian |
| **Premises:** | 139-141 Orchard Street, New York, NY 10002 |

APPROVAL:                    Approval of (2) six-month extension options.

LOAN OFFICER:

_____    DATE: 2/15/11
Francillia LeBlanc

LOAN WORKOUT OFFICER:

_____ DATE: 2/15/11
Bruce Gordon

LOAN WORKOUT OFFICER:

_____ DATE: 2/15/11
Joanne Gallo


*LOAN WORKOUT COMMITTEE APPROVAL*

COMMITTEE:          _____ DATE: 2/15/1
                   Daniel Reich

COMMITTEE:          _____ DATE: 2/15/11
                   Arthur Williams

COMMITTEE:          _____ DATE: 2/15/1
                   John Loconsolo

Comments          _____

                   _____

7

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

OH-001177