# Exhibit 14

*To Be Argued By:*
**EVERETT N. NIMETZ, ESQ.**

# New York Supreme Court

## APPELLATE DIVISION-FIRST DEPARTMENT

*New York County Clerk's Index No. 850044/11*

ORCHARD HOTEL, LLC,

<em>Plaintiff-Appellant,</em>

-against-

D.A.B. GROUP, LLC,

<em>Defendant-Respondent,</em>

-and-

BROOKLYN FEDERAL SAVINGS BANK AND STATE BANK OF TEXAS,

<em>Defendants-Appellants,</em>

<em>(Caption Continued on Inside Cover)</em>

## BRIEF FOR DEFENDANT-RESPONDENT
## D.A.B. GROUP, LLC

**EVERETT N. NIMETZ, ESQ.**
*125-10 Queens Boulevard, Suite 311*
*Kew Gardens, New York 11415*
*(718) 520-1100*
*Ennleknim@aol.com*

*Appellate Counsel to:*

**FAVATA & WALLACE LLP**
*Attorneys for Defendant-Respondent*
*D.A.B. Group LLC*
*229 Seventh Street, Suite 300*
*Garden City, New York 11530*
*(516) 742-9494*

*On the Brief:*
**EVERETT N. NIMETZ, ESQ.**

*(Caption Continued):*

-and-

**ORCHARD CONSTRUCTION, LLC, FLINTLOCK CONSTRUCTION SERVICES LLC, JJ K MECHANICAL INC., EDWARD MILLS & ASSOCIATES, ARCHITECTS PC, CASINO DEVELOPMENT GROUP, INC., CITYWIDE CONSTRUCTION WORKS INC., EMPIRE TRANSIT MIX INC., MARJAM SUPPLY CO., INC., ROTAVELE ELEVATOR INC., SMK ASSOCIATES INC., FJF ELECTRICAL CO. INC., CITY OF NEW YORK, NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE, LEONARD B. JOHNSON, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, and JOHN DOE #1 through JOHN DOE #100, the last 100 names being fictitious, their true identities unknown to plaintiffs, and intended to be the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,**

*Defendants.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..............................................    iii

PRELIMINARY STATEMENT.................................................    1

QUESTIONS PRESENTED....................................................    8

STATEMENT OF FACTS.....................................................    9

    (A)    What Changed.................................................    9

    (B)    Relevant Provisions of the Loan Documents...................    10

    (C)    History of the Litigation, Denials by the Appellants and
            the New Evidence: The February 15, 2011 Signed
            Writing of the Authorized Members of Brooklyn
            Federal's Board of Directors Approving the Extension
            of the Maturity Date of the DAB Loans.........................    14

    (D)    DAB's Motion to Renew/Vacate the Prior Motions and
            Decisions and Oral Argument.................................    30

ARGUMENT................................................................    33

THE COURT PROPERLY GRANTED DAB'S MOTION TO
RENEW AND VACATE THE ORDERS DISMISSING ITS
COUNTERCLAIMS WHICH ORDERS HAD BEEN PREMISED
ON THE COURT'S PRIOR HOLDING THAT THERE WAS NO
SIGNED WRITING AMENDING THE MATURITY DATE OF
THE NOTES AS REQUIRED BY THE LOAN DOCUMENTS
THEMSELVES, SINCE IMMEDIATELY UPON DISCOVERY
AND PRODUCTION OF THE SIGNED WRITING OF
BROOKLYN FEDERAL APPROVING THE EXTENSION OF
THE NOTES' MATURITY DATE LONG SECRETED AND
DENIED BY THE APPELLANTS TO EXIST, THE DEFENDANT
MADE THE MOTION TO RENEW AND VACATE,
DEMONSTRATED ITS DUE DILIGENCE IN OBTAINING THE
DOCUMENT AS WELL AS DEMONSTRATED THE

## TABLE OF CONTENTS CONT'D

MISCONDUCT OF THE APPELLANTS IN THE PROSECUTION OF THIS ACTION AND THE DEFENSE OF THE COUNTERCLAIMS BY THEIR SECRETING AND DENYING THE EXISTENCE OF THE SIGNED WRITING. THE COURT'S SUA SPONTE GRANT OF LEAVE TO THE DEFENDANT TO AMEND ITS PLEADING AND RE-PLEAD WAS A PROPER EXERCISE OF DISCRETION UNDER THE CIRCUMSTANCES.

(A)    The February 15, 2011 Signed Writing by the Board Members of Brooklyn Federal was Sufficient Under the Terms of the Original Notes and Loan Documents to Amend the Notes by Extending their Maturity Date.............. 33

(B)    The Due Diligence of the Defendant-Respondent Regarding the New Evidence and the Misconduct of the Appellants in Secreting it and Denying its Existence........... 47

(C)    The Court's *Sua Sponte* Grant of Leave to the Defendant-Respondent and Flintlock to Re-Plead........................... 53

CONCLUSION.................................................................. 56

# TABLE OF AUTHORITIES

*Cases*                                                                    *Page(s)*

Birsett v. General Accident Insurance Company of America,
    241 AD2d 683, 659 NYS2d 924 (3rd Dep't. 1997)...................    49, 51, 52

Cave v. Kollar, 2 AD3d 386, 767 NYS2d 856 (2nd Dep't. 2003)...........    54

Cohoes v. Lexington Insurance Co., 292 AD2d 51,
    745 NYS2d 1 (1st Dep't. 2002).......................................    48, 51, 52

Crabtree v. Elizabeth Arden Sales Corp., 305 NY 48,
    110 NE2d 551 (1953).................................................    43

Daniels v. The City of New York, 291 AD2d 260,
    737 NYS2d 598 (1st Dep't. 2002).................................    52

Dampskbsselskabet v. Thomas Paper, 26 AD2d 347,
    274 NYS2d 601 (1st Dep't. 2006).................................    54

DFI Communications, Inc. v. Greenberg, 41 NY2d 602,
    394 NYS2d 586, 363 NE2d 312 (1977)..............................    46, 47

Edenwald Contracting Co., Inc. v. City of New York,
    60 NY2d 957, 471 NYS2d 55, 459 NE2d 164 (1985)...............    54

GLC Seurityholder LLC v. Goldm,an, Sachs & Co.,
    74 AD3d 611, 905 NYS2d 27 (1st Dept. 2010).......................    40

In Re Schroeder, 70 AD3d 583, 895 NYS2d 395 (1st Dep't. 2010).........    52

Inn at Saratoga Associates v. FDIC, 856 F. Supp. 111 (NDNY 1994)......    46

Jacobson v. Sassower, 66 NY2d 991, 491 NYS2d 381,
    489 NE2d 1283 (1985)...............................................    37

Kennelly v. Mobius Realty Holdings, 33 AD3d 380,
    822 NYS 2d 264 (1st Dep't. 2006)..................................    54

## TABLE OF AUTHORITIES CONT'D

Levitt v. County of Suffolk, 166 AD2d 421, 560 NYS2d 487
    (2nd Dep't. 1990), *lv. dism'd.*, 77 NY2d 834 (1991)..................... 34

Matter of Urdang, 304 AD2d 586, 758 NYS2d 125
    (2nd Dep't. 2003).......................................................... 43

Morrison Cohen Singer and Weinstein v. Network Industries Corp.,
    292 AD2d 153, 739 NYS2d 39 (1st Dep't. 2002)........................ 36

Njoku v. Northwest AIrlines, 806 F. Supp.2d 1022
    (ED Michigan 2011)..................................................... 46

Oppenheimer v. Westcott, 47 NY2d 595, 419 NYS2d 908,
    393 NE2d 982 (1979).................................................... 52

Orchard Hotel, LLC v. D.A.B. Group LLC, 106 AD3d 628,
966 NYS2d 395 (1st Dept. 2013)............................................ 2, 9

Philips Credit Corporation v. Regent Health Group,
    953 F. Supp. 482 (SDNY 1997).......................................... 46

Strong v. Brookhaven Memorial Hospital Medical Center,
    240 AD2d 726 (2nd Dep't. 1997)........................................ 52

Tishman Construction Corp. v. City of New York, 280 AD2d 374,
    720 NYS2d 487 (1st Dep't. 2001)...................................... 33-34, 52

Tortorello v. Tortorello, 161 AD2d 633, 555 NYS2d 411
    (2nd Dep't. 1990)...................................................... 52

Waterways Limited v. Barclays Bank, 202 AD2d 64,
    615 NYS2d 886 (1st Dep't. 1994)....................................... 36, 37, 38,
                                                                         39, 41, 45

### *Statutes*

CPLR 2221(e)(2) and (3)...................................................... 1-2; 25,29,
                                                                         34

## TABLE OF AUTHORITIES CONT'D

CPLR 3211……………………………………………………….. 17, 26, 55

CPLR 3212……………………………………………………….. 26

CPLR 4547……………………………………………………….. 44

CPLR 5015(a)(2) and (3)………………………………………… 1, 26, 29, 34, 49

### *Other Authorities*

Merriam Webster On Line Dictionary………………………………… 41

Siegel. *New York Practice.* 4th Edition. (2005)…………………………... 34

## PRELIMINARY STATEMENT

In this action to foreclose a commercial mortgage and to obtain a judgment on the notes which they secure, this is an appeal by the plaintiff, Orchard Hotel, LLC (hereinafter referred to as "Orchard" or the "plaintiff") and by the additional defendants, Brooklyn Federal Savings Bank (hereinafter referred to as "Brooklyn Federal") and State Bank of Texas (hereinafter referred to as "State Bank"; Brooklyn Federal and State Bank collectively hereinafter referred to as "the bank"[1]), which parties were brought into this action as additional defendants via a supplemental summons and answer containing counterclaims asserted against both the plaintiff and the bank (hereinafter collectively referred to as "the appellants" or the "defendants on the counterclaims") served by the defendant-respondent, D.A.B. GROUP LLC, the borrower and mortgagee on the notes and related mortgages underlying this action (hereinafter referred to as "DAB" or the "borrower"), said appeal seeking the reversal of the Order of the Supreme Court, New York County (Hon. Charles E. Ramos, Justice) dated August 26, 2013, which granted the defendant-respondent, DAB's motion pursuant to CPLR 2221(e)(2)

---

[1] Orchard, the plaintiff in the present action, is the assignee of the underlying notes and mortgages at issue in the action in which the defendant, D.A.B. Group LLC ("DAB") is the borrower and mortgagor, Orchard having purchased the notes from the original lender, Brooklyn Federal in June 2011. State Bank is a lender in the hospitality industry who apparently issued the original commitment for the underlying loans to DAB, but who thereafter somehow became a "participant bank" in the lending process with Brooklyn Federal becoming the actual lender. Orchard has conceded that as the assignee of the notes and loan documents it "stands in the shoes" of the bank.

and (3) and 5015(a)(2) and (3) respectively, renewing prior motions of the appellants which had resulted in two orders dated March 28, 2012 (Hon. Bernard J. Fried, Justice)[2], dismissing the counterclaims of the defendant-respondent, DAB, which alleged, *inter alia*, fraud and breach of contract by the appellants as defendants on the counterclaims in declaring the underlying notes at issue in this action in default, which declaration resulted in the commencement of this action.

