# Exhibit 19

# In The Matter Of:

*ORCHARD HOTEL, LLC*

*v.*

*D.A.B. GROUP, LLC, et al.*

_____

*RICHARD MAHER- Vol. 1*

*April 3, 2013*

_____

**MERRILL CORPORATION**

LegaLink, Inc.

225 Varick Street
10th Floor
New York, NY 10014
Phone: 212.557.7400
Fax: 212.692.9171

RICHARD MAHER - 4/3/2013

```
 1
 2   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK
 3   ------------------------------------------x
     ORCHARD HOTEL, LLC,
 4
                                     Plaintiff,
 5
              -against-         Index No. 850044/2011
 6
     D.A.B. GROUP, LLC; ORCHARD CONSTRUCTION,
 7   LLC; FLINTLOCK CONSTRUCTION SERVICES LLC;
     JJK MECHANICAL INC.; EDWARD MILLS & ASSOCIATES,
 8   ARCHITECTS PC; CASINO DEVELOPMENT GROUP, INC.;
     CITYWIDE CONSTRUCTION WORKS INC.; EMPIRE
 9   TRANSIT MIX INC.; MARJAM SUPPLY CO., INC.;
     ROTAVELE ELEVATOR INC.; SMK ASSOCIATES INC.;
10   FJF ELECTRICAL CO. INC.; CITY OF NEW YORK;
     NEW YORK STATE DEPARTMENT OF TAXATION &
11   FINANCE; LEONARD B. JOHNSON; CITY OF NEW YORK
     ENVIRONMENTAL CONTROL BOARD; BROOKLYN FEDERAL
12   SAVINGS BANK; STATE BANK OF TEXAS and JOHN
     DOE #1 through JOHN DOE #100, the last 100
13   names being fictitious, their true identities
     unknown to plaintiffs, and intended to be the
14   tenants, occupants, persons or corporations,
     if any, having or claiming an interest in or
15   lien upon the premises described in the
     complaint,
16
                                     Defendants.
17   ------------------------------------------X
18                   222 Old Country Road
                     Mineola, New York
19
                     April 3, 2013
20                   5:15 p.m.
21
22        DEPOSITION of RICHARD MAHER, a nonparty
23   witness herein, taken by all parties, pursuant to
24   Subpoena, held at the above-noted time and place
25   before a Notary Public of the State of New York.
```

RICHARD MAHER - 4/3/2013

Page 2

```
 1
 2   A P P E A R A N C E S:
 3       MORRISON COHEN, LLP
         Attorneys for Plaintiff
 4       Orchard Hotel, LLC and Defendant
         Orchard Construction, LLC
 5           909 Third Avenue
             New York, New York  10022
 6
         BY:  BRETT D. DOCKWELL
 7            (212) 735-8791
              bdockwell@morrisoncohen.com
 8
 9       FAVATA & WALLACE, LLP
         Attorneys for Defendant
10       D.A.B. Group, LLC
             229 Seventh Street
11           Suite 300
             Garden City, New York  11530
12
         BY:  WILLIAM G. WALLACE, ESQ.
13            (516) 742-9494
              fwoffice@aol.com
14
15       HOLLANDER & STRAUSS, LLP
         Attorneys for Defendant
16       Flintlock Construction Services LLC
             40 Cutter Mill Road
17           Suite 203
             Great Neck, New York  11021
18
         BY:  JOHN B. FULFREE, ESQ.
19            (516) 498-1000
              jfulfree@hsmllp.com
20
21       O'REILLY, MARSH & CORTESELLI, P.C.
         Attorneys for Nonparty Witness
22           222 Old Country Road
             Second Floor
23           Mineola, New York  11501
24       BY:  JAMES G. MARSH, ESQ.
              (516) 741-1818, Ext. 322
25            jmarsh@omclaw.com
```

Page 29

 1                      R. Maher
 2      Q    Did you discuss this loan during its
 3   term with Mr. Patel?
 4      A    I am trying to recall.  This loan sat
 5   dormant for so long there wasn't much interaction
 6   with it.
 7           I think Mark Leno and others were
 8   dealing with Patel.  He was getting some of our
 9   correspondence, e-mails, whatever on the phone.
10           I know he was involved when we had a
11   conference call with Ben and when we had Ben to
12   the office with everybody.  He was in on the
13   speakerphone.
14           Directly, you know, I mean -- I don't
15   recall.  That's the way it was.  I don't recall
16   exactly what was.
17      Q    As you sit here today, do you recall a
18   time sometime early part of 2011 where the issue
19   of the loan coming to term had come up during any
20   meetings?
21      A    That was Joanne Gallo's and Bruce
22   Gordon's deal.  I was just functioning on the
23   construction advances and the progress and/or
24   lack of.
25      Q    Let me ask you something.

