# Exhibit 22

# HISTORY SHEET
## Loan #18-010521-3/18-010588-2

**Applicant/Borrower:    DAB Group, LLC**
Ben Zhavian (917) 359-6316 – Wrong #?
(212) 982 – 4616 (office #)
**(917) 214-7566 – Correct #**
Nick : 914: 384-0123
FlintLock Contracting
DABGROUP@YAHOO.COM

**Address:    139-141 Orchard Street, New York, NY 10002**

Broker: Andrew Glass (212) 539-0800

| | |
|---|---|
| 8/15/07<br>MAL | Issued LOI. Faxed it to Andrew Glass Brokerage. |
| 8/17/07<br>MAL | Received executed LOI with check in the amount of $13,750. Loan approval for Tuesday, August 21, 2007 Loan Committee being prepared. |
| 8/21/07<br>GT | Loan Approved August 21, 2007 |
| 8/22/07<br>GT | Today I ordered the environmental report with Middleton. |
| 8/30/07<br>RTM | Cushman & Wakefield was engaged to appraise the property. The contact person is Tim Simpson 845-825-1025 |
| 9/11/07<br>GT | Today we received the Environmental via e-mail from Middleton. I downloaded the file and saved it in the directory folder. |
| 9/12/07<br>GT | Today we received hard copies of the environmental report from Middleton. SW reviewed the report and there will be an escrow for correction of peeling paint. The amount of the escrow is to be determined. |
| 10/22/07<br>RTM | The final copy of the appraisal was received and approved. |
| 10/30/07 | Preparing to close. I spoke to Andy in an effort to satisfy the special conditions of the loan commitment. The appraisal is complete and reviewed. There is a condition that a residential or hotel must be able to be built on an "As of Right basis" The property is zoned C6-1 General Central Commercial District, nothing is indicated that hotel or a residential use is permitted or not permitted in this zoning district.<br>　The architect has supplied a letter indicating what can be built there as of Right for |

BF000079

both uses and Development square foot area.

| Date | | |
|---|---|---|
| 12/24/07 SEW | Loan closed with funds to set up into a reserve account, however the signature cards were completed by a POA. Bank corp attorney indicates we need original signatures. Broker has forwarded forms to borrower (presently in Israel) Broker notified that forms have been received and will be sent to us overnight | |
| 3/18/08 SEW | Loan was initially approved with this in the write-up (although was not in the special condition section) As this was approved, it is to be noted that it is an exception to use one not on the approved list.<br>" Due to the specialty nature of the proposed development, it is requested that the Loan Committee and Board of Directors approve the use of Cushman & Wakefield for this loan and any subsequent participation that we may enter into for this project" | |
| 5/2/08 SEW | State Bank has approved $13,000,000 (52.95%) and Community Federal has previously approved $825,000 (was 15% of previously approved first loan) This would be 3.36% of new amount. BFSB would retain 43.69% = $10,704,050.00 | |
| 6/3/08 AM | Letter notification sent for maturity. | |
| 6/10/08 SEW | Advised broker that when demo is done to let us know as we have to notify Servicing to change status to land. A Glass believes it will be demo'd this week however until it is done we cannot change the status. | |
| 6/27/08 MAL | Reviewed Plan and Cost Review submitted by Koch Engineering, P.C. on Monday, June 23, 2008. It supports the initial hard cost budget number in the write-up of $15,250,000. We need reconcile final hotel room count with that mentioned in the loan approval write-up. | |
| 7/3/08 AM | Review of Cushman & Wakefield appraisal report reveals land value as $17MM. Our budget is $17.5MM; therefore, adjustments have been made. With the new numbers in place, total project costs are 69%. | |

Initial Budget:

| | | | |
|---|---|---|---|
| Equity / Land | $ 17,500,000 | $ 5,500,000 | $12,000,000 |
| Construction / Hard | $ 15,250,000 | $15,250,000 | $ 0 |
| Soft Costs | $ 1,800,000 | $ 1,800,000 | $ 0 |
| Interest | $ 2,000,000 | $ 2,000,000 | $ 0 |
| | $ 36,550,000 | $24,550,000 | $12,000,000 |

