# Exhibit 29

Dated: **April 13, 2005**

Mortgage No. **1414191146**

**ADJUSTABLE RATE MORTGAGE NOTE**
**(3+3+3+3+3+3+3+3+3+3 ARM/30 YR. AMORTIZATION)**

Flushing, New York

**$400,000.00**

FOR VALUE RECEIVED, **Marcia Campbell**, residing at **798 Chestnut Street, Bronx, New York 10467**, promises to pay to the order of **FLUSHING SAVINGS BANK, FSB** (the "Lender"), a corporation organized and existing under and by virtue of the laws of the United States, in immediately available funds and in lawful money of the United States, at **Flushing Savings Bank, FSB, P.O. Box 4512, Woburn, MA 01888-4512** or such other place as the holder hereof may from time to time designate in writing, the sum of **FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00)**, which as now exists or may hereafter be reduced is referred to below as the "Principal Sum" or the "Loan", together with interest thereon from the date hereof at the rates set forth herein and in accordance with the terms and conditions hereof.

(i) <u>Interest</u>

From the date hereof until **May 1, 2008** (the "First Adjustment Date"), the outstanding sum on this Note shall bear interest at an annual rate of interest equal at all times to **5.375%**.

On the First Adjustment Date until the third (3rd) anniversary date of the First Adjustment Date ("Second Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "First Adjusted Interest Rate") equal at all times to the greater of (i) **5.375%** or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the First Adjustment Date.

On the Second Adjustment Date until the sixth (6th) anniversary date of the First Adjustment Date (the "Third Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Second Adjusted Interest Rate") equal at all times to the greater of (i) the First Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Second Adjustment Date.

On the Third Adjustment Date until the ninth (9th) anniversary date of the First Adjustment Date (the "Fourth Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Third Adjusted Interest Rate") equal at all times to the

1

greater of (i) the Second Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Third Adjustment Date.

On the Fourth Adjustment Date until the twelfth (12th) anniversary date of the First Adjustment Date (the "Fifth Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Fourth Adjusted Interest Rate") equal at all times to the greater of (i) the Third Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Fourth Adjustment Date.

On the Fifth Adjustment Date until the fifteenth (15th) anniversary date of the First Adjustment Date (the "Sixth Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Fifth Adjusted Interest Rate") equal at all times to the greater of (i) the Fourth Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Fifth Adjustment Date.

On the Sixth Adjustment Date until the eighteenth (18th) anniversary date of the First Adjustment Date (the "Seventh Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Sixth Adjusted Interest Rate") equal at all times to the greater of (i) the Fifth Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Sixth Adjustment Date.

On the Seventh Adjustment Date until the twenty first (21st) anniversary date of the First Adjustment Date (the "Eighth Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Seventh Adjusted Interest Rate") equal at all times to the greater of (i) the Sixth Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Seventh Adjustment Date.

On the Eighth Adjustment Date until the twenty fourth (24th) anniversary date of the First Adjustment Date (the "Ninth Adjustment Date"), the interest rate shall be adjusted to an annual rate of interest (the "Eighth Adjusted Interest Rate") equal at all times to the greater of (i) the Seventh Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Eighth Adjustment Date.

2

On the Ninth Adjustment Date until **May 1, 2035** or the twenty seventh (27th) anniversary date of the First Adjustment Date (the "Maturity Date"), the interest rate shall be adjusted to an annual rate of interest (the "Ninth Adjusted Interest Rate") equal at all times to the greater of (i) the Eighth Adjusted Interest Rate or (ii) 225 basis points in excess of the Bank's cost of borrowing three (3) year money from the Federal Home Loan Bank of New York, as determined by the Bank, as of sixty (60) days prior to the Ninth Adjustment Date.

If the Federal Home Loan Bank of New York line of borrowing is not available the Bank will choose a similar index for the interest on this Note.

