| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>In re:<br><br>D.A.B. GROUP LLC,<br><br>                         Debtor.<br>------------------------------------------------------------X | Hearing Date and Time:<br>March 19, 2015 @ 11:00 a.m.<br><br>Chapter 11<br><br>Case No. 14-12057 (SCC) |

### DECLARATION IN SUPPORT OF CONFIRMATION AND IN OPPOSITION TO ORCHARD'S OBJECTION TO THE PLAN

Kevin J. Nash declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

**Preliminary Statement**

1. I am a member of the law firm of Goldberg Weprin Finkel Goldstein LLP, counsel for DAB Group LLC (the "Debtor"), and as such I am fully familiar with the facts and circumstances set forth below.

2. I submit this Declaration in support of confirmation of the Debtor's second amended Chapter 11 plan of reorganization (ECF #110) (the "Plan") and in opposition to the objection to confirmation lodged by Orchard Hotel LLC ("Orchard"). I have direct knowledge of all of the matters discussed below, having represented the Debtor in conjunction with negotiation and approval of the asset purchase agreement, having drafted the Plan, having overseen the balloting on the Plan, and having prepared the Debtor's objection to the claim of Orchard and related opposition to the motion for relief from the automatic stay filed by Orchard.

3. It is anticipated that the Plan will be implemented through the sale of the Debtor's real property at 139-141 Orchard Street, New York, NY (Block 415, Lots 66 and 67) (hereinafter, the "Property") to Arcade Orchard Street LLC ("Arcade"). Since sufficient funds will be received at closing to cover all disputed portions of Orchard's claim, the Plan can still be

confirmed even prior to the resolution of the Debtor's claim objection based upon the establishment of appropriate reserves.

4. The Plan was unanimously approved by all voting creditors, and no objections were filed by any other creditors except Orchard. Even at that, however, Orchard states that it "believes that the Plan is in the best interests of the estate and that confirmation of the Plan will increase recoveries to creditors."

5. While Orchard may be disappointed with some aspects of its treatment relating to non-default interest, it is not bad faith for the Plan to establish reserves for Orchard's disputed claim, after payment of all principal and documented advances at closing, totaling approximately $14.5 million.

6. It is noteworthy that in the break-out of the amount owed in its proof of claim, the relevant portion of which is attached hereto as Exhibit "A", Orchard never once differentiated between default interest and non-default interest. Instead, Orchard calculated its alleged pre-petition entitlement to interest at the 24% default rate. In turn, the Debtor objected to Orchard's entitlement to all interest in its entirety.

7. Pursuant to Sections 4.3,[1] 5.1.A,[2] and 6.5[3] of the Plan, claims in dispute are subject to express reserve provisions. As a consequence, Orchard cannot cherry pick aspects

---

[1] Section 4.3 . . . Orchard shall receive a cash dividend on the Closing Date equal to the allowed amount of the Orchard Mortgage Claim, following a determination of the Debtor's objection challenging Orchard's entitlement to default interest and legal fees (the "Claim Litigation"). In the event the Claim Litigation has not been finally determined on or prior to the Closing Date, pursuant to an order which becomes final and no longer appealable, then, in such event, the Debtor shall establish a reserve for all amounts then in dispute from the net proceeds of the Sale . . . . .

2

of the Plan which it likes or dislikes, to eliminate the reserve provisions, or prematurely force the payment of interest.

8. Indeed, even if the amount of interest can be recalculated, Orchard is not automatically entitled to payment of interest in light of the Debtor's equitable defenses. Thus, if the Debtor prevails on its objection, it will seek to cancel any opportunity for Orchard to profit from the loan, including collection of interest, because the Debtor lost the ability to refinance the debt after Brooklyn Federal Savings Bank ("BFSB") and Orchard reneged on the extension of maturity.

9. Given the objection, the Debtor thought it fair for the Plan to at least pay Orchard all principal and documented advances immediately, with the remaining portion of the claim held in reserve pending Bankruptcy Court determination of the objection. There is no compelling reason why Orchard should gain an unwarranted advantage by receiving interest at the non-default interest rate in the face of a bona fide dispute, particularly when no other creditor can be paid until Orchard's claim is fully resolved.

