**MORRISON COHEN LLP**
909 Third Avenue, 27th Floor
New York, New York 10029
(212) 735-8000
Y. David Scharf
Joseph T. Moldovan
Danielle Lesser
Robert K. Dakis
Brett Dockwell

*Counsel to Orchard Hotel, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| D.A.B. GROUP LLC, | Case No. 14-12057 (SCC) |
| Debtor | |

**REPLY OF ORCHARD HOTEL, LLC IN SUPPORT OF MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY TO PERMIT STATE COURT APPELLATE PROCEEDINGS TO PROCEED**

Orchard Hotel, LLC ("Orchard"), by and through its undersigned counsel, hereby submits this reply in support of its motion dated February 10, 2015 ("Motion"), seeking relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code for the limited purpose of permitting the Appellate Division, First Department, of the New York State Supreme Court ("Appellate Division") to decide an appeal ("Appeal"), and respectfully states:

## PRELIMINARY STATEMENT

1. More than four years ago the Debtor defaulted on its obligation to repay the Notes.[1] Orchard, as the assignee of BFSB, commenced a foreclosure action. What followed was a paradigmatic example of how a borrower can abuse the state court system to hinder and delay a creditor's attempts to realize upon its collateral.

2. The four-year litigation odyssey began with a decision and order by Justice Bernard Fried, a Justice in the Commercial Division of the New York State Supreme Court, dismissing all three of the Debtor's counterclaims. That decision was affirmed by the Appellate Division, teeing up Orchard's motion for summary judgment and an order of foreclosure. Then, as a matter of almost divine providence for the Debtor, Justice Fried retired. The new trial court judge, Justice Charles Ramos, permitted the Debtor to take new discovery over the course of nine months, and then vacated Justice Fried's affirmed order which had dismissed the Debtor's counterclaims. Justice Ramos also, *sua sponte*, granted the Debtor leave to file new counterclaims. Orchard immediately appealed, and the Appellate Division reversed Justice Ramos, reinstating Justice Fried's order and reiterating that the Debtor's allegations have no

---

[1] Capitalized terms not otherwise defined herein have the same meaning as ascribed to them in the Motion.

#5618996 v14 \022022 \0004

1

merit as a matter of law. The Appellate Division's ruling was not appealed and is now law of this case.

3.  However, on remand, Justice Ramos inexplicably stuck to his prior finding and denied summary judgment to Orchard on its foreclosure causes of action. That order, which is directly contrary to *three* prior orders entered in the same case, two by the Appellate Division, was appealed by Orchard. The Debtor, realizing that its luck would run out in the Appellate Division, filed this case.

4.  Now, in perhaps the perfect case of the pot calling the kettle "black," the Debtor claims that Orchard is seeking to forum shop in order to avoid litigating before this Court.[2] Since the filing of this case, Orchard has patiently waited to answer the Debtor's meritless attack on Orchard's contractual right to default interest and attorneys' fees, an attack that was launched in the Debtor's first-day papers. Rather than seeking early declaratory relief on this issue, Orchard worked to ensure that there would be an estate for the benefit of all creditors. Orchard pushed the Debtor, kicking and screaming, to promptly commence the 363 process that resulted in a sale order. Orchard then worked with the Debtor to confirm a reasonable plan of reorganization and to close the sale of the Mortgaged Property. Once, but for the closing, the sales process was over, Orchard focused on defending its proof of claim, which is presently the subject of the Debtor's loosely formulated objection [Dkt. No. 86] and its supplemental objection titled Declaration in Support of Confirmation And In Opposition To Orchard's Objection To The Plan [Dkt. No. 125] ("Claim Objection" or "Obj.").

---

[2] The Debtor also argues that Orchard's Motion was an attempt to hinder and delay the Debtor's plan confirmation process. This argument was obviously without merit as on April 16, 2015, this Court entered an order confirming the Debtor's amended plan of reorganization [Dkt. No. 132], thus rendering this argument moot. Accordingly, Orchard will not address this point.

