**MORRISON COHEN LLP**
909 Third Avenue, 27th Floor
New York, New York 10029
(212) 735-8000
Y. David Scharf
Joseph T. Moldovan
Danielle Lesser
Robert K. Dakis
Brett Dockwell

*Counsel to Orchard Hotel, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| D.A.B. GROUP LLC, | : | Case No. 14-12057 (SCC) |
| | : | |
| Debtor. | : | |
| | : | |

**SUPPLEMENTAL RESPONSE OF ORCHARD HOTEL, LLC
TO THE DEBTOR'S OBJECTION TO
ORCHARD HOTEL, LLC'S SECURED CLAIM**

Orchard Hotel, LLC ("Orchard"), by and through its undersigned counsel, hereby submits this supplemental response to the objection (the "Objection") of D.A.B. Group LLC (the "Debtor") to parts of Orchard's secured claim (Claim No. 9), filed on December 10, 2014 (the "Hotel POC") [Dkt. No. 86] as supplemented and amended by the Declaration in Support of Confirmation and in Opposition to Orchard's Objection to the Plan signed by Kevin Nash and dated March 18, 2015 [Dkt. No. 125] (the "Supplemental Objection"), and respectfully states:

#5727189 v1 \022022 \0004

## INTRODUCTION

1.  In the Objection, the Debtor contended that as a result of the refusal of Brooklyn Federal Savings Bank ("BFSB") to extend the maturity date of the Notes, Orchard should be estopped from enforcing its contractual right to collect interest at the default rate. Orchard refuted these claims in its response dated March 13, 2015 [Dkt. No. 117] (the "Response").[1]

2.  Now, months after filing the Objection, the Debtor has suggested for the first time in the Supplemental Objection that all interest should be disallowed, including interest at the non-default rate "because the Debtor lost the ability to refinance the debt after BSFB and Orchard reneged on the extension of maturity," Supplemental Objection ¶ 8, and that "the multiple instances of misconduct by Orchard and BFSB . . . may well be grounds for equitable subordination of Orchard's interest claim." *Id.* at ¶ 22.

3.  Notably, the Debtor cites no authorities, facts, or support for these propositions – perhaps because it knows that they are both factually and legally baseless. The Debtor's objection to non-default interest is nothing more than a claim that it has been damaged by alleged misconduct of BFSB. Putting aside that there is no basis for such a claim, the Debtor cannot prevail on a damage claim in this case because it has already attempted to obtain damages from Orchard on the very same set of facts before the State Court, and the State Court dismissed the Debtor's claims. The dismissal order was upheld on appeal and these alleged claims cannot be resurrected in this case.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Response.

#5727189 v1 \022022 \0004

4. Apparently recognizing that this damage claim is untenable, the Debtor retreats to the last resort of a defaulted borrower: equitable subordination. However, even if all the factual allegations raised by the Debtor were true, the Debtor still cannot satisfy its high burden of subordinating the claim of a non-insider that has no control over the operations of the Debtor. The Debtor has shown no misconduct by Orchard, which simply sought to foreclose on its collateral, much less the kind of gross misconduct required to subordinate Orchard's claim.

5. In sum, the Debtor's suggestion that Orchard is not entitled to any interest is unfounded. Orchard's claim should be allowed in full, and the Debtor's objections denied in their entirety.

## SUPPLEMENTAL RESPONSE

### A. The Debtor Failed To Provide Any Legal Theory Supporting Its Request To Deny Orchard Interest At The Non-Default Rate

6. The Notes unambiguously provide that Orchard is entitled to the payment of interest until repayment. When the Notes matured on March 1, 2011, interest began to accrue at the Default Rate set forth therein. The Debtor initially objected to the payment of interest at the Default Rate arguing that as a result of BFSB's conduct (i) Orchard should be estopped from enforcing the maturity date, and (ii) the maturity default was previously waived. The Debtor now seeks to rely on these same theories to preclude Orchard from receiving any interest.[2]

7. In addition to being factually inaccurate, the Debtor's argument is a complete non-sequitor. Even assuming for the sake of discussion that Orchard was prevented from enforcing the maturity date, Orchard is still entitled to interest at the non-default rate. There is no

---

[2] In the Response, Orchard refuted each and every allegation the Debtor made regarding the alleged misconduct. Orchard incorporates the Response herein.

#5727189 v1 \022022 \0004

3

credible argument that either a waiver or an estoppel of enforcement of the maturity date could in any way, shape, or form toll interest from running at the non-default rate. The Debtor did not cite to, and Orchard was unable to find, any authority for the proposition that a lender's failure to extend the maturity date of a loan forfeited its right to interest at the non-default rate.

8.   Simply put, the Debtor's principal argument that BFSB's alleged conduct regarding an extension of the maturity date waived the right to any interest is unsupportable rubbish and must be discarded.

### B. To The Extent That The Debtor's Claim Is Considered To Be One For Damages, The Debtor's Claim Has Already Been Dismissed By The State Court

9.   Given that the Debtor's contention is patently frivolous and not properly pled, Orchard must strain to fit the Debtor's claim into a cognizable legal position.

