UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                            :    Chapter 11
                                                  :
D.A.B. GROUP LLC,                                 :    Case No. 14-12057 (SCC)
                                                  :
                    Debtor.                       :
-----------------------------------------------------------x

## DECLARATION OF BRETT DOCKWELL

BRETT DOCKWELL declares the following to be true under penalties of perjury:

1.     I am a member of Morrison Cohen LLP, counsel to Orchard Hotel, LLC ("Orchard"). I submit this declaration in support of Orchard's Motion to Appoint a Chapter 7 Trustee (the "Chapter 7 Motion").[1] The facts set forth herein are based on my personal knowledge and my review of the records and legal filings relating to 139-141 Orchard Street, New York, New York (the "Mortgaged Property").

2.     **Exhibit 1** is a true and correct copy of an email sent by the Debtor's principal, Ben Zhavian ("Zhavian"), on June 2, 2015 to Ronald Solarz and other recipients, including Jordan Socaransky ("Socaransky"), who forwarded the email to me on the same date.

3.     **Exhibit 2** is a true and correct copy of the June 24, 2014 Affirmation of Receiver Simon Miller (the "Receiver") in support of his Order to Show Cause seeking authority to take necessary steps to protect the Mortgaged Property's building permits.

4.     **Exhibit 3** is a true and correct copy of a June 20, 2014 Notice of Default sent by Orchard to the Debtor.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Chapter 7 Motion.

#5787289 v1 \022022 \0004

1

5. **Exhibit 4** is a true and correct copy of a June 25, 2014 email from Zhavian to the Receiver and Orchard in response to the June 20 Notice of Default.

6. **Exhibit 5** is a true and correct copy of the order entered on June 26, 2014, authorizing the Receiver, *inter alia*, "to take all necessary, reasonable and appropriate action to protect the Mortgaged Property's zoning entitlements and building permits."

7. After entry of the June 26, 2014 order, the Receiver and his contractor, Richter + Ratner, quickly worked to develop detailed construction plans from the design plans on file with the City's Department of Buildings ("DOB") and begin to procure construction supplies and retain the necessary trades to begin active construction. Orchard funded the Receiver's activities to protect the Mortgaged Property.

8. At the same time, because of the DOB's insistence that active construction commence immediately, the Receiver and Richter + Ratner were developing a series of immediate-term items to be started at once.

9. The Debtor has not taken any steps to protect the Mortgaged Property's permits and zoning entitlements, nor has the Debtor taken any steps to facilitate the Receiver's work. Indeed, the Debtor has refused to even approve the Receiver's budget, thereby preventing the Receiver and Richter + Ratner from being paid for their work.

10. **Exhibit 6** is comprised of true and correct copies of three Beth Din summonses issued to Orchard counsel Y. David Scharf ("Scharf") in August 2014. Zhavian had initiated a rabbinical court proceeding against Scharf in 2013 as well, seeking to have Scharf shunned solely for representing Orchard. Zhavian showed up unannounced and uninvited at Scharf's synagogue and office. Scharf was forced to retain a rabbi to represent him in the proceeding.

#5787289 v1 \022022 \0004

2

11. **Exhibit 7** is a true and correct copy of a November 5, 2014 email from Zhavian to a group of recipients, including me and including Julia Marsh, a reporter from the *New York Post* who covers court proceedings, attaching copies of Disciplinary Complaints filed by Zhavian against Danielle Lesser ("Lesser") and me with the Departmental Disciplinary Committee.

12. **Exhibit 8** is a true and correct copy of a September 22, 2014 email from Zhavian to Simon Misrahi, a real estate broker, and other recipients, including me.

13. **Exhibit 9** is a true and correct copy of a November 7, 2014 email from Zhavian to James Nelson ("Nelson"), the Debtor's broker, and other recipients. The owner of 81-83 Rivington Street is a required signatory for any application to the Board of Standards and Appeals ("BSA") to extend the Mortgaged Property's zoning entitlements. The owner of 81-83 Rivington Street is in litigation with the Debtor and has been uncooperative on past BSA applications.

