# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re

                    D.A.B. Group LLC,                        Chapter 11
                                                             Case No. 14-12057 (SCC)

                                              Debtor.

---

## ORDER APPOINTING MEDIATOR

By this Order, the Court authorizes the Honorable James L. Garrity, Jr., of the United

States Bankruptcy Court for the Southern District of New York, to serve as a mediator (the

"Mediator") in the above-captioned chapter 11 case of D.A.B. Group LLC (the "Debtor").

**WHEREAS**, on January 19, 2015, the Debtor filed its Objection (the "Objection") to

Various Aspects of the Secured Claim of Orchard Hotel, LLC ("Orchard," and, together with the

Debtor, the "Mediation Parties"); and

**WHEREAS**, on February 10, 2015, Orchard filed its Motion (the "Motion") for Limited

Relief From the Automatic Stay to Permit State Court Appellate Proceedings to Proceed; and

**WHEREAS**, at the suggestion of the Court, the Mediation Parties have agreed to mediate

the issues raised by the Objection and the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. Upon the entry of this Order, Judge James L. Garrity, Jr. shall be appointed as Mediator.

2. The Mediation Parties may (or at the direction of the Court shall) meet and confer with

   the Mediator to establish procedures and timing of the mediation.

3. Without limiting the applicability of Local Rule 9019-1, General Order M-452, or this

   Court's Procedures Governing Mediation of Matters and the Use of Early Neutral

   Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary

Proceedings, all (a) discussions among any of the Mediation Parties, including discussions with or in the presence of the Mediator, (b) mediation statements and any other documents or information provided to the Mediator or the Mediation Parties in the course of the mediation, and (c) correspondence, draft resolutions, offers, and counteroffers produced for or as a result of the mediation shall be strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding, and no person or party participating in the mediation, whether a direct participant or member of a committee or group, including counsel for any Mediation Party or any other party, shall in any way disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, offer, or counteroffer that may be made or provided in connection with the mediation, unless otherwise available and not subject to a separate confidentiality agreement that would prevent its disclosure or as authorized by this Court.

4. To the extent that any Mediation Party is in possession of privileged or confidential information provided to such Mediation Party pursuant to the terms and conditions of a confidentiality agreement executed or order of this Court entered in connection with this chapter 11 case, such information may be disclosed to the Mediator, but shall otherwise remain privileged and confidential and shall not be disclosed to any other Mediation Party.

5. For the avoidance of doubt, to the extent that any part of this Order shall conflict with Local Rule 9019-1, General Order M-452, or this Court's Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary

Arbitration in Bankruptcy Cases and Adversary Proceedings, the terms and provisions of this Order shall govern.

6. Notwithstanding the possible applicability of Rules 6004(h), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure, this Order shall be in full force and effect upon its entry.

7. This Court shall retain jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

Dated: New York, New York
April 15, 2015

/S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 12/11/2013
NYSCEF DOC. NO. 764

INDEX NO. 850044/2011
RECEIVED NYSCEF: 12/11/2013

Entered 06/26/15 15:57:5?
Pg 6 of 24

INDEX NO. 850044/2011
RECEIVED NYSCEF: 11/19/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------x

ORCHARD HOTEL, LLC,

                Plaintiff,

    -against-

D.A.B. GROUP, LLC; ORCHARD CONSTRUCTION,
LLC; FLINTLOCK CONSTRUCTION SERVICES
LLC; JJ K MECHANICAL INC.; EDWARD MILLS &
ASSOCIATES, ARCHITECTS PC; CASINO
DEVELOPMENT GROUP, INC.; CITYWIDE
CONSTRUCTION WORKS INC.; EMPIRE TRANSIT
MIX INC.; MARJAM SUPPLY CO., INC.; ROTAVELE
ELEVATOR INC.; SMK ASSOCIATES INC.; FJF
ELECTRICAL CO. INC.; CITY OF NEW YORK; NEW
YORK STATE DEPARTMENT OF TAXATION &
FINANCE; LEONARD B. JOHNSON; CITY OF NEW
YORK ENVIRONMENTAL CONTROL BOARD;
BROOKLYN FEDERAL SAVINGS BANK; STATE
BANK OF TEXAS and JOHN DOE #1 through JOHN
DOE #100, the last 100 names being fictitious, their true
identities unknown to plaintiffs, and intended to be the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
premises described in the complaint,