Justice Fried's decision and his two orders of March 28, 2012 (one order resolved the motion of Orchard, and an identical one resolved the motion of the bank), held that the documentary evidence, namely, the loan documents themselves underlying the foreclosure action prohibited oral modification of their terms. Justice Fried further held that in the absence of a *"writing signed by the Holder"* [emphasis added] evidencing the defendant DAB's allegations that the maturity date of the loans at issue had been extended beyond the March 1, 2011 date set forth in the notes so that DAB was not in default on that date, DAB's counterclaims relying on that claim could not be credited and therefore were dismissed.

This Court by decision and order dated May 28, 2013, 106 AD3d 628, Orchard Hotel, LLC v. D.A.B. Group LLC, affirmed the orders of Justice Fried, specifically holding that "(t)he loan documents expressly prohibit oral termination

---

[2] Hon. Bernard J. Fried was the original IAS judge assigned to this matter. Upon his retirement in the Spring of 2012, the case was re-assigned to Justice Ramos.

or amendment and provide for termination or amendment only in *writing signed by Brooklyn Federal*, and in the mortgage agreement D.A.B. acknowledged that the mortgage and *all the other documents could be extended, modified or amended only in writing executed by Brooklyn Federal*..." [Emphasis added.] This Court essentially held that in the absence of a signed writing by the bank, there could be no reliance by DAB on the claimed oral representations that its loans had been extended and therefore the counterclaims were rightfully dismissed.

The August 26, 2013 order of Justice Ramos, which is the subject of the present appeal, in addition to granting renewal of the prior motions determined by the March 28, 2012 orders of Justice Fried, also *vacated* those orders and *sua sponte* granted the defendant-respondent DAB and the defendant Flintlock Construction Services LLC (hereinafter "Flintlock"), the general contractor on the hotel construction project underlying the loans, leave to serve amended answers, all based upon new evidence discovered and submitted in support of the defendant, DAB's motion, namely, a *writing signed* by the authorized members of the Board of Directors of Brooklyn Federal (the "Holder" as referenced in the notes and loan documents cited by the courts as set forth above) dated February 15, 2011 approving the extension of the DAB notes beyond the alleged maturity date of March 1, 2011, the existence of which signed writing had been *affirmatively denied* and *secreted* by the appellants throughout their prosecution of this action.

3

Notwithstanding the self-imposed consternation of the appellants at the present turn of events in which their misconduct and fraud in affirmatively denying the existence of the signed writing of Brooklyn Federal and their hiding of it during the prosecution of this litigation was discovered, and despite their desperate attempt to ignore the record of the proceedings herein and to convince this Court to do likewise by their disingenuous claims that they committed no misconduct because there isn't now and never was a *signed formal agreement between the parties* amending the notes so as to extend their maturity date [in contrast to the notes' actual requirement that amendment be by a *signed writing by the Holder* (not a formal agreement signed by the parties)], and despite their fallacious argument that in any event, the fault for the present situation lies with the defendant-borrower, DAB for its lack of due diligence in discovering and producing the secreted evidence sooner; -- the undisputed and indisputable evidence now before this Court demonstrates that despite two years of pleadings, memorandums, briefs and oral argument before the IAS Court (two justices) and this Court, it was the appellants who repeatedly alleged and *affirmatively denied* that there ever was a *signed writing* by the lender evidencing the extension of the loans' maturity date beyond the March 1, 2011 date set forth in the original loan documents, when in fact it is now clear that they knew that a *signed writing* executed by the authorized members of the lender's Board of Directors

4

accomplishing just that existed, its invisibility throughout the litigation to this point

being solely due to their misconduct, resulting in the IAS court's (Ramos, J.) order

of August 26, 2013.

While the appellants seek to excuse their misconduct by their disingenuous,

nuanced allegations consisting of their joint claim that the signed writing of

Brooklyn Federal's Board of Directors approving the extension of the loans'

maturity date was merely an "internal" document that could never serve as an

agreement or contract between the parties extending the loans since it was never

communicated to DAB, was never signed by DAB, had conditions precedent that

were not met, was subject to federal regulatory approval, and because it was not

the formal modification agreement required by the loan documents in order to

amend the notes, and so on, -- no amount of Houdini-ism can change the fact that

the document long denied and claimed not to have existed is what it is -- a signed

writing by the authorized representatives of Brooklyn Federal approving the

extension of the maturity date of the loans as called for in the loan documents

themselves.  DAB does not and never has claimed that it represents a new formal

agreement or contract between the parties modifying the loans; rather DAB's claim

is that it is the signed writing called for in the notes themselves, which the notes

require in order to amend their terms.  It is a writing signed by the party to be

charged which corroborates the allegations of the defendant-borrower made from

the outset, that its principal had been repeatedly advised that the loans were or would be extended beyond the March 1, 2011 maturity date in order for the hotel to be completed, representations on which DAB relied in entering into the contract with the new general contractor, Flintlock and in not otherwise refinancing or selling the project.

Lastly, certain issues raised by the appellants in their respective briefs concern matters dehors the record and respectfully should not be considered by this Court.  First, no claim was ever made below by either of the appellants of the supposed calamity that will strike the financial and banking world in New York if the appellants are held bound by the document Brooklyn Federal signed.  It was Brooklyn Federal that drafted the notes and other loan documents at issue and it is Brooklyn Federal and its assignee that have to live by the words employed in their documents, just as they demand DAB be bound by them.   Other financial institutions it seems, by reading the cases the appellants cite, do not share those problems as the wording of the documents at issue in those cases is materially different from the wording of the notes in this case ("signed agreement" vs. "signed writing".)  Respectfully, however, the consequence to the banking world that they assert we should fear would result from a ruling against them was not raised below and therefore is not properly an issue before this Court.

Similarly, respectfully, the allegations of the plaintiff-appellant, regarding the grant of summary judgment in its favor are not before this Court. The order appealed from, as the plaintiff-appellant well knows, relates only to the grant of the defendant's motion to renew and vacate the prior orders of the Supreme Court dismissing its counterclaims and *sua sponte* granting it and Flintlock leave to re-plead. The plaintiff-appellant's inability to secure the grant of summary judgment in its favor to date despite its repeated self-righteous claim and demand that it is entitled to judgment without further ado is obviously telling of the merits of its claim, but respectfully, is not presently before this Court. Its request to this Court to give the lower court "guidance" in determining the pending summary judgment motion is out of place and its conclusion's request that summary judgment be granted have no place in its brief.

Finally, it is respectfully submitted that the plaintiff-appellant's comments and request that the case be transferred to another, named Justice, whom it claims has "little tolerance " for discovery when summary judgment is at issue and who has granted summary judgment in a similar case, are abhorrent. The comments are based on matter dehors the record, are insulting to the Justice assigned herein as well as to the litigants, and are not properly included in the plaintiff-appellant's brief submitted on the present appeal before this Court.

## QUESTIONS PRESENTED

<u>Question 1</u>:        Was the IAS Court's grant of the defendant's motion to renew the prior motions and vacate the decisions that resulted dismissing the defendant's counterclaims correct, upon its finding that the prior court's determination that there wasn't any signed writing amending the notes was not the case, in that a writing signed by Brooklyn Federal approving the extension of the maturity date of the DAB loans, whose existence to this point had been kept secret and affirmatively denied by the bank and its assignee, had now been discovered?

<u>Answer of the Court below</u>:        Yes.

<u>Question 2</u>:        Was the IAS Court's determination that the "Action Plan," signed by the Board members of Brooklyn Federal approving the extension of the DAB loans, constituted a signed writing of the bank sufficient, pursuant to the terms of the notes and loan documents requiring a "writing signed by the Holder" or "Mortgagee" in order to amend the notes and loan documents, correct?

<u>Answer of the Court below</u>:        Yes.

<u>Question 3</u>:        Did the IAS Court correctly exercise its discretion, under the circumstances, in granting DAB (and Flintlock) *sua sponte* leave to amend their pleadings?

<u>Answer of the Court below</u>:        Yes.

## STATEMENT OF FACTS

This foreclosure action, and the defendant-borrower DAB's assertion of counterclaims against the original lender, Brooklyn Federal and the plaintiff, Orchard, the present holder of the notes underlying the mortgages as assignee, is back before this Court for a second time. Previously, by decision and order dated May 28, 2013, Orchard Hotel, LLC v. D.A.B. Group LLC, 106 AD3d 628, this Court affirmed the dismissal of the counterclaims on the basis that since there was no *"writing signed by Brooklyn Federal"* extending the maturity date of the DAB loans as required by the notes and loan documents, there could have been no reliance by DAB on any oral representations of an extension, and thus the IAS court was correct in dismissing DAB's counterclaims alleging fraud and breach of contract by the plaintiff and the bank in their declaration of default as of March 1, 2011, the date set forth in the loan documents.[3]  (R. 854-857.)

## What Changed

Since this Court's affirmance of the original order of the Supreme Court dismissing the defendant DAB's counterclaims, new evidence, long affirmatively denied by the plaintiff and the bank to have existed, has come to light. That evidence is a signed writing by the authorized members of Brooklyn Federal's Board of Directors approving the extension of the maturity date of the notes

---

[3] References to "R" are to pages in the appellants' Joint Record on Appeal.

underlying the action, thereby undermining the claimed default of DAB on March 1, 2011 as alleged in the lawsuit (R. 622-629). Based on this new evidence and the misconduct of the appellants in affirmatively denying its existence and secreting it during the course of the litigation, DAB moved to renew and vacate the prior dismissal of its counterclaims (R. 50-777). The Supreme Court (Ramos, J.) granted DAB's motion to renew and vacate those prior motions and orders as well as granted DAB and the defendant, Flintlock, the general contractor on the project, leave to amend their answers and re-plead (R. 15-19).