1                    R. Maher
2      don't know.
3             MR. MARSH:  It was sent to Ben Zhavian.
4        Q    Mr. Maher, you had an opportunity to
5   read this?
6        A    Yes.
7        Q    Do you recall this particular e-mail?
8        A    Now that it's in front of me, yes.
9        Q    Was this e-mail generated by you?
10       A    Yes.
11       Q    On the date that is set forth on the
12  e-mail?
13       A    Yes.
14       Q    Can you tell me what the issue was you
15  were addressing by this e-mail?
16       A    The e-mail is self-explanatory.  Ben,
17  capital B-E-N, was paid as requested.  Now he is
18  telling Flintlock, his GC, not to cash the check,
19  to hold onto it.
20            Those checks that we issued were valid.
21  There was no reason for him to tell him to hold
22  onto it.
23       Q    You heard about this from Flintlock, I
24  presume?
25       A    Yes, as it says, Chip informed me he

Page 59

```
 1                     R. Maher
 2   was for?
 3       A    I don't recall.
 4       Q    Were you aware that Flintlock's
 5   contract afforded them 430 days to complete the
 6   construction work?
 7       A    I don't remember the details of the
 8   project -- the contract.
 9       Q    Correct me if I am wrong, but earlier
10   you testified that Brooklyn Federal Savings Bank
11   approval of the construction contract was
12   required before Flintlock could come on as
13   general contractor?
14            MR. MARSH:  Objection to the form of
15        the question.
16            You can answer if you understand it.
17       A    I believe they were approved to do the
18   work, that we felt comfortable with their
19   capacity and experience and size of their company
20   to perform the job and get the job done, and
21   everyone being cognizant of the mid November time
22   frame deadline.
23            I don't remember them, the board or
24   counsel reviewing their contract, the actual, you
25   know, document to bless this particular document
```

 1                     R. Maher
 2   Federal Savings Bank or you, around March 3rd, a
 3   notice of nonpayment?
 4        A    I don't recall, but it's very possible.
 5   We had difficulties with Ben.
 6        Q    What were those difficulties?
 7             By difficulties, do you mean the issue
 8   described in --
 9        A    In what aspect, having a normal
10   conversation with the guy.  You couldn't have a
11   normal conversation --
12        Q    I'll ask a question.
13             By having difficulties with Ben, do you
14   mean the payment issues described in the first
15   paragraph of Exhibit E, where Mr. Weiss would
16   bring to your attention Ben Zhavian had directed
17   Flintlock not to cash a check, those are the
18   types of issues you are referring to?
19        A    That's an issue, yes.  That's an
20   issue.  This line, misuse of funds, this is a
21   misuse of funds and potential violations of the
22   law.
23             You are not helping yourself and
24   breaching the loan agreement.
25        Q    Is this the first time you asked Ben

1                    R. Maher

2              Jack Rosenfeld also had a lot of

3   contact with him.  I was pretty much waiting for

4   the construction advances.  When is it, getting

5   the extensions under the terms of the loan, et

6   cetera.

7              Because even to get his automatic

8   extensions, we had to -- we had to show he was

9   compliant with the terms and speak to the State

10  Bank of Texas.

11             A lot of times Ben was in Israel for

12  lengthy periods of time.  That's where he would

13  call me from in the middle of the night and leave

14  these things on my voice mail so I couldn't

15  respond.

16       Q    You had said there were -- I am

17  paraphrasing -- something along the lines all

18  sorts of problems with Ben.

19             Did you testify to something along

20  those lines?

21       A    Yes.

22       Q    In your experience, were they problems

23  with Mr. Zhavian's honesty?

24       A    We had a situation where we did a

25  construction advance, and it was on the next

Page 93

1              R. Maher

2         "So, I am going to pay him now."

3         That's what I take great exception to.

4    I can't remember all the other details. That one

5    stands out.

6         One thing I remember about that loan

7    and that was that.

8         Q    Why did that stand out in your mind?

9         A    That's real fucking around. Excuse my

10   French. This is monkey business. Everyone is

11   pulling out every stop under the sun to make this

12   happen and he is doing this.

13        And it wasn't like he said he didn't

14   get something complete, "I was holding back 100

15   grand."

16        And he called us and said, "I am

17   holding 100 grand on this last advance because I

18   want Flintlock to get something accomplished."

19        No. "I paid him under the table." It

20   came out at the last supper there.

21        Q    You say it all came out?

22        A    Ben confessed he didn't pay him. It

23   wasn't because he didn't do anything. He was

24   just being Ben.

25        Q    In your experience, when a borrower