Revised Budget:

| | | | |
|---|---|---|---|
| Equity / Land | $ 17,000,000 | $ 5,500,000 | $12,000,000 |
| Construction / Hard | $ 15,250,000 | $15,250,000 | $ 0 |
| Soft Costs | $ 1,800,000 | $ 1,800,000 | $ 0 |
| Interest | $ 2,000,000 | $ 2,000,000 | $ 0 |
| | $ 36,050,000 | $24,550,000 | $12,000,000 |

*Loan #18-010521-3/18-010588-2*

| Date | Note |
|---|---|
| 7/7/08 AM | Special condition to be satisfied: verification of liquid assets of $4.5MM. As per conversation with the Borrower, he forwarded this information to Andy's office |
| 7/10/08 AM | Bank statements received show combined balance of roughly $2.8MM, whereas PFS of 02/2008 lists $4.5MM in cash. We advised Andy that the developer would have to provide proof of funds invested in project for the difference. |
| 7/16/08 AM | As per David Keusch, With respect to the zoning issues, they provided a document that permits them to merge lots without the bank's consent but they should be sending us a copy of the actual document that performs the merging of the lots – it's called a ZLDA (pronounced Zelda) and it has the terms of the merger in it. |
| 7/24/08 AM | Andy sent a breakdown of what spent on a project out of $4.5MM cash indicated on PFS. Total came to $1.66MM that would make a difference between current balances of $2.8MM and $4.5MM cash.<br><br>As per ZLDA (air rights acquisition on 81 Rivington), David Keusch is working with the borrower's attorney to straighten it out and have a proof shortly.<br><br>Broker requested info on liability insurance requirements. Generally the $1MM-$3MM is acceptable – Spoke with Bank Counsel (Keusch / Kriss) agreed on majority of deals under $50MM that is the accepted amount |
| 8/13/08 SEW | Andy to speak with borrower regarding less of a loan amount based on LTOB limits – he agreed that with retainage holdbacks borrower will more than likely never need entire amount so why pay recording fee … |
| 8/21/08 SEW | It is noted that the two loans are NOT co-terminus as no approval request sent to committee. |
| 12/1/08 AM | Received 2007 1065 & balance sheet for the Borrower and 2007 1040 for the guarantor. |
| 1/15/09 RTM | There is a SWO in effect on this job due to a rezoning of the entire area. The borrowers are going to court on January 20, to get the SWO lifted. |
| 7/21/09 AM | Received 2008 1065 for the Borrower and 2008 1040 for the guarantor. |
| 10/7/09 RTM | The project had a SWO for almost one year due to downing the rezoning of the area. The project was grandfathered in and had to proceed through several more approvals. According to Chris Koch now that the borrower has the green light to resume work, the owner rebid the job. The same G/C won the job for $1,000,000. However the borrower is claiming he wants to use the savings to be applied to FFE. |

*Loan #18-010521-3/18-010588-2*

BF000081

| | |
|---|---|
| MAM<br>10/21/09 | Marc Leno – site inspection completed<br>Minutes of the Meeting are in the file |
| RTM<br>11/12/09 | On November 10th there was a conference call. The minutes are in the file. |
| 2/8/10<br>AM | Louise Crew from Wantagh forwarded us a letter from IRS on a discrepancy in Tax ID on DAB Group LLC savings account and existing IRS records. This has resulted in 28% backup withholding of interest on savings account. This matter was brought to both Ben Zhavian and his CPA, Allen Guskin, on 2/5/10. Today we received a request from Ben Z. to close the savings account. Contacted Louise who advised us that account couldn't be closed until after we receive signed W-9 with correct Tax ID. Requested such from CPA. |
| 3/5/10<br>ML &<br>RTM | A Site Inspection has been completed and pictures are in the e-file |
| 3/29/10<br>LL | A Pre-Negotiation Letter has been completed and awaits signature |
| 6/1/10 | Borrower is attempting to restart construction |
| 6/28/10 | From Management Asset Classification Committee Minutes:<br>Borrower requested to remit the May and June payments and Mr. Rosenfield has indicated to borrower also needs the July payment. A default letter has been sent by bank counsel, Mr. Kalamotousakis. Committee has agreed if at least May and Jun payments not received by 6/30 loan to be listed as non-accrual. |
| 7/13/10<br>LL | From Management Asset Classification Committee Minutes:<br>Loan was recommended to be downgraded. |
| 7/13/10 | From Management Asset Classification Committee Minutes:<br>Management will be meeting with the borrower/ guarantor on Wednesday July 14, 2010. If positive results are not concluded at this meeting legal action will be taken. |
| 7/19/10<br>SW | Email to Borrower from SW :<br>Good morning. When you were here on Thursday (7/15) to discuss the status of the real estate tax arrears and required interest replenishment you indicated at that time that you would be back on Friday (7/16) to pay the amount necessary for the initial escrow, as well as the interest replenishment. As discussed with you, since you are already past due on the taxes and in default of your tax agreement the Bank must pay those past due amounts, since you have not. If we do not hear from you immediately (especially since you said you would be back the next day to pay them) we will be forced to pay them, which constitutes a default of the terms of the agreement. Please advise. |
| 7/20/10<br>RTM<br>JR | Meeting with Borrower… |