If the Note is signed on any day other than the first day of the month, a payment for interest for the period from the date hereof through and including the last day of the month shall be due and payable on the date hereof ("Short Term Interest"). Short Term Interest shall be calculated on a factor based on the actual number of days elapsed divided by 360. Thereafter, interest shall be payable on the first day of each month in arrears beginning **June 1, 2005** and shall be calculated on the outstanding principal balance from time to time and based upon a year of 360 days and a thirty (30) day month.

ii.   Principal Payments

The outstanding principal shall be payable in three hundred sixty (360) monthly payments of principal and interest beginning on **June 1, 2005** and continuing on the first day of each month thereafter. The first thirty-six (36) installments of principal and interest shall be equal to **$2,239.88** (which was calculated in accordance with a thirty (30) year amortization schedule). The thirty seventh (37th) through the seventy second (72nd) installment shall be recalculated on the First Adjustment Date based upon the First Adjusted Interest Rate and an amortization schedule of twenty seven (27) years. The seventy third (73rd) through the one hundred eighth (108th) installment shall be recalculated on the Second Adjustment Date based upon the Second Adjusted Interest Rate and an amortization schedule of twenty four (24) years. The one hundred ninth (109th) through the one hundred forty fourth (144th) installment shall be recalculated on the Third Adjustment Date based upon the Third Adjusted Interest Rate and an amortization schedule of twenty one (21) years. The one hundred forty fifth (145th) through the one hundred eightieth (180th) installment shall be recalculated on the Fourth Adjustment Date based upon the Fourth Adjusted Interest Rate and an amortization schedule of eighteen (18) years. The one hundred eighty first (181st) through the two hundred sixteenth (216th) installment shall be recalculated on the Fifth Adjustment Date based upon the Fifth Adjusted Interest Rate and an amortization schedule of fifteen (15) years. The two hundred seventeenth (217th) through the two hundred fifty second (252nd) installment shall be recalculated on the Sixth Adjustment Date based upon the Sixth Adjusted Interest Rate and an amortization schedule of twelve (12) years. The two hundred fifty third (253rd) through the two hundred eighty eighth (288th) installment shall

3

be recalculated on the Seventh Adjustment Date based upon the Seventh Adjusted Interest Rate and an amortization schedule of nine (9) years. The two hundred eighty ninth (289th) through the three hundred twenty fourth (324th) installment shall be recalculated on the Eighth Adjustment Date based upon the Eighth Adjusted Interest Rate and an amortization schedule of six (6) years. The three hundred twenty fifth (325th) through the three hundred fifty ninth (359th) installment shall be recalculated on the Ninth Adjustment Date based upon the Ninth Adjusted Interest Rate and an amortization schedule of three (3) years. The final installment shall equal all outstanding principal and all accrued and unpaid interest which shall be due and payable on the Maturity Date.

iii. Payments.

Notwithstanding anything to the contrary contained herein, any monthly payment of principal and interest that is received before its due date shall not be credited until its due date and any full or partial prepayment, if permitted, shall not be applied until the first day of the next month following the month of payment and Maker shall not receive interest on any funds while being held by Lender prior to crediting same nor shall Maker be entitled to any interest on the amount prepaid.

If any payment of principal or interest becomes due on a day on which banks in the City and State of New York are required or permitted by law to remain closed, such payment shall be made on the next succeeding Business Day. Any such extension of time shall be included in computing interest in connection with such payment.

iv.   Prepayments.

Maker shall have the right to prepay the Loan as follows:

(a) For the period beginning on the date of this Note until (and excluding) the first anniversary of the date of this Note, full or partial prepayment is permitted provided the Maker provides the Lender with 60 days prior written notice and pays to the Lender together with the prepayment a sum equal to five (5%) percent of the amount of such prepayment.

(b) For the period from and including the first anniversary of the date of this Note until (and excluding) the second anniversary of the date of this Note, full or partial prepayment is permitted provided the Maker provides the Lender with 60 days prior written notice and pays to the Lender together with the prepayment a sum equal to four (4%) percent of the amount of such prepayment.

(c) For the period from and including the second anniversary of the date of this Note until (and excluding) the third anniversary of the date of this Note, full or partial prepayment is permitted provided the Maker provides the Lender with 60 days prior

4

written notice and pays to the Lender together with the prepayment a sum equal to three (3%) percent of the amount of such prepayment.

(d) For the period from and including the third anniversary of the date of this Note until (and excluding) the fourth anniversary of the date of this Note, full or partial prepayment is permitted provided the Maker provides the Lender with 60 days prior written notice and pays to the Lender together with the prepayment a sum equal to two (2%) percent of the amount of such prepayment.

e) For the period from and including the fourth anniversary of the date of this Note until the Maturity Date, full or partial prepayment is permitted provided the Maker provides the Lender with 60 days prior written notice and pays to the Lender together with the prepayment a sum equal to one (1%) percent of the amount of such prepayment.

Any partial prepayments permitted hereunder shall be applied in the inverse order of maturity.