---

[2] 5.1. **A. Implementation.** The Plan shall be implemented by the sale of the Property and the establishment of the Confirmation Fund and related reserves on the Closing Date with the Disbursing Agent . . . .

[3] 6.5. **Disputed Claims Reserves.** From and after the Effective Date, and until such time as a Disputed Claim(s) has been compromised, settled or determined by Final Order, the Debtor shall establish and maintain a reserve account (the "Claims Reserve") necessary to ensure that each holder of a Disputed Claim shall receive, payment in full in accordance with the provisions of the Plan in the event such Claim is allowed in the maximum amount claimed. At such time as, and to the extent that, any Disputed Claim becomes Allowed by Final Order, in whole or in part, the Debtor shall utilize amounts held by the Debtor to make payment to the holder of such Claim as provided for herein. Following the payment, satisfaction or resolution of all Disputed Claims any amounts remaining in the Claim Reserve shall be transferred to the Disbursing Agent for distribution under the Plan to other creditors or equity interests.

3

## Background

10. This case was commenced by the filing of a voluntary Chapter 11 petition on July 14, 2014, in the midst of a highly contested foreclosure litigation between the Debtor and Orchard Hotel LLC ("Orchard"), as successor to BFSB.

11. The Debtor has been able to use its time in Chapter 11 constructively to market and sell the Property to Arcade for the sum of $33 million. The sale was previously approved by Order dated February 19, 2015 (ECF #103). The sale is scheduled to close shortly after confirmation, with the sale proceeds to be used to fund the Plan. Arcade has previously filed affidavits of William Obeid (ECF #97) and Ivaylo Ninov (ECF #98), confirming their financial wherewithal to fund the purchase of the Property.

12. Orchard has filed a secured claim in the amount of $28,754,942, including principal in the amount of $13,460,973, alleged default interest in the amount of $12,068,548, legal fees of $2,313,610 in attorneys' fees, together with Receiver expenses and alleged protective advances totaling some $911,811.

13. The Debtor has filed a formal objection to Orchard's claim, which is pending and renders the claim in dispute.

## Treatment of Claims under the Plan

14. The Administrative expenses are unclassified and include the Receiver and his counsel, any post-petition services provided in connection with maintaining the Property, plus professional fees of the Debtor's counsel. Although applications have not yet been filed, it is anticipated that the administrative claims will total approximately $350,000 – $400,000.

15. Turning to the classified claims, the Plan provides that the Debtor will pay all outstanding real estate taxes at closing, projected to total approximately $680,000 (Class 1).

As noted above, Plan also provides for payment to Orchard (Class 2) of its principal balance, plus documented and allowed protective advances, at closing aggregating approximately $14,500,000.

16. Various mechanic lien claims (Class 3) have been filed in the total amount of $5,089,442.74. These claims remain subject to objection and reconciliation. If Orchard's claim is allowed in an amount which leaves insufficient funds to pay the allowed Class 3 mechanic lien claims in full, these claims will be paid on a *pro rata* basis, subject to the dispute between Cava and Flintlock over priority as between the mechanic lienholders.

17. Class 4 general unsecured claims, aggregating $1,619,158.98, remain subject to objection and reconciliation. The final dividend to Class 4 unsecured claims cannot be determined until the Orchard claim is resolved.

18. A certification of balloting (ECF #124) has been filed with the Court. Class 1 (real estate taxes) and Class 2 (Orchard) are unimpaired. Class 3 (Mechanic's liens) and Class 4 (general unsecured) are impaired, and have each voted unanimously to accept the Plan.

### Sources and Uses of Cash

19. To recap, and subject to final reconciliation and possible objections, the Debtor projects that the gross sale proceeds of $33 million will be sufficient to fully fund an appropriate reserve for the disputed portions of Orchard's claim based upon the following analysis:

| | |
|---|---:|
| Gross Sale Proceeds | $33,000,000.00 |
| Less Brokerage (1.5%) and Closing Costs | $515,000.00 |
| Net Sale proceeds | $32,485,000.00 |
| | |
| Class 1 - City Real Estate Tax Claims | $680,000.00 |
| Class 2 – Orchard's Undisputed Mortgage Claim Principal ($13,460,973) + Advances (est.) $1,000,000 | $14,500,000.00 |
| Class 2 - Orchard Mortgage Claim Reserve for Disputed Pre-petition Interest ($12,068,548) + Pendency Interest ($700,000) + Legal fees ($2,313,610) | $15,082,158.00 |
| Quarterly Fees to U.S. Trustee | $40,000.00 |
| Subtotal | $30,302,158.00 |
| Balance remaining | $2,182,842.00 |

| | |
|---|---:|
| Administrative Claims (Receiver, Receiver's counsel, Debtor's counsel) | $400,000.00 |
| | |
| Class 3 - Mechanic's Liens (as filed) | $5,089,442.74 |
| Class 4 - General Unsecured (as filed) | $1,619,158.98 |