#5618996 v14 \022022 \0004

2

5.     There is no credible argument that Orchard is attempting to forum shop by seeking limited relief from the automatic stay. The Debtor's entire claims litigation strategy was to ride into this Court ahead of the Appellate Division's likely reversal of Justice Ramos' erroneous March 21 ruling to re-litigate baseless allegations that were conclusively rejected by the State Court.[3] To accomplish this feat, the Debtor refrained from disclosing in its Claim Objection that the March 21 Ramos Ruling, which is central to the Debtor's objection, is directly contrary to three earlier orders entered in the same case. If the Appellate Division were to re-affirm its two prior rulings in the case, then the Claim Objection could be dismissed, and this entire discussion would be academic.

6.     The Debtor's desperate attempt to avoid the Appellate Division cannot succeed. While no party questions this Court's competence to hear and determine claim disputes, there is a fundamental question regarding whether this Court has jurisdiction over one of the central issues raised by the Claim Objection, which is the precedential value, if any, of the March 21 Ramos Ruling. As Orchard argues in its response to the Debtor's Claim Objection, this Court should disregard the erroneous state court opinion and, consistent with principles of collateral estoppel and basic judicial administration that prevent a trial court from overruling an appellate court, disregard the erroneous opinion and give effect only to the binding and non-appealable orders of the State Court – all of which dismiss the Debtor's allegations. However, there is a question as to whether this Court has jurisdiction to freely disregard the March 21 Ramos Ruling. Given the likelihood of significant litigation, the worst result for all parties involved is the entry

---

[3] The erroneous branch of the March 21, 2014 Trial Court decision is referred to in this brief as the "March 21 Ramos Ruling" and is independent of the other branches of the March 21 decision, none of which is at issue. Orchard's appeal of the March 21 decision relates solely to the March 21 Ramos Ruling. The Debtor has not appealed any part of the March 21 decision. Flintlock Construction and Development LLC, a mechanic's lienor, has filed a notice of appeal of unspecified portions of the March 21 decision but has not perfected its appeal.

of an order that is potentially subject to appeal – by any party in interest in this case – for lack of jurisdiction. As such, the prudent approach here is to grant relief from the stay and let the Appellate Division determine the effect of the March 21 Ramos Ruling.

## BACKGROUND

7.      The Debtor's allegations that BFSB "approved" Flintlock's construction timetable and thereby extended the March 1, 2011 maturity date (Debtor's Opposition to Motion of Orchard Hotel, LLC for Relief from the Automatic Stay [Dkt. No. 116] ("Opp.") ¶¶ 2-3) are substantively baseless, as explained in detail in Orchard's Response to the Debtor's Objection to Orchard's Secured Claim, dated March 13, 2015 [Dkt. No. 117] (the "Response" or "Resp."), which is incorporated herein by reference.[4] Orchard's Response establishes that the Debtor's allegations are not only factually unsupportable, but conclusively disproved by documentary evidence and deposition testimony.[5] (*See* Resp. ¶¶ 74-105).

---

[4] In addition to repeating baseless factual allegations, the Debtor repeats the spurious accusation that Orchard "withheld production of the BFSB Action Plan in discovery." (Opp. ¶ 28). As the Debtor's counsel surely knows, the Appellate Division rejected this false accusation in its February 18, 2014 decision and order, a copy of which the Debtor attached to its Claim Objection. (Obj., Ex. T). The Appellate Division held: "The Action Plan was available at the time of the original motion – indeed, numerous witnesses alluded to it during their depositions. . . . . As the record demonstrates, had DAB exercised due diligence during discovery, it could have obtained the Action Plan through discovery well over a year earlier than it did." (*Id.* at 27-28).