10.   The only possible legal theory that could give effect to the Debtor's request to reduce Orchard's claim is that amounts owing to Orchard should be offset against phantom damages the Debtor may claim arise from BFSB's enforcement of the maturity date. However, the Debtor cannot allege a claim for damages either overtly or *sub silentio* because any such claim has already been dismissed.

11.   As set forth in more detail in the Response, the Debtor's answer to Orchard's foreclosure action included a fraud counterclaim against Orchard for alleged damages to the Debtor's business arising from BFSB's unwillingness to extend the maturity date. The Debtor alleged that in reliance on BFSB's alleged representation that the March 1, 2011 maturity date would be extended, the Debtor "delayed in seeking a refinance of the loan or sale of the building project," thereby causing the Debtor damage "in a sum not yet determined but believed to be in excess of fifty million dollars." (Declaration of Brett Dockwell, March 13, 2015 [Dkt. No. 120]

#5727189 v1 \022022 \0004

("Dockwell Decl."), Ex. 6 [3/30/12 Order] at 5-6). The Trial Court dismissed the Debtor's fraud counterclaim (as well as the Debtor's other two counterclaims) because, under the language of the Loan Documents, the Debtor could not have reasonably relied on any alleged oral representations by BFSB. (*Id.* at 7). The Trial Court's decision was affirmed by the Appellate Division. (*Id.*, Ex. 7 [5/28/13 Order] at 55). The Appellate Division re-affirmed that holding in a subsequent decision and order. (*Id.*, Ex. 8 [2/18/14 Order]).

12. The period for appeal has long passed. As such, and as set forth in more detail in the Response, the Debtor is collaterally estopped from resurrecting its damages claims in the guise of a challenge to Orchard's right to interest. Response at 20-22.

### C. The Debtor Cannot Equitably Subordinate Orchard's Right To Interest

13. "Equitable subordination is an extraordinary remedy that is to be used sparingly." *Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008), *aff'd*, 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009). It requires a showing of conduct that is "egregious and severely unfair to other creditors." *Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 364 (Bankr. S.D.N.Y. 2002). "The fundamental aim of equitable subordination is to 'undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness in terms of the bankruptcy results.'" *Monzack v. ADB Investors (In re EMB Assocs., Inc.)*, 92 B.R. 9, 15 (Bankr. D.R.I. 1988) (quoting *Bostian v. Schapiro ( In re Kansas City Journal-Post Co.)*, 144 F.2d 791, 800 (8th Cir. 1944)).

14. Section 510 of the Bankruptcy Code governs the subordination of creditor claims in a bankruptcy proceeding. 11 U.S.C. § 510. Section 510(c) provides that courts may "under

#5727189 v1 \022022 \0004

principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." *Id.* at 510(c). Courts may order equitable subordination where (1) the claimant engaged in inequitable conduct, and (2) the inequitable conduct caused injury to other creditors or gave the claimant an unfair advantage. *See, e.g., In re Hydrogen, L.L.C.*, 431 B.R. 337, 360 (Bankr. S.D.N.Y. 2010) (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977)).

### 1. <u>Orchard Is Not An Insider</u>

15.    The level of proof required for a successful equitable subordination claim depends, in part, on the status of the party against whom the claim is made. If the party is an insider of the debtor, one level of proof is required. "The scrutiny for presence of inequitable conduct is more stringent with respect to creditors who are insiders of the debtor." *Id.* at 361; *see also In re BH S&B Holdings L.L.C.*, 420 B.R. 112, 156 (Bankr. S.D.N.Y. 2009) ("When the defendant is an insider, his conduct is subject to greater scrutiny"). If the party is not an insider, a different calculus applies. "A higher level of proof is required to equitably subordinate the claim of a party that is neither an insider of the debtor, nor a fiduciary to the debtor or other creditors." *Off. Comm. of Unsecured Creditors v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002); *see also, Anaconda–Ericisson, Inc. v. Hessen (In re Teltronics Services, Inc.)*, 29 B.R. 139 (Bankr. E.D.N.Y. 1983) (noting that the "primary distinctions between subordinating the claims of insiders versus those of non-insiders lie in the severity of misconduct required to be shown, and the degree to which the court will scrutinize the claimant's actions toward the debtor or its creditors"). Though the Debtor does not appear to have asserted

that Orchard is an insider of the debtor, the following should preemptively address the possibility that it might.

16. There is no credible argument that Orchard is an insider of the Debtor. Orchard is not an officer or director of the Debtor, and therefore is not a manager. A non-management creditor will be considered an "insider" for purposes of equitable subordination only if the creditor "dominated or controlled" the debtor. *In re KDI Holdings, Inc.*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999). Dominion or control means "more than the monitoring of a debtor's operations and proffering advice to management." *Id.* The degree of domination and control exercised by the creditor must be such that there has been a "merger of identity" in which "the creditor has become, in effect, the alter ego of the debtor." *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 500 (S.D.N.Y. 1994). "To establish domination and control . . . the allegations must indicate something more than the monitoring of a debtor's operations and proffering advice to management, even where the [creditor] threatens to withhold future loans should the advice not be taken." *In re KDI Holdings*, 277 B.R. at 511 (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 610 (2d Cir. 1983)).