14. **Exhibit 10** is comprised of true and correct copies of the following emails: (i) a November 24, 2014 email from Zhavian to Socaransky, who forwarded the email to me on the same date (a copy of the complaint in the Adversary Proceeding *Monty One, LLC v. D.A.B. Group LLC, et al.*, No. 14-02410 was attached to the email but is not included here); (ii) a March 9, 2015 email from Zhavian to Nelson and other recipients, including Chad Goodman ("Goodman"), who forwarded the email to me on the same date; (iii) a March 20, 2015 email from Zhavian to Nelson and other recipients, including Socaransky, who forwarded the email to me on the same date; (iv) a March 23, 2015 email from Zhavian to Nelson and other recipients, including me; (v) a June 2, 2015 email from Zhavian to Ron Terenzi ("Terenzi") and other recipients, including Socaransky, who forwarded the email to my partner Joe Moldovan

#5787289 v1 \022022 \0004

3

("Moldovan") on the same date; and (vi) a June 9, 2015 email from Zhavian to Terenzi and other recipients, including Moldovan.

15. **Exhibit 11** is a true and correct copy of a string of emails, beginning with an email on March 3, 2011 from Richard Maher ("Maher"), the bank loan administrator who handled administration of the Loans during the events at issue, to Zhavian discussing the "misuse of funds and potential violations of the law." The string of emails was forwarded to David Aviram ("Aviram"), an Orchard manager, on March 23, 2011.

16. **Exhibit 12** is a true and correct copy of excerpts from the transcript of the April 3, 2013 deposition of Maher.

17. **Exhibit 13** is a true and correct copy of the March 22, 2011 memorandum of the Loan Workout Committee of Brooklyn Federal Savings Bank ("BFSB") regarding the sale of the Loans. This memorandum was maintained in BFSB's loan files.

18. In the fall of 2012, Zhavian obstructed efforts by Orchard and the Receiver to preserve the Mortgaged Property's zoning entitlements. The Debtor's State Court counsel, William Wallace ("Wallace"), explained during a December 5, 2012 telephonic conference with the State Court's law clerk and other counsel, including myself, that Zhavian would not voluntarily extend the entitlements because doing so might benefit the next owner of the Mortgaged Property in the event that the Debtor lost the Mortgaged Property through foreclosure.

19. **Exhibit 14** is a true and correct copy of an Order to Show Cause filed by the Receiver on December 21, 2012 seeking authority from the State Court to execute documents on the Debtor's behalf in order to apply to the BSA to extend the zoning entitlements.

#5787289 v1 \022022 \0004

4

20. **Exhibit 15** is a true and correct copy of the Affidavit of Eugene Travers dated April 25, 2013, without exhibit.

21. **Exhibit 16** is a true and correct copy of the construction superintendent's log book for the work performed by Cava Construction & Development, Inc. ("Cava") and its sub-contractors. A copy of this log book was provided to Orchard by Cava as one of the exhibits used in the arbitration between Cava and the Debtor in late 2010.

22. **Exhibit 17** is a true and correct copy of the June 22, 2011 letter from James G. Marsh, counsel to BFSB, to Wallace.

23. **Exhibit 18** is comprised of a true and correct copy of (i) an email sent by Aviram on May 24, 2011, forwarding a voicemail he received from Zhavian and referencing eight other calls he had received from Zhavian "in the middle of the night," and (ii) a March 13, 2012 letter I sent to Wallace regarding Zhavian's harassment of Aviram.

24. **Exhibit 19** is a true and correct copy of a June 22, 2012 email from Sidney W. Elie, a real estate broker, to Wallace and Scharf.

25. **Exhibit 20** is a true and correct copy of the Affidavit of Socaransky dated August 27, 2014, without exhibits.

26. **Exhibit 21** is a true and correct copy of the restraining order entered against the Debtor and Zhavian on December 11, 2013.

27. **Exhibit 22** is a true and correct copy of a July 8, 2014 letter from Lesser to Wallace notifying him that Zhavian was breaching the restraining order and warning that if Zhavian did not comply with the order, Orchard would seek a contempt order.

28. **Exhibit 23** is a true and correct copy of a July 9, 2014 email from Zhavian, responding to Lesser's July 8 letter by acknowledging his breach of the restraining order.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2015 in New York, New York.

                                                                     s/ Brett Dockwell
                                                                        Brett Dockwell