                Defendants.
----------------------------------------------------------x

Index No. 850044/2011

Motion Seq. No. 15

**STIPULATION
AND ORDER**

       This matter having come before the Court by motion of Plaintiff Orchard Hotel, LLC

(Motion Seq. No. 15), and Defendant D.A.B. Group LLC, without admitting to any allegation set

forth in Plaintiff's motion papers, having agreed with Plaintiff, by and between the parties'

respective counsel, to entry of an order pursuant to CPLR § 6301 upon the terms set forth herein,

and for good cause having been shown;

       IT IS HEREBY ORDERED that defendant DAB (as hereinafter defined) shall not contact

or communicate with plaintiff Orchard (as hereinafter defined) by any means, including without

64750263 v5 \012022 \0004

limitation by phone, email, or in-person, unless such contact or communication occurs in the presence of both DAB's and Orchard's respective attorneys of record in this matter; and

IT IS FURTHER ORDERED that DAB shall not visit Orchard's office or the office, home, or place of worship of any Orchard Party (as hereinafter defined); provided, however, that DAB may meet with Orchard by mutual agreement in the presence of both DAB's and Orchard's respective attorneys of record in this matter; and

IT IS FURTHER ORDERED that DAB shall terminate all arbitrations and non-judicial proceedings, including without limitation all proceedings before rabbinical courts, against David Aviram and Y. David Scharf, and shall withdraw all notices and summonses relating to such arbitrations and proceedings, and DAB shall not initiate any further arbitrations or non-judicial proceedings, including without limitation any proceeding before a rabbinical court, against Orchard or any Orchard Party arising from or relating to the above-captioned action, other than within this action or in a state or federal court; and

IT IS FURTHER ORDERED that DAB shall not enter upon 139-141 Orchard Street, New York, New York (the "Mortgaged Property") outside the presence of Court-appointed Receiver Simon Miller; and

IT IS FURTHER ORDERED that notwithstanding anything to the contrary herein, this Stipulation and Order shall not prohibit DAB's and Orchard's respective attorneys from communicating directly for any purpose; and

IT IS FURTHER ORDERED that for purposes of this Stipulation and Order –

#4790261 v3 \022022 \0004

2

"DAB" means D.A.B. Group LLC and its owners, principals, members, directors, officers, managers, employees, and representatives, including without limitation Ben Zhavian (a.k.a. "Zvi Benjamin Shavian," a.k.a. "Ben Zahavian"); and

"Orchard" means Orchard Hotel, LLC and any of its owners, principals, members, directors, officers, managers, employees, and representatives, including without limitation Russel Bernard, Jordan Socaransky, Chad Goodman, David Aviram, Edward Martell, Danielle Lesser, Y. David Scharf, Westport Capital Partners LLC, Maverick Real Estate Partners LLC, the Kor Group and Morrison Cohen LLP (each, an "Orchard Party"); and

IT IS FURTHER ORDERED that Orchard's motion for a temporary restraining order and preliminary injunction (Motion Seq. No. 15) is hereby withdrawn with prejudice; and

IT IS FURTHER ORDERED that the Clerk of Court is directed to seal (i) the Affirmation of Urgency Y. David Scharf in Support of Preliminary Injunction and *Ex Parte* Temporary Restraining Order dated November 12, 2013 and all exhibits thereto [Doc. Nos. 751-760], (ii) the Affidavit of Chad Goodman dated November 12, 2013 [Doc. No. 761], (iii) the Affidavit of Jordan Socaransky dated November 12, 2013 [Doc. No. 762], and (iv) the Affirmation of William Wallace in Opposition to Order to Show Cause dated November 18, 2013 [Doc. No. 763].

[continued on next page]

#4790161 v3 \012\2022 \2004

3

By executing this Stipulation and Order, counsel to DAB represents that he has discussed the foregoing provisions with DAB's principal, Ben Zhavian, and DAB and Zhavian have agreed to be bound thereto.