## (A)    Relevant Provisions of the Loan Documents

The two notes and mortgages at issue in the action are related to the development and construction by DAB of a boutique hotel at 139-141 Orchard Street on the lower east side of Manhattan funded (via refinancing of other loans by other banks) by a loan by Brooklyn Federal in the sum of $5,500,000 dated November 8, 2007 known as the "Consolidated Secured Project Loan Note" and overall as the "Project Loan" (R. 135-145) and by a second, construction loan, also by Brooklyn Federal, in the sum of up to $19,050,000 subject to advances, dated August 21, 2008, designated "The Secured Building Loan Promissory Note" (R. 242-253), and referred to throughout this litigation as the "Building Loan." Approximately $7.2 million of the Building Loan had been advanced at the time

Brooklyn Federal declared the notes in default on March 23, 2011(R. 623) and thereafter sold and assigned them to Orchard, who then commenced this action.

In addition to the two notes, the other loan documents consist of a "Mortgage Consolidation, Extension, Modification and Security Agreement" entered into on November 8, 2007 relative to the refinancing of the Project Loan at the time the Consolidated Secured Project Loan Note was signed (R. 146-192), a "Building Loan Agreement" entered into on August 21, 2008 when the Building Loan Note was signed (R. 254-287) and a "Building Loan Mortgage and Security Agreement" also entered into on August 21, 2008 related to the Building Loan Note (R. 288-329).

It is the *notes* themselves however, to which attention must be directed as it is the notes, which provide the maturity dates of the loans and are thus the governing documents herein (Orchard's brief, p. 10).

With regard to amendments, both the Consolidated Secured Project Loan Note and the Building Loan Promissory Note state in identical terms:

> "Amendments. This Note may not be terminated or amended orally, but only by termination or amendment *in writing signed by Holder.)* See ¶8.1 of the Consolidated Secured Project Loan Note and ¶9.1 of the Building Loan Promissory Note. [Emphasis added.] (R. 139; 245.)

Similarly, attention must be directed to paragraph 3.21 of the Building Loan Mortgage and Security Agreement, which has been repeatedly touted and advanced

by the appellants as the best example of "good lawyering" there can be by its

anticipatory negation of troubled borrowers' claims that they have been orally

promised some helpful change in their loan terms (R. 657-658).  This agreement

*requires only a writing executed by the Mortgagee* (in this case Brooklyn Federal

or Orchard) *in order to extend, modify or amend the mortgage, the notes, the*

*building loan agreement and all instruments referred to in any of them,* ie.:

> "The Mortgagor recognizes that, in general, borrowers who
> experience difficulties in honoring their loan obligations, in an
> effort to inhibit or impede lenders from exercising the rights
> and remedies available to lenders pursuant to mortgages, notes,
> loan agreements or other instruments evidencing or affecting
> loan transactions, frequently present in court the argument,
> without merit, that some loan officer or administrator of the
> lender made an oral modification or made some statement that
> could be interpreted as an extension or modification or
> amendment of one or more debt instruments and that the
> borrower relied to its detriment upon such 'oral modification of
> the loan document'.  For that reason, and in order to protect the
> Mortgagee from such allegations in connection with the
> transactions contemplated by this Mortgage and the Building
> Loan Agreement, the Mortgagor acknowledges that *this*
> *Mortgage, the Note, the Building Loan Agreement, and all*
> *instruments referred to in any of them can be extended,*
> *modified or amended only in writing executed by the*
> *Mortgagee.*  The Mortgagor further acknowledges the
> Mortgagor's understanding that no officer or administrator of
> the Mortgagee has the power or authority from the Mortgagee
> to make an oral extension or modification or amendment of any
> such instrument or agreement on behalf of the Mortgagee."
> [Emphasis added.] (R. 323.)

While provisions in other of the loan documents, such as the Mortgage

Consolidation and Extension Agreement (relative to the Project Loan) and the

Building Loan Agreement provide for amendment of their terms by executory
agreement or instruments (and even contradictory provisions in the notes
themselves relative to "modification" as cited by the appellants), all of the
provisions require *only that the holder or mortgagee execute any such agreement*
*or instrument in order for the amendment to be effective.*  Neither the notes nor any
of the loan documents require that there be a formal agreement executed by both
the lender and the borrower.  See for example: ¶38 of the Mortgage, Consolidation,
Extension, Modification and Security Agreement:

> "No Oral Change. This Mortgage, and any provisions hereof,
> may not be modified, amended, waived extended, changed,
> discharged or terminated orally or by way of any act or failure
> to act on the part of Mortgagor or Mortgagee, but only by an
> agreement *in writing signed by the party against whom*
> *enforcement of any modification, amendment, waiver,*
> *extension,* charge, discharge or termination *is sought*."
> [Emphasis added.] (R. 180.)

and, ¶3.11 of the Building Loan Mortgage and Security Agreement:

> "*This Mortgage cannot be altered, amended*, waived, *modified*
> or discharged orally, and no executory agreement shall be
> effective to modify, waive or discharge, in whole or in part,
> anything contained in this Mortgage *unless in writing and*
> *signed by the party against whom enforcement of the*
> *modification, alteration, amendment*, waiver or discharge *is*
> *sought*." [Emphasis added.] (R. 318.)

It is clear however, the arguments of the appellants otherwise
notwithstanding, that *the notes* themselves, as well as the Building Loan Mortgage
and Security Agreement, by their very terminology as drafted by the lender, do not

require that *amendments of their terms, including extensions*, be by formal

agreement executed by both the lender and the borrower, but rather only *by a*

*writing signed by the lender*, ie., the Holder or Mortgagee of the Notes and

Mortgages, respectively. In this case, the "Holder" and "Mortgagee" is Brooklyn

Federal.[4]

**(B)**    **History of the Litigation, Denials by the Appellants and The New**
**Evidence: The February 15, 2011 Signed Writing of the Authorized**
**Members of Brooklyn Federal's Board of Directors Approving the**
**Extension of the Maturity Date of the DAB Loans**

The defendant, DAB has alleged from the outset of this litigation that it had

been represented to it by Brooklyn Federal since at least August 2010 when

Brooklyn Federal approved DAB's contract with Flintlock, the new general

contractor on the job, that the maturity date of the loans would be extended beyond

the March 1, 2011 date provided for in the notes so that construction could be

completed pursuant to the 430 day timetable set forth in the contract

(approximately November of 2011) (R. 417-430).    Previously in the litigation,

DAB pointed to the approval of the contract by Brooklyn Federal, as well as a

series of e-mails and the course of dealing between the parties in support of its

position that the bank had represented to it that the maturity date of the loans had

been or would be extended beyond the March 1, 2011 date (R. 417-430).

---

[4] The plaintiff, Orchard, has conceded that as the assignee of Brooklyn Federal it stands in
Brooklyn Federal's "shoes" in this litigation.

The plaintiff and the bank vigorously sought the dismissal of DAB's counterclaims, which were essentially based upon DAB's claim that it had been represented to it that there had been or would be an extension of the loans' maturity date, as well as prosecuted the foreclosure action on their repeated claim that the notes and the loan documents prohibited oral modification or amendment. They *affirmatively denied* in their pleadings, legal arguments, oral arguments and briefs that there was any signed writing by anyone at Brooklyn Federal extending the maturity date of the notes and loans and affirmatively pled that the maturity date of the notes had never been extended.

See for example:

> "(T)here is no dispute that the mortgage loans matured on March 1, 2011." (Orchard's Memorandum of Law in Support of summary judgment motion, p. 10, citing Gallo and Aviram affidavits.)

> "Everyone of the factual allegations and exhibits included in Borrower's opposition papers has already been found unavailing by the Court given that the *Mortgage documents explicitly and emphatically prohibited oral modifications.*" (Orchard's Reply Memorandum of Law in support of summary judgment motion, p. 2.) [Emphasis added.]

> "Borrower does not dispute that the final maturity date of the loans was March 1, 2011, *the maturity date was never extended in writing* and that the loans have not been repaid (citations). Indeed Borrower scarcely disputes any of Mortgagee's statement of material fact." (Orchard's Reply Memorandum of Law in support of summary judgment motion, p. 5). [Emphasis added.]

15

"*The final maturity date of the Notes – March 1, 2011 – was never extended in writing.*" (Orchard's Reply Memorandum of Law in support of motion to dismiss DAB's counterclaims, p.1.) [Emphasis added.]

"As this Court (Justice Fried) correctly found in dismissing Borrower's fraud counterclaim, which was based on the same factual allegations as *Borrower's new estoppel defense, "[e]ach of the Loan documents expressly prohibits oral amendment or termination, and provides that any amendment or termination must be effectuated 'in writing signed by Holder.'*… In light of these bargained for, and agreed-upon contractual provisions, the allegation that DAB justifiably relied on unsigned, unwritten representations by agents acting on behalf of Brooklyn or State Bank, cannot be credited.' (Decision & Order, March 28, 2012 [Doc. No. 362] at 6-7). This conclusion applies equally to Borrower's estoppel claim, which thus fails as a matter of law" (Orchard's Reply Memorandum of Law in support of summary judgment motion, p. 7-8.) [Emphasis added.]

"*In Any Event, the Borrower's Claim that the March 1, 2011 Maturity Date Was Extended Is an Elaborate Fiction.*" (Point heading in Reply memorandum of law in support of plaintiff Orchard's motion to dismiss counterclaims of DAB, p. 7). [Emphasis added.]

"The Borrower's claim that an oral extension of the March 1, 2011 maturity date *even occurred* is refuted by contemporaneous evidence…." (Reply memorandum of law in support of plaintiff Orchard's motion to dismiss counterclaims of DAB, p. 7.) [Emphasis added.]

"*In sum, the Borrower's claim that the March 1, 2011 maturity date of the Loans was extended is totally unsupportable.* ' [A] shadowy semblance of an issue or bald conclusory assertions, even if believable, are not enough to defeat a motion for summary judgment (cases cited)." (Reply Memorandum of Law in support of plaintiff Orchard's

motion to dismiss counterclaims of DAB, p. 9).          [Emphasis added.]