*Loan #18-010521-3/18-010588-2*

**BF000082**

| | |
|---|---|
| 8/02/10<br>IC | Mr. Zhavian shows a weakened financial position with minimal cash flow, a decrease in net worth, and an insufficient credit history. Although the Guarantor shows a good liquidity position of $1.2MM, that amount is unverified.<br><br>A personal financial statement dated 6/30/10 for Zvi (Ben) Zhavian showed a personal net worth of $8,795.5M, with assets of $23,241.2M and liabilities of $14,445.7M. Assets consisted primarily of unverified cash of $1,200M and investment real estate of $21,841.2M (including 3 properties in Israel valued at $3,350M). Liabilities consisted primarily of real estate mortgages of $14,443.7M. Note that for 6/05/09, the Guarantor reported a higher net worth of $24,405.8M. This is primarily due to Mr. Zhavian reporting 3 additional real estate properties located in Israel, which have since been sold in order to provide additional capital for the subject project. In addition, the Guarantor valued the subject property at $23MM in 2009 as opposed to $9.5MM in 2010.<br><br>As per the 2008 tax return, the borrower reported minimal cash flow of $1.2M, which consisted of distributions from LAG 18, LLC. Note that Mr. Zhavian reported a loss of ($457.1M) from Partnerships and S-Corps. For 2007, the borrower received distributions of $890.2M from LAG 18, LLC and reported a loss from Partnerships and S-Corps of ($768.9M). |
| 8/03/10<br>IC | Received a bank statement verifying cash of $1.2MM. However, there is no name on the statement and the account may be in Israel. |
| 8/05/10<br>IC for JR | "I spoke with Stuart Beckerman (212-391-8045).<br>Mr. Beckerman is Ben Zhavian's land use attorney.<br><br>I asked about procedures and timing for an extension beyond November 19th to finish construction:<br><br>The building permit expires on November 19, 2010. Ben will need to start the filing process for an extension 30 to 60 days in advance in order to avoid a Stop Work Order because it could take that long to obtain approval.<br><br>The steps are first to obtain approval from the BSA then file with the DOB.<br>Mr. Beckerman said that in today's environment the BSA is accommodating as they want to keep projects going and people employed.<br><br>He said that the statue requires "substantial construction" which is not defined. When I suggested that the GC expected the building superstructure to be complete by that date he said that should be satisfactory.<br><br>He also said that this form of application goes on the BSA amendment calendar which is a faster process.<br><br>I asked if a letter from the Bank stating how much has been spent, particularly in the last 3 months, and he thought that would have a lot of weight as the BSA is concerned about having projects completed." |