All sums payable pursuant to the provisions set forth herein shall also be due and payable by Maker upon demand in the event of any involuntary prepayments or any acceleration of the Loan. In addition, if the Maturity Date occurs as a result of a default by Maker under the Note or any of the Loan Documents and Maker tenders payment of the Loan or any part thereof to the Lender, such tender shall constitute an evasion of the prepayment provisions and shall be deemed to be a voluntary prepayment which shall require the payment by Maker of a penalty to be imposed by Lender.

### AND THE MAKER FURTHER HEREBY EXPRESSLY AGREES WITH THE LENDER AS FOLLOWS:

1. In the event that any payment shall become overdue for a period of <u>15</u> days, a late charge equal to eight (8.00%) percent or such lesser amount as may be permitted by law of the total monthly payment of principal, interest and escrow so overdue may be charged by the Lender for the purpose of defraying the expense incident to handling such delinquent payment.

2. Lender may charge and Maker agrees to pay reasonable fees and costs for the services of Lender and its agents in processing any ownership transfer on its records, fire loss payments, checks returned dishonored or unpaid, substitution of obligors, releases, modifications, extensions, consents, special agreements, assignments, reduction certificates and certificates of mortgage.

3. Any interest due under this Note which shall be outstanding more than <u>10</u> days beyond the due date thereof, or any unpaid charges due or any advances made by Lender out of its own funds for charges or taxes and any unpaid interest charges thereon from an earlier month shall bear interest at the interest rate provided in the

5

Note until paid or up to and including judgment of foreclosure. Nothing in this paragraph shall operate or be construed to prevent Lender from exercising its default rights under the Mortgage. This paragraph shall not be effective if the principal balance of this loan on the date of this Instrument is less than $250,000.00 or if the property securing this mortgage is a 1-2 family owner-occupied house.

4. This Note is secured by, inter alia, a mortgage made by the Maker to the Lender of even date herewith, on real property (the "Premises") known as **3939 White Plains Road, Bronx, New York 10467** located in **BRONX** County, State of NY, as more particularly described in said mortgage (the "Mortgage") and by an assignment by the Maker to the Lender of any and all leases affecting the Premises or any part thereof.

5. The whole of the Principal Sum or any part thereof, and of any other sums of money secured by the Mortgage shall, forthwith or thereafter, at the option of the Lender, become due and payable if default be made in any payment under this Note, or upon the happening of any default which, by the terms of the Mortgage or any other instrument, document or agreement now or hereafter given to secure this Note (the Mortgage and all such other instruments, documents and agreements, being collectively, the "Loan Documents"), including any grace period set forth therein, shall entitle the Lender to declare the same, or any part thereof, to be due and payable; and all of the covenants, agreements, terms and conditions of the Loan Documents are hereby incorporated in this Note with the same force and effect as if herein set forth at length.

6. If more than one person joins in the execution of this Note, the obligation shall be joint and several and the relative words herein shall be read as if written in the plural or if any be of the feminine sex, in the feminine gender, as the case may be.

7. Presentment for payment, notice of dishonor, protest, and notice of protest are hereby waived by the Maker and by each endorser and guarantor of this Note.

8. Any check, draft, money order or other instrument given in payment of all or any portion of this Note may be accepted by the Lender and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Lender, except to the extent actual cash proceeds of such instruments are unconditionally received by the Lender and applied to the indebtedness in the manner provided in this Note.

9. This Note may not be changed or modified orally, but only by an instrument in writing signed by the party against whom such change or modification is sought to be enforced.

10. After any stated or accelerated maturity hereof, the Loan shall bear interest, payable on demand, at the default rate (the "Default Rate") set forth in the mortgage of

6

even date herewith given by Maker to the Lender, but in no event more than the highest rate permitted by the applicable usury law in respect of the Maker, until the unpaid balance of principal and interest shall have been paid in full. Notwithstanding anything to the contrary contained herein, the Lender shall be entitled to interest at the Default Rate (i) in the event of a default by the Maker under the mortgage or this Note, from the time of said default to the sale of the premises following foreclosure, (ii) on any deficiency judgment (iii) and from the stated Maturity Date of this Note.

This paragraph does not create any right on Maker's part to pay interest at the rate designated by Lender for the period following stated or accelerated maturity instead of making payment in full.

The Lender or any subsequent holder of this Note shall also be entitled to receive interest at the highest rate allowed by law on any claim filed by it pursuant to the United States Bankruptcy Code, as amended, to recover all or part of the amounts that may be due under this Note.