**Orchard's Objection to Confirmation**

20.     Orchard has filed an objection to confirmation (ECF #115) wrongly alleging that the Plan has been filed in bad faith, because the Plan does not provide for immediate payment of interest at the non-default rate of 7.75%.

21.     The objection is completely unfounded. The Debtor will be paying Orchard over $14.5 million at confirmation, hardly an indicia of bad faith. Moreover, Orchard has no absolute entitlement to interest in view of the pending claims objection and the Debtor's equitable defenses, especially since Orchard's proof of claim is based entirely on a 24% default rate of interest, and contains no differentiation for a lesser sum calculated at the non-default rate.

6

22. Further, in view of the multiple instances of alleged misconduct by Orchard and BFSB, as described in detail in the Debtor's claim objection, there may well be grounds for equitable subordination of Orchard's interest claim. At this juncture, it is simply premature to make any definitive ruling and the *status quo* should be maintained by establishing a reserve to cover all disputed amounts in accordance with multiple provisions of the Plan.

23. There is no case law remotely suggesting that establishing reserves for disputed claims is bad faith. Orchard relies on two cases that are completely inapposite. In In re Surfango, 2009 WL 5184221 (Bankr. D.N.J. December 18, 2009), the Court found bad faith sufficient to deny confirmation where there were virtually no real creditors, and the plan was designed to extinguish interests of certain shareholders for the benefit of the plan proponent, without even a new value contribution by the proponent. In In re SGL Carbon Corporation, 200 F.3d 154 (3d Cir. 1999), the Court found bad faith where various litigation claims were to be treated differently from other unsecured creditors, and the debtor had sufficient assets to require payment in full of the litigation claims.

24. These cases are easily distinguishable from the Debtor's Chapter 11 filing. The Debtor has successfully used bankruptcy to sell the Property at fair market value despite (i) multiple notices of pendency; (ii) an overreaching and overbearing lender; and (iii) an expiring application before the Board of Standards and Appeal to complete construction by August, 2015.

25. Indeed, without the Chapter 11, the Property likely would have fallen into the abyss resulting in a forfeiture of substantial value. The Plan attempts to fairly balance the rights of all stakeholders in a reasonable fashion, and Orchard is hard pressed to demonstrate how or why the establishment of a reserve is not a proper interim measure to deal with the pending objection. Certainly, Orchard cannot point to any actual prejudice.

## Compliance with the Provisions of Section 1129

26. First, the provisions of the Plan are consistent with the Bankruptcy Code which allow for a sale of the Property.

27. Second, the Debtor has complied with the applicable provisions of the Bankruptcy Code throughout its tenure as a debtor-in-possession.

28. Third, contrary to Orchard's objection to confirmation, the Plan has been proposed in good faith, and not by any means forbidden by law as required by Section 1129(a)(3).

29. Fourth, the fees of all professionals for services and expenses incurred in connection with the case remain subject to approval of this Court as being reasonable, as required by Section 1129(a)(4).

30. Fifth, the requirements of Section 1129(a)(5) are not applicable because the Property is being sold and there will be no future management after the bankruptcy case is concluded and distributions are made.

31. Sixth, as no government regulatory commission has jurisdiction over any rates involving the Debtor, the requirements of Section 1129(a)(6) are not applicable.

32. Seventh, each class of impaired voting creditors has unanimously accepted the Plan as confirmed by the Certification of Ballots previously filed with the Court (ECF #124).

33. Eighth, each class is either unimpaired (Classes 1 and 2), or has accepted the Plan (Classes 3 and 4), as required by Section 1129(a)(8).

34. Ninth, the Plan complies with the specific requirements of Section 1129(a)(9) with respect to the treatment of administrative expenses.