[5] The Debtor's opposition to the instant Motion makes two new allegations: that BFSB agreed to a "new completion date of November 26, 2011" and that "Orchard retroactively declared the loans due as of March 1, 2011." (Opp. ¶¶ 3, 24, 26). The first allegation is manufactured from whole cloth – there is no evidence that BFSB ever discussed a "new completion date of November 26, 2011" with the Debtor or anyone else. In fact, prior to the Debtor's opposition here, the Debtor had never before even mentioned a specific completion date, relying instead on vague time periods such as "430 days" from "about August 26, 2010" (which is, incidentally, "about" October 30, 2011, not November 26, 2011) or "more than nine months after March 1, 2011" (which, again, is not November 26, 2011 but rather sometime in December 2011) or in "late November 2011" or "mid-November 2011." (Obj. ¶¶ 12, 13; Declaration of Brett Dockwell [Dkt. No. 120] ("Dockwell Decl."), Ex. 10 ¶ 23). The Debtor's second allegation – that Orchard declared the maturity date of the Loans – is demonstrably false. The Debtor admits that it was informed by a letter from BFSB dated March 23, 2011 that the

8.    The Debtor's description of the State Court litigation in the Opposition is similarly erroneous and based entirely on faulty conjecture about State Court procedure. The Debtor asserts that the Appeal "was quite possibly decided when the Appellate Division denied Orchard's petition for immediate review filed last fall" and that "the denial of the Petition is arguably tantamount to dismissal of the Appeal." (Opp. ¶¶ 11, 42). These assertions are wrong and manifest a basic misunderstanding of the nature and purpose of a writ from an appellate court.

9.    Writs of mandamus and prohibition are extraordinary remedies and will not be granted by an appellate court if the petitioner can obtain adequate relief through "ordinary channels of appeal or review." *See Matter of Neal v. White*, 46 A.D.3d 156, 159 (1st Dep't 2007). In Orchard's case, the writs were sought because the Appellate Division does not hear appeals during the summer months, making ordinary appellate review of the March 21 Ramos Ruling unavailable until September 2014.[6] This delay posed a substantial risk to Orchard and all other creditors because of the time-limited nature of the Mortgaged Property's zoning entitlements. (*See* Resp. ¶¶ 181, 191). As Orchard explained to the Appellate Division in its petition, filed on June 23, 2014: "In ordinary circumstances, Petitioner would appeal the IAS Court's latest erroneous decision and perfect its appeal for the September Term, bringing this action back to this Court for a third time on the very same issue. However, because of the dire and immediate risk to the Mortgaged Property if this protracted action is allowed to continue on

---

Loans matured on March 1, 2011 and would not be extended. (Obj. ¶ 59). Orchard did not acquire the Loans until June 17, 2011, months after the March 2, 2011 notice. (*Id.* ¶ 63).

[6]    In addition to the writs, Orchard sought an immediate order from the Appellate Division authorizing the Receiver to protect the Mortgaged Property's zoning entitlements and building permits. However, Orchard's request for that relief was rendered moot three days after the petition was filed when, on June 26, 2014, the Trial Court authorized the Receiver, *inter alia*, "to take all necessary, reasonable and appropriate action to protect the Mortgaged Property's zoning entitlements and building permits." (Dockwell Decl., Ex. 51).

its present aimless path, Petitioner has no choice but to seek emergency relief from this Court." (Dockwell Decl., Ex. 38 ¶ 2). In other words, the petition was the only procedural vehicle available to obtain appellate review of the March 21 Ramos Ruling while the Appellate Division was on summer leave.

10. Given that writs are extraordinary remedies, Orchard also perfected a conventional appeal of the March 21 Ramos Ruling, seeking the same relief as sought through the writs.[7] Orchard perfected its appeal on July 7, 2014, and the Appeal was automatically calendared for the Appellate Division's September 2014 Term, which opened on September 2, 2014.[8]

11. On July 11, 2014, the parties filed a stipulation with the Appellate Division, seeking a one-week extension of the return date of Orchard's petition, from July 14, 2014 to July 21, 2014. (Dockwell Reply Decl., Ex. 2). However, instead of re-calendaring the petition for July 21, 2014, the Appellate Division Clerk's Office calendared the return date as September 3, 2014. (Dockwell Reply Decl. ¶ 4). The parties were not informed why the return date was calendared as September 3, 2014, and Orchard's counsel did not have the opportunity to discuss the matter with the Clerk's Office because the next business day, July 14, 2011, the Debtor filed its chapter 11 petition, halting further proceedings in the Appellate Division. (*Id.* ¶ 5). On July 15, 2014, the Debtor filed a Notice of Bankruptcy in the Appellate Division, notifying the court of the

---

[7] Orchard informed the Appellate Division in its petition that it intended to perfect an appeal of the March 21 Ramos Ruling for the September 2014 Term "to protect its rights should this Court deny the requested relief" in the petition. (Dockwell Decl., Ex. 38 at n.8).