17. The Debtor's sole allegations with respect to BFSB and Orchard is that they did not extend the maturity date and then Orchard brought a foreclosure action against the Debtor. There is no suggestion that Orchard took any role in respect of the Debtor and it is beyond dispute that temporally, Orchard could not have interfered with the Debtor's operations inasmuch as Orchard acquired the Notes after they had matured and after BSFB had informed the Debtor that the maturity date would not be extended. As such, for all purposes, and especially for the purposes of equitable subordination, Orchard is not an insider.

#5727189 v1 \022022 \0004

### 2. The Debtor Cannot Meet The Higher Burden Of Showing Orchard Engaged in Egregious Conduct Such That Its Claim Should Be Subordinated

18. The standard for equitable subordination of a non-insider's claims is difficult to meet:

> When a non-insider or non-fiduciary is involved, courts have required that a claimant's conduct be egregious and severely unfair to other creditors before its claim will be equitably subordinated. The conduct required has been described as "substantial misconduct tantamount to fraud, misrepresentation, overreaching or spoilation [sic]." Few cases find that non-insider, non-fiduciary claimants meet this standard.

*In re Sunbeam Corp.*, 284 B.R. at 364 (citations omitted) (quoting *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 838-39 (Bankr. S.D.N.Y. 1994)); *accord In re Kalisch*, 413 B.R. at 133 ("In cases of non-insider equitable subordination such as this, the proponent of subordination has the burden of proving, among other things, that the claimant engaged in egregious, improper or wrongful conduct that damages creditors"); *Pan Am Corp.*, 175 B.R. at 500-01 ("To obtain equitable subordination against a creditor who is not an 'insider' to the debtor, it must be shown that the creditor 'committed fraud, overreaching or spoliation to the detriment of others'" (quoting *In re W.T. Grant Co.*, 4. B.R. 53, 75 (Bankr. S.D.N.Y. 1980), *aff'd*, 699 F.2d 599 (2d Cir. 1983)).

19. To equitably subordinate Orchard's claim, the Debtor must show that the conduct complained of consists of "very substantial" bad acts "involving moral turpitude or some breach or some misrepresentation where other creditors were deceived to their damage." *In re Mayo*, 112 B.R. 607, 650 (Bankr. D. Vt. 1990) (internal citations omitted). While this conduct need not rise to the level of fraud, the inequitable conduct must be of the type that "shocks one's good conscience." *In re 80 Nassau Assocs.*, 169 B.R. at 837 (quoting *In re Tampa Chain Co.*, 53 B.R. 772, 779 (Bankr. S.D.N.Y. 1985). Merely enhancing one's position *vis a vis* other creditors is not

#5727189 v1 \022022 \0004

sufficient to give rise to a claim for equitable subordination. *See In re Pacific Express, Inc.*, 69 B.R. 112, 117-18 (9th Cir. BAP 1986); *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1282 (8th Cir. 1988) (holding receipt of a preference, standing alone, is not considered "egregious" conduct, and therefore is not enough to be "inequitable" for the purposes of equitable subordination).

20. A creditor acting in conformity with its agreement with the debtor will not be subordinated, even where the acts may damage all other creditors. *See, e.g., Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990) (dismissing claim for equitable subordination resulting from lender's failure to fund a borrowing request notwithstanding the damage to all other creditors because the underlying loan agreements permitted the lender to refuse to fund).

21. Stated succinctly:

> The standard of inequitable conduct that justifies subordination of a non-insider/non-fiduciary's claim can be summarized in the following manner: unless the creditor has dominated or controlled the debtor to gain an unfair advantage, his claim will be subordinated, based upon inequitable conduct, only if the claimant has committed some breach of an existing, legally recognized duty arising under contract, tort or other area of law. In commercial cases, the proponent must demonstrate a substantial breach of contract and advantage-taking by the creditor.

*In re 80 Nassau Associates*, 169 B.R. at 840.

22. Orchard has at all times acted in a manner consistent with its duties and obligations under the Notes and the Mortgages. The Debtor's sole complaint is that BFSB did not exercise its discretion to extend the maturity date of the Notes, which it was under no obligation to do, especially in light of the Debtor's own misconduct in misappropriating loan

funds. The Debtor may not like the fact that Orchard purchased the Notes and then foreclosed on the Mortgages, but the Debtor cannot subordinate Orchard's claim on that basis.

## CONCLUSION

23.     For the reasons set forth herein and in the Response, Orchard respectfully requests that the Court allow Orchard's claim (Claim No. 9) in its entirety and grant such other relief as the Court may deem just and necessary.

Dated: May 6, 2015
New York, N.Y.

MORRISON COHEN LLP

By:   /s/ Joseph T. Moldovan
Y. David Scharf
Joseph T. Moldovan
Danielle C. Lesser
Robert K. Dakis
Brett Dockwell
909 Third Avenue
New York, New York 10022
Telephone: (212) 735-8600
Fax: (212) 735-8708
bankruptcy@morrisoncohen.com
www.morrisoncohen.com

Counsel to Orchard Hotel, LLC

#5727189 v1 \022022 \0004