Dated: November 18, 2013

MORRISON COHEN LLP

By: _____
    Y. David Scharf
    Danielle C. Lesser
    Brett Dockwell
909 Third Avenue
New York, NY 10016
(212) 735-8600
*Attorneys for Orchard Hotel, LLC*

FAVATA & WALLACE LLP

By: _____
    William G. Wallace
229 Seventh Street, Suite 300
Garden City, NY 11530
(516) 742-9494
*Attorneys for D.A.B. Group, LLC*

Agreed and acknowledged:

_____
Ben Zhavian

Dated: 12/9/13        , 2013

SO ORDERED

_____
**CHARLES E. RAMOS**
                    J.S.C.

#4790261 v3 \072\0022 \0004

4

# EXHIBIT C

BEROTTI, ROBINS & GUSKIN LLP
CERTIFIED PUBLIC ACCOUNTANTS
85 W HAWTHORNE AVENUE
VALLEY STREAM, NY 11580
516-825-5577
FAX 516-825-7379

June 25, 2015

Gentlemen,

I have confirmed that in the event of a sale of the building, the tax rates are based on ordinary income not capital gains rates. Therefore, the tax liability would be higher and would include NYC Unincorporated Business Tax and self-employment taxes

Based upon the figures we discussed which is a sale for $30 million dollars and a cost basis of $10 million the gain of approximately $20 million would have a tax cost of approximately:

| | |
|---|---|
| Federal | 7,300,000 |
| NYS | 1,600,000 |
| NYCUBT | 837,000 |

If however, the building is sold by the owner rather than a trustee there is an opportunity for a Section 1031 exchange. There typically is no current tax liability when this method is used. Any potential gains are deferred until the sale of the next property.

A Section 1031 exchange is simply exchanging one property for another like property. You are in effect, exchanging in this case one building for another.

Yours truly,

Allen I Guskin
Certified Public Accountant

# EXHIBIT D



**Cushman & Wakefield Realty**
of Manhattan, LLC
275 Madison Avenue, 3rd Floor
New York, NY 10016
T (212) 696 2500
www.cushmanwakefield.com

June 26, 2015

Kevin Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036

RE: 139-41 Orchard Street, New York, NY

Dear Kevin,

I am writing to advise of my firm's continued willingness to resume marketing the above referenced property. We began our marketing efforts to sell this property on or about November 3. In the following 12 weeks, we sent the information out to investor and brokers lists of over 15,000 prospects. We also advertised the property in the New York Times and Wall Street Journal and posted it on multiple websites including LoopNet and Costar.

As a result, 92 prospective buyers signed confidentiality agreements to receive more information. 17 individuals toured the property, some multiple times. Ultimately, although there was strong interest in the property, we did not receive a bid which exceeded $33,000,000.

The buyers indicated to me that they were uneasy about bidding above $33,000,000 due to the uncertainties surrounding the property. These uncertainties were namely the risk of not receiving a BSA extension to complete the property as initially contemplated. If it was not extended, there was a risk that square footage would have to have been removed as the area was down zoned after the construction originally began. With all this in mind, no buyers were willing to take the risk at the price requiring a non-refundable deposit, unless more clarity could be provided on these matters.

If the property can be sold subject to a BSA extension, I believe that we can once again reach the stalking horse bid of $33,000,000 or hopefully improve upon it in a period of 60 days. If the court would be willing to have us proceed back to market, I can provide an updated listing agreement now that my previous firm Massey Knakal was acquired by Cushman & Wakefield. Please let me know if you have any further questions on this.

Best,

James Nelson
Vice Chairman
T +1 (212) 660 7710
M +1 (917) 362 1485
JJnelson@cushwake.com

# EXHIBIT E

## Notice of Comments

Cal No:      58-15-A
Premises:    139 -141 Orchard Street, 77, 78, 81 Rivington Street
Borough:     Manhattan
Applicant:   Mitchell Korbey, Esq.
Date:        May 1, 2015

Statement of Facts

1.   Provide the status of any and all violations and your efforts to cure them.

2.   Revise the Statement of Facts to provide more detail as to how you meet
     threshold under the common law.

3.   Provide a copy of the Analysis from GKA and the backup they used to
     support those costs

4.   Please provide information as to the financing in place to proceed with the
     project.

5.   Please confirm that there are no other changes in applicable law (e.g., building
     code) that would result in a lapse of the permit.

6.   Please discuss how compliance with the current building code would affect
     your site.

Construction

7.   Provide a construction table comparing items of work performed and the
     amount completed to the total amount of work necessary to complete the
     scope of work.

8.   Provide an affidavit from the architect or engineer that states the condition of
     the construction work done to date has not been compromised and can be used
     currently.

Expenditures

9.    Provide a chart and a narrative which identifies the following costs associated
      with each component of the development: (1) projected for completion; (2)
      contracted for; and (3) actually expended as of the date of the rezoning.
      Itemize each hard and soft cost and provide totals for each column.