"What Mr. Wallace and his client the counterclaiming defendant, DAB, fail to recognize is that the maturity date of each note was March 1, 2011." (Reply affirmation of counsel for Brooklyn Federal and State Bank in support of 3211 motion to dismiss counterclaims ¶ 11.)

"The mortgage loan documents contain parole evidence clauses, merger clauses and definite maturity dates to wit March 1, 2011....*If the mortgage loan documents were to be modified, the documents themselves required that they be modified in writing*....Finally, Joanne B. Gallo (Vice President of Brooklyn Federal) in the Affidavit submitted in support of the defendants' Brooklyn Federal's and State Bank's motion clearly noted that *no extension of maturity had ever been granted to DAB*..." (Reply affirmation of counsel for Brooklyn Federal and State Bank in support of 3211 motion to dismiss counterclaims ¶ 12-17.) [Emphasis added.]

"(T)he Loan Documents unambiguously prohibits the very kind of informal and *unsigned* amendments alleged by borrower." (Appellate brief of Orchard, pg. 25, submitted on first appeal, 106 AD3d 628.) [Emphasis added.]

"*There is no writing extending the term of the loan...*" (Appellate brief of Brooklyn Federal, p. 20, submitted on first appeal, 106 AD3d 628.) [Emphasis added.] (R. 727-728; 1189-1190.)

When the issue of the extension of the notes' maturity date was first brought before the IAS court on the plaintiff and the bank's 3211 motions to dismiss the defendant's counterclaims, the Court (Fried, J.) accepted the plaintiff's and the bank's claims and rejected DAB's that the loans had been extended. This Court did

17

likewise when the appeal of Justice Fried's orders was before it, both courts basing

their decisions upon the terminology of the loan documents themselves, cited

above, requiring a writing signed by the bank.  Both courts specifically cited the

notes and the loan documents' language prohibiting oral modifications and

amendments and requiring that there be a "*writing signed*" by the holder or

mortgagee in order to modify or amend the notes to grant the borrower an

extension.  Both courts accepted the plaintiff and the bank's representations that

there was no writing signed by anyone at Brooklyn Federal extending the maturity

date of the loans (R. 89-100; 853-857.)

Justice Fried, for example dismissed the defendant's counterclaims by

holding:

> "Each of the Loan documents expressly prohibits oral
> amendment or termination, and provides that any amendment or
> termination must be effectuated '*in writing signed by Holder*.
> (Project Loan Note ¶8.1; Building Loan Note ¶9.1.)  The Loan
> documents further provide, 'No executory agreement unless in
> writing and signed by Holder, and no course of dealing between
> Maker, the endorser(s) or guarantor(s) hereof, or any of them,
> shall be effective to change or modify or discharge in whole or
> in part, this Note." (Project Loan Note ¶8.7; Building Loan
> Note ¶9.7.)  Finally, the Building Loan Mortgage Agreement
> also contains a provision setting forth DAB's acknowledgement
> that *the Loan documents 'can be extended, modified or*
> *amended only in writing executed by the Mortgagee...*'
> (Building Loan Mortgaged Agreement ¶3.21.)"   [Emphasis
> added.] (R. 94-95.)

In affirming the IAS court's dismissal orders, this Court held:

18

"The loan documents expressly prohibit oral termination or amendment and provide for termination or amendment only in *writing signed by Brooklyn Federal*, and in the mortgage agreement D.A.B. acknowledged that the mortgage and *all the other documents could be extended, modified or amended only in writing executed by Brooklyn Federal....* [Emphasis added.] (R. 855.)

Since the decisions of Justice Fried and this Court, however, a signed writing dated February 15, 2011 executed by the authorized members of Brooklyn Federal's Board of Directors, approving the extension of DAB's notes and the loan beyond the stated maturity date of March 1, 2011 was discovered (R. 623-629; 629), although the existence of any document purporting to extend the maturity date of the loans had been continuously, *affirmatively* denied by the plaintiff and the bank throughout the prosecution and conduct of this litigation, both to the IAS Court (two justices, Fried and Ramos) and to this Court (as set forth in detail below).

That writing first came to light on May 1, 2013, when in continued oral argument of the plaintiff's pending summary judgment motion before the IAS Court (Ramos, J.), DAB's counsel informed the court that he had learned at the non-party deposition of Joanne Gallo, the former senior vice-president of Brooklyn Federal in charge of the DAB loan and its sale to the plaintiff, that in February 2011, the officers of the bank in charge of DAB's loan including herself, with the maturity date of the loan coming up on March 1, 2011, went to the committee of

the Board of Directors at the Bank with authority for the loan, recommended and requested that it be extended, and that the Board members *approved* an extension (R. 676; 680). More importantly DAB's counsel informed the Court, Ms. Gallo testified that minutes were kept of Brooklyn Federal's Board members' actions, but when asked where those minutes were, she stated that she did not know as Brooklyn Federal was defunct and its assets (and probably its records as well) were taken over by another bank, "Investors," in New Jersey (R. 676; 678-688).

At the oral argument before Justice Ramos on May 1st, the Court was astonished that the written minutes of the now testified to approved extension of the maturity date of DAB's loans, an extension which had previously been vigorously and affirmatively denied by the plaintiff and the bank, had not been produced. Justice Ramos demanded, "Where is the file?" (R.678).

In an astounding display of "chutzpah," counsel for the plaintiff stood up and declared: "We've got it. They have not asked for it...(T)hey don't help them....(I)t doesn't matter" (R.678-679). Still fighting to "hide" the approval of the loan extension that Gallo had testified to, Orchard's counsel repeated to the Court that what had taken place was a "committee *recommendation*" of a loan extension (R. 680, 682) [emphasis added], knowing full well that the bank's board members charged with the authority to do so had "approved" that recommendation (R. 680, 682).

At that point the Court adjourned the proceedings with a direction to DAB's counsel to immediately serve a discovery demand for the document and a direction to Orchard's counsel to immediately comply, with the parties due to report to the court in one month (R. 687-692).

In the interim, oral argument of DAB's appeal of the dismissal of its counterclaims by the March 28, 2012 orders of the Court (Fried, J.) was heard in this Court on May 7, 2013.  Faced with intense questioning by the justices of this Court regarding the apparent "insurmountable problem" DAB had in light of the loan documents' prohibition of reliance on oral representations of amendment or modification of their terms and the apparent absence of any signed writing executed by Brooklyn Federal extending the loans' maturity date which the Court viewed as fatal to DAB's claims, counsel for DAB advised the Court that DAB had just learned the week before at the continued oral argument of the plaintiff's summary judgment motion before Justice Ramos that there was a signed writing by Brooklyn Federal extending the maturity date of the loans but that it had not yet been produced, was not part of the record before the Court, and thus no representation could be made regarding it.  One of the Justices of this Court then specifically inquired of Orchard's counsel:  Is there such a document?  Had such a representation of its existence been made before the IAS Court the week before?

The answer this Court received to both questions from Orchard's counsel

was "No, never." That ended the argument before the Court (R. 767-777; 640-641).

Upon receipt days later of the signed writing of Brooklyn Federal's Board of Directors approving the extension of the maturity date of DAB's loans for a one year period beyond March 1, 2011, DAB's counsel tried to submit it to this Court for review; however, unfortunately, due to the rules prohibiting post-argument submissions without permission of the presiding justice, the document was not received or reviewed by this Court prior to the issuance of its decision on May 28, 2013 affirming the March 28, 2012 orders of Justice Fried dismissing the defendant's counterclaims (R. 767-777; R. 640-641).

Thereafter, as directed, the parties returned to the IAS Court (Ramos, J.) to report back on the directed discovery and production of the signed writing of Brooklyn Federal stated to have extended the loans' maturity date. At argument on June 11, 2013, the signed Board approval of the extension was submitted to the Court (R. 631-648; 635; 718-740).

The document was a February 15, 2011 writing headed "Commercial Loan Action Plan" prepared by the members of the Loan Workout Department (LWD") of Brooklyn Federal, including Senior Vice-president, Joanne Gallo, for submission to the Loan Workout Committee ("LWC") comprised of the members of the Board of Directors of Brooklyn Federal who had the ultimate authority over

the DAB loan including the power to extend it or otherwise change its terms.

(Affidavit of Joanne Gallo, R. 790). The document reviewed the status of the hotel

construction project, the status of the loan, the borrower and its principal, their

creditworthiness and the bank's apparent concern regarding the loan due to

problems with the borrower and it's principal (R.623-629). The document reports

the loan as "current" (R. 623). Despite the concerns of the LWD members

regarding the borrower, the document concludes with a recommendation by the

LWD to the Board that the DAB loan be extended for an additional period of one

year, comprised of two six month extensions beyond March 1, 2011 (R. 623; 628-

629). The document is signed under a statement setting forth "Loan Workout

Committee Approval" by the three members of Brooklyn Federal's Board making

up the Committee signifying their approval of the extension (R. 629). (Again,

according to Ms. Gallo, these three members of the bank's board had the final

authority at the bank for loans including the grant of an extension of their term, R.

790.) The document notes that the borrower DAB had been seeking a one year

extension of the maturity date of the loans which is what the LWD asked the Board

members to approve (R. 624). It contains _no_ requirement that the borrower sign

any document or that any other paperwork be executed by the parties in order for

the extension to be effective (R. 623-629). It does note that upon approval by the

Board, federal regulatory approval is necessary and that a fee would be charged the borrower (R. 623-629).