*Loan #18-010521-3/18-010588-2*

**BF000083**

|  |  |
|---|---|
|  | Jack |
| 8/10/10 | <u>From Management Asset Classification Committee Minutes:</u><br>Management met with the borrower/ guarantor on Wednesday July 14, 2010. A post dated check was presented to pay the may 1, June 1 and July 1, 2010 payments. We are awaiting the signed modification to process the payments and extend the maturity date of the loan to March 2011. Real estate taxes are delinquent from January 1, 2010 |
| 9/7/10 | Site visit was completed by Koch Engineering 8/2/10 and report completed today. Continuation report from Title Co. shows four open mechanic liens and unpaid RE taxes |
| 9/14/10 | <u>From Management Asset Classification Committee Minutes:</u><br>The payments on these loans are due for October 1, 2010. The agreement to restructure the loan carving out $960M from the loan to cover the lien was executed in August 2010. The interest payments have been received by the Bank and the loans were extended from August 1, 2010 to March 1, 2011. There are small mechanics liens and delinquent real state taxes on the property. The borrower/guarantor has requested an advance on the loan which will not be granted until both issues are resolved |
| 10/12/10 | <u>From Management Asset Classification Committee Minutes:</u><br>The payments are current on these loans. The delinquent real state taxes on the property have not been paid as promised. |
| 10/4/10<br>FL for JG | Ben left a message...taxes will be paid this week.<br>He is working with the BSA and strongly believes that he will get an extension. |
| 11/1/10<br>ML | Mr. Leno completed a site visit with C Koch and N Zagami. Highlights are 5th Floor already started |
| 11/19/10<br>LL | 2009 pars tax ret for B Zhavian requested with A Glass. |
| 11/24/10<br>JG | Email from Borrower & Contarctor to JG:<br>Subject: Concrete schedule<br>Nov 22 : 8th floor<br>Nov 24th: 9th floor<br>Nov 29: 10 floor<br>Dec 2: 11th floor<br>Dec 7th: 12th floor<br>Dec 10th: 13th floor<br>Dec15th: 14th floor<br>Dec 20th: 15th floor<br>Dec 22 : 16th floor<br>Bulk heads finished by Dec 31. Concrete schedule of completion |
| 12/14/10 | <u>From Management Asset Classification Committee Minutes:</u><br>The payments on these loans are current. The maturity date on both loans is March 1, 2011.All taxes are current, |
| 1/10/11<br>BG | To summarize our meeting with Ben Zhavian (owner/guarantor), Nick Sagami (sp?) (project manager for Zhavian), the three of us, Chris Koch (our engineer) and, for a brief time Chip Weiss (owner of Flintlock the GC). |

*Loan #18-010521-3/18-010588-2*

BF000084

|  |  |
|---|---|
|  | We were meeting because, while Chris Koch had OK'd an advance of about $2.2MM (requisition number 5), the GC gave us a conditional, partial lien release for about $1.9MM. We were meeting to understand what happened to the $300M difference.<br><br>Mr. Zhavian told us he held back $300M as a start towards reaching hold-backs of $960M to insure that Flintlock would perform on finishing the project and make up the $960M we are holding back because of a $960M mechanics lien filed by Cava Construction, the prior GC. When we pointed out that this was our money and was to be used only to pay contractors and sub-contractors, Mr. Zhavian said he would pay the $200M owed and when we said, no, it's $300M he told us he had paid $100M in cash to Flintlock but had no receipt and was holding on to the other $200M. We told him that, as far as we were concerned, the $100M payment never happened; later, when Mr. Weiss was there and he was asked about the $100M payment, he avoided talking about it. Mr. Zhavian was told that we wanted cancelled checks to Flintlock and from Flintlock to subs, each totaling $2.2MM and am unconditional lien release for $2.2MM before we would even consider requisition number 6 and, if not resolved by Friday, we will commence foreclosure. In the future, we will require cancelled checks to the GC and from the GC to subs and unconditional lien releases from GC and subs before advancing a single nickel. |
| 1/11/11 | From Management Asset Classification Committee Minutes:<br>The payments on these loans are current. The maturity date on both loans is March 1, 2011. All taxes are current. |
| 1/14/11<br>FL | Asked Andy Glass to help obtain an updated personal financial statement and 2009 tax return from Borrower. |
| 1/19/11<br>RTM | Ben is in Israel, the project has $40,507 in open taxes. The pending construction advance can not be done until the taxes are paid. |
| 1/20/11<br>FL | Sent follow-up email to Andy Glass office regarding personal financial statements. |

*Loan #18-010521-3/18-010588-2*

BF000085