In the event the Maker defaults as set forth herein, there will be a default reinstatement fee of one (1%) percent of the then principal loan balance outstanding.

11.   In the event that this Note is placed in the hands of an attorney for collection by reason of any default hereunder, or if a foreclosure action is commenced or if Lender is required to defend its rights hereunder or under the Mortgage or any documents executed in connection herewith, the Maker agrees to pay the Lender's reasonable attorneys, fees and expenses and all court costs of such actions and foreclosure actions.

12.   This Note is and shall be deemed to have been made and delivered in the State of New York and in all respects shall be governed and construed in accordance with the laws of that State.

13.   The Maker and any and all guarantors of this Note hereby irrevocably and unconditionally:
    (a) consent to the jurisdiction of the courts of the State of New York in any actions, suits, or proceedings arising out of or in connection with this Note (although this covenant shall not preclude an action on this Note by the Lender in any other appropriate jurisdiction);
    (b) waive any objection which the Maker may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with this Note or the Loan Documents brought in any of the aforesaid courts;
    (c) waive the right to plead or claim that any such action suit, or proceeding brought in any such court has been brought in an inconvenient forum; and
    (d) waive the requirements of personal service in connection with any actions, suits, or proceedings arising out of or in connection with this Note or any of the

7

Loan Documents, and consent that all service of process may be made by certified mail, return receipt requested, addressed to the Maker at the address of the Maker set forth below, or at such address, for the Maker, as the Maker shall give to the Lender by written notice sent by certified mail, return receipt requested. Service so being deemed completed two (2) days after the same has been posted as aforesaid; and

(e) waive the right, in litigation in which it and the Lender are adverse parties, to trial by jury and the right to assert any set-off or counterclaim of any nature or description.

14. The word "Maker" shall include the Maker's representatives, successors and assigns and the word "Lender" shall include the Lender's representatives, successors and assigns.

15. All notices or other communications required to be given pursuant to this Note shall be in writing and be deemed given, on the second business day of the Lender next following the deposit of such written notice or communication enclosed in a prepaid wrapper, certified mail, return receipt requested, in a post office or official depository under the care and custody of the United States Postal Service, properly addressed to the party to whom such notice or communication is addressed at the address set forth in the Mortgage of even date herewith given by Maker to the Lender or at such other address as either party may from time to time furnish to the other in the manner provided for notice hereof (for the purposes of such change of address notice, such notice shall be deemed completed only when actually received by the party to which it is addressed).

16. The provisions of this Note are severable. If any clause or provision shall be held invalid or unenforceable, in whole or in part, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, and shall not in any manner affect any other clause or provision in this Note.

17. No modification or waiver of or with respect to any provision of this Note, or consent by the Lender to any departure by the Maker from any of the terms or conditions hereof, shall, in any event, be effective unless it shall be in writing and executed by the Lender. Such waiver or consent shall, in any event, be effective only in the specific instance and for the purpose for which it was given. No notice to or demand on the Maker in any case shall, of itself, entitle the Maker to any other or further notice or demand in similar or other circumstances.

18. No failure or delay by the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any such right, power or privilege.

19. Each and every right granted to the Lender under this Note, and under all other agreements, documents or instruments executed by the Maker and delivered pursuant to or in connection with this Note which evidence or secure the indebtedness described herein or any other obligation of the Maker to the Lender arising as set forth

8

therein, shall be cumulative and may be exercised by the Lender from time to time.

20. This Note, the Loan Documents and all other agreements, documents and instruments executed by the Maker and delivered pursuant to or in connection with this Note which evidence or secure the indebtedness described herein or any other obligation of the Maker to the Lender arising as set forth therein, contain the entire agreement between the Maker and the Lender relating to the subject matter hereof and thereof. The Maker expressly acknowledges that the Lender has not made and the Maker is not relying on any oral representations, agreements or commitments of the Lender or any officer, employee, agent or representative thereof.

IN PRESENCE OF:

*/s/ Marcia Campbell*
**Marcia Campbell**

State of New York )
County of **Queens** ) ss.:

On the **13th** day of **April** in the year **2005** before me, the undersigned, personally appeared **Marcia Campbell**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

GAIL GROVE
Notary Public, State of New York
No. 01GR4714859
Qualified in Nassau County
Commission Exp. Jan. 31, 2007