35. Tenth, as Classes 3 and 4 both unanimously voted to accept the Plan, the requirement of Section 1129(a)(10) has been met in that at least one class of impaired creditors voted to accept the Plan.

36. Eleventh, the Plan is feasible, and confirmation of the Plan is not likely to be followed by the need for further financial reorganization based upon the commitments of Arcade to close.

37. Twelfth, upon information and belief, all fees due under 28 U.S.C. § 1930 have been paid through the fourth quarter of 2014, and additional fees will be paid based upon subsequent distributions under and in furtherance of the Plan, as required by Section 1129(a)(12).

38. The balance of the requirements under 11 U.S.C. § 1129(a)(13), (14), (15) and (16) do not apply to the Plan.

## Conclusion

39. For all of these reasons, I submit that the Plan should be confirmed and the objection of Orchard should be overruled.

Dated: New York, NY
March 18, 2015

/s/ Kevin J. Nash

# EXHIBIT A

B 10 (Modified Form 10) (4/13)

| UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor: D.A.B. Group LLC | Case Number: 14-12057 (SCC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense arising after the commencement of the case may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Orchard Hotel, LLC

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Orchard Hotel, LLC, c/o WCP Orchard Hotel, LLC
40 Danbury Rd. Attn: Jordan Socaransky
Wilton, CT 06897

Morrison Cohen LLP
909 Third Ave., Attn: Joseph T. Moldovan
New York, NY 10022-4784

Court Claim Number:_____
(if known)

Telephone No. (212) 753-8600         email: bankruptcy@morrisoncohen.com

Filed on:_____

Name and address where payment should be sent (if different from above):
Orchard Hotel, LLC, c/o WCP Orchard Hotel, LLC
40 Danbury Rd.
Wilton, CT 06897

Telephone No. (646) 450-0065         email: jsocaransky@wesportcp.com

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $ 28,754,942 See attached Rider.

If all or part of your claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges

2. Basis for Claim: Money lent plus expenses and protective advances. See attached Rider.
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: _____

   3a. Debtor may have scheduled account as: _____   3b. Uniform Claim Identifier (Optional): _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4.)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information..

Nature of property or right of setoff:   ☑ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: Mortgages on Debtor's property
                         Approximately
Value of Property: $ 33,000,000 with amount to be adduced at auction. Annual Interest Rate: 24%  ☑ Fixed or ☐ Variable

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $ 28,754,942            Basis for Perfection: Filed mortgages, related documents.

Amount of Secured Claim: $28,754,942        Amount Unsecured: $ 0

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENT MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commission (up to $12,475*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:
$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

FOR COURT USE ONLY

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| | [signatures] 12/10/14  12/10/14 |
| | Jordan Socaransky, Vice President (Date)    Bruce Nuzie, Vice President and Treasurer (Date) |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

D.  **AMOUNTS OWED AS OF THE PETITION DATE**

As of the Petition Date, Debtor owes to Orchard the following amounts on account of the Notes:

| Item | Principal | Interest | Total |
| --- | --- | --- | --- |
| Project Loan | 5,500,000 | 4,513,667 | 10,013,667 |
| Building Loan | 7,960,973 | 6,533,305 | 14,494,278 |
| Protective advances | 800,406 | 363,061 | 1,163,467 |
| Receiver expenses | 111,405 | 56,274 | 167,679 |
| Legal expenses | 2,313,610 | 602,241 | 2,915,851 |
| **Total due** | **16,686,394** | **12,068,548** | **28,754,942** |

Orchard reserves the right to supplement this proof of claim to include additional amounts that may have been incurred prior to the Petition Date or in the event that Orchard is oversecured by virtue of the value of its collateral, interest and other charges incurring post-petition.

3.  <u>Collateral</u>. The indebtedness of the Debtor to Orchard is secured by the Mortgages.

4.  <u>Supporting Documents</u>. The writings on which this claim is founded include, among other things, the following documents:

- the Project Loan Note and the Project Loan Mortgage;

- the Building Loan Note and the Building Loan Mortgage;

- all other documents, including letters, invoices, and statements, upon which the

Mortgagee's claim is based;

- Certain of the documents are annexed hereto, with the balance of correspondence and invoices being too voluminous to be attached. Those documents are available for inspection upon request.

#5454710 v7 \022022 \0004