[8] The Debtor asserts that "[w]hile Orchard claims it perfected the appeal, the matter was not set for any specific term in the Appellate Division." (Opp. ¶ 33). This assertion is incorrect. The appeal was calendared for the September 2014 Term. (Reply Declaration of Brett Dockwell, April 29, 2015 ("Dockwell Reply Decl."), Ex. 1 at 3). Appeals in the Appellate Division, First Department, are calendared for the next available term, based on the date on which they are perfected.

#5618996 v14 \022022 \0004

6

application of section 362(a) to stay further proceedings against the Debtor or affecting possession of the Debtor's property. (*Id.*, Ex. 3). As a result, briefing on Orchard's petition was never completed. (*Id.* ¶ 7).

12. The practical result of the Clerk's re-calendaring of Orchard's petition to September 3, 2014 was to render it moot because the new return date was one day after the opening date of the September 2014 Term. Orchard's petition and Appeal were thus on exactly the same schedule, thereby obviating the need for the petition, because its sole purpose was to obtain appellate review of the March 21 Ramos Ruling while the Appellate Division was on summer recess. The Appellate Division's denial of the petition on September 23, 2014 was merely a formality in light of the Clerk's re-calendaring of the petition for September 3, 2014, because the writs could not have been granted in September, when "ordinary channels of appeal" were again available.

13. The Debtor is also wrong in attempting to distinguish the March 21 Ramos Ruling from the three prior State Court orders holding that the Debtor's allegations of a maturity date extension were not actionable. The Debtor claims that Justice Ramos "found a critical legal distinction between instances of waiver and estoppel, which do not require a signed writing, as compared to affirmative damage claims to enforce [an] oral modification of the Loans." (Opp. ¶¶ 30-31). However, the Debtor's argument fails in several respects. First, the March 21 Ramos Ruling was not based on the theory of waiver. (Obj., Ex. B at 7-11). The ruling does not even mention the word "waiver" or any variant thereof. (*Id.*). Waiver, which requires a "specific, identifiable promise" and can be rescinded, is distinct from estoppel, which requires the affirmative statement or conduct of one party, upon which another party reasonably and detrimentally relies. *Massachusetts Mut. Life Ins. Co. v. Gramercy Twins Assocs.*, 199 A.D.2d

214, 217 (1st Dep't 1993); *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982). The March 21 Ramos Ruling was based on estoppel, and only on estoppel. The Debtor attempts to tease out a waiver argument from the March 21 Ramos Ruling based on Justice Ramos' citation of inapposite authority in support of his holding.[9] While Justice Ramos' reliance on inapposite authority involving oral waivers demonstrates the infirmity of the court's reasoning, it does not change the plain language of the court's holding.

14. Second, the Appellate Division considered and rejected defenses of *both* waiver and estoppel in its February 18, 2014 order, which held that the Debtor cannot plead a viable defense or counterclaim. (Dockwell Decl., Ex. 8 at 28-29). In reaching its conclusion, the Appellate Division considered and rejected the Debtor's amended answer and counterclaims, which included the defenses of waiver and estoppel. (*Id.*, Ex. 12 ¶¶ 54-61). Thus, the March 21 Ramos Ruling was not premised on a theory that had eluded the Appellate Division; it was premised on theories which had already been rejected by the Appellate Division.