10.   Provide copies of all canceled checks.

Serious Loss

11.   Provide a detailed discussion with an associated chart showing what would
      have been built under the previous zoning, and what can be built under the
      present zoning. This discussion should include the maximum floor area ratio,
      square footage, unit count, built form (detached, semi -detached, or attached,
      and height if affected), and the effect of front and side yard regulations, etc. if
      there was change. This discussion should also incorporate the costs expended
      since the initial building permits were obtained, with detail about cost for
      items that cannot be reused under the new zoning, which will therefore be
      lost.

# EXHIBIT F

Attachment to Wallace Letter-
Commercial Loan Action Plan, dated February 15, 2011
[pp. 2311 - 2317]

ORIGINAL

## COMMERCIAL LOAN ACTION PLAN

To:        Loan Workout Committee

From:      Loan Workout Department

Date:      February 15, 2011

Request:   Modification – Maturity Extension
           **DAB Group LLC**
           Account # 20-070052
           Loan # 18-010521-3
           139-141 Orchard Street, New York, NY 10002
           Developer/Guarantor: Zvi Zhavian

### PURPOSE:

The above loan is scheduled for final maturity on 3/1/2011. The purpose of this review is to recommend (2) six-month extensions to allow for sufficient time to complete the construction, stabilize the property, and secure permanent take-out financing. This is the first extension request beyond the original maturity date. An OTS "non-object" is required as this loan is rated substandard and is a maturity extension to allow BFSF to hold this loan until payoff. The Bank's CFO has confirmed an impairment charge of $764,000 was taken 9/30/10.

| Borrower | D.A.B. Group LLC | Date | February 15, 2011 |
|---|---|---|---|
| Loan # | 18-010588-2<br>18-010521-3 | Account # | 20-080020 |
| Guarantor | Zvi (Ben) Zhavian | Risk Rating | Substandard |
| Orig. Date/<br>Amount: | 8/21/2008<br>$5,500,000 (acquisition note)<br>$19,050,000 (building note) | Current Balance | $5,500,000 (acquisition note)<br>$7,259,568 (building note) |
| Orig. Maturity Date | 9/1/2009 | Current Maturity<br>Date | 3/1/2011 |
| Original (BFSB)<br>Amt & % | $11,550,000<br>47.046832% | Book Balance (BFSB) | $6,003,074 |
| Participant Amt. &<br>% | $13,000,000<br>52.9531568% - SBOT | Participant Bank<br>Balance Amt. | $6,756,594<br>52.953l568% - SBOT |
| Collateral | 139-141 Orchard Street<br>Aka 138-140 Allen Street<br>New York, NY | Due for:<br>Accrual/Non Accrual | 3/1/2011<br>Accrual |
| Collateral Type | Hospitality | Block/Lot | Block: 415<br>Lot(s): 66 & 67 |
| Appraisal<br>Date | $37,000,000 (as-<br>stabilized)<br>9/6/2007 – C&W | Impairment/Charge<br>Off | $764,000 (12/31/10) |
| | | Net Carrying Value | $5,239,074 |
| Legal Status | Current | Counsel | Kriss & Feuerstein |

1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER        OH-001171

## LOAN HISTORY:

The referenced facilities consist of a Project Loan Note and a Building Loan Note. The total proceeds between the two facilities are $24,550,000 which was used to (a) finance the acquisition of two mixed use buildings for $5,500,000 (Loan #18-010521-3) and (b) $19,050,000 (Loan #18-010588-2) to finance the construction of a 92 room, sixteen-story boutique hotel with a total gross floor area of 50,644 square feet located in New York, New York ( the "collateral"). The State Bank of Texas participated in the transaction and provided (52.95315%) of the total financing.

The acquisition loan was executed on November 8, 2007 and has an outstanding balance of $5,500,000. The building loan was executed on August 21, 2008 and has an outstanding balance of $3,844,170.38. The Project Note was modified on August 21, 2008 to make both loans co-terminus with a final maturity of 3/1/2011.

The Mortgagor is D.A.G. Group LLC (a New York limited liability company). The guarantor on this facility is Zvi Zhavian.

The Loans are priced at WSJP + 175 bps, floor 7.75%. The loan carries an initial term of 12 months with (3) six month renewal options. There is no option to convert to perm.