After the March 1, 2011 extension date set forth in the original loan documents came and went, the parties vis-à-vis each other continued as they had. Certified requisitions for work done by Flintlock were submitted to the bank, and payment was expected (R. 98-99' 425; 547-555). No notice of default was forwarded reflecting the later claimed March 1, 2011 default date. Apparently, however, shortly after March 1, 2011, the bank received an offer from Orchard (or its affiliate, Maverick Real Estate) to purchase the DAB loans at almost full value and decided to accept that offer despite its prior approval of the loans' extension (R. 957). Although certainly aware of the alleged problems with DAB relative to the loans at the time the extension had been approved on February 15th, some five weeks later, unknown to DAB and basing its action on the purported "dishonesty" of DAB's principal, the LWD recommended that the LWC rescind the approval of the loan extension previously granted, declare the loans in default as of March 1, and sell the paper to Orchard[5] (R. 957). A default letter was then forwarded to

_____

[5] Once again, the plaintiff's disingenuousness and feigned ignorance of the truth is displayed by its claim that the reversal of its decision to extend the maturity date of the DAB loans resulted from Brooklyn Federal's discovery <u>between</u> the <u>February 15, 2011</u> recommendation that the loans be extended and the Board's approval of the extension on that day, to its decision approximately five weeks later on <u>March 22, 2011</u> to rescind the approval because it had learned <u>in the interim</u> that DAB's principal, Ben Zhavian was allegedly holding back some of the funds that were advanced to pay Flintlock. In truth, according to the bank's own records, the allegations regarding Zhavian's purported hold back of funds were made and discussed by the

DAB on March 23, 2011, after additional Flintlock requisitions had been certified and submitted. Those requisitions were not paid, the bank now standing by its declaration of default as of March 1, 2011. The plug was pulled and Flintlock and all of the subcontractors walked off the job causing a cascade of default events (R. 428). One of DAB's counterclaims for breach of contract revolves around the non-payment of those requisitions.

After intense discussion relative to the procedure to be followed as a result of the discovery of this new and crucial evidence, the Court directed the defendant DAB to make a motion to renew the prior motions that had been before Justice Fried that resulted in his orders dismissing the defendant's counterclaims as well as to seek the vacating of those orders based on the newly discovered evidence (R. 687-691).

The motion, made by way of an order to show cause as directed by the Court, was fully briefed by the parties and was argued before the IAS Court (Ramos, J.) on July 9, 2013 (R. 50-1208; 1208.117-1208.147).

The defendant brought the motion pursuant to CPLR 2221(e)(2) and (3) seeking to renew the prior motions that had been before Justice Fried on the basis

---

bank on January 11, 2011, a full month before it approved the extension of the loans to DAB (see the bank's loan history sheet, R. 981). In fact there was even an issue if the allegations were true (R.981). Rather, it is obvious, that the bank under scrutiny by its federal regulator, OTS, and trying to save its own skin and survive decided that the offer it received from Orchard to purchase the loans at almost full value was the better course, DAB and its commitment being cast aside (R. 957).

that new facts had surfaced which had not been offered on the original motions,

namely, the signed writing of the bank's Board approving the extension of the

loans. DAB set forth its justification for not submitting that evidence at the time of

the earlier motions, specifically, the bank and Orchard's egregious conduct in

affirmatively misrepresenting (and falsely denying) throughout the proceedings to

the defendant, and more importantly to the IAS Court (Justices Fried and Ramos)

as well as to this Court, by their pleadings, their written arguments and motions,

their oral arguments, their appellant briefs and arguments, the existence of a signed

writing extending the maturity date of the DAB loans beyond the March 1, 2011

date, the claimed absence of which is now established to have been a knowingly

false representation.

In addition, pursuant to CPLR 5015(a)(2) and (3), DAB's motion sought the

vacating of the prior orders of Justice Fried upon the basis of the newly discovered

evidence, which it argued had it been introduced in the earlier proceedings would

probably have produced a different result. Justice Ramos agreed with that

assessment and made that finding:

> "And that is the language from the Appellate Division. (On the
> second page of its decision): Quote, 'the loan documents
> expressly prohibit oral termination or amendment and provided
> for termination or amendment only in writing signed by
> Brooklyn Federal....Clearly, that's what they wanted to see.
> For the purpose of a 3211 motion only and not a 3212 motion,
> doesn't that stop us right there? We already now know that
> D.A.B. can satisfy the Appellate Division's most stated

concern. And they repeat that. They say modified or amended only in writing executed by Brooklyn Federal. They don't say agreement, they don't say how detailed or procedurally how it has to be drafted. It doesn't necessarily have to be authenticated. *They just say from their point of view, a writing signed by Brooklyn Federal. We've got that now and I think if Judge Fried had seen that, he would be compelled to say 3211? I don't think so...*" [Emphasis added.] (R. 1208.21.)

DAB claimed that its failure to produce the new evidence on the earlier motion resulted from the misconduct and fraud of the plaintiff and the bank in affirmatively denying to the defendant and the courts the existence of the writing; the plaintiff and the bank claiming instead that there was no such writing, that any claim that there was, was "an elaborate fiction."

The defendant supported its motion with copies of the prior motions, the opposition and replies, the oral arguments by the parties before the motion court, the discovery of the February 15, 2011 writing of the bank, the letters trying to get that letter before this Court following oral argument, and so on. (R. 84-85, exhibit list; R. 86-777, actual documents).

The plaintiff and Brooklyn Federal, having been caught in their misstatements and misrepresentations, opposed the motion arguing in essence that the signed writing of Brooklyn's Board of Directors did not constitute the signed *agreement* that the loan documents required in order to modify or amend the maturity date set forth in the notes and mortgages because it was an "internal document," not the declared, "formal agreement" or "contract" now described by

27

them as required by the loan documents to amend the notes' terms. In addition,

they argued that this signed writing now finally produced could not be "an

agreement" amending the original loan documents because it had not been

communicated to or signed by DAB; had conditions precedent that had not been

met, and so on, all the while ignoring the plain language of the notes and of the

mortgage at issue, ie.,:

> "<u>Amendments</u>.  This Note may not be terminated or amended
> orally, but only by termination or amendment *in writing signed*
> *by Holder.)*  See ¶8.1 of the Consolidated Secured Project Loan
> Note and ¶9.1 of the Building Loan Promissory Note.
> [Emphasis added.]
>
> *"(T)his Mortgage, the Note, the Building Loan Agreement, and*
> *all instruments referred to in any of them can be extended,*
> *modified or amended only in writing executed by the*
> *Mortgagee...."*  See ¶3.21 of the Building Loan Mortgage and
> Security Agreement.  [Emphasis added.]

With regard to their claimed misconduct in secreting the now shown to exist

signed writing and their repeatedly *affirmatively* denying its existence (whatever its

significance might eventually have turned out to be), the plaintiff and the bank in a

desperate attempt to shield themselves from their wrongdoing, claimed that they

never secreted an "executed agreement" extending the loans' maturity date and

were guilty of nothing because this was not the "signed" "formal" agreement

required by the notes and the loan documents. Thus, they argued, no misstatement

was ever made by either of them when they denied its existence, making no excuse

for *their repeated prior allegations in pleadings, motions, and otherwise, that there*

*was __no signed writing__ extending the loans*, that such allegation by DAB was

"fiction."

Moreover, in furtherance of the axiom that the best defense (when you have

none) is go on the offensive, they urged the IAS Court to reject DAB's claims that

it could not have produced the signed writing of Brooklyn's Board earlier and

argued that DAB could not show the "due diligence" required by CPLR 2221(e)

and 5015(a) in support of its motion because they claimed, DAB made no effort to

discover it earlier.  Orchard argued: "This isn't gamesmanship, as much as these

are the rules we play by....We have rules.  I would respectfully, suggest we need to

play by them" (R. 679, 686); rules, however, which they apparently chose not to

abide by as they prosecuted this litigation based upon deceit and deception.

In fact, the plaintiff, Orchard, submitted no denial at all below of DAB's

claims that Orchard had mislead this Court at oral argument of the first appeal

when it was specifically asked about the existence of a signed extension of the

notes' maturity date and its representation to the IAS Court the week before that it

was in possession of such a document not yet produced and denied both of those

facts to this Court.  Nor does it deny in its present brief that that conduct took place

before this Court at the May 2013 oral argument, as it certainly cannot, the signed

writing of Brooklyn Federal's Board members extension of the loan maturity date

having finally been produced. Although its position, now shouted from the mountaintop, is that the February 15th signed writing of the Board does not constitute a formal agreement extending the notes and the loans and thus in denying "an agreement," it did not misrepresent anything to this Court, its present position certainly demonstrates the same lack of candor before this Court that it has exhibited throughout the prosecution of this litigation.

**(C)    DAB's Motion to Renew/Vacate the Prior Motions and Decisions and Oral Argument:**

At oral argument on July 9, 2013 of DAB's motion to renew and vacate the prior motions dismissing its counterclaims and the orders that resulted, before the IAS Court (Ramos, J.), the Court was apparently both troubled and concerned about the allegations made by the defendant regarding the misconduct of the plaintiff and the bank raised in DAB's papers. When plaintiff's counsel began to address the Court relative to the issue of DAB's due diligence or its claim of lack thereof in DAB's discovery of the signed writing by the bank approving the loan extension, the Court politely cut counsel off, asking: "Is this a path you folks want to go down?" The Court was obviously trying to shield the plaintiff, the bank and their counsel from on the record comments of the accusations made against them in this case. An off the record discussion then ensued (R.1208.19). Although off the record, the plaintiff has set forth in its brief the gist of the discussion that took place, with the Court accepting DAB's claims that it was "duped" by the plaintiff

into believing the appellants' claims that there was no signed writing extending the loans by both the bank's and Orchard's repeated claims and allegations that no such document existed and thus it never previously specifically sought it (Orchard's brief, pp. 27-28; 38). Why ask for a document that you are repeatedly told throughout the litigation doesn't exist? Counsel for both plaintiff and the bank, considering the off the record discussion with the Court regarding the allegations against them and their clients, obviously decided that the wiser choice was to move on and not to pursue those issues. Contrary to the claim of counsel for Brooklyn Federal in its brief (p. 16), they were not prohibited from doing so by the Court (R. 1208.19).

Ruling from the bench, the Court granted DAB's motion to renew and vacate the prior orders dismissing its counterclaims, and *sua sponte*, rather than reinstating the prior pleading, granted the defendant as well as the contractor Flintlock leave to re-plead considering the extensive paper submissions and oral argument that had taken place before the Court relative to the merit of the possible claims to be asserted in light of the newly produced evidence (R. 1208.8-1208.38; 1208.37). The Court orally directed DAB and Flintlock to serve their amended pleadings by August 8, 2013, 30 days from the date of the argument before the Court and gave the plaintiff and the bank leave to make such motions as they deemed appropriate upon receipt of the amended pleadings. The Court specifically

declined to rule on the plaintiff's pending motion for summary judgment, which motion was adjourned and is still pending (R. 1208.35-1208.36).

Both DAB and Flintlock timely served their amended answers to the complaint based upon the newly discovered evidence – the signed writing approving the extension of the DAB loans. Those pleadings have not yet been passed upon by the IAS Court, but are presently the subject of new motions by them pursuant to CPLR 3211 to dismiss, presently pending before the Supreme Court. Appellants' arguments in their briefs regarding the propriety of the amended pleadings are respectfully not yet ripe for resolution by this Court.