15. Third, the Debtor misapprehends the significance of the three prior State Court orders holding that the Debtor could not reasonably rely on any purported oral modification of the Loans. The significance of these holdings was not, as the Debtor suggests (Opp. ¶ 31), that they barred a breach of contract action. It has been undisputed from the start of this case that there was never an enforceable agreement to extend the Loans' maturity date. (Indeed, if there were such an agreement, the Debtor would not need to argue estoppel.) Instead, the significance of those holdings is that they barred *any* claim or defense in which reasonable reliance is an element, including fraud and estoppel. The three prior State Court orders are squarely at issue here because they foreclose the Debtor's Claim Objection. The Debtor's attempt to evade these

---

[9] The inapposite legal authority cited in the March 21 Ramos Ruling is discussed in detail in the Response at ¶¶ 119-121.

orders by focusing on the March 21 Ramos Ruling creates a seeming conflict between State Court decisions, which is best resolved by the Appellate Division through Orchard's Appeal.

## DISCUSSION

16. The Debtor's objection to the limited stay relief sought in the Motion boils down to three arguments: (i) stay relief should not be granted as it is forum shopping, (ii) Orchard's request for stay relief works harm on the creditors of this estate, and (iii) stay relief is futile as the Appeal is moot. None of these arguments has merit.

### A. Stay Relief Resolves Serious Questions Regarding This Court's Ability To Grant Complete Relief On The Claim Objection

17. It is black letter bankruptcy law that a debtor enters bankruptcy with the exact same property rights – including claims and defenses – that it had immediately prior to the filing of its bankruptcy petition. *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding a bankruptcy trustee may "take no greater rights [in property] than the debtor himself had") (internal quotation marks omitted); *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Lee v. Anasti (In re Lee)*, 461 Fed. Appx. 227, 233 (4th Cir. 2012) (the bankruptcy estate's rights in property are limited to what the debtor owned as of the petition date). Stated differently, if a court previously determined that a Debtor's claim against a third party was without merit, that claim is not resurrected simply because the Debtor filed for bankruptcy protection. *See, e.g., In re 231 Fourth Avenue Lyceum, LLC*, 506 BR 196, 207 (Bankr. E.D.N.Y 2014) (holding that bankruptcy court could not reconsider defenses to foreclosure action that either were raised or could have been raised in state court proceeding); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d

Cir. 1987) (holding federal courts are bound by state court judgments when federal courts within the state where the judgment was entered would also be bound).

18.  Regardless of how deep the Debtor buries its head in the sand, the Debtor's equitable defenses were dismissed for lack of merit well before the Petition Date. The Debtor commenced this case to effect a "do-over" of nearly four years of litigation before the New York Supreme Court and the Appellate Division. Early in the State Court litigation, Justice Fried dismissed the Debtor's defenses in their entirety. The Debtor appealed, and the Appellate Division affirmed Justice Fried's opinion. The Debtor did not appeal the determination of the Appellate Division; that ruling is now no longer subject to appeal and is binding on the Debtor.

19.  The Appellate Division's ruling should have ended the litigation. However, Justice Fried retired, and Justice Ramos replaced him in the case. What occurred next can only be described as a Homerian Odyssey whereby Justice Ramos tried to vacate Justice Fried's decision, was reversed on appeal, and then entered the March 21 Ramos Ruling – simply ignoring both prior decisions of the Appellate Division. Orchard appealed again, and faced with the likelihood of another adverse ruling from the Appellate Division, the Debtor filed for chapter 11 protection.

20.  The Debtor now argues that the Motion is an attempt to avoid having this Court hear the Debtor's Objection to Orchard's claim. This is simply not true. Orchard is confident that this Court, much like the New York Supreme Court and the Appellate Division, would rule in favor of Orchard on the merits. However, there is a larger issue. While the Debtor's Objection to Orchard's Claim and its response to the Motion make much of the March 21 Ramos Ruling, that ruling is directly contradictory to three prior decisions entered in the State Court Litigation.

Stated succinctly, this Court cannot rule for the Debtor on its Objection without implicitly reversing three non-appealable decisions of the state court.