## CONSTRUCTION STATUS

Based on a site inspection performed by Koch Engineering, P.C on December 22, 2010, the project is at the 33% level of construction completion. The total hard cost budget for this project is $15,250,000 and the total completed and stored to date amount is $5,094,242.11. The project is a year behind schedule due to a stop-work-order implemented by the Building Department as a result of down-zoning of the area. The project was grandfathered and allowed to continue to be built based on the original plans and specifications.

## ACTION REQUESTED:

The Borrower has requested a twelve month extension to allow for the completion of the hotel, stabilization of the property and to obtain permanent take-out financing. The Borrower requires additional time because of the stop-work-order imposed on the project due to the down-zoning of the area.

The loan will be modified as follows:

|  | Current Terms | Requested Terms |
|---|---|---|
| Loan Amount | $5,500,000 (acquisition) $19,050,000 (building) | Same |
| Rate | WSJP + 175 bps (7.75% floor) | Same |
| Term | One-year + (3) six-month renewal options | (2) six-month renewal options |
| Amortization | None | Same |
| Maturity | 9/1/09, 3/1/10, 9/1/10, 3/1/11 | 9/1/11, 3/1/12 |
| Extension Fee | - | .25% per extension option |
| Appraisal | $37,000,000 (as-stabilized) 9/6/2007 – C&W $9,180,000 – PBF (9/30/10) | Same |

2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER          OH-001172

## APPRAISAL SUMMARY:

The property was underwritten as follows.  The lesser of $5,500,000 for the project loan and $19,050,000 for the construction loan ($24,550,000 total loan) or 75% of the "as is" appraised value on a stabilized rental basis, or 75% of the total project cost.

The appraisal dated September 6, 2007 reflected an as-stabilized value of $37,000,000 which at 75% LTV yielded a loan amount of $27,750,000 or $3,199,000 over the loan approval.

The total project cost was estimated at $36,050,000 which at 75% LTV yielded a loan amount of $27,037,500 or $1,487,500 over the loan approval. The appraisal was performed by Cushman & Wakefield.

| Cushman & Wakefield September 6, 2007 | Value Conclusion |
|---|---|
| "As-Is" Value | $11,000,000 |
| "As-complete" | $33,000,000 |
| Value at stabilized rental occupancy | $37,000,000 |

## PERFORMANCE HISTORY:

The guarantor has an insufficient credit history to determine his mortgage creditworthiness. The table below shows past and present credit history.

### Credit Analysis:

| Description: | Zvi Zhavian 12/20/08 | Zvi Zhavian 1/27/11 |
|---|---|---|
| Equifax FICO | N/A | N/A |
| TransUnion FICO | N/A | N/A |
| Experian FICO | N/A | N/A |
| AVERAGE FICO | N/A | N/A |
| INDUSTRY RATING | N/A | N/A |
| DELINQUENCY | 0x30, 0x60, 0x90 | 0x30, 0x60, 0x90/ |

* Per OCC/OTS Metrics Report 2nd qtr 2010, Prime (660+), Alt-A (620-659), and Sub-Prime (-620).

Mr. Zhavian's credit profile was established in 1999. There are no credit scores as Mr. Zhavian retains a minimum of credit usage as a principal (as opposed to as a guarantor).

In the past, he has had three tradelines two of which were leased vehicles and one $500.00 line of credit with HSBC, his primary bank. Both lines have zero balances.

Recurring AGI per tax returns and Net Worth are set for below.

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001173

Personal Financial Statements (Un-Audited/Borrower Prepared):

| Zvi (Ben) Zhavian (100%) | a/o 6/30/2010 | a/o 6/5/2009 | a/o 2/20/2008 |
|---|---|---|---|
| Assets | $23,341,174 | $36,705,766 | $33,990,000 |
| Liabilities | $14,443,695 | $12,300,000 | $9,900,000 |
| Net Worth | $8,897,479 | $24,405,766 | $24,090,000 |
| Liquid Assets | $1,200,000 | $1,435,766 | $4,500,000 |
| RE Assets | $21,941,174 | $35,230,000 | $29,250,000 |

Cash/Income Analysis (Per IRS Form 1040)

| Source | Zvi (Ben) Zhavian | | | | |
|---|---|---|---|---|---|
| | 2006 | 2007 | 2008 | 2009 | 3 Yr. Avg. Recurring Income |
| Wages | $0 | $0 | $0 | $0 | $0 |
| Interest | $164,310 | $17,932 | $0 | $3,978 | $46,555 |
| Dividends | $197 | $246 | $0 | $0 | $111 |
| Tax Refunds | $0 | $0 | $0 | $0 | $0 |
| Bus. Income | $0 | $0 | $0 | $0 | $0 |
| Capital Gains | <$3,000> | <$3,000> | <$3,000> | <$3,000> | <$3,000> |
| Re/Part/S Corps | <$222,096> | <$768,899> | <$457,070> | <$444,743> | <$473,202> |
| Other | $3,125 | $0 | $0 | $0 | $781.25 |
| AGI | <$57,464> | <$753,721> | <$460,070> | <$443,765> | <$428,755> |