The Court issued a written *decision* dated July 22, 2013 setting forth its grant of DAB's motion and directing that an order be settled on notice (R. 1208.40). DAB submitted a proposed order on notice and Orchard submitted a proposed counter-order, which clearly set forth directives not ordered by the Court R. 1208.01-208.06; 1208.108-1208.109; 12008.149-1208.1510). Following further extensive argument before the court on August 26, 2013, the date for the settlement of the order, the Court signed the order submitted by DAB (R. 1208.247-1208.272, 15-19).

That order is the subject of the present appeal.

## ARGUMENT

**THE COURT PROPERLY GRANTED DAB'S MOTION TO RENEW AND VACATE THE ORDERS DISMISSING ITS COUNTERCLAIMS WHICH ORDERS HAD BEEN PREMISED ON THE COURT'S PRIOR HOLDING THAT THERE WAS NO SIGNED WRITING AMENDING THE MATURITY DATE OF THE NOTES AS REQUIRED BY THE LOAN DOCUMENTS THEMSELVES, SINCE IMMEDIATELY UPON DISCOVERY AND PRODUCTION OF THE SIGNED WRITING OF BROOKLYN FEDERAL APPROVING THE EXTENSION OF THE NOTES' MATURITY DATE LONG SECRETED AND DENIED BY THE APPELLANTS TO EXIST, THE DEFENDANT MADE THE MOTION TO RENEW AND VACATE, DEMONSTRATED ITS DUE DILIGENCE IN OBTAINING THE DOCUMENT AS WELL AS DEMONSTRATED THE MISCONDUCT OF THE APPELLANTS IN THE PROSECUTION OF THIS ACTION AND THE DEFENSE OF THE COUNTERCLAIMS, BY THEIR SECRETING AND DENYING THE EXISTENCE OF THE SIGNED WRITING. THE COURT'S SUA SPONTE GRANT OF LEAVE TO THE DEFENDANT TO AMEND ITS PLEADING AND RE-PLEAD WAS A PROPER EXERCISE OF DISCRETION UNDER THE CIRCUMSTANES.**

(A)    **The February 15, 2011 Signed Writing by the Board Members of Brooklyn Federal Was Sufficient Under the Terms of the Original Notes and Loan Documents to Amend the Notes by Extending their Maturity Date**

There is no doubt that the IAS Court had the power to grant the defendant's motion to renew the prior motions that had resulted in the orders of March 28, 2012 dismissing the defendant's counterclaims, and upon renewal vacating those orders, although those prior orders had been affirmed by this Court. <u>Tishman</u>

Construction Corp. of New York v. City of New York, 280 AD2d 374, 720 NYS2d 487 (1st Dep't. 2001); Levitt v. County of Suffolk, 166 AD2d 421, 560 NYS2d 487 (2nd Dep't. 1990, lv. dism'd., 77 NY2d 834); Siegel, New York Practice. 4th Edition (2005). §545. The appellants concede that to be the case (R. 1208.127).

CPLR §2221(e)(2) and (3) and §5015(a)(2) and (3), upon which the underlying motion is based, respectively provide:

> §2221(e)(2) and (3): "A motion for leave to renew...(2) shall be based upon new facts not offered on the prior motion that would change the prior determination...; and (3) shall contain reasonable justification for the failure to present such facts on the prior motion."

> §5015(a)(2) and (3): "On motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interest person with such notice as the court may direct, upon the ground of... (2) newly discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been produced in time...; or (3) fraud, misrepresentation or other misconduct of an adverse party."

The appellants' arguments otherwise notwithstanding, it is clear that the plaintiff prosecuted this action from the outset and defended itself from the counterclaims asserted by the defendant-borrower, joined in by the defendant bank, on their now shown to be knowingly false affirmative allegations that there was no writing signed by anyone at the bank extending the maturity date of DAB's loans.

The appellants have pled, argued and based their case and their defense of the counterclaims on their repeated claim not only that there never was a signed

writing extending the maturity date of the loans, but in order to defeat the

defendant's showing that the bank had repeatedly represented to it that the loans

were or would be extended so that construction of the hotel could be completed, by

their repeated allegations that the loan documents themselves prohibited any claim

based upon oral representations in the absence of a signed writing, and that no such

writing existed (see pp. 16-18 hereof).

In a nutshell, the plaintiff and the bank's allegations throughout these

proceedings have been that "(i)n any event the borrower's claim that the March 1,

2011 maturity date was extended *is an elaborate fiction* (see p. 17 hereof)"; "the

final maturity date of the Notes -- March 1, 2011 – *was never extended in*

*writing*…" (see p. 18 hereof).

Their misconduct in affirmatively pleading that a signed writing never

existed is palpable.

The appellants now seek to excuse their repeated affirmative denials that a

signed writing by the bank approving the extension of the defendant's loans ever

existed by continuing their specious assertions that it does not by attempting to

transform the language of the notes herein regarding the document necessary to

effectuate an amendment of their terms from the language set forth in the notes, "*a*

*writing signed by Holder*" or in the Building Loan Mortgage and Security

Agreement, "*this Mortgage, the Note, the Building Loan Agreement, and all*

35

*instruments referred to in any of them can be extended, modified or amended <u>only</u> in writing executed by the Mortgagee*(;) to language set forth in other cases and in other documents which refer to modification by a "signed <u>*agreement*</u>."

See for example the case cited by both appellants as determinative of this appeal, <u>Waterways Limited v. Barclays Bank</u>, 202 AD2d 64, 615 NYS2d 886 (1st Dep't. 1994).   In <u>Waterways</u>, this Court was concerned with *who* (both parties or just the bank) had to sign the "<u>*agreement*</u>" referred to in both the note as well as the Building Loan Agreement involved in that case as each of those documents required that an "<u>*agreement*</u>" was necessary to modify the existing loan documents involved.   That language is in sharp and definitive contrast to the language in both the notes as well as the Building Loan Mortgage and Security Agreement involved in the present case which each refer to "*a writing signed by the Holder*" or "*Mortgagee*" as necessary in order to amend the Notes or in the case of the Mortgage and Security Agreement, to extend, modify or amend any of the loan documents.   It was Brooklyn Federal and its attorneys who drafted the words and terms used in the notes and documents involved in this action and it is Brooklyn Federal and its assignee, the plaintiff, Orchard, who must live by them.

The principle is elementary.   See <u>Morrison Cohen Singer & Weinstein v. Network Industries Corp.</u>, 292 AD2d 153, 739 NYS2d 39 (1st Dep't. 2002):

> "(T)o whatever extent the agreement is ambiguous in this regard, plaintiff cannot prevail.   Plaintiff law firm drafted the

> agreement, and applying standard principles of contract construction, we construe ambiguities against the draftsman (cases cited), especially when it is drafted by sophisticated counsel (case cited)."

See also, <u>Jacobson v. Sassower</u>, 66 NY2d 991, 499 NYS2d 381, 489 NE2d 1283 (1985):

> "In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language…"

In examining the facts in <u>Waterways</u>, this Court looked to the specific language of the two documents involved therein, the note and the security agreement, which differed as to whether the "agreement" called for by both documents as necessary to amend the note involved had to be signed only by the holder of the note or by both, the borrower and the lender. Thus for instance, ¶25 of the Building Loan Agreement at issue therein set forth that any modification, amendment or termination had to be by an "*agreement in writing*" <u>executed by the parties</u>; while ¶19 of the Note required that any change or termination had to be by an "*agreement in writing*" <u>signed by the party against whom enforcement of such change or termination is sought</u>. The court resolved the issue and the ambiguity between the two documents involved in that case by holding that the writing involved therein – a memorandum prepared by the note holder's vice-president to summarize a discussion which took place at a meeting between the parties at which forbearance and extension of the existing note was discussed, which memorandum

was initialed only by the bank's officer -- was _not an agreement at all_, but rather an internal document of the lender.   Therefore the Court held, it did not have to answer the question of whether the initials of the bank's vice-president was sufficient or if both parties had to sign the document in order for the purported modification it to be effective.   The Court held that since the document was not "an agreement" at all _as called for by the terms of both documents_, but rather only an "internal document" of the bank drafted by the vice-president to memorialize the discussion that had taken place between the parties, it could not be held to be a modification of the original documents or new agreement with new terms as claimed by the borrower.

In addition, this Court in <u>Waterways</u> noted that the memorandum at issue therein set forth multiple conditions for the bank's forbearance and extension of the loan, including putting the property up for sale, a further line of credit from another bank, prepayment of interest and so on, and that the memorandum specifically set forth that new mortgage documents would be prepared and "_signed by both parties_," events which did not occur.   This Court also noted that the borrower's position was that the memorandum constituted a _new agreement_ between the parties, with its conditions precedent admittedly not met; that there had been no communication of the new agreement to the borrower and therefore there could have been no offer and acceptance "sufficient to satisfy the

'*agreement*' language of paragraph 19" of the original note. [Emphasis added.] The Court also referred to the prior practice of the parties whereby when they previously modified the loan agreement between them, they had "exercised formality in their prior course of dealing(,)" which was obviously absent from the events then before the court in which the borrower's position depended upon the lender's memorandum being considered a new loan agreement. Lastly, the Court referred to a subsequent letter from the borrower to the lender contemplating the formalization of the agreement between the parties as an acknowledgement by the borrower that in fact the memorandum could not have been the "agreement" required by the original documents.

The appellants point to all of the foregoing factors and the holding of this Court in Waterways as being exactly on point with the facts in this case, thereby precluding a different finding herein and mandating the reversal of the IAS Court.

As set forth above, however, the facts of the two cases are totally dissimilar, and in fact, the circumstances, reasoning and holding of this Court in Waterways demonstrates the erroneous argument of the appellants herein and the correctness of the motion court below.