21. Though the Debtor seeks to downplay this issue, it is unclear whether this Court has jurisdiction to resolve an inconsistency between three orders of a state court entered in the same case. *See, e.g., In re 231 Fourth Ave. Lyceum, LLC*, 506 B.R. at 205-206 (holding *Rooker-Feldman* doctrine prevented bankruptcy court from reconsidering issues that were determined by state court in a foreclosure action). As such, there is a likelihood that this Court could waste significant resources conducting a trial on the merits of the Debtor's defense only to have a later appellate court determine that this Court lacked jurisdiction to consider the Debtor's silent appeal of the State Court's order.

22. As illustrated by the history of the foreclosure action, the Debtor has no qualms about creating significant and unnecessary litigation. Orchard, however, would prefer to avoid jurisdictional questions and ensure that the Court's resources, and its own, are not wasted on litigation that is ultimately unnecessary. There is an easy solution to this difficult jurisdictional problem. The Appellate Division has jurisdiction to determine what effect, if any, must be given to the March 21 Ramos Ruling. If the Appellate Division rules that the March 21 Ramos Ruling is improper, then the Debtor's equitable defenses are dismissed by virtue of the three prior orders of the State Court, and this litigation is over. If the Debtor is correct that as of the filing of this case there are factual issues to be resolved, the parties can then come back to this Court to litigate whatever remains.

23. Bankruptcy Courts often grant stay relief to permit "litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial." Lawrence P. King, COLLIER ON BANKRUPTCY (15th ed. 2006) at 362.07[3][a]. *Junk*

*v. CitiMortgage, Inc. (In re Junk)*, 512 B.R. 584, 608 (Bankr. S.D. OH 2014) is particularly instructive. In *Junk*, the borrowers failed to make regular payments on a loan secured by their residence, and filed an action in state court seeking to annul the mortgage. The senior lender opposed the state court action and counterclaimed seeking to foreclose. Over the next two years, the borrowers engaged in significant litigation regarding the mortgage. Ultimately, the state court dismissed the borrowers' claims and was preparing to rule on the foreclosure complaint. The borrowers appealed the adverse rulings, but before the appeals court could render a decision, and before an order was entered on the foreclosure aspects of the litigation, the borrowers filed bankruptcy. The borrowers then filed an adversary proceeding making the very same allegations that the state court had previously heard and dismissed. The Bankruptcy Court ultimately dismissed the adversary proceeding and granted relief from the automatic stay to permit the state court to determine the pending appeals. The Bankruptcy Court explained: "It is inconsistent with the goal of promoting judicial efficiency to ask this Court to make rulings on issues that a state trial court has already rejected and that are on appeal to an appellate court of that state. If litigants . . . were permitted to litigate the enforceability of notes and mortgages in adversary proceedings rather than in pending state court proceedings under the circumstances present here, it would turn the entire process into a model of judicial inefficiency." *Id; see also In Re Johns-Manville Corp.*, 26 B.R. 420 at 432 (Bankr. S.D.N.Y. 1983), *aff'd in part*, 40 Bankr. 219 (S.D.N.Y. 1984) *and rev'd in part on other grounds*, 41 Bankr. 926 (S.D.N.Y. 1984) holding ("[i]t is often appropriate to permit proceedings to continue in the original court where no great prejudice resulted to the bankruptcy estate"); *In re Keene Corp.*, 171 B.R. 180 (Bankr. S.D.N.Y. 1994) (granting relief from stay to the holder of a personal injury judgment against the debtor to allow the debtor's pending appeal to proceed).

24. Stay relief is manifestly appropriate here. The Debtor's scorched earth litigation tactics led to nearly four years of litigation before the State Court. During that litigation, the Supreme Court entered an order rejecting the Debtor's claims and the Appellate Division affirmed that finding, twice. Now, the Debtor seeks a complete do-over before this Court solely because it obtained one favorable order from the State Court, which Orchard immediately appealed because that order is directly contrary to binding orders from the Appellate Division. It would be the height of judicial inefficiency to permit the Debtor to undo nearly four years of litigation and start this case anew. Granting the limited relief from the stay requested would permit the Appellate Division, which has previously heard and determined these issues twice, to rule on this final issue. Indeed, if the Appellate Division were to rule that the March 21 Ramos Ruling was improper, the Debtor's entire objection to Orchard's claim would fall away. There is no credible argument that permitting one appeal to proceed is less efficient than redoing four years of litigation.