## GUARANTOR ANALYSIS:

The guarantor has shown insufficient recurring AGI ($428,755) to cover portions of the current debt service of $77,500 on the loan's outstanding balance of $12,759,568. However, there is $556,945 of interest reserve balance which will carry the loan for 5 to 6 months.

The Borrower also had a liquid asset balance of $1.2 million which will be sufficient to cover the remaining interest to project completion and stabilization. The project is expected to be completed over the next 10 to 12 months.

## LOANS TO ONE BORROWER:

Current BFSB Exposure To This Loan        $6,003,074.00 ($11,790,432 undrawn amount)
Current BFSB Limit                        $9,195,000.00

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    OH-001174

## MARKET TRENDS

After the worst slump in decades, all key hotel metrics – occupancy, room rates, and revenues have begun to show signs of improvements but hotel performance correlates closely to growth in gross domestic product (GDP), and an expected elongated economic recovery bodes for a more-sluggish-than typical resurgence in the lodging sector. Strong brands will attract more business. Guests prefer to play it safe with tried-and-true innkeepers and make sure budgets go further. Overall, better capitalized owners can reduce rates and knock out competitors but business-center hotels in gateway destinations enjoy the best prospects in this sector of the real estate market.

The graphs below shows hotel investment prospect trends, occupancy rates and RevPar in the hotel sector.



5

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

OH-001175

## FINANCIAL ANALYSIS:

### Original Underwriting Criteria Reveals The Following Project Economics (Un-Audited):

| Proforma: | | |
|---|---|---|
| Proposed Hotel Income: | | |
| | Based on 111 Rooms at $300 per night at 365 days | $12,154,500 |
| | 30% Vacancy | $3,646,350 |
| Effective Gross Income | | $8,508,150 |
| | | |
| | Expenses: 40% | $3,403,260 |
| Net Operating Income (NOI): | | $5,104,890 |
| | Debt Service ($24.55 MM@7.5%/25 yr. amort) | $2,177,068 |
| Cash Flow: | | $2,927,822 |
| DSCR: | 30% Vacancy | 2.36x |
| | 40% Vacancy | 2.00x |
| | 50% Vacancy | 1.72x |

## SUMMARY ANALYSIS

### The loan will be modified as follows:

| | Requested Terms: | |
|---|---|---|
| Term: | (2) 6-month extensions | |
| Maturity: | 3/1/12 | |

### Recommendation:

The project is 33% complete and the Borrower has requested additional time to complete the project, stabilize the building, and secure permanent take-out financing.

The project is a year behind schedule due to a stop-work-order implemented by the Building Department as a result of down-zoning of the area. The project was grandfathered and allowed to continue to be built based on the original plans and specifications. In light of the above, two six-month extension options is recommended to allow the project to be completed.

### Conclusion:

In the absence of proceeding with this proposal, BFSB would face a timely foreclose action on the property or sale of the note at a discount. A foreclosure will take time with additional carry costs accreting to the bank. Allowing this extension will enable the loan to be paid off.

6

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

ORIGINAL

Loan #        18010521-3
Account #     20-070052
Borrower:     DAB Group LLC
Guarantor:    Zvi (Ben) Zhavian
Premises:     139-141 Orchard Street, New York, NY 10002

APPROVAL:            Approval of (2) six-month extension options.

LOAN OFFICER:

_____   DATE: 2/15/11
Francillia LeBlanc

LOAN WORKOUT OFFICER:

_____   DATE: 2/15/11
Bruce Gordon

LOAN WORKOUT OFFICER:

_____   DATE: 2/15/11
Joanne Gallo


*LOAN WORKOUT COMMITTEE APPROVAL*

COMMITTEE:      _____   DATE: 1/3/11
                Daniel Reich

COMMITTEE:      _____   DATE: 2/15/11
                Arthur Williams

COMMITTEE:      _____   DATE: 2/15/11
                John Loconsolo

Comments        _____

                _____

7

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER          OH-001177