In the instant case, the language of the notes relative to amendment is markedly and profoundly different from that in Waterways. The notes in the present case, as found by Justice Fried and this Court in its decision affirming his

orders, both specifically provide for their amendment by a "*writing signed by the holder*", not by an agreement, no matter who signs it. Similarly, as found by Justice Fried and this Court, the Building Loan Mortgage and Security Agreement in the present case provides that "*the Loan documents 'can be extended, modified or amended only in writing executed by the Mortgagee*...(;)*" different from the reference to a "signed agreement" in the <u>Waterways</u> case. When the draftsmen in the present case intended to use the word "agreement" they did so (see for instance the language in ¶38 of the Mortgage, Consolidation, Extension, Modification and Security Agreement and  ¶3.11 of the Building Loan Mortgage and Security Agreement set forth on page 48 hereof); amending or extending *the notes* are specifically not one of the circumstances set forth requiring a signed *agreement*, much less a formal one executed by both parties, as now argued by the appellants, or are in contradiction of the specific language of the notes requiring only a writing signed by the holder in order to be amended. <u>GLC Securityholder LLC v. Goldman, Sachs & Co.</u>, 74 AD3d 611, 905 NYS2d 27, cited by the appellants, is not to the contrary and in fact supports the respondent's position. In the present matter, there is a specific provision in the notes themselves regarding their amendment (as well as in the Building Loan Mortgage and Security Agreement), providing for amendment by a "*signed writing* by Brooklyn Federal" [emphasis

added], and therefore, as set forth in <u>GLC</u>, it is the specific clause which takes precedence over other more general or contradictory clauses in other documents.

As set forth above, it is an elementary principal of law that ambiguities in the words of a contract are to be interpreted against the draftsman. The "writing signed by the Holder" language set forth in both notes herein in order to amend their terms is therefore *not* "the agreement" language set forth in the note and mortgage found necessary in <u>Waterways</u>. The standard is different. As Orchard sets forth the dictionary definition of "agreement" in its brief: "A properly executed and legally binding contract" (Orchard Brief p. 50); the definition of the term actually used in the documents herein, "writing" is the more appropriate term to examine. "Writing", as defined in the dictionary, is "something written; letters or characters that serve as the visible signs of ideas, words, or symbols; a letter, note or notice used to communicate or record; a written composition." (Merriam Webster On-line Dictionary.) Is that not what we have here, a written composition, a paper document setting forth a visible record of words and ideas?

Clearly the signed document here, the February 15, 2011 approval by Brooklyn's Board members is the signed writing required by the notes, and is not required to be the "signed agreement" as defined by the appellants and as found specifically required by the documents at issue in <u>Waterways</u>.

41

Moreover, unlike Waterways in which there was no claim other than that the parties had *discussed* the modification of the terms of the loan leading to the preparation of the memorandum there at issue and as to whether or not it constituted the "written agreement" required by the note and loan documents; the sworn proof in the present case (contested though it may be) is that the bank, continuously represented to DAB that it had or would extend the loans' maturity date in order to enable construction of the hotel to be completed and that DAB relied upon those representations by entering into the new contract with Flintlock providing for completion long after March 1, 2011, by not seeking refinancing and by not otherwise selling the project. While the appellants' claim that the allegations of oral representations of the loans' extension were prohibited proof (while all the while knowing that there was a "secreted" signed writing extending the loans in existence), the law is clear that the eventual proof of the signed writing is corroborative evidence that the modification and amendment of the loans had been previously represented and agreed to.

In other words, the signed approval of the extension of the maturity date of the DAB loans by Brooklyn Federal's board is written corroboration of the oral representations of the extension so vigorously alleged by DAB as having been made to it all along, upon which it relied in going forward with the Flintlock contract and the loans, and which had been so fervently denied by the plaintiff and

42

the bank during the entire course of this litigation. The now produced, previously secreted, writing satisfies the requirements of the various loan documents necessitating *a writing signed* by the party to be charged evidencing the claimed earlier oral representations that the loans' terms had been modified and amended. See In the Matter of Urdang, 304 AD2d 586, 758 NYS2d 125 (2nd Dep't. 2003). See also, Crabtree v. Elizabeth Arden Sales Corp., 305 NY 48 (1953).

Desperate to excuse their falsehoods and misconduct, the appellants scream that the board of directors' signed approval of the extension of the DAB loans cannot constitute an agreement between the parties extending the term of the loans because as an agreement, pursuant to ordinary principles of contract law, and as set forth in Waterways, it had to be communicated to the borrower, it had to be accepted by the borrower, it had conditions precedent including approval by federal regulators and a fee to be paid by the borrower, and so on. It was an "internal document." However, all of those claims are inapposite to the present situation.

This is not a case in which the defendant is arguing that the parties entered into a new contract or agreement (it is the appellants who have gone down that path contrary to the plain language of their own documents). Rather, it is the defendant's position that it requested an extension of its loan maturity date and it was represented to it that one had been or would be granted, only for that

representation to later be denied upon the appellants' change of heart and their allegation that the loan documents required that any extension had to be by a signed writing. The signed writing now shown to exist was properly executed as called for in the notes themselves and amends the maturity date of the notes and existing contract; it is not claimed that it was an attempt to create a new contract. It is the signed writing called for by the explicit terms of the existing notes and corroborates the oral and other representations previously made.

With regard to the appellants' claims that DAB's counsel's letter of May 24, 2011 to the bank constitutes an acknowledgment that there was no signed agreement, similar to the letter in Waterways, the letter herein is taken out of context. It was forwarded to the bank's counsel in response to counsel's default letter to DAB, not in negotiation over the extension of the contract that DAB believed had already been granted. Read in context, the letter confirms DAB's long stated allegations that it had been represented to it that the loans' maturity date had been or would be extended and that it had taken action upon those representations. It was written in an effort to secure confirmation of the extension. Secondly, at the time it was written, the bank was knowingly sitting on its secreted Board of Directors' signed approval of the loans' extension, while claiming that the borrower was in default. Lastly, and perhaps most importantly, the letter was

forwarded to counsel in an effort to compromise and settle this matter.  Pursuant to

CPLR 4547, the letter is not admissible in evidence in these proceedings (R. 1198).

Even more disingenuous in the present matter, is the appellants' allegation

that the parties in the present matter, as in Waterways, should be bound by their

prior course of dealing in which a loan modification was entered into by a formal

agreement negotiated between counsel and signed by both parties.  First of all, the

appellants have been rabid in their argument against DAB's claim that the course

of dealing between the parties evidencing the extension of the loans is barred by

the loan documents' prohibition against evidence of prior course of dealing (¶3.21

of the Building Loan Mortgage and Security Agreement, R. 372-373; 393-394); yet

now when it suits their purposes, a prior "course of dealing" should somehow be

determinative.   Secondly,  such arguments are irrelevant herein based upon the

specific language of the notes (¶¶8.7 and 9.7), which require only a signed writing

by Brooklyn Federal to amend their terms.  The formal agreement referred to by

the appellants previously executed by the parties was when the Building Loan Note

and  agreements  were  entered  into  in  August  2008,  a  totally  new  contract,

agreement  and  endeavor  between  the  parties,  not  an  amendment  accomplished

pursuant to the very terms of the existing notes.

While in addition to Waterways, the appellants cite several cases, mostly in

the federal courts in support of their argument that an "internal document" of a

corporation cannot serve as an "agreement" between parties, whether new or modifying an existing one with a parol evidence clause, most of those cases are clearly distinguishable from the present matter before this Court. For example, the Inn at Saratoga Associates v. FDIC, 856 F. Supp. 111 case, concerns the interpretation of a federal statute; Njoku v. Northwest Airlines, 806 F. Supp.2d 1022, concerned an internal policy manual of an airline regarding safety procedures to be applied in a negligence case, Philips Credit v. Regent Health, 953 F. Supp. 482, concerned the formation of an entirely new contract between the parties, not the amendment of an existing one, and so on.

In contrast to those inapplicable cases, in a case before the New York Court of Appeals, DFI Communications, Inc. v. Greenberg, 41 NY2d 602, 394 NYS2d 586, 363 NE2d 312 (1977), concerning the affect to be given to a corporation's board minutes signed only by its authorized officer, which a stockholder and officer of the corporation claimed was a "signed writing" sufficient to modify the terms of an agreement between himself and the corporation containing a "no oral modification" clause as well as providing that "this agreement may not be changed, rescinded or altered or amended except by an agreement had in writing...," the Court of Appeals held that the signed Board minutes constituted proof of the modification of the contract between the parties:

> "To hold that the claimed modification was not 'in writing' in this case would be a hypertechnical, overly formalistic and

46

erroneous interpretation of the statutory (GOL) requirement....In requiring that a writing must be 'signed by the party against whom enforcement of the change is sought or by his agent' the statute by its terms does not contemplate, in the circumstances here presented, an additional formal agreement signed by both parties. As noted, the statute requires that the writing be signed by the party to be charged or his agent. This requirement may be satisfied where an officer, here the secretary of the corporation, whose duty it is to record them, has duly subscribed the minutes."

Are the facts in the present matter not analogous to the facts and holding of the Court in DFI, if not in fact stronger, as the very documents at issue herein, the notes, specifically only require a signed writing by the bank in order that they be amended?

**(B)    The Due Diligence of the Defendant-Respondent Regarding the New Evidence and the Misconduct of the Appellants in Secreting and Denying its Existence**

Both the plaintiff and the bank make great cause that the defendant should not have been permitted to make the motion to renew and vacate in that DAB failed to demonstrate that the signed writing of the bank's board approving the loans' extension was new evidence that could not have been produced in opposition to their earlier motions, that the defendant failed to exercise due diligence in securing and submitting it to the motion court and the Appellate Division, and that they were guilty of any misconduct in secreting the document and denying its existence.

As stated by this Court in <u>Cohoes v. Lexington Insurance Co.</u>, 292 AD2d 51, 745 NYS2d 1 (2002), a case in which the defendant denied the existence of an inspector's report resulting in the dismissal of the case against it, a dismissal affirmed on appeal, only to later have the report appear as discovery proceeded in the case against the remaining defendants resulting in a reversal of the earlier dismissal: "It is clear in retrospect, *that Lexington's misconduct, <u>not</u> plaintiff's lack of due diligence, was the primary cause of the plaintiff's failure to obtain the report sooner.*" [Emphasis added.]    Surely that is the case herein.