### B.   Stay Relief Does Not Affect the Administration of This Case

25. The Debtor next attempts to invoke this Court's sympathy in contending that stay relief would harm the remaining creditors in this case by delaying their distributions. This argument makes little sense. First, stay relief will have no effect on the closing of the sale to Arcade.

26. Second, similar to many chapter 11 cases filed before this Court, the Debtor provided in its confirmed plan that, other than certain tax payments needed to effect the transfer of the Debtor's property to Arcade and payment of Orchard's principal indebtedness – which is not contested – all other proceeds of the Arcade purchase are to be held in escrow – with the consent of all creditors as indicated by their affirmative vote in favor of the Plan – until final determination and payment of Orchard's allowed Claim. Many bankruptcy cases require months,

#5618996 v14 \022022 \0004

13

if not years, from the effective date of the plan in order for distributions to commence. The Debtor's newfound concern for its creditors is questionable given that the Debtor's scorched earth litigation tactics have only served to diminish the availability of funds to repay creditors and delay their payment. Again, these issues were part of the calculus of all creditors in determining whether to approve the Debtor's Plan. The fact that junior creditors will need to wait until a final resolution of the amount of senior claims before they can receive distributions is an ordinary part of the system, was approved by the creditors themselves, and is no reason to deny relief from the stay.

### C. The Appeal Is Not Mooted

27. Finally, the Debtor contends that stay relief is not appropriate because the Appeal is mooted by (i) the sale of the Mortgaged Property and (ii) the denial or Orchard's request for Mandamus relief. Neither argument is availing.

28. The Debtor's first argument, while not fully articulated, appears to be that because the Mortgaged Property is to be sold, a state court will view Orchard's foreclosure action as unnecessary. However, a section 363 sale of property does not discharge the liens on the property – it simply moves the liens from the property to the proceeds. 2 L. King et. al, *Collier on Bankruptcy* ¶ 363.07 (15th Ed. 1987); *see also, In re Lady H. Coal Co.*, 199 B.R. 595, 605 (S.D. W. Va. 1996). Unless the proceeds of the sale are paid to Orchard in full satisfaction of the liens by virtue of the sale, the mortgage survives, and therefore an action to enforce the mortgage is not mooted.

29. Moreover, the Appellate Division's denial of Orchard's petition for writs of prohibition and mandamus does not moot the Appeal. As explained above (*see* ¶¶ 8-12), Orchard's petition was brought to obtain appellate review of the March 21 Ramos Ruling during the Appellate Division's summer recess. For reasons unknown to the parties, the Appellate

Division Clerk's Office re-calendared the return date for Orchard's petition for September 3, 2014, thereby making the petition redundant with Orchard's appeal of the March 21 Ramos Ruling, which sought the same relief as the petition and was likewise calendared for September 2014. The Appellate Division's denial of Orchard's petition for writs of prohibition and mandamus was a matter of judicial administration, not a decision on the merits.

## CONCLUSION

For the reasons set forth herein, Orchard respectfully requests that the Court (i) overrule the objection to the Motion, (ii) enter an order granting relief from the automatic stay for the limited purpose of permitting the Appellate Division to hear and determine the Appeal, and (iii) grant such other relief as the Court may find to be just and necessary.

Dated: May 6, 2015
New York, N.Y.

MORRISON COHEN LLP

By: /s/ *Joseph T. Moldovan*
Joseph T. Moldovan
Robert K. Dakis
909 Third Avenue
New York, New York 10022
Telephone: (212) 735-8600
Fax: (212) 735-8708
bankruptcy@morrisoncohen.com
www.morrisoncohen.com

*Counsel to Orchard Hotel, LLC*

#5618996 v14 \022022 \0004

15