While the appellants below sought to distinguish the <u>Cohoes</u> case from the present matter by arguing that in that case the plaintiff had asked for the report in discovery only to be told it did not exist, only later to learn that it in fact did, leading the Appellate Division to correct it's and the motion's court's "mistake" in previously dismissing the action, based upon the fraud and misrepresentation of the defendant; in the present case the plaintiff and the defendant bank *<u>from the outset affirmatively and repeatedly alleged, pled and argued,</u>* that *there was <u>no signed writing</u>* extending the maturity date of the loans (see pages 16-18 herein).    The plaintiff went so far as to deny in response to direct questions at oral argument before this Court that it had finally admitted the existence of such a document the week before in open court as well as denied that any such document did in fact exist (its misstatements ending the oral argument without this Court ever seeing or

considering the secreted document), when it had in fact made such an admission before this Court the week before and belatedly produced the signed writing just several days after the argument.

In a similar vein, is Birsett v. General Accident Insurance Company of America, 241 AD2d 683, 659 NYS2d 924 (3rd Dep't. 1997).  In *Birsett*, the plaintiff had obtained a judgment against the defendant insurance company for an inflated amount representing the full amount of the judgment the plaintiff had previously received against the insurance company's insured, but which it had settled with the insured for a substantially reduced amount, executing a release of the insured in return for payment.  The plaintiff failed to inform the defendant insurer and the court of the insured's execution of the release for the lesser amount, as it obtained the second judgment against the insurance company for the much higher amount of the original judgment.

In affirming the vacatur of that inflated judgment in favor of the plaintiff as against the insurance company, the Appellate Division *rejected* the plaintiff's contention that the insurance company's motion pursuant to CPLR 5015(a) was improper because the defendant insurer failed to provide proof of the release and prior settlement on its motion for summary judgment against the plaintiff although the settlement documents were readily available as public records or through discovery, which the defendant did not undertake. Making short shrift of the

plaintiff's claim that the defendant's unexcused failure to timely seek documents in

discovery prevented the court from considering the defendant's motion to vacate

the judgment against the insurance company, the court held:

> "We conclude that plaintiff's actions, if not a fraud upon the court and defendant, constituted misrepresentation and misconduct sufficient to warrant vacatur of the judgment (cases cited). (*Plaintiff's contention that defendant's belated discovery of facts easily discoverable earlier should preclude defendant's motion to vacate) is rejected in view of plaintiff's material and knowledgeable misrepresentation and misconduct* (cases cited). [Emphasis added.]

The facts are no different herein.

To try to point the finger of blame at the defendant and its counsel for the

absence from the original motion papers and the record on appeal of the document

setting forth the board's signed approval of the extension, by arguing that "they

had not asked for it," suggesting that if they only had it would have been produced,

is absurd. From the outset of the litigation and continuing throughout, the plaintiff

and the defendant bank affirmatively stated that such a document did not exist.

Although the appellants now argue that an earlier produced document (the

purchase agreement by Orchard of the notes and loan documents) stated that all of

the bank's records *would* be turned over to it at closing and to an affidavit by

Orchard's principal that he was the custodian of the bank's records, the fact

remains that the party who it now appears was always in possession of the signed

writing of the bank's board affirmatively *denied* from the outset of this litigation

that such a document existed. It is the height of arrogance to blame a party for not asking for a document, which it is repeatedly told did not exist.

The underlying rational of the *Cohoes* decision is as relevant here as it was there. The misconduct of a party in affirmatively denying the existence of a document known to exist is not to be rewarded; there is no lack of diligence in failing to produce in support (or opposition) to a motion a document in the custody and control of the adverse party that that party denies exists. There was no purpose here in serving a demand for a document, which the adverse parties' pleadings, allegations and arguments, stated *did not exist.*

Likewise is the court's reasoning in *Birsett.*  A party is not to be rewarded for affirmatively alleging a matter of fact it knows to be untrue and then blame its adversary for not timely discovering the misrepresentation and bringing it to the court's attention, even when the missing documents are readily available.

Counsel for Brooklyn Federal, stated in his opposition papers to the motion court below, that litigation is not a sport; previously counsel for the plaintiff, Orchard, stated in essence that litigation is not a game, but there are rules to be followed.  Respondent agrees.  Whatever may be the protocol in sport or game; certainly in the search for justice, the courts have made clear that misconduct whether by cheating, by fraud, by misrepresentation is not to be countenanced and injustice brought about by such conduct will be corrected.  Misrepresentation to the

courts is certainly not to be tolerated. <u>Oppenheimer v. Westcott</u>, 47 NY2d 595, 419 NYS2d 908, 393 NE2d 982 (1979); <u>In Re Schroeder</u>, 70 AD3d 583, 895 NYS2d 395 (1st Dep't. 2010); <u>Cohoes Realty Associates v. Lexington Insurance Co.</u>, *supra*. See also, <u>Birsett v. General Accident Insurance Company of America</u>, *supra*; <u>Tortorello v. Tortorello</u>, 161 AD2d 633, 555 NYS2d 411 (2nd Dep't. 1990).

Moreover, despite the plaintiff's and defendant bank's claims that the defendant and its counsel did not act with due diligence in bringing the board's signed writing to the attention of the court (an argument with which respondent vehemently disagrees in that the motion was made immediately after the previously denied to exist document surfaced), this Court has made clear that the rule regarding the timing of the discovery of new evidence submitted on a motion for renewal is:

> "a flexible one and the court, in its discretion, may also grant renewal, in the interest of justice, upon facts, which were known to the movant at the time the original motion was made (cases cited)…(,)" in order to avoid "injustice." Motions for renewal may be properly granted even where the "vigorous requirements for renewal are not met…so as not to 'defeat substantive fairness' (cases cited)." <u>Tishman Construction Corporation v. City of New York</u>, 280 AD2d 374, 720 NYS2d 487 (1st Dep't. 2001).

See also <u>Daniels v. The City of New York</u>, 291 AD2d 260, 737 NYS2d 598, (1st Dep't. 2002); <u>Strong v. Brookhaven Memorial Hospital Medical Center</u>, 240 AD2d 726 (2nd Dep't. 1997)

Finally, it is respectfully submitted, that contrary to the claims of the plaintiff, whether the IAS Court's order is affirmed herein or not, it is respectfully submitted that this proceeding and this appeal are distinct from the plaintiff's *pending* motion for summary judgment, which is not presently before this Court.

On the still pending summary judgment motion, it is absolutely clear that there was a signed writing by the bank, at the very least *seeming* to extend the loans' maturity date as required by the loan documents; that the borrower's allegations of the loans' extension have been corroborated in a writing; that at the very least an issue of fact is presented regarding the significance and effect of that signed writing. The plaintiff and the bank's misrepresentations and misconduct in secreting that document and affirmatively stating throughout this litigation that it did not exist, must not be rewarded.

### (C)   The Court's *Sua Sponte* Grant of Leave to the Defendant-Respondent and Flintlock to Re-Plead

Contrary to the claims of the appellants that the IAS Court was without authority to *sua sponte* grant DAB and the defendant Flintlock leave to re-plead based upon the production of the newly discovered signed writing of the bank's board extending the maturity date of the DAB loans which totally changed the posture of the case, the appellants arguing that the Court could not do so without passing on the actual amended pleadings, the law is clear that a court has the ultimate discretion to *sua sponte* permit the amendment of pleadings at any time in

the proceedings so long as there is no prejudice to the adverse party. <u>Edenwald Contracting Co., Inc. v. City of New York</u>, 60 NY2d 957, 471 NYS2d 55, 459 NE2d 164 (1983); <u>Kennelly v. Mobius Realty Holdings</u>, 33 AD3d 380, 822 NYS2d 264 (1st Dep't. 2006); <u>Dampskibsselskabet v. Thomas Paper</u>, 26 AD2d 347, 274 NYS2d 601 (1st Dep't. 1966); <u>Cave v. Kollar</u>, 2 AD3d 386, 767 NYS2d 856 (2nd Dep't. 2003).

In the instant case, unlike the many cases cited in support of their position by the appellants, the defendant herein did not move for leave to re-plead without annexing a copy of its proposed pleadings (it chose to first seek the renewal of the prior motions and the vacating of the orders dismissing its counterclaims, as previously pleaded); rather, it was the Court, well aware of the facts, law and merit of the potential claims and defenses now to be litigated based upon the newly produced, previously secreted evidence, having read thousands of pages of motions and arguments, and heard oral argument on no less than five (5) occasions, that directed the re-pleading, on its own initiative. There could be no surprise or prejudice to the appellants herein relative to counterclaims and defenses to be asserted. Despite their claims otherwise and self-proclaimed right to summary judgment, the case is still in the pleading and discovery stage. While the appellants interpret litigation in which issues are contested and proof submitted, and take umbrage when they do not get their immediate way, as "delay;" in fact, _no_

54

note of issue has been filed by the plaintiff in this matter. There can be no
prejudice to it other than the customary uncertainties of litigation by the grant of
the present motion. In fact, the plaintiff (as well as the bank) have already moved
before the motion court pursuant to CPLR 3211 to dismiss the defendant's
amended pleading. There is no prejudice.

## CONCLUSION

For all of the foregoing reasons, the Decision and Order of the Supreme Court, New York County, (Hon. Charles E. Ramos, Justice) dated August 26, 2013, which granted the defendant DAB's motion to renew and vacate the prior motions and resultant orders dismissing its counterclaims, and thereupon, *sua sponte*, granted the defendant leave to re-plead, was correctly decided and should be affirmed.

Dated:  Kew Gardens, New York
       October 28, 2013

Respectfully submitted,
Law Offices of
EVERETT N. NIMETZ
Attorney for defendant,
Plaintiff on the Counterclaims-
Respondent, D.A.B. Group LLC


By: _____
EVERETT N. NIMETZ, ESQ.
125-10 Queens Boulevard,
Suite 311
Kew Gardens, N. Y. 11415
(718) 520-1100

## PRINTING SPECIFICATIONS STATEMENT

I hereby certify pursuant to 22 NYCRR §600.10 that the foregoing brief was prepared on a computer using Microsoft Word.

Type:        A proportionately spaced typeface was used, as follows:

Name of typeface: Times New Roman

Point size:        14

Line spacing:        Double

Word Count:        The total number of words in the brief, inclusive of point headings and footnotes, and exclusive of paging containing the table of contents, table of citations, proof of service and this statement is 13,998.

Dated:        Kew Gardens, New York
October 28, 2013

EVERETT N. NIMETZ
Appellant Attorney for the
Defendant-Respondent

EVERETT N. NIMETZ
125-10 Queens Boulevard
Suite 311
Kew Gardens, N.Y. 11415
(718) 520-1100